## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | Case No. 24-10719 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 13, 89 & 147** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME CONSULTING AGREEMENT, (II) AUTHORIZING STORE CLOSING SALES AND APPROVING RELATED PROCEDURES, (III) AUTHORIZING CUSTOMARY COMPENSATION ENHANCEMENT, AND (IV) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(the "Debtors") for entry of an interim order (the "Interim Order"):    (i) authorizing the Debtors

to assume the portions of the Consulting Agreement (a copy of which is attached hereto as

**Schedule 1**) relating to the Retail Services; (ii) authorizing the continuation of the Store Closing

Sales free and clear of all liens, claims, and encumbrances, and the Store Closings on the terms

and subject to the conditions set forth in the Consulting Agreement and the Sale Guidelines

attached hereto as **Schedule 2**; (iii) authorizing customary compensation enhancement to

employees who remain employed during the duration of the Store Closings and/or these Chapter

11 Cases; and (iv) granting certain related relief, all as more fully set forth in the Motion; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030).  The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter an interim order consistent with Article III of the United States Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the notice of the Motion and of the opportunity to be heard at the hearing thereon were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and the First Day Declaration and having heard the statements and argument in support of the relief requested at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at any Hearing establish just cause for granting the requested relief on an final basis; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore; **IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      The Debtors have advanced sound business reasons for assuming the Consulting Agreement and adopting the Sale Guidelines on an interim basis, subject to entry of the Final Order granting such relief, and assuming the Consulting Agreement is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.      Subject to entry of a final order (the "Final Order") containing such finding, the Consulting Agreement, was negotiated, proposed, and entered into by the Agent and the Debtors without collusion, in good faith and from arm's length bargaining positions.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

C.      The Sale Guidelines are reasonable and appropriate, and conducting the Store Closings in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets and are in the best interest of the Debtors' estates.

D.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

E.      The Store Closings and the related Store Closing Sales are in the best interest of the Debtors' estates.

F.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

G.      The Debtors have represented that they intend to neither sell nor lease personally identifiable information pursuant to the relief requested in the Motion.

H.      The Agent is not an insider of the Debtors.

I.      The Sale Compensation Enhancement Program is justified by the facts and circumstances of these Chapter 11 Cases, is a sound exercise of the Debtors business judgement and is necessary to maximize value to the estates.

J.      The entry of this Interim Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore **IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted on an interim basis as set forth herein (this "Interim Order").

2.      The Final Hearing shall be held on May 7, 2024, at 11:00 a.m., prevailing Eastern Time. Any objections or responses to entry of the Final Order shall be filed on or before 4:00 p.m., prevailing Eastern Time on April 26, 2024 (the "Objection Deadline"), and served on the

following parties: (i) the Debtors, 1730 Flight Way, Suite 100, Tustin, CA 92782; (ii) proposed counsel to the Debtors, (a) Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com); Michael W. Price (mprice@milbank.com); Lauren C. Doyle (ldoyle@milbank.com); Brian Kinney (bkinney@milbank.com); and James McIntyre (jmcintyre@milbank.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); and Jonathan M. Weyand (jweyand@morrisnichols.com); (iii) counsel to the DIP Agent, DIP Lender, and FILO Agent, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: David M. Hillman (dhillman@proskauer.com); (iv) counsel to the ABL Facility Agent, Sidley Austin LLP, One South Dearborn, Chicago, IL 60603, Attn: Dennis M. Twomey (dtwomey@sidley.com) and Jackson T. Garvey (jgarvey@sidley.com), and 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com); (v) counsel to the Ad Hoc Group of 2026 Noteholders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com), Andriana Georgallas (andriana.georgallas@weil.com), and Chase Bentley (chase.bentley@weil.com); (vi) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (vii) any statutory committee appointed in these Chapter 11 Cases. If no objections or responses are timely filed and served as set forth herein, the Debtors may, in accordance with the Local Rules, submit to the Court the Final Order, substantially in the form of **Exhibit B** attached to the Motion, which may be entered with no further notice or need for the Final Hearing.

3.      The Debtors and the Agent are authorized to take all actions that are necessary and appropriate to effectuate the relief granted in this Interim Order.

4.      To the extent of any conflict between the Sale Guidelines and the Consulting Agreement, the Consulting Agreement shall control.  To the extent of any conflict among this Interim Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control.

**I.      Authority to Assume the Consulting Agreement**

5.      The Debtors are authorized, on an interim basis, to enter into the portions of the Consulting Agreement relating to the Retail Services pursuant to sections 363 and 365 of the Bankruptcy Code.

6.      The Debtors are authorized to act and perform in accordance with the applicable terms of the Consulting Agreement on an interim basis, including making payments to the Agent required by the Consulting Agreement in connection with the Retail Services without a further order of this Court and without the need for the Agent to apply for same.  The Agent's fees and expenses shall be paid from the gross proceeds of the Store Closing Sales and shall be subject to the terms of the Consulting Agreement, including as to the Expense Budget; *provided that* the Debtors shall use their best efforts to make payments that are in compliance with the Approved Budget.

7.      Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtors and the Agent are hereby authorized to take any and all actions as may be necessary or desirable to implement the applicable portions of the Consulting Agreement, and any actions taken by the Debtors and the Agent necessary or desirable to implement such portions of the Consulting Agreement are hereby approved and ratified from and after the Petition Date.

8.     The Consulting Agreement and related documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court so long as the interest of the landlords under the applicable Leases are not adversely affected, or as otherwise ordered by this Court.

9.     Notwithstanding anything contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Agent for any damages arising primarily out of the Agent's fraud, willful misconduct, or gross negligence.

10.     The failure to specifically include any provisions of the applicable provisions of the Consulting Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that such portions of the Consulting Agreement be, and they hereby are, authorized and approved to the extent provided in this Interim Order.

## II.     Authority to Engage in and Conduct Store Closing Sales and Store Closings

11.     The Debtors are authorized, pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue conducting the Store Closing Sales and the Store Closings in accordance with this Interim Order, the Sale Guidelines and the Consulting Agreement.

12.     The Sale Guidelines are approved in their entirety on an interim basis.

13.     Subject to entry of the Final Order granting such relief, all entities that are presently in possession of some or all of the Store Closure Assets that are or may be subject to the Consulting Agreement or this Interim Order are hereby directed to surrender possession of such Store Closure Assets to the Debtors or the Agent.

14.      Subject to paragraphs 15, 33 and 34 of this Interim Order, neither the Debtors nor the Agent nor any of their respective officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in

Code Section 101(27)) or landlord, to conduct the Store Closing Sales and to take the actions related to the Store Closings, as authorized herein.

15.     The Debtors and/or the Agent and the landlords of the Stores are authorized to enter into the Side Letters modifying the Sale Guidelines without further order of the Court, and each such Side Letter shall be binding on the Debtors, the Agent and the applicable landlords *, provided, however,* that the Sale Guidelines may not be materially modified without the consent of the DIP Agent, which shall not be unreasonably withheld, conditioned, or delayed.  In the event of any conflict between the Sale Guidelines, this Interim Order, and any Side Letter, the terms of such Side Letter shall control with respect to the applicable landlord and Closing Store.

## III.     Conduct of Store Closing Sales

16.     Newspapers and/or other media in which the Store Closings and/or the Store Closing Sales may be advertised and all applicable landlords are directed to accept this Interim Order as binding authority authorizing the Debtors and the Agent to conduct the Store Closing Sales pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Store Closure Assets in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, any applicable Side Letter, and the Consulting Agreement.

17.     The Debtors and the Agent are authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and conduct the Store Closing Sales and the Store Closings without further order of this Court as provided in the Consulting Agreement and the Sale Guidelines, including, but not limited to, advertising the Store Closing Sales as a "store closing sale", "sale on everything", "everything must go", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent that the applicable closing location entrance

does not require entry into the enclosed mall common area), use of sign-walkers, A-frames, and other street signage, as contemplated in the Sale Guidelines (subject to any Side Letter).

18.     Except as expressly provided in the Consulting Agreement and the Sale Guidelines, the sale of the Store Closure Assets and Additional Agent Goods shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any Lease, restrictive covenant, or other agreement affecting or purporting to restrict the conduct of the Store Closings or the sale of the Store Closure Assets or the Additional Agent Goods, abandonment of assets, or "going dark" provisions.  Such provisions shall not be enforceable with respect to the Store Closings or the sale of the Store Closure Assets or Additional Agent Goods, and breach of any such provisions in connection with the Store Closings or the sale of the Store Closure Assets and Additional Agent Goods shall not constitute a default under the applicable instrument, including a Lease, or provide a basis to terminate such instrument; *provided* that the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Sale Guidelines.

19.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings and/or the Store Closing Sales, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or Store Closing, and/or (b) instituting any action or proceeding in any court (other than in the Court) or

administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and the Store Closings at the Stores or other Debtor location and/or seek to recover damages for breach(es) of covenants or provisions in any Lease, license, or contract based upon any relief authorized herein.

20.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Agent shall have the right to use the Stores, the FF&E and other assets of the Debtors for the purpose of conducting Store Closing Sales and Store Closings, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order.

21.     The Agent is authorized to supplement the Merchandise in the Stores with Additional Agent Goods to assist the Agent in selling the Store Closure Assets by maintaining the Stores consumer base without the Debtors expending their own liquidity; *provided* that any such Additional Agent Goods must be of like kind and no lesser quality than the Merchandise.  Sales of Additional Agent Goods shall be run through the Debtors' cash register systems; *provided, however*, that the Agent shall mark the Additional Agent Goods using either a "dummy" SKU or department number or in such other manner that would distinguish the Additional Agent Goods from the Merchandise.  The Agent and the Debtors shall cooperate to ensure that the Additional Agent Goods are marked in such a way that a reasonable consumer could distinguish the Additional Agent Goods from the Merchandise.

22.     All transactions relating to the Additional Agent Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from the Agent to the Debtors

under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "UCC") and not a consignment for security purposes.

23.     The Agent shall pay to the Debtors an amount equal to five percent (5%) of the gross proceeds (excluding sales taxes) from the sale of Additional Agent Goods in the Stores completed during the Sale Term.  All remaining amounts from the sale of the Additional Agent Goods shall be the exclusive property of the Agent, and no other person or entity shall have any claim against any of the Additional Agent Goods or their proceeds.  At the Agent's sole cost and expense, the Debtors shall insure the Additional Agent Goods and, if required, promptly file any proofs of loss with regard to the same with the Debtors insurers.  The Agent shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Agent Goods.

24.     To the extent of applicable law, the Agent is hereby granted a first-priority security interest in and lien on (i) the Additional Agent Goods and (ii) the Additional Agent Goods proceeds, which security interest shall be deemed perfected, on an interim basis, pursuant to this Interim Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; *provided* that the Agent is authorized to deliver any notices and file any financing statements under the applicable UCC and amendments thereof with respect to the Agent's interest in the Additional Agent Goods and any proceeds from the sale thereof.

25.     All sales of Store Closure Assets and Additional Agent Goods shall be "as is" and final.  No returns related to the purchase of the Store Closure Assets shall be accepted at any Stores or any stores that are not participating in the Store Closing Sales.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the point-of-sale areas at all Stores.

26.     The Agent shall not be liable for sales taxes except with respect to the Additional Agent Goods or as expressly provided in the Consulting Agreement, and the payment of all sales taxes (except with respect to the Additional Agent Goods or as expressly provided in the Consulting Agreement) is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Store Closing Sales and the Store Closings to the applicable Governmental Units as and when due; *provided* that, in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

27.     Pursuant to section 363(f) of the Bankruptcy Code, all sales of Store Closure Assets, whether by the Agent or the Debtors, shall be free and clear of any and all liens, claims, interests, encumbrances, and defenses (including without limitation, rights of setoff and recoupment), including, without limitation, security interests of whatever kind or nature, mortgages conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights -of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration,

successor, product, environmental, tax, labor, ERISA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances"), as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided, however,* that, subject to the terms of the DIP Orders (defined below), any Encumbrances, shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, amount, and priority as, and to the same extent, that any such Encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

28.    The Debtors and/or the Agent are authorized and empowered to transfer Store Closure Assets and Additional Agent Goods among, and into, the Stores.  The Agent is authorized to sell the Store Closure Assets and  the Additional Agent Goods as provided for and in accordance with the terms of the Consulting Agreement and the Sale Guidelines.

29.    Neither the Sale Guidelines, Consulting Agreement, nor this Interim Order authorize the Debtors to transfer or sell to the Agent or any other party the personal identifying information (which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name (or initial) and last name, physical address, electronic address, telephone number, social security number, date of birth, government-issued identification number, account number and credit or debit card number

("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state or federal privacy and/or identity theft prevention laws and rules. The foregoing shall not limit the Agent's use of the Debtors' customer lists and mailing lists (if any) in accordance with the Consulting Agreement solely for purposes of advertising and promoting Store Closing Sales.

30.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors' hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable. At the conclusion of the Store Closing Sales, the Agent shall provide the Debtors with written verification that the Agent has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased, or otherwise modified to render the PII unreadable or undecipherable.

31.     Nothing in this Interim Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy code or (b) alter or modify the rights of any lessor or other counterparty to a Lease with the Debtors to file an appropriate motion or otherwise seek relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; *provided* that the conduct of the Stores Closings and Store Closing Sales in accordance with the Sale Guidelines, as may have been modified by any Side Letter, shall not be in violation of section 365(d)(3) of the Bankruptcy Code.

32.     Provided that the Store Closing Sales and the Store Closings are conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Sale Guidelines (subject to any Side Letter), and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and the Agent shall be presumed to be in compliance with any Liquidation Sale Laws and, subject to paragraphs 15, 17, 33 and 34 of this

Interim Order, are authorized to conduct Store Closing Sales and Store Closings in accordance with the terms of this Interim Order and the Sale Guidelines, without the necessity of further showing compliance with any such Liquidation Sale Laws.

33.    Nothing in this Interim Order, the Consulting Agreement, or the Sale Guidelines, releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order, the Consulting Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closing Sales and the Store Closings shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").    Nothing in this Interim Order, the Consulting Agreement, or the Sale Guidelines, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that

such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing anything in this Interim Order shall be deemed to have made any rulings on any such issues.

## IV.    Dispute Resolutions

34.    To the extent that the Store Closing Sales are subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Store Closure Assets, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply:

i.    Within two (2) business days after entry of this Interim Order, the Debtors will serve, by first-class mail copies of the Interim Order (with the Consulting Agreement and the Sale Guidelines attached) on: (a) the office of the Attorney General for each state where the Store Closing Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Store Closing Sales are being held; (c) the division of consumer protection for each state where the Store Closing Sales are being held; and (d) the landlords of the Stores (collectively, the "Dispute Notice Parties").

ii.    To the extent that a dispute relating to any Liquidation Sale Laws arises in connection with the Store Closing Sales, this Interim Order, the Consulting Agreement, or the Sale Guidelines (each, a "Reserved Dispute"), this Court will have jurisdiction to resolve such dispute. Any time within ten days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (a "Dispute Notice") explaining the nature of the dispute to: (a) Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Dennis F. Dunne (DDunne@milbank.com); Michael W. Price (MPrice@milbank.com)

Lauren C. Doyle (LDoyle@milbank.com), and James McIntyre (jmcintyre@milbank.com); (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware, 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com), Matthew O. Talmo (mtalmo@morrisnichols.com), and Jonathan M. Weyand (jweyand@morrisnichols.com); (c) counsel to the Agent: Troutman Pepper Hamilton Sanders, LLP, 1313 Market St. Suite 5100, Wilmington, DE 19801, Attn: Douglas D. Herrmann (douglas.herrmann@troutman.com) and Heather P. Smillie (heather.smillie@troutman.com); and (d) any affected landlords at the notice address in the lease and their counsel of record (if known). If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion requesting that the Reserved Dispute be resolved by this Court (a "Dispute Resolution Motion"). In the Dispute Resolution Motion, any Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of preemption of such Liquidation Sale Laws by the Bankruptcy Code.

iii.    Nothing in this Interim Order precludes the Debtors, any landlord, or any other interested party from asserting that (A) any provision of any Liquidation Sale Laws is preempted by the Bankruptcy Code, or (B) neither the terms of this Interim Order nor the conduct of the Agent or the Debtors pursuant to the Interim Order violates any Liquidation Sale Laws. The filing of a Dispute Resolution Motion will not affect the finality of this Interim Order or limit or interfere with the Debtors' or the Agent's ability to conduct the Store Closing Sales, absent further order of this Court. Nothing in this Interim Order constitutes a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

iv.    If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, subject to any provisions in this Interim Order related to the Liquidation Sale Laws, any party to that dispute may, upon notice to the other party, proceed in accordance with subparagraphs (ii) and (iii) above.

35.    Subject to paragraphs 33 and 35 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Store Closing Sales and the Store Closings and all newspapers and other advertising media in which Store Closing Sales and Store Closings are advertised shall consider this Interim Order as binding authority to conduct Store Closings and/or Store Closing Sales.

36.    In a dispute relating to the Leases between the Agent and/or the Debtors and a landlord, the Debtors, the Agent and the landlord may seek an emergency hearing before the Court

on no less than three (3) business days' notice, unless the parties agree to a hearing on a shorter notice, in each respect subject to the Court's availability.

37.     Notwithstanding anything to the contrary herein, in view of the importance of the use of sign-walkers, banners, and other advertising to the Store Closing Sales and the Store Closing, to the extent that disputes arise during the course of the Store Closing Sales regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Agent are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court.  Such hearing will, to the extent practicable and subject to the Court's availability, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within three (3) business days of such request. This scheduling procedure shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

**V.      Other Provisions**

38.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Consulting Agreement.

39.     To the extent that the Debtors are subject to any state Fast Pay Laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven (7) calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

40.     Neither the Agent nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the Debtors including pursuant to the Consulting Agreement and/or bidding on the Debtors' assets not

subject to the Consulting Agreement in connection with any other future process that may or may not be undertaken by the Debtors to close additional stores; *provided* that any such services and/or transactions is approved by separate order of this Court.

41.     No later than seven (7) business days prior to the Objection Deadline, the Agent and Gordon Brothers Retail Partners, LLC shall each file a declaration disclosing its connections to the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases using the same parties in interest list used by other retained professionals in these Chapter 11 Cases, and the Debtors shall serve the same on the U.S. Trustee, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

42.     On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, counsel to the Prepetition Notes Agent, and counsel to the Ad Hoc Group of Secured Noteholders (each, as defined in the DIP Orders), the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Store Closing Sales that are prepared by the Debtors, their professionals or the Agent, provided, that the foregoing shall not require the Debtors, their professionals, or the Agent to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Agent in connection with Store Closing Sales.

43.     The Agent shall act solely as an independent consultant to the Debtors and shall not be liable for any claims against the Debtors other than as expressly provided in the Consulting Agreement (including the Agent's indemnity obligations thereunder) or the Sale Guidelines, with the exception of acts of gross negligence, willful misconduct, or fraud and, for greater certainty, the Agent shall not be deemed to be an employer, or a joint or successor employer or a related or

common employer or payor of any of the Debtors' employees within the meaning of any legislation governing employment or labor standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successor liability whatsoever.

44.    The Debtors are authorized and permitted to transfer to the Agent personal information in the Debtors' custody and control solely for the purposes of assisting with and conducting the Store Closing Sales and the Store Closings and only to the extent necessary for such purposes and consistent with the Debtors' policies with respect to such information; *provided* that Agent removes such personal information from the Store Closure Assets prior to the abandonment of the same.

45.    Within thirty (30) days of conclusion of the Store Closing Sales, the Debtors shall file with the Court a summary report of the Store Closings that will include (i) a list of the Stores closed and (ii) gross revenue from the Store Closing Sales.

46.    On an Interim basis and pending entry of the Final Order, the Debtors shall have the authority, but not the obligation, to make payments under the Sale Compensation Enhancement Program, as may be amended from time to time, but which shall not exceed $2.55 million on an interim basis.

47.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor it is intended to constitute: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or

admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

48.     Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim, other than with respect to payments made to the Agent, which are governed by the reconciliation procedures in the Consulting Agreement.

49.     The Motion satisfies the requirements of Bankruptcy Rule 6003(b).

50.     Notice of the Motion as described therein is deemed good and sufficient notice the Motion and the relief requested therein.

51.     Notwithstanding Bankruptcy Rule 6004(h), the terms of this Interim Order are immediately effective and enforceable upon its entry.

52.     This Court shall retain jurisdiction with regard to all issues or disputes relating to the Motion, this Interim Order, the Consulting Agreement, or any Side Letter.

53.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Store Closing Sales, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic

hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (i) the Final Hearing or (ii) within two (2) business days of such request.  This interim scheduling procedure shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: April 12th, 2024**
**Wilmington, Delaware**

21