**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| NUMBER HOLDINGS, INC., *et al.*,[1] | ) Case No. 24-10719 (JKS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Proposed Hearing Date:** |
| | ) **May 8, 2024, at 11:00 a.m. (ET)** |
| | ) **Proposed Objection Deadline:** |
| | ) **May 7, 2024, at 12:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I) AUTHORIZING THEM TO
ENTER INTO AND PERFORM UNDER PURCHASE
AGREEMENT, (II) APPROVING THE SALE OF THE
DESIGNATION RIGHTS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors" and, together with their non-Debtor affiliates, "99 Cents") respectfully state the following in support of this motion (the "Motion"):

**Preliminary Statement**

1. Through this Motion, the Debtors seek authority to sell designation rights to 58 store leases to the Buyer (as defined below). The Designation Rights (as defined below) grant the Buyer an option to take assignment of the leases through and until May 31, 2024. If the Buyer elects for the Debtors to assume and assign some or all of the relevant leases, such leases will be assumed and assigned pursuant to the procedures which the Court has previously approved on an

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

interim basis (as modified by any order approving such procedures on a final basis and the Sale Order (defined below)). Thus, despite the private sale of the Designation Rights, landlords will be provided with notice and an opportunity to object to any proposed assignment. In exchange for the Designation Rights, the Buyer will (i) provide payment equal to the May rent and certain other costs for all of the Designation Leases, (ii) pay an additional guaranteed $2.5 million to the Debtors' estates, and (iii) pay the cure costs for any Designation Leases they elect to have assumed and assigned.

2.    The Debtors have an urgent need to execute the Transaction (as defined below) in the near term. The Debtors' DIP budget does not include May rent for the Designation Leases and, while the Buyer has deposited sufficient funds to cover May rent into escrow, such escrowed amounts will not be released until the Transaction is approved. The Debtors marketed the Designation Leases extensively and did not receive any other actionable proposals that would have provided material value to the estates. As such, and for the reasons described below, the Debtors request that the Court approve the Transaction on the terms set forth in the Purchase Agreement (defined below).

## Relief Requested

3.    By this Motion, the Debtors seek entry of the form of order substantially in the form attached hereto as **Exhibit A** (the "Sale Order"), (i) authorizing them to enter into the Purchase Agreement; (ii) granting the Buyer the Designation Rights (defined below); and (iii) granting certain related relief.

4.    In support of the Motion, the Debtors submit the *Declaration of Matt Tabloff of Hilco Real Estate, LLC* (the "Tabloff Declaration").

**Background**

5. On April 7, 2024 (the "Petition Date"),[2] the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These Chapter 11 Cases have been consolidated for procedural purposes only and are being administered jointly. No trustee or examiner has been appointed in these Chapter 11 Cases. On April 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").

6. As of the Petition Date, the Debtors operated approximately 371 extreme value retail stores in California, Arizona, Nevada, and Texas under the business names "99¢ Only Stores" and "The 99 Store."

7. The Debtors commenced these Chapter 11 Cases to implement a timely and efficient process to maximize the value of the Debtors' estates for the benefit of all stakeholders. Through these cases, the Debtors intend to continue an orderly and value-maximizing wind-down of their inventory, while conducting a marketing and sale process for their remaining assets on a timeline consistent with their store closures.

8. For further information about the Debtors, their business operations, and the circumstances that have led to the filing of these Chapter 11 Cases, the Debtors refer to the *Declaration of Christopher J. Wells in Support of Chapter 11 Petitions and First Day Motions of Number Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [D.I. 18].

---

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

9. At a hearing held on April 9, 2024 (the "First Day Hearing"), the Debtors sought and obtained interim approval of procedures regarding the closing of their stores, including store closing sales for the sale of their merchandise and furniture, fixtures & equipment (FF&E) at all of their 371 stores and 5 distribution centers pursuant to the terms of the *Interim Order (I) Authorizing the Debtors to Assume Consulting Agreement, (II) Authorizing Store Closing Sales and Approving Related Procedures, (III) Authorizing Customary Compensation Enhancement, and (IV) Granting Certain Related Relief* [D.I. 151] (the "Store Closing Procedures"). It is projected that the Debtors, with the assistance of their advisors, will have closed over 1/3 of the stores and all of the distribution centers by the end of April (collectively, the "April Locations") and the remaining stores by the end of May. Accordingly, the Debtors also sought and obtained approval at the First Day Hearing of certain procedures (the "Rejection and Assumption Procedures") for the rejection and assumption and assignment of their non-residential real property leases (the "Leases") pursuant to that certain *Interim Order (I) Authorizing and Approving Procedures of Rejection and Assumption and Assignment of Executory Contracts and Unexpired Leases, (II) Authorizing Abandonment of Certain Personal Property, and (III) Granting Related Relief* [D.I. 152].

10. Given that the Debtors will no longer be operating in the April Locations as of April 30, 2024, the Debtors had two options with respect to the unexpired leases for such locations (the "April Leases"): (i) assume and assign the leases to a willing assignee or (ii) reject the leases, in each case, effective on or before April 30, 2024. Accordingly, the Debtors have sought to reject or assume and assign many of the April Leases by filing the (x) *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases (and Abandonment of Property Related Thereto)* [D.I. 204] (seeking rejection of 69 leases, effective as of April 30, 2024) and (y) the *Notice of*

4

*Assumption or Assumption and Assignment of Certain Executory Contracts and/or Unexpired Leases* [D.I. 206] (seeking assumption and assignment of a lease, effective April 30, 2024) on April 19, 2024 and April 20, 2024, respectively.

**Negotiations with the Buyer and the Letter of Intent and Purchase Agreement**

11. As the Debtors' deadline to assume or reject the April Leases loomed, the Debtors and their advisors continued to pursue any and all available options to monetize the April Leases and maximize the value of such assets. As part of this process, the Debtors and their advisors engaged with numerous potential parties regarding the April Leases. Dollar Tree Stores, Inc. (the "Buyer") emerged as a potential assignee and expressed an interest in the possible assignment of a large subset of the April Leases.

12. The Debtors and the Buyer engaged in good-faith negotiations and agreed on a construct (the "Transaction") whereby the Buyer would purchase an option to instruct the Debtors to assume up to 58 of the April Leases (the "Designation Leases") on or before May 31, 2024 (the "Designation Rights") and assign any assumed Designation Lease to the Buyer. In exchange, the Buyer will (i) provide payment equal to the May rent and certain other costs for all of the Designation Leases, (ii) pay an additional guaranteed $2.5 million to the Debtors' estates, and (iii) pay the cure costs for any Designation Leases they elect to have assumed and assigned. The consideration provided by the Buyer confers substantial value to the Debtors' estates that would not otherwise be available. Moreover, the Buyer, which is a fortune 500 company that operates more than 15,000 stores throughout the 48 contiguous United States, is capable of providing adequate assurance of future performance under any of the April Leases pursuant to section 365 of the Bankruptcy Code.

13. The principal terms of the Transaction are set forth in a binding Letter of Intent (the "Letter of Intent"), which the parties entered on April 23, 2024, as further memorialized in the *Purchase Agreement* (the "Purchase Agreement") attached hereto as **Exhibit B**. The Purchase Agreement further provides the Buyer with the Designation Rights to elect, by no later than May 31, 2024, to take an assignment (or to designate an affiliated entity to take an assignment) of one or more Designation Leases pursuant to section 365 of the Bankruptcy Code. Purchase Agreement at ¶ 4.1. The Buyer may exercise the Designation Rights in its sole discretion and may instruct the Debtors to assume and assign any number of the Designation Leases in accordance with the Rejection and Assumption Procedures and the Sale Order.

14. Crucially, the Debtors had no actionable alternative proposals with respect to the Designation Leases that would enable them to obtain value without needing to incur costs related to May rent that were not contemplated by the Debtors' budget. The Debtors submit that, absent the Letter of Intent and the Purchase Agreement, they would be forced to reject the Designation Leases to avoid incurring associated May rent costs. As the Debtors noted at the First Day Hearing, time is of the essence with respect to the April Leases. The Debtors had already begun to market their leasehold assets prior to the Petition Date and that marketing process continued in earnest postpetition. Despite the short postpetition timeline and as more fully set forth in the Tabloff Declaration, the Debtors advisors reached out to hundreds parties with respect to the Leases. While many of these parties remain active in the Debtors' broader sale processes, none save the Buyer offered an actionable proposal for April Leases. As such, the Transaction represents the Debtors best opportunity to monetize the Designation Leases and the Debtors' marketing process justifies the private sale of the Designation Rights.

15. Pursuant to rule 6004-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), certain of the key terms of the Purchase Agreement are highlighted in the chart below:[3]

| **MATERIAL TERMS OF THE PURCHASE AGREEMENT** ||
|---|---|
| **Buyer** | Dollar Tree Stores, Inc. |
| **Purchased Assets** | Designation rights with respect to each of the 58 unexpired leases of non-residential real property set forth on Schedule A to the Purchase Agreement (*i.e.*, the Designation Leases). |
| **Designation Rights** | The Designation Rights are the rights of the Buyer to elect, by no later than May 31, 2024, to take an assignment (or to designate an affiliated entity to take an assignment) of one or more Designation Leases pursuant to section 365 of the Bankruptcy Code and on the terms set forth in the Purchase Agreement. The Designation Rights are in the Buyer's sole and absolute discretion and can be exercised with respect to any number, or none, of the Designation Leases by written notice given to the Debtors on or before May 31, 2024. |
| **Purchase Price** | $2,500,000 in cash. |
| **No Sale to Insider** | The Buyer is not an insider of the Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code. |
| **Agreements with Management** | None. |
| **Releases.** | None. |
| **Interim Arrangements with Proposed Buyer** | None. |
| **Use of Proceeds** | None. |
| **Tax Exemption** | Not applicable. |
| **Record Retention** | Not applicable. The purchased assets do not include any of the Debtors' books and records. |
| **Sale Free and Clear of Unexpired Leases** | While the Debtors are seeking to sell the Designation Rights to the Buyer free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code (unless otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement), the Debtors are not seeking to sell any assets free and clear of any possessory leasehold interest, license or other right. |
| **Private Sale/No Competitive Bidding** | For the reasons discussed herein, the Debtors have not conducted an auction for the Designation Rights, which, as described herein, have already been subject to a marketing process. |
| **Requested Findings as to Successor Liability** | Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors, (b) have, de facto or otherwise, merged with or into any or all Debtors, or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any |

---

[3] This summary is provided for the convenience of the Court and parties in interest. To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement will govern in all respects.

| **MATERIAL TERMS OF THE PURCHASE AGREEMENT** | |
|---|---|
| | liability or obligation of the Debtors or the Debtors' estates. Except as expressly set forth in the Purchase Agreement, the Buyer and its affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including liabilities on account of any taxes or other governmental authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of any assumed and assigned Designation Lease prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date. |
| **Sale of Avoidance Actions** | Not applicable. No avoidance actions are being sold to the Buyer. |
| **Credit Bid** | Not applicable. The Purchase Price is being paid in cash. No portion of the Purchase Price consists of a credit bid of any debt. |
| **Expense Reimbursement** | If another bidder for the Leases emerges prior to the entry of the Sale Order, Seller agrees to utilize best efforts to seek approval of reimbursement of all actual fees and expenses incurred by Buyer in connection with the transactions contemplated by the Purchase Agreement, including, but not limited to, providing for such reimbursement in any motion to approve and proposed order approving an alternative transaction in place of the transactions contemplated by the Purchase Agreement. |
| **Good Faith Deposit** | On the business day following the Debtors' execution of the Letter of Intent, the Buyer deposited $250,000, which constitutes 10% of the Purchase Price, in a segregated account designated by the Debtors. |
| **May Rent** | On the business day following the Debtors' execution of the Letter of Intent, the Buyer funded an amount equal to the base rent and CAM charges, including tax and insurance obligations owed directly to applicable landlords, due and owing for the month of May under all Designation Leases (whether or not the Buyer elects to assume any such leases) as detailed on Schedule A to the Purchase Agreement into an escrow account maintained by the Debtors and reasonably acceptable to the Debtors and the Buyer for payment of such base rent and CAM charges by the Debtors directly to the applicable landlord. The May rent will be released from escrow upon entry of the Sale Order, which order shall be acceptable to the Buyer in its sole discretion. |
| **Carrying Costs** | From and after May 1, 2024, the Buyer will reimburse the Debtors for all reasonable and documented Carrying Costs[4] for the stores subject to the Designation Leases through the |

---

[4] "Carrying Costs" means, with respect to any store, all expenses related to utilities, property taxes and assessments, insurance policies, property loss (beyond any applicable insurance proceeds and so long as the Debtors or the landlord under the relevant Designation Lease, as applicable, have maintained all applicable insurance policies as will be provided in the Purchase Agreement and as provided in the Designation Leases and including, other than respect to any store that the Buyer or an Assignee is not taking an assignment of, the amount of any reasonable deductible allocated to such loss) and the continuation of existing levels of maintenance in the manner and to the extent existing as of the commencement of the Debtors' chapter 11 cases, or required under the applicable Designation Lease, which are not included in CAM charges paid to the applicable landlord under the Designation Lease, and which expenses are attributable to the period commencing May 1, 2024 and ending on the earlier of: (i) the Assignment Closing Date (defined below) for such Store (as defined in the Purchase Agreement) or (ii) one (1) day after an order is issued by the Bankruptcy Court rejecting the Designation Lease

| MATERIAL TERMS OF THE PURCHASE AGREEMENT ||
|---|---|
|  | earlier of (i) the date of any applicable DT Assumption (defined below); and (ii) the date on which the rejection of a Designation Lease is effective; *provided*, that any Carrying Costs will be in addition to, and not included in, any monthly rents funded by the Buyer; *provided further*, that the Debtors will file a notice of rejection, which shall contain an effective date of rejection that is acceptable to the Buyer, for any applicable Designation Lease within one business day of an instruction by the Buyer to reject such Lease. The Buyer will reimburse the Debtors for Carrying Costs with respect to an applicable Designation Lease upon the Assignment Closing Date (defined below) or the effective date of rejection of the Designation Lease, as applicable. For the avoidance of doubt, Carrying Costs shall not include any labor costs incurred by the Debtors in operating the relevant stores prior to the Buyer exercising its Designation Rights. |
| **Consideration for Assumption and Assignment** | With respect to any Designation Lease that is subject to an Assumption Notice (each a "Designated Lease" and collectively the "Designated Leases"), upon entry of an order by the Court approving the assumption of a Designated Lease and the assignment of such Designated Lease to an Assignee (a "DT Assumption"), which order shall be acceptable to the Buyer in its sole discretion, the Buyer (or its designee) will pay, or cause to be paid, to the applicable landlord an amount equal to the cure costs approved by the Court (including if such amounts differ from the amounts listed on Schedule A to the Purchase Agreement as a result of an agreement between the Buyer and the applicable landlord) for such Designated Lease (the "Cure Amounts"). The amounts that the Buyer understands to be outstanding for base rent and CAM charges due and owing for the month of April as disclosed by the Debtors are identified on Schedule A to the Purchase Agreement. |
| **Transaction Closing Date** | The Transaction shall close on the later of (i) May 1, 2024 and (ii) the Business Day after the date on which the Court enters the Sale Order, which order shall be acceptable to the Buyer in its sole discretion. The parties agree that the Debtors shall seek entry of the Sale Order on an expedited basis on the earliest date permitted by the Bankruptcy Court. |
| **Assignment Closing Date** | The closing date for the assignment of any Designated Lease shall be the day, following the entry of an order of the Court approving the DT Assumption, that the Buyer has paid the applicable Cure Amount. |
| **Personal Property and Fixtures** | Prior to each Assignment Closing Date, and except as may be further negotiated by the Buyer and the Debtors, the Debtors shall remove all inventory. In addition, if, prior to each Assignment Closing Date, the Debtors do not remove Trade Fixtures[5] in any applicable store subject to a Designated Lease located in a state other than California, such Trade Fixtures shall be deemed abandoned to the Buyer or the applicable Assignee effective upon the |

---

applicable to such store, so long as Debtors have promptly filed a motion to reject such Designation Lease upon the earlier of: (x) the date that the Buyer notifies the Debtors that it does not desire to assume such Designation Lease or (y) the Expiration Date. In addition, Carrying Costs shall include an amount equal to June Rent with respect to the applicable amount due to such landlords.

"June Rent" means an amount equal to (i) the base rent plus (ii) CAM, taxes and insurance charges, all in amounts calculated in the same manner as such amounts were used in the definition of May Rent, for all Designation Leases that have neither been assumed and assigned to a third-party nor rejected prior to the Expiration Date to the extent such amounts are due (x) to the applicable landlords of the Designation Leases with respect to such amounts due to such landlords and (y) as a result of any delay caused by the Buyer which would have permitted the assumption and assignment to a third-party or rejection of such Designation Lease in an orderly manner prior to the date such amounts are due.

[5] "Trade Fixtures" means any racking, shelving, checkout counters, partitions, office furniture and window treatments.

| MATERIAL TERMS OF THE PURCHASE AGREEMENT | |
|---|---|
| | Assignment Closing Date.[6] |
| **As-Is, Where-Is** | The Buyer (i) has had an opportunity to conduct any and all due diligence regarding the Designation Leases prior to entering the Letter of Intent, (ii) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Designation Leases in entering the Letter of Intent, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Designation Leases or the completeness of any information provided in connection therewith, except as may be expressly stated in Purchase Agreement. |
| **Free and Clear Sale of Designation Rights** | The sale of the Designation Rights by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Designation Rights, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title and interest of the Debtors in and to the Designation Rights, free and clear of all Interests (other than any Interests expressly assumed under, or expressly permitted by, the Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code. |
| **Relief from Bankruptcy Rule 6004(h)** | The Debtors are requesting relief from the 14-day stay imposed by Bankruptcy Rule 6004(h). |

## Jurisdiction and Venue

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated as of February 29, 2012.

17. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

18. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19. The bases for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

---

[6] Abandonment of the Trade Fixtures shall be done in accordance with, and pursuant to the authority granted in, the Store Closing Procedures and the Rejection and Assumption Procedures.

**Basis for Relief**

**I.      The Court Should Authorize the Debtors to Enter Into the Purchase Agreement**

20.     The proposed sale of the Designation Rights to the Buyer in exchange for the guaranteed $2.5 million purchase price and additional consideration described in the Purchase Agreement, including the May rent coverage and other related costs associated with the Designation Leases, is a sound exercise of the Debtors' business judgment and should be approved by the Court.

21.     Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor in possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See*, *e.g.*, *Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991));.*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983).

22.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (i) whether a sound business justification exists for the sale, (ii) whether adequate and reasonable notice of the sale was provided to interested parties, (iii) whether the sale will produce a fair and reasonable price for the property, and (iv) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in

making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc.* (*In re Integrated Res. Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992).

23. The Debtors have a sound business justification for entering into the Purchase Agreement. The Purchase Agreement provides $2.5 million dollars of guaranteed value to the estates in exchange for the Designation Rights. Absent the Purchase Agreement, the Debtors would have rejected the Designation Leases, as the Debtors' budget and wind down plan did not contemplate the continued incurrence of costs under the Designation Leases. Moreover, the Purchase Agreement not only provides material value to the Debtors and their creditors, but allows the Debtors to avoid saddling the estates with substantial rejection damage claims from the affected landlords if the Designation Leases are assumed. Given these substantial benefits, there is no doubt that entry into and performance under the Purchase Agreement is a sound exercise of the Debtors' business judgment.

24. Moreover, the Debtors and their advisors have been marketing the April Leases extensively from the outset of these Chapter 11 Cases. The Rejection and Assumption Procedures, which the Court authorized on an emergency basis at the First Day Hearing allowed the Debtors to move expeditiously to assume and assign April Leases, among other contracts, to interested purchasers. Despite the Debtors' extensive outreach, the Buyer provided the only actionable proposal to realize value for the Designation Leases. Given the urgent need for the Debtors to either reject, assign, or otherwise have assurances (such as would come from the Transaction) that the estates will not incur additional expenses on the Designation Leases, the Debtors' entry into the Purchase Agreement is appropriate and in the best interest of the Debtors' estates.

## II. The Sale Free and Clear of Liens and Other Interests Is Authorized By Section 363(f) of the Bankruptcy Code

25. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The Debtors only need to satisfy one of the five requirements to permit the Designation Rights to be sold "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *see also In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that section 363(f) of the Bankruptcy Code is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of section 363(f) of the Bankruptcy Code is met); *see also In re Shary, 152 B.R. 724, 725* (Bankr. N.D. Ohio 1993) (noting that "the five conditions enumerated under 363(f) are disjunctive and, as such, a sale thereunder can be authorized if the trustee can prove any of the five conditions").

26. To the extent any party has a prepetition security interest in and liens upon the Designation Rights, these creditors can be compelled to accept a monetary satisfaction of their

interests or fall within one or more of the other subsections of section 363(f). Thus, section 363(f)(5) of the Bankruptcy Code is satisfied and any existing interests in the Designation Rights will be adequately protected through attachment to the proceeds of the sale. *See In re AmTrust Fin. Corp.*, No. 09- 21323, 2010 WL 4917557, at *2 (Bankr. N.D. Ohio Sept. 22, 2010) (finding that holders of liens against property sold free and clear of all liens are "adequately protected by having their Liens, if any, attach to the proceeds of the Sale ultimately attributable to that part of the Property against which or in which they assert a Lien"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Accordingly, the Debtors request that the Designation Rights be transferred to the Buyer free and clear of liens, claims, and encumbrances (unless otherwise expressly assumed under, or expressly permitted by, the Purchase Agreement), with any such liens, claims, and encumbrances attaching to the proceeds realized from the private sale.

**III.    The Buyer is a Good-Faith Purchaser Under section 363(m) of the Bankruptcy Code.**

27.    Pursuant to Bankruptcy Code section 363(m), a good-faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).

28. In other words, a party would have to show fraud or collusion between the successful bidder and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Pursuit Capital Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017) ("The good faith requirement speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Dura Auto. Sys., Inc.,* No. 06-11202 KJC, 2007 WL 7728109, at *96 (Bankr. D. Del. Aug. 15, 2007) (same).

29. The Debtors submit that the Buyer is a "good faith" purchaser of the Designation Rights within the meaning of Bankruptcy Code section 363(m) and the terms of the Purchase Agreement. The Debtors and the Buyer, which is not an "insider" of the Debtors, negotiated the Letter of Intent and the Purchase Agreement at arms-length and in good faith without any collusion or fraud.[7] Accordingly, the Buyer is entitled to the full protections of Bankruptcy Code section 363(m).

30. Accordingly, the Debtors believe that entry into the Purchase Agreement and the sale of the Designation Rights to the Buyer should be approved.

### Waiver of Bankruptcy Rules 6004(a), 6004(h) and 6006(d)

31. To better implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy

---

[7] Bankruptcy Code section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Rules 6004(h) and 6006(d). As set forth above and in the Tabloff Declaration, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtors' operations, going concern value, and their efforts to pursue a resolution to these chapter 11 cases.

### Notice

32. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the DIP Agent, the DIP Lender, and the FILO Agent; (iv) counsel to the ABL Facility Agent; (v) Wilmington Trust, National Association, as Trustee and Notes Collateral Agent pursuant to 2026 Notes Indenture; (vi) counsel to the *Ad Hoc* Group of 2026 Noteholders; (vii) counsel to certain 2026 Noteholders; (viii) RCB Equities #1, LLC, as lender pursuant the PropCo Promissory Note; (ix) the United States Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the state attorneys general for all states in which the Debtors conduct business; (xii) the United States Attorney's Office for the District of Delaware; (xiii) the landlords for each of the Designation Leases; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested herein, the Debtors respectfully submit that such notice is sufficient, and no other or further notice is required or necessary.

WHEREFORE, the Debtors respectfully request that this Court enter the Sale Order, substantially in the form attached hereto, and grant such other relief as this Court deems appropriate under the circumstances.

Dated: May 1, 2024
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Jonathan M. Weyand*
Robert J. Dehney, Sr. (No. 3578)
Matthew O. Talmo (No. 6333)
Jonathan M. Weyand (No. 6959)
Erin L. Williamson (No. 7286)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:   (302) 658-9200
Facsimile:   (302) 658-3989
Email:   rdehney@morrisnichols.com
         mtalmo@morrisnichols.com
         jweyand@morrisnichols.com
         ewilliamson@morrisnichols.com

- and -

**MILBANK LLP**

Dennis F. Dunne, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq. (admitted *pro hac vice*)
Lauren C. Doyle, Esq. (admitted *pro hac vice*)
Brian Kinney, Esq. (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:   (212) 530-5000
Facsimile:   (212) 530-5219
Email:   ddunne@milbank.com
         mprice@milbank.com
         ldoyle@milbank.com
         bkinney@milbank.com

*Proposed Co-Counsel for Debtors in Possession*