**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NUMBER HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-11294 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 311** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTION OF AD HOC GROUP FOR ENTRY OF AN ORDER
(I) CONDITIONING THE USE, SALE, OR LEASE OF PREPETITION
COLLATERAL ON THE PROVISION OF ADEQUATE PROTECTION
AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") of Number Holdings, Inc. and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through undersigned counsel, hereby files this objection (this "**Objection**") to the *Motion of Ad Hoc Group for Entry of An Order (I) Conditioning the Use, Sale, or Lease of Prepetition Collateral on the Provision of Adequate Protection as of the Petition Date and (II) Granting Related Relief*, dated May 1, 2024 [D.I. 311] (the "**Adequate Protection Motion**"),[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Through the Adequate Protection Motion, the Ad Hoc Group of Secured Note Holders (the "**Ad Hoc Group**") seeks substantial adequate protection, including cash payments, without any evidence of ongoing or potential diminution in value of the Prepetition Notes Priority

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Adequate Protection Motion or the DIP Motion, as applicable.

Collateral.[3]  The Committee objects to the Adequate Protection Motion as over-reaching and unfairly prejudicial to the interests of unsecured creditors.

2. As a preliminary matter, the Ad Hoc Group lacks standing to seek adequate protection. The secured party in connection with the Prepetition Notes is the Prepetition Notes Agent, and not the Ad Hoc Group. The proposed order submitted by the Ad Hoc Group even sets forth the proposed adequate protection to be provided to "the Prepetition Notes Agent, for the benefit of itself and the Prepetition Notes Secured Parties."[4] The Prepetition Notes Agent has already objected to the DIP Motion [D.I. 304] and can itself seek adequate protection as appropriate. The Ad Hoc Group is not the proper party to bring the Adequate Protection Motion and such motion therefore should be denied on this basis alone.

3. Even if the Adequate Protection Motion is considered on the merits, the Prepetition Notes Secured Parties should not receive any adequate protection beyond what is proposed in the Final DIP Order, on terms approved by the Committee.[5] Specifically, there should be no adequate protection liens or superpriority claims granted in favor of the Prepetition Notes Secured Parties, to the extent of any proven diminution, on any assets that do not fall within the scope of the DIP Liens, the DIP Collateral, the Prepetition FILO AP Liens, the Prepetition ABL/FILO Liens, and the Prepetition ABL AP Liens (each as defined in the Final DIP Order) and any such liens and associated superpriority claims must be subject to the marshaling, sharing, and reserve provisions of the Final DIP Order.

---

[3] There is no evidence that there will be any excess value available for the Prepetition Notes Secured Parties from the Prepetition ABL Priority Collateral, after payment of the Carve-Out, the DIP Obligations, and the Prepetition ABL/FILO Secured Obligations.

[4] Adequate Protection Motion, Exhibit A (Proposed Order) at ¶3, ¶4.

[5] The Committee and the DIP Secured Parties / Prepetition FILO Secured Parties have reached agreement in principle on the terms of a Final DIP Order.

4. The Ad Hoc Group makes much of the Debtors' use of furniture, fixtures, and equipment ("**FF&E**") and limited pledged real estate (11 properties out of over 370 locations) that constitutes Prepetition Notes Priority Collateral. However, the Ad Hoc Group offers no evidence to establish why the use of such FF&E and real estate translates into a cognizable decrease in the value of such assets. The Ad Hoc Group cries foul that the FF&E at rejected locations will be abandoned, allegedly without an adequate opportunity for the Prepetition Notes Agent to recover such assets, but then makes no offer to pay the rent or other costs associated with maintaining such FF&E. It likely makes no economic sense to recover or sell the FF&E because the cost of that effort will exceed the projected net realizable proceeds therefrom. The Ad Hoc Group also is not entitled to the sale of its limited pledged owned real estate in a "lit" condition. The Debtors do not have the funding to continue to buy inventory and maintain operations at 11 stores just so that the Prepetition Notes Secured Parties maximize their recovery at the expense of all other constituents. Indeed, if the Prepetition Notes Agent had been permitted to foreclose on such stores, they would have been sold in a closed condition.

5. The adequate protection cash payments requested by the Ad Hoc Group are also beyond the pale and unworkable. First, the Prepetition Notes Secured Parties are not entitled to any such payments because, as noted above, there is no evidence of ongoing diminution in the value of the Prepetition Notes Priority Collateral. Second, the Prepetition Notes Secured Parties are clearly undersecured by a wide margin. Under section 506(b) of the Bankruptcy Code, there is no basis to pay their advisor fees.[6] Third, the Ad Hoc Group's demand for adequate protection in the form of *weekly cash payments* equal to the difference in the value of the FF&E and pledged real estate on the Petition Date and the "projected amount to be recovered on disposition" of such

---

[6] 11 U.S.C. §506(b); Adequate Protection Motion, Exhibit A (Proposed Order) at ¶5.

assets, is not even calculable.[7] None of these variables has been determined at this time, nor should they be. The Ad Hoc Group seems to seek some form of unliquidated relief on the assumption that there has been a diminution in value, when no such determination has yet been made by this Court. Alternatively, the Ad Hoc Group seeks adequate protection payments equal to the amounts paid under the DIP Facility,[8] which under the Debtors' DIP Budget ultimately will consist of the repayment of $35.5 million in new money advances and $18.35 million of rolled-up Prepetition FILO Secured Obligations by early July 2024. In another words, under the alternative relief requested, the Ad Hoc Group seeks adequate protection payments equal to at least $53.85 million on the basis of no apparent diminution in value in the Prepetition Notes Priority Collateral.

6. For the reasons set forth herein, this Court should deny the relief requested in the Adequate Protection Motion.

## BACKGROUND

### I. General Background

7. On April 7, 2024 (the "**Petition Date**"),[9] the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[7] Adequate Protection Motion, Exhibit A (Proposed Order) at ¶4(i), (ii).

[8] *Id.* at ¶4(iii).

[9] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

Bankruptcy Court for the District of Delaware (the "**Local Rules**"). No request for the appoint of a trustee or examiner has been made in these chapter 11 cases.

8. On April 19, 2024, the Office of the United States Trustee appointed the Committee in these cases pursuant to 11 U.S.C. § 1102 [D.I. 203]. On April 24, 2024, the Committee selected Pachulski Stang Ziehl & Jones LLP as counsel. Thereafter, the Committee selected Genesis Credit Partners as financial advisor.

## II. Prepetition Funded Debt, Including the Prepetition Notes

9. The Debtors' prepetition capital structure is set forth on pages 26 through 29 of the DIP Motion.[10] The Debtors indicate that they have over $456 million of secured funded indebtedness as of the Petition Date, as follows:[11]

| Prepetition Funded Debt | Principal Amount Outstanding |
|---|---:|
| ***ABL Facility*** | |
|     Revolving Loans | $38,200,000 |
|     FILO Facility | $25,000,000 |
|     Letters of Credit | $25,732,858 |
| ***Prepetition Notes (Secured)*** | $350,000,000 |
| ***PropCo Promissory Note*** | $18,000,000 |
| **Total Funded Debt** | **$456,932,858** |

## III. Proposed Adequate Protection by Ad Hoc Group

10. Pursuant to the Adequate Protection Motion, the Ad Hoc Group seeks the following forms of adequate protection:

- Adequate protection liens, to the extent of any diminution in value, on the DIP Collateral (as defined in the Interim DIP Order), in favor of the Prepetition Notes

---

[10] DIP Motion at pp. 26–29.

[11] *Id.* at ¶21.

- Secured Parties in the priority and manner set forth in the priority chart attached to the Adequate Protection Motion.[12]

- Superpriority claims, to the extent of any diminution in value, in favor of the Prepetition Notes Secured Parties, without specifying the priority of such superpriority claims vis-à-vis the DIP Secured Parties or the Prepetition ABL/FILO Secured Parties.[13]

- Weekly cash payments equal to the difference in the value of the FF&E and pledged real estate on the Petition Date and the "projected amount to be recovered on disposition" of such assets.[14]

- Alternatively, weekly cash payments equal to the amounts paid under the DIP Facility,[15] which under the Debtors' DIP Budget would consist of the repayment of $35.5 million in new money advances and $25.3 million of rolled-up Prepetition FILO Secured Obligations by early July 2024.

- Reimbursement of the fees and expenses of the Prepetition Notes Secured Parties' advisors and professionals, notwithstanding that the Prepetition Notes Secured Obligations are undersecured.[16]

## OBJECTION

### I. The Ad Hoc Group Lacks Standing to Seek Adequate Protection

11. The Prepetition Notes Agent is the secured party in connection with the Prepetition Notes and is the only proper party to seek adequate protection on behalf of the Prepetition Notes Secured Parties. The proposed order submitted by the Ad Hoc Group even sets forth the proposed adequate protection to be provided to "the Prepetition Notes Agent, for the benefit of itself and the Prepetition Notes Secured Parties."[17] The Prepetition Notes Agent is actively engaged in these cases and has already filed an objection to the DIP Motion [D.I. 304]. The Ad Hoc Group lacks

---

[12] Adequate Protection Motion, Exhibit A (Proposed Order) at ¶5.

[13] *Id.* at ¶7.

[14] *Id.* at ¶4(i), (ii).

[15] *Id.* at ¶4(iii).

[16] *Id.* at ¶5.

[17] *Id.* at ¶3, ¶4.

standing to prosecute the Adequate Protection Motion, which should be denied on this basis alone.[18]

## II. Even if Considered on the Merits, the Adequate Protection Proposed By the Ad Hoc Group is Excessive and Inappropriate and Should Be Limited to the Terms of the Final DIP Order

12. The Bankruptcy Code only requires debtors to provide a secured creditor with adequate protection to the extent that the automatic stay, the debtors' use of property, or a priming lien "results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(1). The purpose is to protect a secured creditor from diminution in the value of its collateral during the use period.[19] "[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value or establishing some other basis for the relief. The burden then shifts to the debtor to show that adequate protection is not needed or can be provided in a different manner."[20] Here, there has been no showing that adequate protection in favor of the

---

[18] *See* Exhibit B to Motion (Prepetition Notes Indenture) at §§ 6.3, 6.6; 6.8, 6.9; *see also In re Ion Media Networks, Inc.*, 419 B.R. 585, 597–98 (Bankr. S.D.N.Y. 2009) (enforcing provisions of intercreditor agreement and holding that certain creditor lacked standing to file objections to confirmation of chapter 11 plan); *In re Enron Corp.*, 302 B.R. 463, 477 (Bankr. S.D.N.Y. 2003) (holding that certain creditors lacked standing to bring adversary proceeding against borrower where the applicable financial agreement provided that only the collateral agent could file any action or commence any proceeding); *In re Am. Rds. LLC*, 496 B.R. 727, 729–31 (Bankr. S.D.N.Y. 2013) (enforcing "no action" clause).

[19] *See United Sav. Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 368 (1988); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (goal is to "safeguard the secured creditor from diminution in the value of its interest"); *Lincoln Nat'l Life Ins. v. Craddock-Terry Shoe Corp. (In re Craddock-Terry Shoe Corp.)*, 98 B.R. 250, 255 (Bankr. W.D. Va. 1988) (finding that what needs to be adequately protected is the decrease in value attributable to the stay arising on the petition date).

[20] *Zink v. Vanmiddlesworth*, 300 B.R. 394, 402-03 (N.D.N.Y. 2003) (citations omitted). *See also In re Gunnison Ctr. Apartments*, 320 B.R. 391, 396 (Bankr. D. Colo. 2005) ("The secured creditor 'must, therefore, prove this decline in value—or the threat of a decline—in order to establish a *prima facie* case.'") (quoting *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)); *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("Post-Timbers courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral.").

Prepetition Notes Secured Parties is needed anywhere close to the level proposed in the Adequate Protection Motion.

13. Absent diminution, no adequate protection is needed. So, where the lenders' collateral is not diminishing as a result of its use, nothing further is required for adequate protection.[21] And, diminution is not equivalent to cash collateral use. A prepetition lender is "not entitled to an adequate protection claim on a dollar-for-dollar basis for cash collateral used during the case."[22]

14. The adequate protection liens and superpriority claims provided to the Prepetition Notes Secured Parties, to the extent of any established diminution in value, should be limited to the assets covered by the DIP Liens, the DIP Collateral, the Prepetition FILO AP Liens, the Prepetition ABL/FILO Liens, and the Prepetition ABL AP Liens (each as defined in the Final DIP Order) and any such liens and associated superpriority claims must be subject to the marshaling, sharing, and reserve provisions of the Final DIP Order that has the Committee's support.

    A.    ***The Adequate Protection in Favor of the Prepetition Notes Secured Parties Should Be Governed by the Final DIP Order Approved by the DIP Secured Parties and the Committee***

15. The Committee has negotiated with the DIP Secured Parties and Prepetition FILO Secured Parties that the DIP Secured Parties shall look solely to the Prepetition ABL Priority Collateral and Postpetition ABL Priority Collateral for payment of the DIP Obligations (New Money Amount and Roll-Up Amount) through June 7, 2024 (the "**Marshalling Period**"). During the Marshalling Period, proceeds, if any, of fee owned real estate and non-residential real estate leases ("**Leases**") other than Notes Priority Collateral (collectively, the "**Marshalled Assets**") shall

---

[21] *Save Power Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996).

[22] *Official Comm. v. UMB Bank, NA (In re Residential Cap.)*, 501 B.R. 549, 596-97 (Bankr. S.D.N.Y. 2013).

be held in a reserve account maintained by the Debtors ("**Marshalled Assets Reserve**") and no distributions shall be made from the Marshalled Assets Reserve account during the Marshalling Period. The funds in the Marshalled Assets Reserve shall, at all times, be subject to the DIP Liens, the Prepetition FILO AP Liens, the Prepetition ABL/FILO AP Liens, and the Prepetition ABL AP Liens. Upon the conclusion of the Marshalling Period, in the event the DIP Obligations are not Paid in Full, the funds in the Marshalled Assets Reserve shall be available for distribution to the DIP Agent to satisfy the remaining DIP Obligations until Paid in Full in accordance with the Final DIP Order. Any funds in the Marshalled Assets Reserve after Payment in Full of the DIP Obligations shall be payable as determined by a further order of the Court.

16. Further, the DIP Obligations and Prepetition FILO Secured Obligations and/or Prepetition FILO Superpriority Claims shall be payable from proceeds of preference actions and payment card interchange fee and merchant discount antitrust litigation (the "**Specified Claims**") only if the DIP Obligations and Prepetition FILO Superpriority Claims have not been Paid in Full by April 7, 2025 and shall be subject to the following sharing thresholds: (a) the first $5 million of net proceeds recovered by the Estates on account of the prosecution, settlement or other disposition of the Specified Claims shall be applied to the DIP Obligations and Prepetition FILO Superpriority Claims until such claims are Paid in Full; and (b) thereafter, the net proceeds recovered on account of the Specified Claims shall be payable 75% in favor of the DIP Obligations and Prepetition FILO Superpriority Claims until such claims are Paid in Full and 25% in favor of the Estates. Any proceeds of the Specified Claims after Payment in Full of the DIP Obligations and Prepetition FILO Superpriority Claims shall be payable as determined by a further order of the Court.

17. The Final DIP Order also contemplates that valid, undisputed, and allowed claims for unpaid rent arising after the Petition Date through April 30, 2024 ("**Stub Rent Claims**") under a Lease shall be paid by the Debtors as follows:

- On June 14, 2024, the lesser of (x) $750,000 or (y) the total Stub Rent Claims and, in either case, less (z) any Cure Payment (as defined below).

- On June 21, 2024, the lesser of (x) $750,000 or (y) the total Stub Rent Claims and, in either case, less (z) any Cure Payment (as defined below).

- In the week ended July 5, 2024 and only if the amount of DIP Obligations outstanding is less than $5 million, the lesser of (x) $1,500,000 or (y) the total Stub Rent Claims and, in either case, less (z) any Cure Payment (as defined below).

- After July 5, 2024, any remaining Stub Rent Claims shall be paid after the DIP Obligations are Paid in Full.

- If Stub Rent is payable under a Lease that is assumed and assigned before the payment date set forth in Paragraph 62(iii)(a), (b), and/or (c), then the amount paid to the Debtors under Section 365(b)(1)(A) on account of Stub Rent Claims (the "**Cure Payment**") shall reduce the amount payable under Paragraph 62(iii)(a), (b), and/or (c) on a dollar-for-dollar basis.

- If Stub Rent is payable under a Lease that is assumed and assigned after the payment date set forth in Paragraph 62(iii)(a), (b), and/or (c), then the DIP Lenders shall recoup the amount of previously paid Stub Rent Claims from net sale proceeds paid to the Estate on account of any subsequently assumed and assigned Lease on a dollar-for-dollar basis.

18. PACA claims will be paid in full in accordance with the critical vendor order in these cases.

19. As to claims arising under section 503(b)(9) of the Bankruptcy Code, the first $2.5 million from the sale or other disposition of PropCo Priority Collateral or Other DIP Collateral that would have otherwise been distributable to the DIP Lenders under the Final DIP Order shall be held by the Debtors in a reserve account (the "**Section 503(b)(9) Reserve**"). The funds in the Section 503(b)(9) Reserve shall, at all times, be subject to the DIP Liens, the Prepetition FILO AP Liens, the Prepetition ABL/FILO AP Liens, and the Prepetition ABL AP Liens and, upon a

Payment in Full of the Prepetition ABL Secured Obligations, the DIP Obligations and Prepetition FILO Superpriority Claims, shall be available for distribution to holders of valid, allowed claims under section 503(b)(9) of the Bankruptcy Code; *provided, however*, if the DIP Obligations and Prepetition FILO Superpriority Claims are not Paid in Full by June 14, 2024, the Section 503(b)(9) Reserve shall be released and the funds therein shall be immediately distributed to satisfy any remaining DIP Obligations and Prepetition FILO Superpriority Claims until Paid in Full.

20. The foregoing terms resolve the Committee's issues with the proposed Final DIP Order and provide the construct for adequate protection acceptable to the DIP Secured Parties and the Prepetition FILO Secured Parties. The Prepetition Notes Secured Parties are entitled to no more and should be governed by these same provisions.

**B.     *The Ad Hoc Group Has Shown No Ongoing Diminution in Value and No Entitlement to Adequate Protection Payments***

21. The Ad Hoc Group argues, without evidence, that the Prepetition Notes Collateral is diminishing in value because the Debtors are using the FF&E to conduct a going out of business ("**GOB**") sale process and are then shutting down their stores. There is no diminution here. Nothing is happening to the FF&E to diminish its value or, for that matter, the limited real property collateral that purportedly has been pledged to the Prepetition Notes Agent. If the Ad Hoc Group wants to recover the FF&E after the GOB sales process concludes or to pay rent to maintain their collateral, they are free to do so. Notably, the Ad Hoc Group has not offered to pay such costs, presumably because the realizable value of the FF&E is likely less than the cost of maintaining it. For this same reason, the Debtors seek to abandon the FF&E after the applicable leases are rejected. As to any pledged real estate, it makes no economic sense for the Debtors' estates to continue to operate stores as "lit" locations when they have no inventory to sell and have already concluded GOB sales. If the Prepetition Notes Agent had been authorized to foreclose on such properties

sooner, it similarly would have sold them as closed stores. All owned real estate will be sold by the Debtors for the maximum available market value, without any diminution in the collateral position of the Prepetition Notes Secured Parties.

22. Even if diminution in value is presumed to potentially occur, there is no legitimate basis to grant new adequate protection liens in favor of the Prepetition Notes Secured Parties against, and superpriority claims payable from, any assets outside of the DIP Liens, the DIP Collateral, the Prepetition FILO AP Liens, the Prepetition ABL/FILO Liens, and the Prepetition ABL AP Liens (each as defined in the proposed Final DIP Order).

23. As previously noted, the concept of adequate protection was put into section 361 of the Bankruptcy Code with the goal of "safeguard[ing] the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization."[23] Determinations regarding adequate protection are fact-specific.[24] The focus of the requirement is to protect a secured creditor from diminution in the value of its collateral during the use period.[25]

24. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code.[26]

---

[23] *495 Central Park Ave. Corp.,* 136 B.R. at 631.

[24] *See In re Mosello,* 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 989, 95th Cong., 2d Sess. 54 (1978).

[25] *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 368 (1988); *see also In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n (In re Delbridge)*, 104 B.R. 824 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

[26] *See, e.g., In re O'Connor*, 808 F.2d at 1398; *In re Dynaco Corp.*, 162 B.R. 389, 393-95 (Bankr. D.N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

25. The adequate protection demanded by the Ad Hoc Group is excessive and unworkable.

26. As addressed above, there is no evidence of ongoing diminution in the value of the Prepetition Notes Priority Collateral.

27. Further, the Prepetition Notes Secured Parties are substantially undersecured. As such, under section 506(b) of the Bankruptcy Code, there is no basis to pay the fees and expenses of the Prepetition Notes Secured Parties' professionals and advisors.[27]

28. Finally, the Ad Hoc Group's demand for adequate protection in the form of *weekly cash payments* equal to the difference in the value of the FF&E and pledged real estate on the Petition Date and the "projected amount to be recovered on disposition" of such assets, is not calculable.[28] No one knows the value of the FF&E as of the Petition Date or whether it had any positive value as of that date, net of the costs of maintaining and liquidating it, or whether any actual positive value ultimately will be realized from the FF&E. The Ad Hoc Group wants this Court to assume that there is material realizable value in the FF&E, which is a false presumption, especially given that the Debtors seek to abandon most of the FF&E as worthless to the estates. As to the 11 parcels of real estate purportedly pledged to the Prepetition Notes Agent, there is no basis to tie adequate protection payments to some alleged loss of value during the course of these cases. The real estate will be sold by the Debtors and the net proceeds will be what they will be, while the Prepetition Notes Secured Parties will be surcharged to the extent of any fees and costs incurred by the Debtors in connection therewith. No more adequate protection is justified for the Prepetition Notes Secured Parties.

---

[27] 11 U.S.C. §506(b); Adequate Protection Motion, Exhibit A (Proposed Order) at ¶5.
[28] Adequate Protection Motion, Exhibit A (Proposed Order) at ¶4(i), (ii).

29. Alternatively, the Ad Hoc Group seeks adequate protection payments for the Prepetition Notes Secured Parties equal to the amounts paid under the DIP Facility,[29] which under the Debtors' DIP Budget will consist of the repayment of $35.5 million in new money advances and $18.35 million of rolled-up Prepetition FILO Secured Obligations by early July 2024. In effect, the Ad Hoc Group seeks adequate protection payments equal to at least $53.85 million. There is no basis for such large adequate protection payments to the Prepetition Notes Secured Parties. Again, the Ad Hoc Group has presented no evidence of substantial diminution in the value of the Prepetition Notes Priority Collateral. This is simply another over-reach by the Ad Hoc Group, which should be denied.

## RESERVATION OF RIGHTS

30. The Committee expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections to the Adequate Protection Motion, and to introduce evidence prior to or at any hearing regarding the Adequate Protection Motion in the event that the Committee's objections are not resolved prior to such hearing.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court deny the Adequate Protection Motion and grant such other and further relief as may be just and proper under the circumstances.

---

[29] *Id.* at ¶4(iii).

| | |
|---|---|
| Dated: May 6, 2024 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | */s/ Bradford J. Sandler* |
| | Bradford J. Sandler (DE Bar No. 4142) |
| | Robert J. Feinstein (admitted *pro hac vice*) |
| | Steven W. Golden (DE Bar No. 6807) |
| | Colin R. Robinson (DE Bar No. 5524) |
| | 919 N. Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899-8705 (Courier 19801) |
| | Telephone: (302) 652-4100 |
| | Facsimile: (302) 652-4400 |
| | Email:  bsandler@pszjlaw.com |
| | rfeinstein@pszjlaw.com |
| | sgolden@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | *Proposed Counsel for the Official Committee of Unsecured Creditors* |