# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC., *et al.*,[1] | Case No. 24-10719 (JKS) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF PAUL SHIN IN SUPPORT OF
### THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
### (I) AUTHORIZING THEM TO ENTER INTO THE STALKING HORSE APA WITH
### OLLIE'S BARGAIN OUTLET, INC. AND OBO VENTURES, INC., (II) APPROVING
### THE RELATED BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF

I, Paul Shin, declare under penalty of perjury as follows:

1.  I am a Senior Vice President of the U.S. Debt Advisory & Restructuring Group at Jefferies, LLC ("Jefferies"), a global investment banking firm founded over 50 years ago, with its principal office located at 520 Madison Avenue, New York, New York 10022. Jefferies is a registered broker-dealer with the U.S. Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Jefferies, together with its investment-banking advisory affiliates, has approximately 4,000 employees located in more than 45 offices around the world. Jefferies and its senior professionals have extensive expertise providing investment-banking services to financially-distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out-of-court.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

2. I submit this Declaration in support of the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter into the Stalking Horse APA with Ollie's Bargain Outley, Inc. and OBO Ventures, Inc., (II) Approving the Related Bid Protections, and (III) Granting Related Relief* (the "<u>Motion</u>"), filed contemporaneously herewith.[2]

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances, my review of relevant documents, information provided to me by Jefferies employees working with me or under my supervision, information provided to me by, or discussions with, the members of the Debtors' management team or their other advisors, or my experience as a restructuring professional. I am not being compensated for this testimony other than through payments received by Jefferies as a professional proposed to be employed and retained by the Debtors in these chapter 11 cases. If called upon to testify, I could and would testify to the facts set forth herein.

### Background and Qualifications

4. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services relating to the following: (i) financial advice, (ii) mergers, acquisitions, and divestitures, (iii) special committee assignments, (iv) capital raising, and (v) corporate restructurings. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings. Jefferies has advised debtors, creditors and equity constituencies, and purchasers in numerous reorganizations in the United States and worldwide. Since 2007, Jefferies has been involved in over 250 restructurings representing over $550 billion in restructured liabilities.

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

5.  I have 18 years of experience working in financial services and capital markets, with over 9 years as an advisor in corporate restructurings, including since joining Jefferies in 2017. I have provided investment banking expertise, and distressed advisory and restructuring advice, to numerous companies, lenders, and investors, in both in- and out-of-court restructurings, including in the following chapter 11 cases: Benefytt Technolgies, Inc., Qualtek LLC, Rockley Photonics Holdings Ltd., Carbonlite Recycling LLC, Rosehill Resources Inc., Endologix Inc., Blackjewel LLC, Gibson Brands Inc., Real Industry Inc., American Apparel Inc., and Speedstar Holding Corporation.

6.  Prior to joining Jefferies, I was a Senior Associate at Ducera Partners LLC, where I advised on corporate restructurings and mergers and acquisitions. I received a B.S. from New York University's Stern School of Business and an M.B.A. from INSEAD. I hold FINRA Series 79 and Series 63 licenses.

**The Stalking Horse Bid**

7.  Following the filing of the Bidding Procedures Motion, the Debtors continued to engage in negotiations with numerous potential bidders regarding the terms of potential stalking horse proposals for various of the Debtors' assets. Ollie's Bargain Outlet, Inc. and OBO Ventures, Inc. ("Ollie's") expressed continued interest in serving as stalking horse bidder for certain of the Debtors Assets.  In conjunction with Jefferies and the Debtors' other advisors, the Debtors negotiated with Ollie's extensively to further develop the terms of its bid.

8.  After multiple rounds of negotiations, Ollie's submitted a non-binding indication of interest to acquire eight leased and three owned real properties from the Debtors in exchange

for $14,600,000 in cash and certain cure amounts, which is subject to higher or otherwise better bids.

9. The Debtors evaluated the specific terms of Ollie's proposal with the goal of maximizing recovery for all stakeholders, and among other things, the Debtors analyzed: (a) the amount of consideration provided; (b) the structure of the proposed transaction; (c) the requested bid protections and any possible impact on the sale of the Purchased Assets and the Debtors' other assets; and (d) the risks relating to the bid. After extensive negotiations and diligence, the Debtors, in consultation with their advisors, determined that the stalking horse proposal made by Ollie's was in the best interests of the Debtors. The Debtors and Ollie's have negotiated the Stalking Horse APA (the "<u>Stalking Horse Agreement</u>"), which memorialized Ollie's bid (the "<u>Stalking Horse Bid</u>") for the applicable Assets.

10. Entry into the Stalking Horse Agreement ensures that Ollie's is committed to the bid reflected in the Stalking Horse Agreement and will establish a floor for other interested bidders to submit, and for the Debtors to pursue, a superior offer in accordance with the terms of the Stalking Horse Agreement. I believe there remains interest in these assets, and therefore believe that designation of the Stalking Horse Bid will lock in a floor price for the applicable Assets but allow the Debtors to continue to maximize value through one or more bids or through a superior combination thereof. The Debtors have continued and will continue the marketing process pursuant to the Bidding Procedures, including conducting an auction currently scheduled for May 21, 2024.

11. With respect to the Purchased Assets, I believe the Stalking Horse Agreement was negotiated in good faith, at arm's-length and with both parties represented by competent counsel. The Stalking Horse Agreement was executed only after (a) alternatives were evaluated, (b) the

Assets were aggressively marketed, and (c) the proposed transaction was presented to the Debtors' boards of directors, which, in conjunction with advice from experienced professionals, decided to pursue the sale on the terms of the Stalking Horse Agreement, subject to competitive bidding sanctioned by the Court. I am not aware of any indication of fraud, collusion between parties or any attempt by the Stalking Horse Bidder to take unfair advantage of other bidders.

### The Bid Protections are Appropriate and a Sound Exercise of the Debtors' Business Judgment

12. The Stalking Horse Bid will establish a floor for further bidding that may increase the consideration received in exchange for the Purchased Assets. The Consideration contemplated in the Stalking Horse Agreement provides significant value to the Debtors' estates and will be used to pay obligations of the Debtors.

13. In exchange for the value that the Stalking Horse Bidder is providing to the sale process, the Debtors ultimately agreed to grant the Stalking Horse Bidder the Bid Protections. I believe that the Bid Protections were the product of good faith, arm's-length negotiations amongst the parties, with the Debtors at all times acting in the interests of their estates and consistent with their fiduciary duties.

14. I understand that the Bid Protections were, and remain, a critical component of the Stalking Horse Bidder's commitment. The Stalking Horse Bidder has expended, and will continue to expend, time and resources negotiating, drafting, and performing due diligence activities necessitated by the sale, despite the fact that its bid will be subject not only to Court approval, but also to overbidding by third parties. I believe that the Bid Protections were critically necessary to induce the Stalking Horse Bid. Accordingly, I believe that granting the Bid Protections will

maximize the value of the Purchased Assets, and thus the Debtors' estates, and are a valid and sound exercise of the Debtors' business judgment.

15. The Break-Up Fee of $438,000 represents 3.0% of the purchase price. In my experience, this level of a break-up fee is within the range of break-up fees that I have seen and negotiated in prior chapter 11 sale transactions. Moreover, I understand that the Break-Up Fee, and the Bid Protections generally, were the subject of extensive, good faith and arm's-length negotiations among the Debtors and the Stalking Horse Bidder. Based on my understanding and expertise, I believe that the Break-Up Fee was provided based on a valid and sound exercise of the Debtors' business judgment and should be approved.

16. Based on my experience and my personal knowledge of the Debtors' commercial circumstances and the sale process to date, I believe that the terms of the Stalking Horse Agreement reflect the highest and best available bid for the Purchased Assets at this time, that the Bid Procedures will facilitate robust and competitive interest for the Debtors' Assets, including the Purchased Assets, and that the Bid Protections were necessary to induce a stalking horse bid for the Purchased Assets, which will ultimately maximize value to the Debtors' estates.

[*Remainder of page left intentionally blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 9, 2024                         <u>*/s/ Paul Shin*</u>

                                            Paul Shin