IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NUMBER HOLDINGS, INC. *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-10719 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 344** |

**LIMITED OBJECTION OF MAR, LLC TO NOTICE OF POTENTIAL ASSUMPTION
OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND
CURE AMOUNT**

Mar, LLC (the "Landlord" or "Mar"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the *Notice of Potential Assumption of Executory Contracts or Unexpired Leases and Cure Amounts* [D.I. 344] (the "Assumption and Cure Notice"), and respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

**BACKGROUND**

2.      On April 7, 2024 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions with the Court for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.      The Debtors are currently operating their businesses as debtors in possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On March 21, 2003, the Landlord and 99 Cents Only Store ("Tenant"), a California corporation, executed a 10-year commercial lease (the "Lease") of nonresidential real property located at 1120 South Hacienda Blvd., Hacienda Heights, CA 91745 (Store #193) (the "Premises").  A copy of the Lease is attached hereto as **Exhibit A**.

5.      The Premises are located within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.,* 922 F. 2d 1081, 1086-87 (3d Cir. 1990).

6.      The Lease provides the Debtors with three options to renew, and the Debtors timely exercised the first option in 2013, the second option in 2018 and the third option in 2024. The current Lease will expire on January 31, 2029. A copy of the Debtor's Notice to Exercise Option to Extend are attached hereto as **Exhibit B**.

7.      On or about May 2, 2024, the Debtors filed and served on the Landlord the Assumption and Cure Notice. The Assumption and Cure Notice provides a proposed cure amount of $28,363.25 (the "Proposed Cure Amount").

8.      In general, the Landlord does not object to the Debtors' assumption of the Lease, however the Landlord hereby objects to the Proposed Cure Amount of $28,363.25 as it does not reflect the correct cure amount for the Lease of $161,147.12 (the "Correct Cure Amount").

**OBJECTION TO PROPOSED CURE AMOUNT**

9. The Landlord does not object to the Debtors' assumption of the Lease, pending the Debtors' satisfaction of the requirements imposed by § 365(b) and (d) of the Bankruptcy Code, which governs the financial obligations of a debtor who wishes to assume a lease.

10. Under the terms of the Lease, the Debtors have the duty to pay each calendar month: (i) the base rent; and (ii) a pro rata share of the estimated common area maintenance expenses ("CAM charges"). *See* Exhibit A - Article Four of Lease, p. 4-12.

11. Additionally, the Landlord shall have the duty to provide in the following calendar year an accurate computation of the actual CAM expenses for the year at issue, with any deficit to be paid by the Tenant and any credit to be refunded to Tenant ("CAM Reconciliation"). The Tenant shall have the right to conduct an audit to verify the accuracy of the CAM Reconciliation. *See* Exhibit. A - Section 4.06, p. 11-12.

12. For the year 2024, the Landlord and Tenant agreed that the monthly base rent shall be $20,963.25 and the estimated CAM charges shall be $7,400.00, in the total amount of $28,363.25 per month ("Monthly Payment"). Tenant has timely made the Monthly Payments for the months of January, February, and March 2024.

13. On or about November 15, 2023, the Landlord provided Tenant an accurate computation of the actual CAM expenses for the year 2022 (the "2022 CAM Reconciliation") and requested Tenant pay the deficit amount of $38,528.23. A copy of the 2022 CAM Reconciliation is attached hereto as **Exhibit C**.

14. To date, Tenant has failed to pay the 2022 CAM Reconciliation amount.

15. The April 2024 Monthly Payment in the amount of $28,363.25 was due on April 1, 2024. However, to date, Tenant has failed to pay the April 2024 Monthly Payment.

16. Shortly after the Petition Date, the Landlord computed and prepared the CAM Reconciliations for the year 2023, as well as for the months of January, February and March 2024. A copy of the 2023 CAM Reconciliation is attached hereto as **Exhibit D** and a copy of the CAM Reconciliation for January, February, and March 2024 is attached hereto as **Exhibit E**.

17. In sum, Tenant currently owes to the Landlord a total amount of $161,147.12, as follows:

    (a) The April 2024 Monthly Payment in the amount of $28,363.25;.

    (b) The 2022 CAM Reconciliation deficit in the amount of $38,528.23;

    (c) The 2023 CAM Reconciliation deficit in the amount of $86,428.83; and

    (d) The CAM Reconciliation deficit in the amount of $7,826.81 for the months of January to March 2024.

**I. The Debtors have failed to cure the amount of default under the Lease pursuant to 11 U.S.C. §365(b).**

18. The term "cure" requires payment of all delinquent amounts due under the lease to be assumed. Landlord submits that the proposed Cure Amount set forth in the Debtors' Assumption Notice is incorrect and violates the requirements under 11 U.S.C. §365(b).

19. § 365(b) of the Bankruptcy Code provides in pertinent part,

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such a contract of lease unless, at the time of assumption of such contract of lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract of lease, for any actual pecuniary loss to such party resulting from such a default; and
>
> (C) provides adequate assurance of future performance under the contract or lease.

20. The Landlord objects to the Proposed Cure Amount as it does not reflect the Correct Cure Amount to be paid Landlord in connection with the assumption of Lease and thus fails to comply with the requirements imposed by § 365(b) of the Bankruptcy Code. The Debtors propose to pay Landlord a Cure Amount of $28,363.25, which would fail to cure all delinquent amounts owed by Tenant under the Lease to be assumed.

### A. The Debtors have failed to cure the amount of default under the Lease pursuant to 11 U.S.C. §365(b)(1)(A).

21. The Lease was in default as of the Petition Date since the Tenant failed to pay the April 2024 Monthly Payment of $28,363.25 which was due on April 1, 2024, and failed to pay the 2022 CAM Reconciliation deficit of $38,528.23 which was due in 2023.

22. Moreover, 11 U.S.C. §365(d)(3) provides that during post-petition and pending assumption, the trustee must perform all of the debtor's obligations as lessee under the lease of nonresidential real property. These obligations include payment of all amounts due under the lease, including rent, interest, late fees, common area charges, percentage rents, real estate taxes, and any items termed "additional" or "further" rent. *In re Cukierman*, 265 F.3d 846, 851 (9th Cir. 2001).

23. In determining the nature of the debtor's obligations, the Third Circuit Court of Appeals adopted the performance date approach in holding that the entire amount of taxes payable to landlord post-petition under lease terms had administrative priority, regardless of when tax liability of debtor to landlord (or of landlord to taxing authority) accrued. <u>In re Montgomery Ward Holding Corp.</u>, 268 F.3d 205, 211 (3d Cir. 2001).

24. Both the 2023 CAM Reconciliation ($86,428.83) and the CAM Reconciliation for the first 3 months of 2024 ($7,826.81) are due after the Petition Date. In applying the Third Circuit's performance date approach, such CAM Reconciliations should be considered as post-petition debts regardless of the accrual date of such debts.

5

### C. The Debtors have failed to cure the amount of default under the Lease pursuant to 11 U.S.C. §365(b)(1)(C) and (f)(2)(B).

25. 11 U.S.C. §365(b)(1)(C) provides that "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -- (C) provides adequate assurance of future performance under such contract or lease."

26. 11 U.S.C. §365(f)(2)(B) further provides that "[t]he trustee may assign an executory contract or unexpired lease of the debtor only if – (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."

27. This rule generally requires the assignee to provide financial and operating information showing that it is likely to be able to perform and protect the non-debtor's financial expectations under the assigned contract. *See In re Peaches Records & Tapes, Inc.,* 51 BR 583, 589 (9th Cir. BAP 1985) (assumption and assignment permissible if they "do not interfere, in any significant way, with the primary economic expectations of a lessor or with existing property uses"). *See also, In re Martin Paint Stores*, 199 BR 258, 263 (Bankr. SDNY 1996), aff'd 207 BR 57 (SDNY 1997) ("the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the lease").

28. Furthermore, if an unexpired lease of real property is being assigned, the lessor may require the assignee to deliver a security deposit in the amount the landlord would require if the assignee were the initial tenant under a new lease. 11 U.S.C. § 365(l).

29. An assignee of a debtor-lessee's shopping center lease must provide adequate assurance that (1) its financial condition and operating performance will be similar to those of the debtor and any guarantors at the commencement of the lease, (2) it will generate the same level of

percentage rents as the debtor, (3) it will comply with special shopping-center-related covenants in the lease, and (4) it will not disrupt the tenant mix or balance of the shopping center. 11 U.S.C. §365(b)(3). *See Trak Auto Corp. v West Town Center, LLC* (In re Trak Auto Corp), 367 F3d 237, 245 (4th Cir 2004) (auto parts retailer could not assign use-restricted shopping center lease to apparel retailer).

30. In the present case, the Lease is a shopping center lease. Hence, the Landlord is entitled to adequate assurance of future performance under such lease by examining the financial condition of the assignee of the Lease.

31. In the Assumption and Cure Notice, the Debtors proposed to assume the Lease without providing Landlord with the right to examine the assignee's condition in order to evaluate whether adequate assurance of future performance will be needed, in violation of 11 U.S.C. § 365(b)(1)(C) and § 365(f)(2)(B).

32. Further, the Correct Cure Amount is subject to change through and including assumption or assignment of the Lease (the "Effective Date"). The Correct Cure Amount only reflects past due and/or billed amounts due and owing under the Lease through May 1, 2024. Additional amounts may come due after the date of this Limited Objections, including rent and related obligations attributable to time period prior to the Effective date, or any amounts attributable to pre-assignment time periods.

33. The Landlord reserves its rights to supplement this Limited Objection and to make such other and further objections as it may deem necessary or appropriate, including but not limited to, confirmation of the Plan.

34. For the aforementioned reasons, Landlord objects to the assumption of the Lease by Debtor unless the Correct Cure Amount is paid to Landlord as a prerequisite of any such assumption as required by § 365(b) of the Bankruptcy Code.

WHEREFORE, Mar, LLC respectfully request that the Court sustain this objection to the Proposed Cure Amount and enter an order compelling Debtor to pay to Mar, LLC the Correct Cure Amount as described herein as a condition of the assumption of the Lease, and grant such other relief as this Court deems just and equitable.

Dated: May 13, 2024

**ARMSTRONG TEASDALE LLP**

*/s/ Denisse Guevara*
Eric M. Sutty (No. 4007)
Denisse Guevara (No. 6207)
1007 North Market Street, Third Floor
Wilmington, Delaware 19801
Telephone: (302) 824-7089
Email:   esutty@atllp.com
dguevara@atllp.com

*Counsel to Mar, LLC*