**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | Case No. 24-10719 (JKS) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF PUBLICATION

I, Rohany Tejada, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes a sworn statement verifying that the *Notice of Sale, Bidding Procedures, Auction, and Sale Hearing*, as conformed for publication, was published on May 13, 2024, in the national edition of the *Los Angeles Times*, as described in the sworn statement attached hereto as **Exhibit A**.

Dated: May 13, 2024

*/s/ Rohany Tejada*
Rohany Tejada

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

**Exhibit A**



**PROOF OF PUBLICATION**
**(2015.5 C.C.P.)**

**STATE OF CALIFORNIA**
**County of Los Angeles**

**I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the action for which the attached notice was published.**
**I am a principal clerk of the Los Angeles Times, which was adjudged a newspaper of general circulation on May 21, 1952, Cases 598599 for the City of Los Angeles, County of Los Angeles, and State of California. Attached to this Affidavit is a true and complete copy as was printed and published on the following date(s):**

**May 13, 2024**

**I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

**Dated at El Segundo, California on this 13th day of May, 2024.**

Wendy Cooper
**[signature]**

**2300 E. Imperial Highway**
**El Segundo, CA 90245**

Los Angeles Times
MEDIA GROUP

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on April 7, 2024 (the "Petition Date").[2]

**PLEASE TAKE FURTHER NOTICE** that, on April 16, 2024, the Debtors filed a motion (the "Motion")[3] with the Court seeking entry of orders, among other things, (a) approving the Debtors' bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") for the sale (the "Sale") of substantially all of the Debtors' remaining assets, including real estate and intellectual property (the "Assets"), (b) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including notice of proposed cure amounts (the "Assumption Procedures"), (c) approving the form and manner of notices related to the Sale and Assumption Procedures, and (d) establishing dates and deadlines in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on May 8, 2024, at 11:00 a.m. (prevailing Eastern Time) the Court approved entry of an order (the "Bidding Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving the (a) Bidding Procedures, which establish the key dates and times related to the Sale and the Auction, and (b) Assumption Procedures. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[4]

**CONTACT PERSON FOR PARTIES INTERESTED IN SUBMITTING A BID.** The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as possible: Jefferies LLC, 520 Madison Avenue, New York, New York 10022, Attn: Jefferies Debt Advisory & Restructuring (project.coin.rx@jefferies.com) -and- Hilco Real Estate, LLC, 5 Revere Drive, Suite 410, Northbrook, Illinois 60062, Attn: Adam Surkis (asurkis@hilcoglobal.com and realestateprojectcoin@hilcoglobal.com)**

**OBTAINING ADDITIONAL INFORMATION.** Copies of the Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the Form of Asset Purchase Agreement and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://cases.ra.kroll.com/99only/ or by calling (844) 712-1933 (Domestic) or (646) 777-2513 (International).

**IMPORTANT DATES AND DEADLINES**[5]

The Debtors have requested that the Court establish the following dates and deadlines to govern the Debtors' sale process:

1. **Indication of Interest Deadline.** The deadline for tendering a non-binding Indication of Interest was: **April 29, 2024 at 4:00 p.m. (prevailing Eastern Time)**.[6]
2. **Sale Objection Deadline.** The deadline to file an objection (the "Sale Objection Deadline") to (i) the Sale and/or (ii) the potential assumption or assumption and assignment of the Assigned Contracts and cure amounts related thereto (except as otherwise set forth in the Assumption Procedures) is **May 14, 2024 at 4:00 pm. (prevailing Eastern Time)**.
3. **Bid Deadline.** The deadline to submit a final Qualified Bid is: **May 15, 2024 at 4:00 p.m. (prevailing Eastern Time)**.
4. **Auction.** If at least two Qualified Bids (including the Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction with respect to such Asset(s). The Auction, if any, will commence on **May 21, 2024, at 10:00 a.m., prevailing Eastern Time**, telephonically, by video, by other appropriate electronic or digital platform(s), or such later time or other place as the Debtors will timely notify all other Qualified Bidders for such Asset(s). No later than May 13, 2024 the Debtors will file a notice detailing the manner in which the Auction will occur. The Debtors, Qualified Bidders, and/or other parties as the Debtors, in each case, along with their representatives and advisors, shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. Any party wishing to attend the Auction (other than a representative of a Qualified Bidder or Consultation Party) must send an email to 99auction@milbank.com with their name and email address no later than 24 hours prior to the Auction to be added to the security list for the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**
5. **Auction Objection Deadline.** If the Auction is held, the deadline to file an objection to the conduct of the Auction, the choice of Successful Bidder and/or Backup Bidder and Adequate Assurance Objections with respect to a Successful Bidder and/or Backup Bidder other than the Stalking Horse Bidder is **May 23, at 10:00 a.m. (prevailing Eastern Time)** (the "Auction Objection Deadline").
6. **Sale Hearing.** A hearing (the "Sale Hearing") to consider approval of the proposed Sale **free and clear of all liens, claims, interests and encumbrances** will be held on **May 23, 2024 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable J. Kate Stickles, Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at District of Delaware, at 824 Market Street North, 5th Floor, Wilmington, Delaware 19801, or at such other place (which may be by video conference) and time as the Debtors shall notify all Qualified Bidders and all other parties entitled to participate in the Auction. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

The foregoing dates and deadlines are displayed on the Debtors' case website maintained by their claims and noticing agent, Kroll Restructuring Administration LLC, located at https://cases.ra.kroll.com/99only/. Any modifications to the foregoing dates and deadlines will be reflected on the case website.

**The foregoing dates and deadlines may be modified by the Bidding Procedures Order or other order of the Court, and you should review the case website for any modifications.**

**FILING OBJECTIONS.** The Debtors have requested that Sale Objections and Auction Objections, if any, must (a) be in writing; (b) state, with specificity, the legal and factual bases thereof; (c) be filed with the Court and served on the following parties so as to actually be received by no later than **the Sale Objection Deadline or Auction Objection Deadline**, as applicable: (i) the Debtors, 1730 Flight Way, Suite 100, Tustin, CA 92782; (ii) proposed counsel to the Debtors, (a) Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com); Michael W. Price (mprice@milbank.com); Lauren C. Doyle (ldoyle@milbank.com); Brian Kinney (bkinney@milbank.com); and James McIntyre (jmcintyre@milbank.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); and Jonathan M. Weyand (jweyand@morrisnichols.com); (iii) counsel to the DIP Agent, DIP Lender, and FILO Agent, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: David M. Hillman (dhillman@proskauer.com); (iv) counsel to the ABL Facility Agent, Sidley Austin LLP, One South Dearborn, Chicago, IL 60603, Attn: Dennis M. Twomey (dtwomey@sidley.com) and Jackson T. Garvey (jgarvey@sidley.com), and 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com); (v) counsel to the Ad Hoc Group of 2026 Noteholders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com) and Chase Bentley (chase.bentley@weil.com); (vi) counsel to certain 2026 Noteholders, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com) and Brian Bolin (bbolin@paulweiss.com); (vii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); (viii) counsel to the official committee of unsecured creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler (bsandler@pszjlaw.com), Robert J. Feinstein (rfeinstein@pszjlaw.com), and Steven W. Golden (sgolden@pszjlaw.com); and (ix) counsel to any Stalking Horse Bidder.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION.** ***Any party who fails to make a timely Sale Objection on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Sale Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.***

***Any party who fails to make a timely Auction Objection on or before the Auction Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Auction Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.***

**NO SUCCESSOR LIABILITY.** ***The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, any Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and such Successful Bidder will have no liability, except as expressly provided in such Successful Bidder's asset purchase agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[6] Submission of an Indication of Interest is not required to submit a Qualified Bid; *provided* that all final Qualified Bids must submitted by the Bid Deadline.

Los Angeles Times
Publication Date: 05/13/2024
This electronic tearsheet confirms the ad appeared in the Los Angeles Times on the date and page indicated. You may not create derivative works, or in any way exploit or repurpose any content.
Client Name:
Advertiser:
Section/Page/Zone: MAIN/A008/LA
Description:
Ad Number:
Insertion Number:
Size:
Color Type:

# Reptile wrangler shows snakes' soft sides

[**Rattlesnakes,** from A1]
ing how the snake dove down a pack rat nest as she tried to get her tongs around it. "It hasn't happened in like three years."

Wall drives up a sandy road lined with Joshua trees and dotted with sprawling ranches. She pulls through a metal gate and into the driveway of a home that's being renovated. A crew of workers is waiting for her. They seem eager to catch a glimpse.

"She's a celebrity," said Mason Palanuik, 20. "Everyone knows her — or knows of her."

After checking the perimeter, Wall learns it's been over an hour since the men spotted the snake — a fact that had not been made clear in the initial call, she says. She decides to cut her losses. After giving the crew a bit of a hard time — and telling them to watch out the next time they pick up a box or a piece of plywood — she climbs back in her Tacoma and drives off.

::

Wall likes to say the rattlesnakes found her. Roughly six years ago — about two years after she moved to the desert from Santa Rosa, Calif., — she was driving home from her job at a wedding venue when she nearly ran one over. She got out of her car and poked it with a stick. It took off.

"I was like, 'Well, that wasn't that scary,' " she said.

At the time, she was in her final semester of college, studying forensic entomology. She had always been into nature, specifically bugs. Insects were a way of escaping a childhood that felt lonely.

But after that snake encounter on the road, Wall did some research. She learned there was no local 24/7 service to humanely relocate rattlesnakes.

Animal control, for the most part, would kill them on-site, she said.

She also learned that rattlesnakes have unique personalities, "really cool" family structures and even the capacity to comfort one another.

"They're so much kinder than people give them credit for," she said.

And yet, misunderstood: "They have similar behavior to a scared kitten, where that kitten is not going to jump at your face, but if you corner it, it will scratch to get away."

Four days later, Wall saw a Facebook post by a woman who wanted a rattlesnake off her property. Most people who responded advised her to kill it. "So I commented, 'I got a stick and a bucket, can I try?' " Wall said.

To her surprise, the woman agreed. Perhaps even more surprisingly, the relocation was successful. And Wall was hooked. She dropped out of school.

Photographs by GINA FERAZZI Los Angeles Times

**SNAKE WRANGLER** Danielle Wall grabs a Mojave rattlesnake from a container to return it to its natural habitat in Landers, Calif.

**WALL** releases a Mojave rattlesnake to its natural habitat. She rescued 257 snakes last year.

> 'These snakes turned me into a little bit of a wildlife recluse because they kind of showed me that's a nice way to live.'
>
> — DANIELLE WALL

"She changed my life on that one call," she said. "It was so exhilarating, to save something that people hate, fear."

That season, Wall did about 50 calls. The next — which she describes as when she started getting good — she did about 150. After the third season, Wall went all in, quitting her day job to make more time for snakes.

Her social life took a hit. She left her own birthday party five years in a row to go on snake calls.

"I lost a lot of friends and just connections because I turned into this weirdo that only wanted to spend time at home or saving snakes," she said. "And I'm OK with it. I don't care. But that's who I turned into. These snakes turned me into a little bit of a wildlife recluse because they kind of showed me that's a nice way to live."

::

Wall's business is a barometer of a changing desert.

A boom in home construction or major renovations? More snake calls. Heavy machinery dismantles their hideouts and drives them from their burrows with vibrations.

Periods of drought? More snake calls. Thirsty reptiles slither into people's yards seeking a drink.

The COVID-19 pandemic was a perfect storm. Low interest rates, work-from-home policies and a new-found need for social isolation lured scores of new residents to the desert, where they embarked on ground-shaking home building or improvement projects. Investors flipped yet more properties to short-term rentals. The entire area seemed to be under construction.

City slickers at home all day, bored and lonely in an unfamiliar landscape while bulldozers rearrange the desert floor and severe drought parches the local wildlife? Way more snake calls.

In fact, that was Wall's busiest season to date, with more than 400 removal requests.

"People were inviting me into their homes. They were talking about their traumas," she said. "I almost lost it that year."

As skyrocketing home prices pushed out locals, Wall watched as those same changes also took a toll on the delicate ecosystem.

An increase in trash attracted more ground squirrels and ravens, the latter of which feed on the young of endangered desert tortoises.

The prodigious use of rat poison decimated the population of birds of prey that eat rodents, which has resulted in the local rodent population growing. Ornamental plantings crowded out native species.

"The balance is being really messed up," she said.

"In my opinion, it's all a losing battle because people will never stop being so selfish," she added. "But I'm gonna spend my little time, my chunk of life here, just helping people, helping the snakes."

::

Later that afternoon, after she ribbed the construction crew, Wall drives into the backcountry of Landers with three Tupperware-like containers in the backseat of her truck. Inside each, a rescue. When the ride gets bumpy, they rattle and hiss.

She pulls up a map on her phone. Rattlesnakes have to be relocated at least a half-mile from any occupied property, but ideally no more than a mile or two from where they were found. They rarely travel outside of a one-mile radius over the course of their lives.

"If you really drastically move them, it's like moving us across the state and saying, 'Good luck,' " she said.

Later in the season, when it gets hotter, Wall will slip ice packs into the snakes' boxes, but today it's a temperate 80 degrees.

The first snake to be released is a Mojave green. After a brief hike through some scrub, Wall finds a creosote bush studded with holes at the roots — evidence of pack rats that will provide the snake with sustenance. She uses a 2-foot hook to neatly scoop the rattler out of the box and gently coaxes it into the brush with some words of encouragement.

The next two rescues are speckled rattlesnakes, which thrive in rocky environments. Wall scales a jagged boulder pile and releases the first: a baby — "squiggly nugget," in her parlance.

The word choice — and even the short-shorts and crop tops Wall wears — is intentional. Her mission is to subvert the stereotype, common in popular culture and advanced by some testosterone-fueled fellow reptile handlers, of rattlesnakes as vicious predators.

"I am a 100-pound, 5-foot-2 female in booty shorts and a tank top calling this snake cute, and meanwhile you got some macho dude telling everyone how dangerous and aggressive it is," she said. "I want to show people that everything they ever heard about snakes is bull—."

Wall has received quite an education in her time as a snake wrangler. She's learned to navigate a maze of laws and regulations that require her to relocate rattlesnakes within 72 hours, to refrain from handling certain species and to never profit from her work. She's learned to wear 10-inch or taller boots to avoid ankle bites (while she's never been bitten, a hidden snake once struck at her boot in self-defense "when I damn near stepped right on him"). She can gauge a rattlesnake's strike range from looking at its size and position.

On top of all that, she's also had to learn how to move through this world as a woman — one who has garnered a good deal of attention despite not being entirely comfortable with it. Some of her detractors have leveled death threats and personal attacks that have veered into stalking. It's not uncommon for random men to proposition her online and then lash out when she rejects them.

Before leaving for a call, Wall shares her location with trusted family members or friends, fearing someone could lure her to an isolated spot under false pretenses. The Mojave desert is full of desolate back roads carved into giant parcels of raw land, long-forgotten homesteads, abandoned mines.

"As a tiny woman who is known for her, I guess, sex appeal — coming from me as a band nerd, I still don't understand it; it's not in my brain that I'm attractive — but yeah," she said. "That is a genuine fear of mine."

::

Back at home, Wall curls her shoulders in exhaustion.

The self-described hermit lives on a generous spread, which she purchased from her great-grandparents and is slowly rehabbing. A workshop is dedicated to custom-built enclosures for her snakes (she owns pretty much every species of California rattlesnake except the federally protected red diamond); three tortoises and a 5-foot green iguana named Picasso. A bedroom is occupied solely by her four cats.

"You in the ken? You in the ken ken?" Wall coos to one of her two dogs, which is whining from inside a kennel in the living room. "She's a trained guard dog. She'll go for the ... thigh."

It's now nearly 2 p.m., and Wall has had neither coffee nor a shower. She's worked the equivalent of a full day and brought in just $120 in donations, which will cover the gas she burned crisscrossing the high desert but little else. Over a season, she'll typically dip into her own pockets to cover expenses, to the tune of $1,000 to $3,000.

"I have always been in the red, every month. Every time," she said. "And that's fine, I volunteer to do this. And legally in California, I can't become a nonprofit snake wrangler, or the laws are very difficult for me to work around."

California law prohibits Wall from operating as a business, and certification as a nonprofit wildlife rescue would require navigating a complex system of permitting and government approvals. Wall describes a frosty relationship with most animal control authorities, although she says the local sheriff's and fire departments, which tend to field the emergency calls, are supportive.

Because she lacks nonprofit status, donations aren't tax deductible, which hampers her from pursuing sponsors. She's looking into whether she can become a nonprofit educator instead, as her services typically involve a brief lesson. She also appears at local elementary schools, youth clubs, "whoever wants to hire me and learn about snakes."

But Wall's interest in garnering attention begins and ends with the reptiles. She'll accept publicity spots if she feels it's in their best interest, but she's adamant she won't be "paraded around" simply to raise her own profile. She has turned down a television show pilot and documentary, along with offers to monetize her social media presence. She supports herself by renting out a small house on her property and taking the odd professional cleaning job.

Still, she's seen her work pay off in less tangible ways. She's trained two assistants. And the hundreds of people she's counseled during removals or educational appearances have passed those lessons on to neighbors, friends and parents.

Now, when someone posts on Facebook that they've found a rattlesnake on their property, "you see me tagged 100 times and maybe one person saying, 'just kill it,' " Wall said.

"And everyone else on that thread is reaming out that one person for saying 'kill it.' Because now we know a little bit better. We have options."

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on April 7, 2024 (the "Petition Date").[2]

**PLEASE TAKE FURTHER NOTICE** that, on April 16, 2024, the Debtors filed a motion (the "Motion")[3] with the Court seeking entry of orders, among other things, (a) approving the Debtors' bidding procedures (the "Bidding Procedures") in connection with the proposed auction (the "Auction") for the sale (the "Sale") of substantially all of the Debtors' remaining assets, including real estate and intellectual property (the "Assets"), (b) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including notice of proposed cure amounts (the "Assumption Procedures"), (c) approving the form and manner of notices related to the Sale and Assumption Procedures, and (d) establishing dates and deadlines in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on May 8, 2024, at 11:00 a.m. (prevailing Eastern Time) the Court approved entry of an order (the "Bidding Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving the (a) Bidding Procedures, which establish the key dates and times related to the Sale and the Auction, and (b) Assumption Procedures. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[4]

**CONTACT PERSON FOR PARTIES INTERESTED IN SUBMITTING A BID.** The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as possible: Jefferies LLC, 520 Madison Avenue, New York, New York 10022, Attn: Jefferies Debt Advisory & Restructuring (project.coin.rx@jefferies.com) -and- Hilco Real Estate, LLC, 5 Revere Drive, Suite 410, Northbrook, Illinois 60062, Attn: Adam Surkis (asurkis@hilcoglobal.com and realestateprojectcoin@hilcoglobal.com)**

**OBTAINING ADDITIONAL INFORMATION.** Copies of the Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including the Form of Asset Purchase Agreement and all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at https://cases.ra.kroll.com/99only/ or by calling (844) 712-1933 (Domestic) or (646) 777-2513 (International).

**IMPORTANT DATES AND DEADLINES[5]**

The Debtors have requested that the Court establish the following dates and deadlines to govern the Debtors' sale process:

1. **Indication of Interest Deadline.** The deadline for tendering a non-binding Indication of Interest was: **April 29, 2024 at 4:00 p.m. (prevailing Eastern Time)**.[6]

2. **Sale Objection Deadline.** The deadline to file an objection (the "Sale Objection Deadline") to (i) the Sale and/or (ii) the potential assumption or assumption and assignment of the Assigned Contracts and cure amounts related thereto (except as otherwise set forth in the Assumption Procedures) is **May 14, 2024 at 4:00 pm. (prevailing Eastern Time)**.

3. **Bid Deadline.** The deadline to submit a final Qualified Bid is: **May 15, 2024 at 4:00 p.m. (prevailing Eastern Time)**.

4. **Auction.** If at least two Qualified Bids (including the Stalking Horse Bid) is received by the Bid Deadline, the Debtors will conduct the Auction with respect to such Asset(s). The Auction, if any, will commence on **May 21, 2024, at 10:00 a.m., prevailing Eastern Time**, telephonically, by video, by other appropriate electronic or digital platform(s), or such later time or other place as the Debtors will timely notify all other Qualified Bidders for such Asset(s). No later than May 13, 2024 the Debtors will file a notice detailing the manner in which the Auction will occur. The Debtors, Qualified Bidders, and/or other parties as the Debtors, in each case, along with their representatives and advisors, shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. Any party wishing to attend the Auction (other than a representative of a Qualified Bidder or Consultation Party) must send an email to 99auction@milbank.com with their name and email address no later than 24 hours prior to the Auction to be added to the security list for the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

5. **Auction Objection Deadline.** If the Auction is held, the deadline to file an objection to the conduct of the Auction, the choice of Successful Bidder and/or Backup Bidder and Adequate Assurance Objections with respect to a Successful Bidder and/or Backup Bidder other than the Stalking Horse Bidder is **May 23, at 10:00 a.m. (prevailing Eastern Time)** (the "Auction Objection Deadline").

6. **Sale Hearing.** A hearing (the "Sale Hearing") to consider approval of the proposed Sale **free and clear of all liens, claims, interests and encumbrances** will be held on **May 23, 2024 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable J. Kate Stickles, Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at District of Delaware, at 824 Market Street North, 5th Floor, Wilmington, Delaware 19801, or at such other place (which may be by video conference) and time as the Debtors shall notify all Qualified Bidders and all other parties entitled to participate in the Auction. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

The foregoing dates and deadlines are displayed on the Debtors' case website maintained by their claims and noticing agent, Kroll Restructuring Administration LLC, located at https://cases.ra.kroll.com/99only/. Any modifications to the foregoing dates and deadlines will be reflected on the case website.

**The foregoing dates and deadlines may be modified by the Bidding Procedures Order or other order of the Court, and you should review the case website for any modifications.**

**FILING OBJECTIONS.** The Debtors have requested that Sale Objections and Auction Objections, if any, must (a) be in writing; (b) state, with specificity, the legal and factual bases thereof; (c) be filed with the Court and served on the following parties so as to actually be received by no later than **the Sale Objection Deadline or Auction Objection Deadline**, as applicable: (i) the Debtors, 1730 Flight Way, Suite 100, Tustin, CA 92782; (ii) proposed counsel to the Debtors, (a) Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne (ddunne@milbank.com); Michael W. Price (mprice@milbank.com); Lauren C. Doyle (ldoyle@milbank.com); Brian Kinney (bkinney@milbank.com); and James McIntyre (jmcintyre@milbank.com), and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); and Jonathan M. Weyand (jweyand@morrisnichols.com); (iii) counsel to the DIP Agent, DIP Lender, and FILO Agent, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: David M. Hillman (dhillman@proskauer.com); (iv) counsel to the ABL Facility Agent, Sidley Austin LLP, One South Dearborn, Chicago, IL 60603, Attn: Dennis M. Twomey (dtwomey@sidley.com) and Jackson T. Garvey (jgarvey@sidley.com), and 350 South Grand Avenue, Los Angeles, CA 90071, Attn: Anna Gumport (agumport@sidley.com); (v) counsel to the Ad Hoc Group of 2026 Noteholders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jeffrey D. Saferstein (jeffrey.saferstein@weil.com) and Chase Bentley (chase.bentley@weil.com); (vi) counsel to certain 2026 Noteholders, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Brian S. Hermann (bhermann@paulweiss.com) and Brian Bolin (bbolin@paulweiss.com); (vii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); (viii) counsel to the official committee of unsecured creditors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler (bsandler@pszjlaw.com), Robert J. Feinstein (rfeinstein@pszjlaw.com), and Steven W. Golden (sgolden@pszjlaw.com); and (ix) counsel to any Stalking Horse Bidder.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION.** ***Any party who fails to make a timely Sale Objection on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Sale Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.***

***Any party who fails to make a timely Auction Objection on or before the Auction Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any Auction Objection, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.***

**NO SUCCESSOR LIABILITY.** ***The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, any Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and such Successful Bidder will have no liability, except as expressly provided in such Successful Bidder's asset purchase agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

[5] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

[6] Submission of an Indication of Interest is not required to submit a Qualified Bid; *provided* that all final Qualified Bids must submitted by the Bid Deadline.