# EXHIBIT A

# L E A S E

Lessor:     Mildred A. Richardson

Lessee:    ~~City Products Corporation~~
           White Money Orders, Inc.

| Paragraph No. | Heading | Page |
|---|---|---|
| 1 | Term | 1 |
| 2 | Construction of Improvements | 2 |
| 3 | Condition of Lessor's Title and Title Insurance | 3 |
| 4 | Right of Lessee to Cancel | 4 |
| 5 | Use and Purpose | 5 |
| 6 | Rent | 5 |
| 7 | Options For Extensions of Term | 8 |
| 8 | Taxes and Assessments | 8 |
| 9 | Assignment | 14 |
| 10 | Public Liability Insurance | 15 |
| 11 | Conformity to Laws | 15 |
| 12 | Mechanic's Liens | 16 |
| 13 | Title to Improvements | 17 |
| 14 | Eminent Domain | 17 |
| 15 | Pledge of Leasehold Interest | 19 |
| 16 | Default | 22 |
| 17 | Notices | 26 |
| 18 | Surrender of Leased Premises | 26 |
| 19 | Miscellaneous Provisions | 27 |
| 20 | Repairs and Upkeep | 28 |
| 21 | Certain Assignments | 28 |
| 22 | Signs | 29 |
| 23 | Holding Over | 29 |
| 24 | Mineral Rights | 29 |
| 25 | Planting Strip | 30 |
| 26 | Right of First Refusal | 30 |
| 27 | Grace Period | 32 |
| 28 | Recordation of Short Form Lease | 32 |
| 29 | Parties Bound | 32 |

L E A S E

This Lease made and entered into at Los Angeles,

California, this 21 day of _____ June _____, 1968,

by and between Mrs. Mildred A. Richardson, a widow, (herein-

after, "Lessor"); and ~~City Products Corporation, an Ohio~~ White Money Orders, Inc. *WMO* *Map* Texas

corporation (hereinafter, "Lessee").

W I T N E S S E T H:

The Lessor, for and in consideration of the

rentals and other charges herein agreed to be paid by the

Lessee, and the other covenants, conditions and agreements

herein agreed to be performed by the Lessee, hereby leases,

demises and lets to Lessee, and the Lessee hereby leases

from Lessor that certain parcel of unimproved real property

located in the City of Whittier, County of Los Angeles,

State of California, described in Exhibit "A", attached

hereto and made a part hereof by reference.  The said

real property contains approximately ~~82x800~~ 53,000 *WMO Map* square feet

located on the north side of Whittier Boulevard, between

Scott ~~XXXXX~~ *Map* Avenue *WMO* and Santa Gertrudes ~~Street~~ *Map* Avenue *WMO* and includes

approximately ~~300~~ 214 *WMO Map* feet which front on Whittier Boulevard.

Said real property will hereinafter be referred to as

the "demised premises".

1.   Term.

The term of this Lease shall be for a

period of twenty (20) years, commencing on the date

-1-

hereinafter provided in paragraph 2.

2. Construction of Improvements.

The Lessee shall have the right, but not
the obligation, to elect to construct and erect, or
cause to be constructed and erected a building on the
demised premises. In the event Lessee makes such
election, which election shall be deemed made upon the
commencement of construction, such building shall contain not less than
approximately 40,000 square feet, and shall be built in
substantial conformity with other buildings of the same
approximate footage presently occupied by Lessee in Los
Angeles County. After the construction or erection of
said building is commenced, Lessee agrees to cause said
building to be completed without interruption or delay,
but in no event shall the failure to complete said building
within any fixed period of time be deemed a breach of
this Lease.

The term of this Lease shall be deemed to
commence and rent become due and payable to Lessor, as
hereinafter provided, on March 1, 1969 or on the date
the demised premises are opened by the Lessee for the
conduct of its business prior to such date, in which
event the date of the opening of such business by the
Lessee shall be deemed to be the date of the commencement
of the term of this Lease, and rent shall be payable as
hereinafter provided, beginning with such date. When
the date of the commencement of the term of this Lease
is ascertained and fixed according to the foregoing

-2-

provisions, the parties hereto agree to execute a writing

to be attached to this Lease, in the form attached hereto,

marked Exhibit "B", and made a part hereof by reference.

In the event that the date of the commencement of the

term is ascertained and fixed to be a date other than

the first of the month, the parties agree to pro-rate

rent on the monthly rental basis to the first of the

month, so that the term of the Lease will commence on

the first day of the month.

      3.  <u>Condition of Lessor's Title and Title Insurance</u>.

      The Lessor represents that she owns the

demised premises in fee simple, that the demised premises

are and will be at the time of execution of this Lease

and at the time of issuance of the policy of title insurance

provided for hereinafter free of any liens or encumbrances

and that she has the full right, power and authority to

enter into this Lease for the terms specified hereinabove.

      Concurrently with the execution of this Lease,

Lessor will cause at her expense to be issued and delivered

to Lessee by Title Insurance & Trust Company, of Los

Angeles, California, a leasehold policy of title insurance,

standard CLTA coverage, with a liability of $~~XXXXXXXXXX~~ *not* 180,000.00 *WEen*,

showing title to the demised premises to be vested in

the Lessor, subject only to covenants, conditions,

restrictions, reservations, rights, rights of way and

easements of record.

4.  Right of Lessee to Cancel.

This Lease is being executed and accepted
by Lessee, subject to the following conditions:

A.  That there are no ordinances, statutes
or regulations which will prevent construction of a two
story building on the demised premises.

B.  That the demised premises is zoned so
that Lessee can conduct a retail furniture and furnishings
business thereon.

C.  That there are no easements which will
prevent Lessee from using all of the demised premises for
the construction of the proposed building and parking
adjacent thereto, except the usual and normal easements
for utility lines along the rear (northerly) portion of
the property line of the demised premises, and except the
easement in favor of La Habra Heights Mutual Water Company,
                                                    other
as described in Exhibit C, attached hereto, and the/ease-
ments xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
as also described in Exhibit C; attached hereto.

D.  That the condition of the soil in the
demised premises is such that the proposed two story
structure can be constructed without the necessity of con-
structing pilings or foundations not customarily required
for construction of a building of the kind and nature pro-
vided for herein (hereinafter, "extraordinary foundation
cost").  In this regard, upon execution by the parties of
this Lease, Lessee shall have the right to enter the demised
premises and cause a soil test to be made.  Said soil test,
if any, must be completed by a licensed soil engineer within
thirty days after the date of this Lease.  In the event said
soil test establishes that extraordinary foundation costs

-4-

must be incurred in the construction of the building,
Lessee shall have the right to cancel this Lease by written
notice to Lessor, mailed by certified mail to Lessor, within
said thirty day period, provided that said notice shall be
accompanied by a true copy of the soil test report.  Not-
withstanding anything in this Lease to the contrary, in
the event of the failure of any of the conditions as set
forth above, Lessee's only remedy shall be to terminate this
Lease and be released from further obligations hereunder,
which termination must be by written notice from Lessee to
Lessor given by Lessee no later than sixty (60) days
following Lessee's first knowledge of such failure and no
later than one (1) year from the date of commencement of
the term of this Lease.  In the event of such termination,
Lessor shall not be obligated to repay or pay to Lessee any
amounts previously paid by Lessee under the terms of this Lease.

     5.  Use and Purpose.

     The demised premises may be used and occupied
for any lawful purposes, except that the Lessee shall not use
or occupy nor permit the demised premises or any part thereof
to be used or occupied for the sale of alcoholic beverages.
Provided however, that in the event the demised premises are
used in violation of the restriction provided for in this
paragraph 5, the Lessee shall promptly discontinue such
use and shall take all necessary steps, legal and equitable,
to compel the discontinuance of such use and to oust and
remove any subtenants, occupants, or other persons guilty
of such use, but such violation or breach shall not constitute
a basis for termination of this Lease.  Further, the Lessee
shall indemnify the Lessor against all costs and expenses,
including reasonable counsel fees, arising out of any
violation of or default in the provisions of this paragraph
5 or the enforcement of the restriction set forth herein.

     6.  Rent.   The Lessee covenants and agrees to pay the

-5-

Lessor, at such address as the Lessor may from time to
time designate during the term of this Lease, as rental
for the demised premises, in addition to all other
charges hereinafter provided, the following:

      A.   Monthly rental, in advance, on the 1st
day of each and every calendar month commencing with the
date of the term of this Lease, as hereinabove provided,
in the sum of one thousand ($1,000.00) dollars (hereinafter,
"the base rental"), subject to adjustment of the base rental
as provided hereinafter in this paragraph 6.

      B.   The base rental shall be paid for a period
of twenty years, commencing with the date of the term of
this Lease, as hereinabove provided.

      C.   In the event Lessor exercises an option
to extend the term of this Lease, as provided in paragraph 7
hereinafter, it is the intent and purpose of the parties
hereto that the base rental shall be adjusted upward or
downward as the case may be, based on the purchasing power
of the dollar as of the end of the month in which this
Lease is dated.   For the purposes of this Lease the purchasing
power of the dollar shall be determined by fluctuations in
the Consumer Price Index, All Items, Los Angeles Area, as
published by the Bureau of Labor Statistics of the
Department of Labor of the United States Government (1957-
1959 = 100), hereinafter referred to as "the Index".
The monthly rental which the Lessee agrees to pay to the
Lessor during each of said ten year option periods shall
be determined as follows:

-6-

(1) The Index published for the month in which this Lease is dated shall establish the purchasing power of the dollar for said month, and shall be "the base Index" to be used in the computations hereinafter set forth.

(2) The monthly rental for each month of any ten-year option period shall be that sum which bears the same ratio to the base rental of $1,000.00 per month as the Index for the 8th month preceding the first day of said ten-year option period bears to the base Index. (For example, if the Index for the 8th month preceding the first day of the first ten-year option period should be 150 and the base Index is 120, the rental for each of the months for the first ten-year option period shall be 150/120ths of $1,000.00, or $1,250.00.)

(3) In the event that the Index shall at any time during the term of this Lease be published on some other basis than 1957-1959 = 100, or if the Index is revised by the adoption of a different base period or a new base, adjustment shall be made as may be necessary to relate the revised Index to said Index on the basis of 1957-1959 = 100.

(4) If publication of the Index shall be discontinued, the parties hereto shall thereafter accept comparable statistics on the cost of living applicable to the City of Whittier, as they shall be

computed and published by an agency of the United States
or by a responsible financial periodical of recognized
authority then to be selected by the parties hereto,
or, if the parties cannot agree upon a selection, by
arbitration.

(5)  In the event the Lessee exercises
its option or options to extend the term of this Lease
as hereinafter set forth, the monthly rent during each
of such extended ten year terms shall be adjusted in
accordance with the provisions of this subdivision C.
of this paragraph 6.

7.  Options for Extensions of Term.

Lessee may extend the term of this Lease
for six separate and consecutive periods of ten years
each.  Each option to extend shall be exercised by Lessee
by giving written notice to Lessor at least six months
prior  to the expiration of the then current lease term.

Each extended term shall be upon the same
terms, covenants, and conditions, with the same monthly
rental, and subject to the same adjustments, as provided
in this Lease.

8.  Taxes and Assessments.

A.  The Lessee agrees that it will be
responsible for and will, at its own expense, pay to
the public authorities charged with the collection
thereof, before delinquency, all   ——————————————

—8—

taxes and assessments which may from time to time during the term of this Lease be levied or assessed by any Federal, State, local or other governmental or administrative power or authority upon the demised premises, and the buildings and improvements thereon. Any and all of the above taxes and assessments levied against the demised premises, including the improvements thereon, during the first and last years of the rental period hereunder, shall be prorated between the Lessor and the Lessee on a monthly basis.

      B.  If under any law at any time in effect any assessment for the construction or maintenance of any public improvement is payable or at the option of Lessor or Lessee, may be paid, in installments, evidenced by improvement bonds or otherwise, Lessee shall be obligated to pay only those installments which must be paid during the term of this Lease in order to avoid delinquency.

      C.  Lessee shall not be required to pay any taxes, assessments, or other governmental charges imposed upon or against any property or rights of Lessor, other than taxes, assessments or other governmental charges imposed upon or against the demised premises, including the improvements thereon, even though the same might from time to time be levied, assessed, charged, or become a lien against the demised premises, including among the items for the payment of which Lessee is not liable, but without in any way limiting

the foregoing, all taxes, impositions, penalties, costs,
interest or other governmental charges imposed against
or upon income, profits, gifts, and inheritance, and
all succession and estate taxes, of, upon or against
a Lessor, or any franchise tax or other similar tax of
a corporate lessor which may succeed to the ownership
of the fee interest of the demised premises.

       D.   The land covered by this Lease,
including the improvements thereon, shall always be
assessed for the purposes of taxation in the name of
Lessor if permitted under the laws or regulations
relating thereto, and the taxes and assessments thereon
shall be paid in the name of Lessor.  The original or
duplicate original receipts or other evidence of payment
showing such payment shall be deposited with Lessor at
the place where the last preceding installment of rent
was payable before delinquency.  As between the
parties hereto Lessee alone shall have the duty of
attending to, making and filing any statement or
report which may be provided or required by law in
connection with the determination, equalization,
reduction or payment of any taxes or assessments required
to be paid by Lessee hereunder.  Lessor shall not be
responsible therefore or for the contents of any such
statement or report prepared or filed by Lessee, nor
shall Lessor be obligated to make, join in, or become
a party to any protest or objection to any law,
governmental act, or proceeding, which might impose
or increase any obligation or liability upon Lessee,

but in all such matters Lessor hereby irrevocably
grants to Lessee and its successors in interest as
the owners of the leasehold the necessary power and
authority to act in the name of Lessor to the full
extent permitted by law, but without any cost to or
liability upon Lessor.

     E.  Lessee shall have the right to
contest, object to, or otherwise oppose the liability
or validity of any such tax or assessment which Lessee
is required to pay hereunder upon the condition that
notice of such contest, objection or other opposition
shall be given to Lessor by Lessee at least ten (10) days
before any delinquency occurs, and upon the further condition
that Lessee shall pay all such contested items before the
time when the demised premises or any part thereof is
forfeited as a result of nonpayment.  Upon the afore-
said conditions Lessee, in its own name or behalf, or,
if appropriate, in the name or in behalf of Lessor but
at Lessee's own expense without any expense or liability to
Lessor, may exercise all or any rights, remedies, or

- 11 -

defenses against or to prevent the collection or enforce-
ment of any such tax, and after payment of any such tax
may claim, recover, or obtain the repayment or return
of all money paid in satisfaction thereof. In the event
of any such contest, objection or opposition, Lessee
shall fully pay and discharge the amounts involved in
or affected thereby within ten days after the final
determination thereof adversely to Lessee, together with
all penalties and interest that may have accrued thereon
or that may result from any such action by Lessee and
free the demised premises from the effect thereof.

     F.  If the Lessee defaults in the payment
of any tax or assessment which Lessee is required to
pay hereunder, and subject to the provisions contained
hereinabove pursuant to which Lessee may contest any
such tax or assessment, Lessor, at her option at any
time either before or after delinquency, may pay the
tax or assessment with respect to which Lessee is in
default, and likewise Lessor may redeem the demised
premises or any part thereof or the improvements
thereon from any sale or sales made in connection with
any such tax or assessment. In making any such payment
or redemption Lessor shall be the sole judge of the
legality of the tax or of the sale made in connection
therewith. Any such amount so paid by Lessor shall
be repaid by Lessee to Lessor at or before the next
rent day after such payment by Lessor, together with
interest thereon at the lawful rate from the date of

payment by Lessor until repaid by Lessee, but this provision is not intended to relieve Lessee from any default in the making of any payment of taxes or assessments at the time and in the manner required by this Lease.

G.  Any tax required to be paid by Lessor, the lien or nonpayment of which might jeopardize the leasehold created by this Lease shall be paid by the Lessor before delinquency, but Lessor nevertheless shall have the privilege before delinquency of contesting, objecting to, or otherwise opposing the legality or validity thereof in the same manner and upon the same terms as similar rights are conferred upon Lessee with respect to taxes required to be paid by Lessee.  Should Lessor fail to pay any such tax or should Lessor contest, object to, or oppose any payment without complying with the requirements of this Lease, Lessee may proceed in the same manner as that in which Lessor is permitted by the terms hereof to proceed in the event of similar failure on the part of Lessee, and all monies so expended by Lessee, including reasonable attorneys' fees, shall be repaid to it by Lessor upon demand, together with interest thereon at the lawful rate from the date of payment by Lessee to the date of repayment by Lessor and if not so repaid may be deducted from the next installment or installments of rent coming due from Lessee to Lessor, but this provision is not intended to relieve Lessor from any default in the making of any payment of any tax at the time and in

-13-

the manner required by this Lease.

    9.  Assignment.

        The Lessee may assign this Lease without the
Lessor's consent at any time during the term hereof, or any
extension thereof, and may sublet the demised premises, or
any part thereof.

        No assignment of this Lease at any time shall
relieve Lessee of any obligation required to be performed by
Lessee under the provisions of this Lease, including, but not
limited to the obligation to make each monthly rental payment
as provided herein.  No extension of time to cure any assignee's
default or other waiver of any kind or nature granted by
Lessor to any assignee of this Lease, whether or not notice
thereof is given to Lessee, shall relieve the Lessee of its
obligations under this Lease.

        No assignment shall be valid or effective until
there is delivered to the Lessor a duplicate original of the
written instrument of assignment, in recordable form,
containing the name and address of the assignee.

        Anything herein contained to the contrary not-
withstanding, it is expressly agreed that the Lessee shall
have the right to consolidate with or merge into or sell or
assign all or substantially all of its assets, including
this Lease, to another corporation, the net worth of which
corporation after the consummation of any such consolidation
or merger, sale or assignment shall be equal to or greater
than the net worth of the Lessee immediately prior to such
consummation, and in such event this Lease shall continue
in full force and effect, provided Lessee is not at such
time in default hereunder, and provided further, that such

-14-

successor corporation at the time of the consummation of such
consolidation, merger or acquisition shall execute an
instrument in writing duly assuming all of the obligations
and liability imposed upon Lessee hereunder and deliver the
same to Lessor; whereupon Lessee shall be discharged from
any further liability hereunder.

      10.  Public Liability Insurance.

        The Lessee agrees, during the term hereof, to
keep and hold harmless the Lessor from and against any loss,
liability or damage to persons or property arising out of the
use or possession of the demised premises, or any part thereof,
including the sidewalks adjacent thereto.  The Lessee further
agrees, during the term of this Lease, at all times to
procure and maintain, at the Lessee's sole cost and expense,
a policy or policies of public liability insurance covering
injuries to persons with a limit of not less than $500,000.00
for injuries to one person, and, subject to that same limit
per person, a single combined limit of $1,000,000.00 as
respects bodily injuries for injuries to more than one
person in any one accident and $50,000.00 for injury to
property.  Such policy or policies shall be written for
the benefit of the Lessor and the Lessee, as their interests
may appear, and the policy shall be delivered to the Lessor,
or the Lessee shall deliver to the Lessor a certificate
issued by the insurance company or companies, evidencing the
fact that such insurance is in full force and effect, and in
either instance provisions shall be made that ten days'
written notice must be given to the Lessor before any
cancellation of such policies.

      11.  Conformity to Laws.

        The Lessee agrees to conform at all times to

all laws, ordinances, regulations of any governmental

authority pertaining thereto, and that it will keep and

save Lessor forever harmless from any penalty, liability,

damage or charge imposed for any violation thereof,

whether caused, occasioned or suffered by the XXXXXXX or

by anyone holding said premises, or any part thereof,

through or under the Lessee in any manner whatsoever.

   12.  Mechanic's Liens.

        The Lessee agrees to keep the demised premises,

and the buildings and improvements thereon, and every part

thereof, at all times during the term of this Lease free

from mechanic's liens, and all other liens for labor,

services, supplies, equipment or material.  The Lessee, however,

shall have the right to contest the validity or amount of any

such lien filed, but upon the final determination of such

contest shall immediately pay and discharge any judgment

rendered, together with all costs and charges incidental

thereto, and shall cause the lien thereof to be released

from the demised premises.  Should the Lessee fail to

promptly discharge such liens by payment thereof, then in

such event the amount of such payment, when made by the

Lessor, together with interest thereon at the rate of seven

per cent per annum from the time payment is so made until

the repayment thereof, shall be payable by the Lessee to

the Lessor at the time the next installment of rental

shall be due and payable.

        Upon the commencement of any work of

alteration or repair in and about the said premises at any

time during the term hereof, the Lessee agrees to immediately

notify the Lessor thereof in writing, and the Lessor shall be

-16-

permitted to post on and affix to said premises a "Notice of Non-Responsibility", as provided in the California Code of Civil Procedure, §1183.1.

13.   Title to Improvements.

Any and all buildings, and other improvements including the installation of fixtures and equipment, constructed or installed on the demised premises during the term of this Lease shall remain the property of the Lessee and shall not become a part of the realty, at all times during the term of this Lease.  Upon the termination of this Lease, either by lapse of time or by forfeiture or otherwise, such buildings, improvements, appurtenant fixtures and equipment attached to the land shall become the absolute property of, and shall vest in, the Lessor, without any cost to Lessor or compensation to the Lessee.

Lessor agrees to execute, immediately upon request of any beneficiary or prospective beneficiary of a deed of trust upon the Lessee's leasehold estate and upon request of any person or firm which sells or installs fixtures and equipment under a Security Agreement a form of waiver, generally designated as a "Landlord's Waiver", as may be required from time to time.

14.   Eminent Domain.

If the whole of the demised premises shall be taken under the power of Eminent Domain this Lease shall terminate as of the date possession shall be so taken. If less than the whole but more than 20% of the demised premises or more than 20% of the improvements on the demised premises is so taken Lessee shall have the right

-17-

to elect either to terminate this Lease or to remain in
possession of the remainder of the demised premises not
so taken, and Lessee shall notify Lessor in writing as to
its election on or before 60 days after possession shall
be so taken.  If Lessee elects to remain in possession all
the terms of this Lease shall continue in effect except
that effective as of the date of taking the rent shall be
reduced in proportion to the area of the demised premises
so taken.  If the portion of the demised premises so taken
does not constitute more than 20% thereof and if the portion
of the improvements so taken does not constitute more than 20%
thereof, then all the terms of this Lease shall ~~continue~~ in
effect except that effective as of the date of taking the
rent shall be reduced in proportion to the area of the
demised premises so taken.

In the event the entirety of the demised premises,
or any part thereof, shall be taken or condemned for a public
or quasi-public use, Lessor shall be entitled to that portion
of the condemnation award representing the then value of land
taken, and any severance damages to the remainder of the
demised premises and to Lessor's adjoining property exclusive
of severance damages relating to buildings and improvements
on the demised premises, and Lessee shall be entitled to
that portion of the condemnation award representing the
then value of any buildings, ·structures or other improve-
ments, and trade fixtures so taken, and any severance
damages related to necessary repairs and rehabilitation of,
or diminution of the use value of (exclusive of any severance
damage to the land itself) buildings, structures or other
improvements on the part of the demised premises not taken

-18-

and occasioned by the taking.  Lessee shall also be
entitled to any portion of any award which shall be
payable by reason of removal expenses of property which
is then a proper item of any award.

          15.  Pledge of Leasehold Interest.

          The Lessee and every successor Lessee is hereby
given the right to grant a security interest in its interest
in this Lease and to assign this Lease as collateral for
such security interest without the Lessor's prior consent,
provided that no security interest in this Lease shall extend
to or affect the fee, the reversionary interest, or the estate
of Lessor in and to any land or building and improvements now
or hereafter erected on the demised premises.  If Lessee or
any successor or assign shall grant a security interest in
this leasehold, then so long as such security interest in
this Lease shall remain in effect the following provisions
will apply:

          A.   There shall be no cancellation, surrender
acceptance of surrender, or modification of this Lease,
without the prior consent in writing of the secured party.

          B.   The Lessor shall, upon serving on the
Lessee any notice of default or any other notice under this
Lease, simultaneously serve a copy of such notice upon the
secured party, and no notice of such default shall be deemed
to have been duly given unless and until a copy thereof has
been deposited in the mail at the United States Post Office,
postage prepaid, for delivery by ~~registered~~ certified *W.P.W. mg.p* mail, addressed
to such holder at the post office address of such holder
last furnished to Lessor.  The secured party shall thereupon
have the same time within which to remedy or cause to be

remedied the defaults complained of as is allowed to Lessee,
and Lessor shall accept such performance by or at the
instigation of the secured party as if such performance
had been accomplished by Lessee.

C.   For the purpose of this paragraph 15, no
default on the part of Lessee, in the performance of work
to be performed, or acts to be done, or conditions to be
remedied, which cannot reasonably be completed within the
grace period, shall be deemed to exist, if steps shall, in
good faith, have been commenced promptly to rectify the same,
and shall be prosecuted to completion with diligence and continuity.

D.   Anything herein contained notwithstanding,
while such security interest remains in effect, if, before
the expiration of ten days after the date of service of a
notice to terminate this Lease for any reason whatsoever,
the secured party shall have paid to the Lessor all rent
and shall have complied or shall engage in the work of
complying with the requirements of this Lease by reason of which
default such notice has been sent, then the Lessor shall not
be entitled to terminate this Lease and any such notice of
termination theretofore given shall be void and of no effect.

E.   If Lessor elects to terminate this Lease
by reason of any default of Lessee, the secured party
shall not only have and be subrogated to all rights of
the Lessee with respect to curing such default, but shall
also have the right to postpone and extend the specified
date for the termination of this Lease as fixed by Lessor
in its notice of termination, for a period of not more than
six months, provided that:  (1) the secured party shall cure
any then existing default and, meanwhile, pay the rent and

-20-

additional rent and perform all of the other requirements of this Lease required to be performed by Lessee; (2) no further defaults shall accrue hereunder during such extended period; and (3) the secured party forthwith takes steps to acquire Lessee's interest in this Lease by foreclosure of its security interest or otherwise.

F. If the security interest shall be held by an established lending institution (which term shall include an insurance company licensed to carry on its business in the State of California) and such institution shall acquire Lessee's interest in this Lease as a result of a sale under its security interest pursuant to the exercise of a private power of sale, or a judgment of foreclosure and sale, or through any transfer in lieu of foreclosure, or through settlement of or arising out of any pending or contemplated foreclosure action, such lending institution shall have the privilege of transferring its interest in this Lease to a nominee or assignee, and such lending institution shall be relieved on any further liability under such Lease from and after such transfer.

G. The Lessor, within ten days after a request in writing by Lessee or the secured party, shall furnish a written statement, duly acknowledged, that this Lease is in full force and effect and that there is no default hereunder by Lessee, or if there is a default such statement shall specify the default which Lessor claims to exist, and the date to which rental has been paid.

H. Lessor agrees promptly upon request to further amend this paragraph 15 to satisfy the reasonable requirements of any leasehold mortgagee or pledgee provided

that the proposed amendment does not materially affect, impair or diminish the right of Lessor hereunder.

16. Default

16.1 Termination. Should Lessee (a) fail to pay or cause to be paid any tax, assessment, insurance premium, lien, claim, charge or demand herein provided to be paid or caused to be paid by Lessee at the times and in the manner herein provided; or (b) should Lessee default in the payment of any installment of rent or any other sum when due as herein provided; or (c) should Lessee default in the performance of or breach any other covenant, condition or restriction of this Lease herein provided to be kept or performed by Lessee and which default or breach is later capable of being cured, and if any such default in payment of any installment of rent shall continue for a period of 30 days, and if any other such failure, default or breach shall continue for a period of 60 days, from and after service upon Lessee of written notice thereof by Lessor, without Lessee and diligently proceed to cure such other default, then and in any event, Lessor may, at its option, terminate this Lease by giving Lessee written notice thereof and thereupon the rights of Lessee in and to the leased land and all improvements thereon shall cease and end, and Lessor may, without further notice or demand or legal process, re-enter and take possession of said land and all improvements thereon and oust Lessee and all persons claiming under Lessee therefrom, and Lessee and all such persons shall quit and surrender

-22-

possession of said land and all improvements thereon to
Lessor.  If the alleged failure, default or breach relates
to an amount of money, and Lessee shall contest the same,
Lessee may post a corporate surety bond or may deposit
money in a joint account subject to the signatures of
both parties within the applicable period, pending
determination of the controversy, and in such event,
the failure, default or breach shall be deemed cured.
If the claimed failure, default or breach involves some
other matter, and if within ~~said~~ 30 days~~granted~~ Lessee
commences appropriate legal action to have the disputed
matter determined, then the provisions of this paragraph
shall not be applicable thereto unless Lessee continues
therein subsequent to 30 days after final adverse judgment
of a court of competent jurisdiction.  No termination shall
be made except pursuant to this paragraph, which paragraph
is subject to the provisions of paragraph 15.

    16.2  Remedies.  Any termination of this
Lease as herein provided shall not relieve Lessee from the
payment of any sum or sums that shall then be due and
payable to Lessor hereunder or any claim for damages
then or theretofore accruing against Lessee hereunder,
and any such termination shall not prevent Lessor from
enforcing the payment of any such sum or sums or claim
for damages by any remedy provided for by law, or from
recovering damages from Lessee for any default thereunder.
Upon accrual of a right in ~~Lessee~~ Lessor to terminate this Lease,
~~Lessee~~ Lessor may either terminate this Lease, or may from time
to time without so terminating re-let the leased premises,

-23-

or any part thereof, for such term or terms (which may
be for a term extending beyond the term of this Lease)
and at such rental or rentals and upon such other terms
and conditions as Lessor, in its sole discretion, may
deem advisable. Upon each such re-letting (a) Lessee
shall be immediately liable to pay to Lessor, in addition
to any indebtedness other than rent due hereunder, the
amount, if any, by which the rent reserved in this Lease
for the period of such re-letting (up to but not beyond
the term of this Lease) exceeds the amount agreed to be
paid as rent for the demised premises for such period on
such re-letting; or (b) at the option of Lessor rents
received by such Lessor from such re-letting shall be
applied: first, to the payment of any indebtedness, other
than rent due hereunder from Lessee to Lessor; second, to
the payment of any costs and expenses of such re-letting;
third, to the payment of rent due and unpaid hereunder and
the residue, if any, shall be held by Lessor and applied
in payment of future rent as the same may become due and
payable hereunder. If Lessee has been credited with any
rent to be received by such re-letting under option (a),
and such rent shall not be promptly paid to Lessor by
the new tenant, or if such rentals received from such
re-letting under option (b) during any month be less
than that to be paid during that month by Lessee hereunder,
Lessee shall pay any such deficiency to Lessor. No such
re-entry or taking possession of said premises by Lessor
shall be construed as an election on its part to terminate

-24-

this Lease, unless a written notice of such intention
be given to Lessee, or unless the termination thereof
be decreed by a court of competent jurisdiction.  Not-
withstanding any such re-letting without termination,
Lessor may at any time thereafter elect to terminate
this Lease for such previous breach.  Should Lessor at
any time terminate this Lease for any breach, in addition
to any other remedy it may have, it may, to the extent
not theretofore recovered, recover from Lessee all damages
it may incur by reason of such breach, including the cost
of recovering the premises, and including the worth at
the time of such termination of the excess, if any, of
the amount of rent and charges equivalent to rent reserved
in this Lease for the remainder of the stated term over
the then reasonable rental value of the premises for the
remainder of the stated term, all of which amounts shall
be immediately due and payable from Lessee to Lessor.

       All rights, options and remedies of Lessor
contained in this Lease shall be construed and held to
be cumulative; and no one of them shall be exclusive of
the other, and Lessor shall have the right to pursue
any one or all of such remedies or any other remedy or
relief which may be provided by law, whether or not
stated in this Lease.  No waiver by Lessor of a breach
of any of the covenants, conditions or restrictions of
this Lease shall be construed or held to be a waiver of
any succeeding or preceding breach of the same or any
other covenant, condition or restriction herein contained.

*mark* W̶Eow̶

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~
~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

17.  Notices.

Wherever it is provided herein that notice, demand, request or other communication shall or may be given to either of the parties by the other, or whenever either party desires to serve the other with the same, such notice, demand, request or other communication shall be in writing and shall not be effective for any purpose unless it shall be served by mailing such notice by certified mail, postage prepaid, return receipt requested, to the address set forth hereinafter, or to such other address as either party may from time to time designate by notice given to the other by certified mail. Any such notice, demand, request or other communication shall be sent by certified mail and shall be deemed served when deposited in the United States mail, postage prepaid, and addressed in accord with the following paragraphs:

Lessor hereby designated 15255 E. Carretera Drive, Whittier, California 90605 as the place at which notices shall be served.

White Money Orders, Inc. c/o *WEow Mark*

Lessee hereby designates/City Products Corporation, Attention Corporate Secretary, 1700 South Wolf Road, Des Plaines, Illinois, as the place at which notices shall be served.

18.  Surrender of Leased Premises.

Lessee covenants that upon the termination of this Lease by lapse of time or at the election of Lessor

after default by Lessee or otherwise, it will surrender
and deliver up to Lessor possession of the demised premises
peaceably and quietly.

19.  <u>Miscellaneous Provisions</u>.

A.  The following words and phrases, wherever
used in this Lease, shall have the following meanings:

(1)  The word "Lessor" means and
includes, in addition to the original party Lessor, all
persons at the time owning the entire reversionary interest
in the demised premises.  In this regard, in the event
at any time hereafter the reversionary interest is owned
by more than one person, as to all matters arising under
this Lease, the action and determination of a majority
in ownership of said reversionary interest shall be final
and binding on all of the owners of said reversionary
interest.

(2)  The word "Lessee" means and
includes, in addition to the original party Lessee,
any person or persons at the time owning the entire
leasehold interest hereby created.

(3)  The word "Person" means and
includes, any association, organization, partnership,
business trust or corporation, as well as a natural
person.

(4)  The language in all parts of
the Lease shall be construed simply, according to its
fair meaning, and not strictly for or against Lessor
or Lessee.

-27-

(5) Wherever the context requires it,
the masculine gender shall be deemed to mean and include
the feminine or neuter, and the singular shall mean and
include the plural.

B.   The titles or headings of the various
paragraphs are intended solely for convenience of reference
and are not intended for any purpose whatsoever to modify,
explain or place any construction upon any of the pro-
visions of this Lease.

20.  Repairs and Upkeep.

At all times during the term hereof, Lessee
shall at its cost and expense, keep and maintain the
demised premises and all improvements thereon in good
order and repair and safe condition, and the whole of
said land and improvements thereon and any landscaping
thereon in a clean, sanitary, orderly and attractive
condition.

21.  Certain Assignments.

Should Lessee (a) file a voluntary petition
in bankruptcy; or (b) be adjudicated a bankrupt, upon the
filing of an involuntary petition, and not be discharged
therefrom within 30 days thereof, or (c) should Lessee make
a voluntary general assignment for the benefit of creditors;
or (d) should a receiver be appointed to take possession
of the leased land or the operations of Lessee thereon,
and should said receiver not be discharged within 30 days
from the time of taking said possession, then either or
any of the foregoing events shall be deemed a breach of

-28-

the conditions and restrictions of this Lease, and there-
upon Lessor may, at its option, terminate this Lease
forthwith by written notice, and upon such termination,
this Lease shall cease and end and thenceforth be of
no further force and effect except as herein otherwise
provided, subject to the provisions of paragraph 15
hereinabove.

22. Signs.

Lessee covenants and agrees that it will
not erect or maintain any non-point of sale signs on the
demised premises during the term of this Lease (including
any extension or renewal thereof).  "Non-point of sale"
signs are herein defined to mean those signs which do not
advertise a commodity, product, business, profession or
service sold or rendered from the property on which the
sign is located.

23. Holding Over.

This Lease shall terminate and become null
and void without further notice upon the expiration of the
term specified, and any extensions pursuant to paragraph 7.,
hereof, and any holding over by Lessee after the expiration
thereof shall not constitute a renewal hereof or give
Lessee any rights hereunder or in or to the leased land.

24. Mineral Rights.

Notwithstanding any other provision of this
Lease, Lessor reserves all mineral rights under the demised
premises without, however, any right of surface entry or
entry within 500 feet of the surface thereof.

## 25. Planting Strip

Lessee acknowledges that it is aware of
an agreement between the Lessor and the City of Whittier
whereby Lessor has agreed to plant a 4 foot strip commencing
at the northerly boundary of Lessor's property in
accordance with the requirements of the City of Whittier.
With respect to that portion of said 4 foot strip which
is within the demised premises, Lessee agrees to perform
Lessor's obligation, and any maintenance with respect
thereto which may be required of Lessor under and pursuant
to said agreement.

## 26. Right of First Refusal

In the event Lessor should ever sell its
interest in the demised premises, separately from Lessor's
interest in any adjoining property, Lessor shall first
offer the demised premises to Lessee at the price and upon
the terms and conditions upon which it proposes to sell.
Said offer shall be in writing, and shall be accepted by
Lessee in writing within 30 days, or shall be deemed
rejected, after which Lessor shall be free to sell and
transfer to any person or persons said real property,
provided that Lessor shall not sell same at a lower price
or on terms more favorable to the purchaser without first
offering said real property to the Lessee at such lower
price or at said more favorable terms.  This paragraph
shall not apply to a sale where any person related by blood
to the Lessor shall have a substantial interest as purchaser,
nor to a sale or transfer to a corporation, trust, partnership
or other entity controlled by or conducted for the primary

- 30 -

benefit of Lessor and/or any such persons related by blood
to the Lessor, provided, however, that such purchaser shall
be required to comply with the provisions of this paragraph
in any future proposed sale other than a sale where any
person related by blood to the Lessor shall have a substantial
interest as purchaser, or to a sale or transfer to a corporation,
trust, partnership or other entity controlled by or conducted
for the primary benefit of Lessor and/or any such persons
related by blood to the Lessor.

In the event Lessee shall accept Lessor's offer
to sell as provided above, said sale shall be consummated on
a date agreeable to both parties, but no later than sixty
days after the date of Lessee's written acceptance of said
offer, through an escrow held at Title Insurance and Trust
Company of Los Angeles, California. Title to said property
shall be conveyed from Lessor to Lessee by a Grant Deed and
concurrently with the closing Lessor shall, at Lessor's
expense, cause to be issued in favor of and delivered to
Lessee a policy of title insurance in the amount of the
purchase price issued by Title Insurance and Trust Company of
Los Angeles, California showing title to the demised premises
to be vested in Lessee, subject only to (a) those covenants,
conditions, restrictions, reservations, rights, rights of way
and easements of record which appear in the title policy
which is delivered by Lessor to Lessee pursuant to the provisions
of paragraph 3 of this Lease and (b) any indebtedness of
Lessor secured by mortgages or deeds of trust encumbering
Lessor's fee interest in the subject realty which shall be
specified and described in detail (including the unpaid balance,
the interest rate payable and the terms of amortization thereof)
in Lessor's offer to sell.

27.  Grace Period.

Lessee shall be allowed a grace period of five days on rental payments, but if any payment is late for more than five days, interest at the rate of 7% per annum shall be payable thereon from the initial due date.

28.  Recordation of Short Form Lease.

At such time as the true commencement date of the term of this Lease is determined, the parties hereto agree to execute contemporaneously with the execution of the Supplement to Lease, in the form of Exhibit B attached hereto, a short form of the Lease and cause the same to be duly recorded in the office of the County Recorder of the County of Los Angeles, State of California.

29.  Parties Bound.

This Lease shall be binding upon and inure to the benefit of, as the case may require, the parties hereto and their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Lease at Los Angeles, California, on the day and year first above written.

_Mildred A. Richardson_
Mildred A. Richardson, Lessor

WHITE MONEY ORDERS, INC.
~~City Products Corporation~~

By _____
        President          Lessee

ATTEST:
_Harold W. Cline_
Secretary

-32-

STATE OF CALIFORNIA  )
                     ) ss.
COUNTY OF LOS ANGELES )

On *May 1, 1968*, before me,
the undersigned, a Notary Public in and for said State,
personally appeared Mildred A. Richardson, known to me
to be the person whose name is subscribed to the within
instrument and acknowledged that she executed the same.

WITNESS my hand and official seal.



OFFICIAL SEAL
LILLIAN JARRETT
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

*Lillian Jarrett*
Notary Public in and for said
County and State
LILLIAN JARRETT - Notary Public - Cal.
COM. EXP. NOV. 6, 1971 - LOS ANGELES CO.
7624 So. Painter Ave., Whittier, Calif. 90602

STATE OF *Texas*      )
                      ) ss.
COUNTY OF *Wichita*   )

On *June 21, 1968*, before me,
the undersigned, a Notary Public in and for said State,
personally appeared *W. Erle White*, known
to me to be the *President* of
the corporation that executed the within instrument,
known to me to be the person who executed the within
instrument on behalf of the corporation therein named,
and acknowledged to me that such corporation executed
the within instrument pursuant to its by-laws or a
resolution of its board of directors.

WITNESS my hand and official seal.

*Marguerite Stone*   MARGUERITE STONE
Notary Public in and for said
County and State

EXHIBIT "A"


Certain real property in the city of Whittier, county of Los

Angeles, state of California, more particularly described as follows:

That portion of Lot 3 of Tract No. 2742, in the
city of Whittier, county of Los Angeles, state
of California, as per map recorded in book 28
page 18 of Maps, in the office of the county re-
corder of said county described as follows:

Beginning at the intersection of the northerly line
of Whittier Boulevard as shown on map of Tract No.
17081, recorded in book 410 pages 45 to 48 inclu-
sive of Maps, records of said county, with a line
distant South 69° 34' 50" East 449.22 feet from
the westerly line of Lot 1 of said Tract No. 2742;
thence at right angles to said Whittier Boulevard,
North 20° 25' 10" East 249.54 feet to the northerly
line of said Lot 3, Tract No. 2742; thence along
said northerly line South 59° 49' 51" East 41.78
feet to an angle point therein; thence continuing
along said northerly line South 73° 36' 13" East
173.23 feet to a line which bears North 20° 25'
10" East from a point in the southerly line of said
Lot 3 said point being distant along said southerly
line North 69° 34' 50" West 58.13 feet from an angle
point in said southerly line; thence South 20° 25'
10" West 254.60 feet to a point on said northerly
line of Whittier Boulevard; thence North 69° 34' 50"
West to the point of beginning.

Reserving therefrom an easement for sanitary sewer
purposes over the most westerly 10 feet of the nor-
therly 10 feet of the southerly 20 feet thereof.

Also reserving therefrom an easement for the installa-
tion, maintenance and repair and replacement from time
to time of a water line over the southerly ten feet of
the above described real property. Any such water line
shall be installed beneath the surface of the ground
and at such a depth as to permit the use of the surface
of said ground for vehicular traffic.

EXHIBIT "A"

_June 21, 1968_
_____
(Date)

Supplement to Lease between Mildred A. Richardson, as
Lessor, and White Money Orders, Inc. _W & W_ as Lessee, dated
the _21_ day of _June_, 1968, concerning the
premises in the City of Whittier, California.

     Pursuant to the terms and conditions contained
in paragraph 2 of said Lease, this Supplemental Agreement
is executed this day to affirm the following facts
pertaining to said Lease:

    1.  The true commencement date of the term of
said Lease is the first day of
_____, 196____.

    2.  The date upon which rent shall commence
shall be_____, 19____.

    3.  The date upon which the original term of
said Lease shall expire is the last day
of_____, 19____.


_____
Mildred A. Richardson,

                Lessor

White Money Orders, Inc.

by_____
   President

                Lessee

Attest)
_____
  Secretary

Exhibit "B"

EXHIBIT "C"

1.  Easement in favor of La Habra Heights Mutual Water Company, as described and shown as Exception No. 3. in title report issued by Title Insurance and Trust Company, dated as of April 17, 1968, Order No. 6782877.

2.  Easement in favor of Murphy Ranch Mutual Water Company and/or Suburban Water Systems, as described and shown as Exception No. 4., in title report issued by Title Insurance and Trust Company, dated as of April 17, 1968, Order No. 6782877.

3.  Easement in favor of Standard Oil Company of California and/or Standard Gasoline Company, as described and shown as Exception No. 6 in title report issued by Title Insurance and Trust Company, dated April 17, 1968, Order No. 6782877.

4.  An Easement to be recorded at a later date in the form attached hereto as Exhibit "D", which Easement covers the most eastern ten (10) feet of the demised premises.  Upon recordation of this Easement, the interest of Murphy Ranch Mutual Water Company in and to the Easement described in paragraph 2., above, shall terminate.

5.  An Easement in favor of Hardesty J. McAllister for the installation, maintenance, repair and replacement of a water line, which easement was recorded in Book D-4080, Pages 957-959 on July 29, 1968, Official Records of Los Angeles County, California.

EXHIBIT "C"

WHEN RECORDED RETURN TO:

## EASEMENT

FOR A VALUABLE CONSIDERATION, receipt of which is hereby
acknowledged, MILDRED A. RICHARDSON, a widow, hereinafter called
"Grantor", hereby grants to MURPHY RANCH MUTUAL WATER COMPANY, a
corporation, hereinafter called "Grantee", an easement for and the
right to install, maintain and use, water pipe lines in and across
the real property in the County of Los Angeles, State of California,
described as:

> The most easterly ten (10) feet of the leased
> property (exact legal description to be inserted).

Said pipe lines shall be buried, and Grantor hereby reserves
the right to use and enjoy the said premises, including but not
limited to the right to use the above described property as a road-
way.

Grantee hereby agrees to pay any damages to Grantor's wall,
paving or buildings which may be caused by the Grantee hereunder,
said damages, if not mutually agreed upon, to being ascertained
by three (3) disinterested persons; one thereof to be appointed by
Grantor; one by Grantee, and the third by the two so appointed as

EXHIBIT "D"

aforesaid.  The award  of such three persons shall be final and conclusive.

The provisions hereof shall inure to the benefit of and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Easement this            day of                 1968.


"Grantor"


_____
Mildred A. Richardson



"Grantee"


MURPHY RANCH MUTUAL WATER COMPANY,
a corporation

By_____


By_____


-2-