**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | Case No. 24-10719 (JKS) |
| Debtors. | (Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, Rohany Tejada, depose and say that I am employed by Kroll Restructuring Administration LLC ("***Kroll***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes certifications verifying that the *Notice of Deadlines for Filing Proofs of Claim, Including for Claims Asserted Under Section 503(b)(9) of the Bankruptcy Code and Other Administrative Claims*, as conformed for publication, was published on June 7, 2024, in the (1) *Los Angeles Times*, as described in the Proof of Publication attached hereto as **Exhibit A**, and (2) national edition of the *New York Times,* as described in the Proof of Publication attached hereto as **Exhibit B**.

Dated: June 14, 2024

*/s/ Rohany Tejada*
Rohany Tejada

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

**Exhibit A**



**PROOF OF PUBLICATION**
**(2015.5 C.C.P.)**

**STATE OF CALIFORNIA**
**County of Los Angeles**

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years, and not a party to or interested in the action for which the attached notice was published. I am a principal clerk of the Los Angeles Times, which was adjudged a newspaper of general circulation on May 21, 1952, Cases 598599 for the City of Los Angeles, County of Los Angeles, and State of California. Attached to this Affidavit is a true and complete copy as was printed and published on the following date(s):
June 07, 2024

**I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Dated at El Segundo, California on this 10th day of June, 2024.

KG
___________________________________
*Katherine G. Gundell*
[signature]

2300 E. Imperial Hwy.
El Segundo, CA 90245

Los Angeles Times
MEDIA GROUP

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | ) | Chapter 11 |
|---|---|---|
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND OTHER ADMINISTRATIVE CLAIMS**

**THE GENERAL BAR DATE IS JULY 8, 2024 AT: 5:00 P.M. (PREVAILING EASTERN TIME) IF SUBMITTED BY HARD COPY; OR 11:59 P.M. (PREVAILING EASTERN TIME) ON JULY 8, 2024 IF SUBMITTED VIA AN ELECTRONIC PROOF OF CLAIM ON KROLL'S WEBSITE.**

On April 7, 2024 (the "Petition Date"),[2] the debtors and debtors in possession in the above-captioned cases (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On June 4, 2024, the Court entered an order [D.I. 784] (the "Bar Date Order") establishing certain deadlines for filing proofs of claim in the Chapter 11 Cases of the following debtors and debtors in possession: **Debtor, Case No., EDI# (Last 4 Digits):** Number Holdings, Inc., 24-10719 (JKS), (1463); 99 Cents Only Stores LLC, 24-10721 (JKS), (1605); 99 Cents Only Stores Texas, Inc., 24-10722 (JKS), (1229); 99 Cents PropCo LLC, 24-10723 (JKS), (7843); 99 Cents HoldCo LLC, 24-10720 (JKS), (3987); Bargain Wholesale LLC, 24-10724 (JKS), (8030).

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), or a claim for Stub Rent, or a rejection damages claim (other than for leases that have not been rejected) no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **July 8, 2024** at (a) **5:00 p.m. (prevailing Eastern Time)** by sending an original proof of claim form to Kroll Inc. ("Kroll") or (b) **11:59 p.m. (prevailing Eastern Time)** via an Electronic Proof of Claim on the interface available through the "Submit a Claim" page at https://cases.ra.kroll.com/99only) (the "General Bar Date"); *provided, that,* solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is **October 4, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website, on the date that is the later of thirty (30) days after (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors which shall be served on the affected claimant(s) or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order which shall be served on the affected claimant(s)** (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) the date that is thirty (30) days from the date on which the Debtors serve the affected claimant(s) with notice of any amendment or supplement to the Schedules at (a) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or (b) 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website** (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

All entities filing a request to allow any unpaid administrative expense claim against the Debtors (each, an "Administrative Claim") are required to file an Administrative Claim by **5:00 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted by hard copy or (b) **11:59 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted via an Electronic Proof of Claim for on Kroll's website for Administrative Claims arising on or after the Petition Date and any time prior to **June 1, 2024** (the "First Administrative Claims Bar Date").

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent. All other Administrative Claims under section 503(b) of the Bankruptcy Code must be filed on the docket by the First Administrative Claims Bar Date or the Rejection Damages Bar Date, as applicable. Claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent must be filed by the General Bar Date.

Proofs of claim must be sent such that they are **actually received by the applicable Debtor (via Kroll) by the applicable Bar Date**: (a) if by overnight mail or hand delivery to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (b) if by first class mail to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (c) if completed electronically through https://cases.ra.kroll.com/99only. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted and will not be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION, UNLESS THE COURT ORDERS OTHERWISE.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting Kroll, in writing, at Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or online at https://cases.ra.kroll.com/99only/. If you have questions concerning the filing or processing of claims, you may contact Kroll toll-free at (844)-712-1933 (U.S./Canada) or +1 (646)-777-2513 (International).

***BY ORDER OF THE COURT***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

Client Name:
Advertiser:
Section/Page/Zone: MAIN/A003/DIG
Description:
Ad Number:
Insertion Number:
Size:
Color Type:

Los Angeles Times
Publication Date: 06/07/2024
This electronic tearsheet confirms the ad appeared in the Los Angeles Times on the date and page indicated. You may not create derivative works, or in any way exploit or repurpose any content.

# Biden asserts support for Ukraine at D-day event

At ceremony in France, president marks invasion's 80th anniversary by citing today's unity of allies.

By Zeke Miller and Chris Megerian

COLLEVILLE-SUR-MER, France — President Biden marked the 80th anniversary of D-day on Thursday by pledging "we will not walk away" from Ukraine, drawing a direct line from the fight to liberate Europe from Nazi domination to today's war against Russian aggression.

"To surrender to bullies, to bow down to dictators, is simply unthinkable," he said during a ceremony at the American cemetery in Normandy. "If we were to do that, it means we'd be forgetting what happened here on these hallowed beaches."

D-day was the largest amphibious assault in history, and Biden called it a "powerful illustration of how alliances, real alliances make us stronger." He said that was "a lesson that I pray we Americans never forget."

The comment by the Democratic president was a reminder that American commitments around the globe hang in the balance during this year's U.S. election. Donald Trump, the presumptive Republican nominee, has said he would not defend European allies that are "delinquent" in their own security spending.

The possibility of Trump's return to the White House has many of the continent's leaders fearing that transatlantic unity, which was sealed in blood on D-day and strengthened in response to Russia's invasion of Ukraine, could fray or even rupture.

Trump has expressed little enthusiasm for Ukraine's defense, criticizing the "endless flow of American treasure" and calling for Europe to shoulder more of the burden. He has also voiced admiration for Russian President Vladimir Putin.

Trump shared his own D-day anniversary message on social media, praising U.S. soldiers as "immortal heroes." He was silent on the country's alliances.

Concerns about American reliability extend beyond Trump. Biden struggled to secure bipartisan congressional approval for U.S. military assistance for Ukraine, and months of delay contributed to Russian advances on the battlefield.

Ukrainian President Volodymyr Zelensky was in Normandy for anniversary events Thursday and is expected to sit down with Biden in Paris on Friday. It will be their first meeting since Biden signed legislation with new money for Ukraine's defense, and Zelensky has continued to push for faster and more aggressive U.S. support.

One such step took place recently, when Biden eased limitations on how Ukraine can use American weapons, allowing for some strikes into Russia in order to defend Kharkiv, a city near the border between the two countries.

Putin reacted angrily, saying he is prepared to use nuclear weapons to protect Russian sovereignty and suggesting that he could provide Russian weapons to those willing to strike Western targets.

The war and persistent threats of escalation were an ominous backdrop to the D-day ceremony, and Biden warned that "democracy is more at risk across the world than any point since the end of World War II."

While paying tribute to the American troops that stormed Normandy's beaches on June 6, 1944, Biden said, "Let us be worthy of their sacrifice."

"We must remember that the fact that they were heroes here that day does not absolve us of what we have to do today," he said. "Democracy is never guaranteed. Every generation must preserve it, defend it and fight for it. That's the test of the ages."

Biden also highlighted "hundreds of thousands of people of color and women who courageously served despite unjust limitation on what they could do for their nation."

Before the ceremony, the president and First Lady Jill Biden met with more than two dozen American veterans near Omaha Beach, where the fiercest D-day fighting took place. Some were helped out of wheelchairs to pose for photos. Most shook hands with Biden or saluted; one hugged him.

Biden told a veteran that "you saved the world." The president led the audience in singing happy birthday to another. Steven Spielberg and Tom Hanks, the Hollywood heavyweights behind movies and television shows about World War II, were nearby.

When Army veteran Robert Gibson approached, the first lady clutched his arm to help him stand next to the president as they shook hands.

"Don't get old," the 100-year-old man from New Jersey joked to the 81-year-old president, who was a toddler on D-day.

This anniversary of the invasion is a particularly somber one because it will be among the last with living veterans. The youngest survivors are in their late 90s. Biden met one veteran who is 104.

He was part of the second wave of troops who landed on Utah Beach. Gibson said he expected this year would be the last anniversary ceremony that he could attend, but he was pleased to be back one more time.

"I want to see the beach again," he said.

Miller and Megerian write for the Associated Press and reported from Colleville-sur-Mer and Paris, respectively.

Evan Vucci Associated Press

**FRENCH** President Emmanuel Macron, second from left, and President Biden are flanked by their wives in Normandy, France, on Thursday as they take part in an event marking the 80th anniversary of D-day.

# By the numbers: Recollecting the events of June 6, 1944

Associated Press

OMAHA BEACH, France — The June 6, 1944, D-day invasion of Nazi-occupied France was unprecedented in scale and audacity, using the largest-ever armada of ships, troops, planes and vehicles to punch a hole in Adolf Hitler's defenses in Western Europe and change the course of World War II.

With veterans and world dignitaries gathering in Normandy to commemorate the 80th anniversary of the landings, here's a look at some details about how the operation unfolded.

## Who took part?

Nearly 160,000 Allied troops landed in Normandy on June 6, 1944. Of those, 73,000 were from the United States and 83,000 from Britain and Canada. Forces from several other countries were also involved, including French troops fighting with Gen. Charles de Gaulle.

The Allies faced about 50,000 German forces.

More than 2 million Allied soldiers, sailors, pilots, medics and other people from a dozen countries were involved in the overall Operation Overlord, the battle to wrest western France from Nazi control that started on D-day.

## Where and when?

The sea landings started at 6:30 a.m., just after dawn, targeting five code-named beaches: Utah, Omaha, Gold, Juno, Sword. The operation also included actions inland, including overnight parachute landings on strategic German sites and U.S. Army Rangers scaling cliffs to take out German gun positions.

About 11,000 Allied aircraft, 7,000 ships and boats, and thousands of other vehicles were involved.

## Heavy casualties

A total of 4,414 Allied troops were killed on D-day itself, including 2,501 Americans. More than 5,000 were wounded.

In the ensuing Battle of Normandy, 73,000 Allied forces were killed and 153,000 wounded. The battle — and especially Allied bombings of French villages and cities — killed around 20,000 French civilians.

The exact German casualties aren't known, but historians estimate between 4,000 and 9,000 men were killed, wounded or missing during the D-day invasion alone.

About 22,000 German soldiers are among the many buried around Normandy.

## Survivors

The number of survivors attending major anniversary commemorations in France continues to dwindle.

The youngest survivors are now in their late 90s. It's unclear how many D-day veterans are still alive. The U.S. Department of Veterans Affairs says it doesn't track their numbers.

# Israeli strike kills 33 at U.N.-run school in Gaza

Facility was sheltering Palestinians displaced by widening offensive. Military says it was being used by Hamas.

By Wafaa Shurafa and Samy Magdy

DEIR AL BALAH, Gaza Strip — An Israeli strike early Thursday on a school sheltering displaced Palestinians in central Gaza killed at least 33 people, including 12 women and children, according to local health officials. The Israeli military said that Hamas militants were operating from within the school.

It was the latest instance of mass casualties among Palestinians trying to find refuge as Israel expands its offensive. A day earlier, the military announced a new ground and air assault in central Gaza, pursuing Hamas militants it says have regrouped there.

Troops repeatedly have had to return to parts of the Gaza Strip they previously invaded, underscoring the resilience of the militant group despite Israel's nearly eight-month onslaught.

Witnesses and hospital officials said the predawn strike hit the Sardi School, run by the United Nations agency for Palestinian refugees, known by the acronym UNRWA. The school was filled with Palestinians who had fled Israeli operations and bombardment in northern Gaza, they said.

Officials at Al Aqsa Martyrs Hospital in nearby Deir al Balah initially reported that nine women and 14 children were among those killed in the strike. The hospital morgue later amended those records to show that the dead were three women, nine children and 21 men. It was not immediately clear what caused the discrepancy. An Associated Press reporter had counted the bodies but was unable to look beneath the shrouds.

Separate strikes in central Gaza killed an additional 15 people, nearly all men.

Ayman Rashed, a man displaced from Gaza City who was sheltering at the school, said the missiles hit classrooms on the second and third floor where families were sheltering. He said he helped carry out five dead, including an old man and two children, one with his head shattered open. "It was dark, with no electricity, and we struggled to get out the victims," Rashed said.

Rear Adm. Daniel Hagari, a spokesman for the Israeli military, said it carried out a "precise strike" based on concrete intelligence that militants were planning and conducting attacks from inside three classrooms. He said only those rooms were attacked.

"We conducted the strike once our intelligence and surveillance indicated that there were no women or children inside the Hamas compound, inside those classrooms," he said.

Hagari said about 30 suspected militants were in the three rooms. He said the military had confirmed killing nine of them, and displayed a slide showing their names and photos. He provided no other evidence to substantiate the military's claims.

Casualties from the strike arrived at Al Aqsa Martyrs Hospital, which had already been overwhelmed by a constant stream of ambulances since the central Gaza incursion began 24 hours earlier, said Omar al Derawi, a photographer working for the hospital.

Videos online appeared to show several wounded people being treated on the floor of the hospital, a common scene in Gaza's overwhelmed medical wards. Electricity in much of the hospital is out because staffers are rationing fuel supplies for the generator.

"You can't walk in the hospital — there's so many people. Women from the victims' families are massed in the hallways, crying," Derawi said.

The school was in Nuseirat, one of several built-up refugee camps in Gaza dating to the 1948 war surrounding Israel's creation, when hundreds of thousands of Palestinians fled or were driven from their homes in what became the new state.

Video showed bodies wrapped in blankets or plastic bags being laid out in rows in the hospital courtyard. Mohammed al-Kareem, a displaced Palestinian sheltering near the hospital, said that he saw people searching for their loved ones among bodies, and that one woman kept asking medical workers to open the wraps on the bodies to see whether her son was inside.

"The situation is tragic," he said.

Philippe Lazzarini, the commissioner-general of UNRWA, said in a post on the social media platform X that 6,000 people were sheltering in the school when it was hit without warning. He said UNRWA was unable to verify claims that armed groups were inside.

UNRWA schools across Gaza have functioned as shelters since the start of the war, which has driven most of the territory's population of 2.3 million Palestinians from their homes.

Last week, Israeli strikes hit near one UNRWA facility in the southern city of Rafah, which the military said were targeting Hamas militants. An inferno ripped through tents nearby housing displaced families, killing at least 45 people. The deaths prompted international outrage, and Israeli Prime Minister Benjamin Netanyahu said the fire was the result of a "tragic mishap." The military said the blaze may have been caused by secondary explosions. The cause of the explosions has not been determined.

Israel sent troops into Rafah in early May in what it said was a limited incursion, but those forces are now operating in central parts of the city. More than 1 million people have fled Rafah since the start of the operation.

Shurafa and Magdy write for the Associated Press and reported from Deir al Balah and Cairo, respectively.

Jehad Alshrafi Associated Press

**MISSILES** hit second- and third-floor classrooms at the Sardi School in Nuseirat, one Gazan man said.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND OTHER ADMINISTRATIVE CLAIMS**

**THE GENERAL BAR DATE IS JULY 8, 2024 AT: 5:00 P.M. (PREVAILING EASTERN TIME) IF SUBMITTED BY HARD COPY; OR 11:59 P.M. (PREVAILING EASTERN TIME) ON JULY 8, 2024 IF SUBMITTED VIA AN ELECTRONIC PROOF OF CLAIM ON KROLL'S WEBSITE.**

On April 7, 2024 (the "Petition Date"),[2] the debtors and debtors in possession in the above-captioned cases (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On June 4, 2024, the Court entered an order [D.I. 784] (the "Bar Date Order") establishing certain deadlines for filing proofs of claim in the Chapter 11 Cases of the following debtors and debtors in possession: **Debtor, Case No., EDI# (Last 4 Digits):** Number Holdings, Inc., 24-10719 (JKS), (1463); 99 Cents Only Stores LLC, 24-10721 (JKS), (1605); 99 Cents Only Stores Texas, Inc., 24-10722 (JKS), (1229); 99 Cents PropCo LLC, 24-10723 (JKS), (7843); 99 Cents HoldCo LLC, 24-10720 (JKS), (3987); Bargain Wholesale LLC, 24-10724 (JKS), (8030).

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), or a claim for Stub Rent, or a rejection damages claim (other than for leases that have not been rejected) no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **July 8, 2024** at (a) **5:00 p.m. (prevailing Eastern Time)** by sending an original proof of claim form to Kroll Inc. ("Kroll") or (b) **11:59 p.m. (prevailing Eastern Time)** via an Electronic Proof of Claim on the interface available through the "Submit a Claim" page at https://cases.ra.kroll.com/99only) (the "General Bar Date"); *provided, that,* solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is **October 4, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website, on the date that is the later of thirty (30) days after (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors which shall be served on the affected claimant(s) or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order which shall be served on the affected claimant(s)** (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) the date that is thirty (30) days from the date on which the Debtors serve the affected claimant(s) with notice of any amendment or supplement to the Schedules at (a) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or (b) 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website** (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

All entities filing a request to allow any unpaid administrative expense claim against the Debtors (each, an "Administrative Claim") are required to file an Administrative Claim by **5:00 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted by hard copy or (b) **11:59 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted via an Electronic Proof of Claim for on Kroll's website for Administrative Claims arising on or after the Petition Date and any time prior to **June 1, 2024** (the "First Administrative Claims Bar Date").

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent. All other Administrative Claims under section 503(b) of the Bankruptcy Code must be filed on the docket by the First Administrative Claims Bar Date or the Rejection Damages Bar Date, as applicable. Claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent must be filed by the General Bar Date.

Proofs of claim must be sent such that they are **actually received by the applicable Debtor (via Kroll) by the applicable Bar Date**: (a) if by overnight mail or hand delivery to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (b) if by first class mail to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (c) if completed electronically through https://cases.ra.kroll.com/99only. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted and will not be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION, UNLESS THE COURT ORDERS OTHERWISE.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting Kroll, in writing, at Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or online at https://cases.ra.kroll.com/99only/. If you have questions concerning the filing or processing of claims, you may contact Kroll toll-free at (844)-712-1933 (U.S./Canada) or +1 (646)-777-2513 (International).

***BY ORDER OF THE COURT***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

**Exhibit B**



The New York Times
Company

620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

June 7, 2024

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

6/7/2024, NY & NATL, pg B3

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2024.06.07 12:51:52 -04'00'

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| Debtors. | ) | (Jointly Administered) |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND OTHER ADMINISTRATIVE CLAIMS**

**THE GENERAL BAR DATE IS JULY 8, 2024 AT: 5:00 P.M. (PREVAILING EASTERN TIME) IF SUBMITTED BY HARD COPY; OR 11:59 P.M. (PREVAILING EASTERN TIME) ON JULY 8, 2024 IF SUBMITTED VIA AN ELECTRONIC PROOF OF CLAIM ON KROLL'S WEBSITE.**

On April 7, 2024 (the "Petition Date"),[2] the debtors and debtors in possession in the above-captioned cases (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On June 4, 2024, the Court entered an order [D.I. 784] (the "Bar Date Order") establishing certain deadlines for filing proofs of claim in the Chapter 11 Cases of the following debtors and debtors in possession: **Debtor, Case No., EDI# (Last 4 Digits):** Number Holdings, Inc., 24-10719 (JKS), (1463); 99 Cents Only Stores LLC, 24-10721 (JKS), (1605); 99 Cents Only Stores Texas, Inc., 24-10722 (JKS), (1229); 99 Cents PropCo LLC, 24-10723 (JKS), (7843); 99 Cents HoldCo LLC, 24-10720 (JKS), (3987); Bargain Wholesale LLC, 24-10724 (JKS), (8030).

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), or a claim for Stub Rent, or a rejection damages claim (other than for leases that have not been rejected) no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **July 8, 2024** at (a) **5:00 p.m. (prevailing Eastern Time)** by sending an original proof of claim form to Kroll Inc. ("Kroll") or (b) **11:59 p.m. (prevailing Eastern Time)** via an Electronic Proof of Claim on the interface available through the "Submit a Claim" page at https://cases.ra.kroll.com/99only) (the "General Bar Date"); *provided, that,* solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is **October 4, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website, on the date that is the later of thirty (30) days after (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors which shall be served on the affected claimant(s) or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order which shall be served on the affected claimant(s)** (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) the date that is thirty (30) days from the date on which the Debtors serve the affected claimant(s) with notice of any amendment or supplement to the Schedules at (a) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or (b) 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website** (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

All entities filing a request to allow any unpaid administrative expense claim against the Debtors (each, an "Administrative Claim") are required to file an Administrative Claim by **5:00 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted by hard copy or (b) **11:59 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted via an Electronic Proof of Claim for on Kroll's website for Administrative Claims arising on or after the Petition Date and any time prior to **June 1, 2024** (the "First Administrative Claims Bar Date").

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent. All other Administrative Claims under section 503(b) of the Bankruptcy Code must be filed on the docket by the First Administrative Claims Bar Date or the Rejection Damages Bar Date, as applicable. Claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent must be filed by the General Bar Date.

Proofs of claim must be sent such that they are **actually received by the applicable Debtor (via Kroll) by the applicable Bar Date**: (a) if by overnight mail or hand delivery to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (b) if by first class mail to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (c) if completed electronically through https://cases.ra.kroll.com/99only. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted and will not be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION, UNLESS THE COURT ORDERS OTHERWISE.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting Kroll, in writing, at Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or online at https://cases.ra.kroll.com/99only/. If you have questions concerning the filing or processing of claims, you may contact Kroll toll-free at (844)-712-1933 (U.S./Canada) or +1 (646)-777-2513 (International).

***BY ORDER OF THE COURT***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

**MEDIA**

JUSTIN T. GELLERSON FOR THE NEW YORK TIMES

The Washington Post newsroom. The C.E.O. Will Lewis's plan to reorganize the newsroom would have substantially diminished Ms. Buzbee's role.

# Dispute Over Article About Phone Hacking Preceded Editor's Exit

ANNA MONEYMAKER/GETTY IMAGES

Sally Buzbee at an event in 2022. Her decision to resign as executive editor of The Washington Post, announced late Sunday, has roiled the newspaper.

FROM FIRST BUSINESS PAGE

declined to comment. Ms. Buzbee also declined to comment.

Mr. Lewis was appointed by Jeff Bezos, The Post's owner and the founder of Amazon, late last year to remake the publication as it reeled from a steep audience decline and annual losses in the tens of millions of dollars. For the past few months, Mr. Lewis, who was previously the chief executive of News Corp's Dow Jones, which publishes The Wall Street Journal, has been formulating a strategy to overhaul the business.

**A C.E.O. opposed publishing an article that named him.**

He decided to split the editorial ranks into three divisions: a core newsroom that covers politics, business and other topics; an opinion section; and a new division that would focus on social media, like video storytelling, as well as service journalism, including wellness and lifestyle coverage. (The Post is currently divided into two parts, news and opinion.)

In offering Ms. Buzbee a role running the social media and service journalism division, according to people familiar with her thinking, Mr. Lewis told her she could weigh in on the recruitment of the editor to oversee the core news operation. He later informed her that he had selected Robert Winnett, an editor at The Daily Telegraph who had previously worked with Mr. Lewis, the people said.

The conversation between Mr. Lewis and Ms. Buzbee about the phone hacking coverage took place in a conference room at an executive meeting outside The Post newsroom. At the meeting, Post executives discussed Mr. Lewis's planned changes to The Post.

Editors occasionally alert top executives about thorny stories before they are published. In 2013, Martin Baron, the longtime editor who preceded Ms. Buzbee, informed The Post's publisher, Katharine Weymouth, before The Post began to report on sensitive stories about the National Security Agency. In 1971, Ben Bradlee, the crusading executive editor, gave Katharine Graham, The Post's former owner, a heads-up before the newspaper published articles about the Pentagon Papers, which revealed the secret history of the Vietnam War.

Mr. Lewis declined to comment to The Post for its article about the ruling in the phone hacking case. But in numerous previous media interviews, he has strongly denied the allegations that he was involved in covering up phone hacking while he was a senior executive for Mr. Murdoch. The Post published an article in March about the lawsuit that also named Mr. Lewis.

At a contentious staff meeting on Monday, Mr. Lewis defended his business strategy, telling the newsroom that The Post had lost $77 million the previous year, had seen a 50 percent audience decline since 2020 and needed to make radical changes to succeed.

"Let's not sugarcoat it. It needs turning around, right?" he said, according to a recording of the meeting. "We are losing large amounts of money. Your audience has halved in recent years. People are not reading your stuff."

He continued: "I've had to take decisive, urgent action to set us on a different path, sourcing talent that I have worked with that are the best of the best of the best."

# *Post Chief Promised an Exclusive Interview For Ignoring Scandal, NPR Reporter Says*

By KATIE ROBERTSON and BENJAMIN MULLIN

Will Lewis, the chief executive of The Washington Post, repeatedly offered an exclusive interview to an NPR reporter if the reporter agreed not to write about allegations against Mr. Lewis in a phone-hacking scandal in Britain, according to an account by that reporter published on Thursday.

David Folkenflik, a veteran media reporter for NPR, wrote that a spokesperson for Mr. Lewis confirmed the offer in December. That spokesperson declined to comment when approached again Thursday, according to NPR.

"In several conversations, Lewis is repeatedly — and heatedly — offered to give me an exclusive interview about the Post's future, as long as I dropped the story about the allegations," Mr. Folkenflik wrote.

A spokeswoman for Mr. Lewis said that "when he was a private citizen ahead of joining The Washington Post, he had off-the-record conversations with an employee of NPR about a story the employee then published." The spokeswoman said any interview requests with Mr. Lewis after he joined The Post were "processed through the normal corporate communication channels."

In an interview on Thursday, Mr. Folkenflik said he did not violate an off-the-record agreement with Mr. Lewis to report Thursday's article. He also said that he decided to disclose the conversation with Mr. Lewis and his spokesperson now in light of recent turmoil at The Washington Post, including the abrupt resignation of its executive editor on Sunday.

"I thought the audacity of the offer was notable," Mr. Folkenflik said. "And given what's playing out right now at The Post, I thought it was worth noting in public."

CARLOTTA CARDANA/BLOOMBERG

Will Lewis was named chief executive by The Washington Post owner Jeff Bezos late last year.

On Sunday, Mr. Lewis announced that Sally Buzbee had resigned as executive editor and that Matt Murray, a former top editor at The Wall Street Journal, would be her temporary replacement. After the presidential election, Robert Winnett, a British editor, will oversee the core news operation and Mr. Murray will manage a new division focused on social media and service journalism.

Mr. Lewis, who was named chief executive of The Post late last year, is accused in court filings of helping to cover up illegal phone hacking at British publications owned by Rupert Murdoch more than a decade ago. In May, in a case brought by Prince Harry and others, a judge ruled that the plaintiffs could add Mr. Lewis's name to a list of executives who they argued were involved in a plan to conceal evidence of hacking at the newspapers.

Mr. Lewis has strongly denied any wrongdoing in that case. Though he is named in the lawsuit, he is not a defendant.

Mr. Folkenflik, who has long chronicled the Murdoch media empire, first reported on the accusations against Mr. Lewis in December 2023, after Mr. Lewis had been named as the next chief executive of The Post, and since then has covered developments in the court case.

The New York Times reported on Wednesday that Mr. Lewis clashed with Ms. Buzbee over the newspaper's coverage of the phone-hacking scandal in the weeks leading up to her departure.

Ms. Buzbee informed Mr. Lewis in mid-May that the newsroom planned to cover the coming ruling from the judge. Mr. Lewis told Ms. Buzbee the case involving him did not merit coverage, according to two people with knowledge of the discussions.

When Ms. Buzbee said The Post would publish an article anyway, he said her decision represented a lapse in judgment. The interaction rattled Ms. Buzbee, but the article was published and Mr. Lewis did not interfere with its publication.

A spokeswoman for The Post declined to comment on The Times article published on Wednesday. On Thursday, a spokeswoman for Mr. Lewis said The Times's "account of a meeting he had with the then executive editor is inaccurate."

Ms. Buzbee resigned on Sunday. The interaction over the court ruling was not the primary reason for her resignation. Ms. Buzbee, who was the first female executive editor at The Post and led the newsroom to six Pulitzers during her three-year tenure, had already been mulling her future because of a plan by Mr. Lewis to reorganize the newsroom that would have reduced her role.

# *Hachette Layoffs Come Amid Pressures*

By ALEXANDRA ALTER and ELIZABETH A. HARRIS

Hachette Book Group laid off seven employees at its Little, Brown imprint on Wednesday, according to the company, in a shake-up that was the latest example of turmoil in the publishing industry.

The layoffs, which the company described as part of a corporate restructuring, come as major publishing companies have been buffeted by sluggish print sales and rising supply chain costs, and have struggled to find new ways to get books in front of customers who have migrated online.

The seven people being laid off include the editors Tracy Sherrod, Pronoy Sarkar, Jean Garnett and Ben George, according to a person with knowledge of the situation who wasn't authorized to discuss personnel matters.

To many industry observers, the departure of Sherrod, a high-ranking Black editor, is a troubling sign that publishers are faltering in their promise to diversify their companies, particularly within their executive ranks.

A Hachette spokeswoman said the restructuring was part of an effort to better serve readers and was not a cost-cutting measure. As part of the restructuring, the company said, it will hire in new roles. The news was reported earlier by Publishers Weekly.

Last month, Penguin Random House let go of two publishers of its most prestigious literary imprints, casting off Reagan Arthur, the publisher of Alfred A. Knopf, and Lisa Lucas, who was the publisher of Pantheon and Schocken and had been the first Black publisher at Pantheon in its 80-year history. Their departures were part of a cost-saving restructuring, according to a person in publishing familiar with the decision.

Penguin Random House is the biggest publishing house in the United States, and the layoffs that have hit high-level editorial staff suggest that executives are feeling pressure to squeeze out more profits wherever they can.

At Hachette, the layoffs have followed a series of changes at the company after the arrival of a new chief executive, David Shelley, who was the chief executive of Hachette UK. He now oversees the Hachette publishing operations in both the United States and Britain, with the goal of aligning the two companies.

The subsequent reshuffling resembled a game of musical chairs. Little, Brown's former editor in chief, Judy Clain, left to run an imprint at Simon & Schuster, and Sally Kim, who previously worked as the publisher of Putnam, joined Hachette as the new president and publisher of Little, Brown.

When Sherrod came on as a vice president and executive editor at Little, Brown in 2022, her mandate was to publish fiction and nonfiction by Black authors, and many saw her hiring as an encouraging sign of Hachette's commitment to diversity. Sherrod went on to acquire notable books, including "skin & bones," the adult debut novel from Renée Watson, a best-selling children's author, and "Renaissance Men," Harriet Washington's narrative biography of three African American physicians.

On social media, some reacted to news of Sherrod's departure as more evidence that the push to diversify publishing had stalled.

"So much for diversifying leadership in publishing. #byebye2020," Leslie Harris, a professor of African American History at Northwestern University, wrote on X.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: NUMBER HOLDINGS, INC. *et al.*,[1] Debtors. | Chapter 11<br>Case No. 24-10719 (JKS)<br>(Jointly Administered) |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM, INCLUDING FOR CLAIMS ASSERTED UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE AND OTHER ADMINISTRATIVE CLAIMS**

**THE GENERAL BAR DATE IS JULY 8, 2024 AT: 5:00 P.M. (PREVAILING EASTERN TIME) IF SUBMITTED BY HARD COPY; OR 11:59 P.M. (PREVAILING EASTERN TIME) ON JULY 8, 2024 IF SUBMITTED VIA AN ELECTRONIC PROOF OF CLAIM ON KROLL'S WEBSITE.**

On April 7, 2024 (the "Petition Date"),[2] the debtors and debtors in possession in the above-captioned cases (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court"). On June 4, 2024, the Court entered an order [D.I. 784] (the "Bar Date Order") establishing certain deadlines for filing proofs of claim in the Chapter 11 Cases of the following debtors and debtors in possession: **Debtor, Case No., EDI# (Last 4 Digits):** Number Holdings, Inc., 24-10719 (JKS), (1463); 99 Cents Only Stores LLC, 24-10721 (JKS), (1605); 99 Cents Only Stores Texas, Inc., 24-10722 (JKS), (1229); 99 Cents PropCo LLC, 24-10723 (JKS), (7843); 99 Cents HoldCo LLC, 24-10720 (JKS), (3987); Bargain Wholesale LLC, 24-10724 (JKS), (8030).

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), or a claim for Stub Rent, or a rejection damages claim (other than for leases that have not been rejected) no matter how remote or contingent such right to payment or equitable remedy may be, MUST FILE A PROOF OF CLAIM on or before **July 8, 2024** at (a) **5:00 p.m. (prevailing Eastern Time)** by sending an original proof of claim form to Kroll Inc. ("Kroll") or (b) **11:59 p.m. (prevailing Eastern Time)** via an Electronic Proof of Claim on the interface available through the "Submit a Claim" page at https://cases.ra.kroll.com/99only) (the "General Bar Date"); *provided, that,* solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a proof of claim against the Debtors is **October 4, 2024 at 5:00 p.m. (prevailing Eastern Time)** (the "Governmental Bar Date").

All entities holding claims against the Debtors arising from the rejection of executory contracts and unexpired leases of the Debtors are required to file proofs of claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website, on the date that is the later of thirty (30) days after (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors which shall be served on the affected claimant(s) or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order which shall be served on the affected claimant(s)** (the "Rejection Damages Bar Date").

All entities asserting claims against the Debtors that are affected by an amendment or supplement to the Schedules are required to file a proof of claim or amend any previously filed proof of claim in respect of the amended scheduled claim by **the later of: (i) the General Bar Date or the Governmental Bar Date, as applicable; and (ii) the date that is thirty (30) days from the date on which the Debtors serve the affected claimant(s) with notice of any amendment or supplement to the Schedules at (a) 5:00 p.m. (prevailing Eastern Time) if submitted by hard copy or (b) 11:59 p.m. (prevailing Eastern Time) if submitted via an Electronic Proof of Claim on Kroll's website** (or another time period as may be fixed by the Court) (the "Amended Schedules Bar Date").

All entities filing a request to allow any unpaid administrative expense claim against the Debtors (each, an "Administrative Claim") are required to file an Administrative Claim by **5:00 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted by hard copy or (b) **11:59 p.m. (prevailing Eastern Time) on July 8, 2024** if submitted via an Electronic Proof of Claim for on Kroll's website for Administrative Claims arising on or after the Petition Date and any time prior to **June 1, 2024** (the "First Administrative Claims Bar Date").

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent. All other Administrative Claims under section 503(b) of the Bankruptcy Code must be filed on the docket by the First Administrative Claims Bar Date or the Rejection Damages Bar Date, as applicable. Claims under section 503(b)(9) of the Bankruptcy Code and claims for Stub Rent must be filed by the General Bar Date.

Proofs of claim must be sent such that they are **actually received by the applicable Debtor (via Kroll) by the applicable Bar Date:** (a) if by overnight mail or hand delivery to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (b) if by first class mail to Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (c) if completed electronically through https://cases.ra.kroll.com/99only. Proofs of claim sent by facsimile, telecopy, or electronic mail will not be accepted and will not be considered properly or timely filed for any purpose in these Chapter 11 Cases.

ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS, BUT THAT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR PURPOSES OF VOTING AND DISTRIBUTION, UNLESS THE COURT ORDERS OTHERWISE.

A copy of the Bar Date Order and Proof of Claim Form may be obtained by contacting Kroll, in writing, at Number Holdings, Inc. Claims Processing Center c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850, or online at https://cases.ra.kroll.com/99only/. If you have questions concerning the filing or processing of claims, you may contact Kroll toll-free at (844)-712-1933 (U.S./Canada) or +1 (646)-777-2513 (International).

***BY ORDER OF THE COURT***

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Certain of the Debtors' voluntary petitions were filed on the docket shortly after midnight (ET) on April 8, 2024.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | |
|---|---|
| In re: CONVERGEONE HOLDINGS, INC., *et al.*,[1] Debtors. | Chapter 11<br>Case No. 24-90194 (CML)<br>(Jointly Administered) |

**NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF THE EFFECTIVE DATE, AND (III) RELATED BAR DATES**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 23, 2024, the Honorable Christopher M. Lopez, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization of ConvergeOne Holdings, Inc. and Its Debtor Affiliates* [Docket No. 396] (the "**Confirmation Order**") confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization of ConvergeOne Holdings, Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 328] (as modified, amended, or supplemented from time to time in accordance with its terms, the "**Plan**")[2] and approving, on a final basis, the Disclosure Statement [Docket No. 26] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**" or the "**Reorganized Debtors**").

The Effective Date of the Plan occurred on June 4, 2024. All conditions in **Article IX.A** of the Plan have been satisfied or waived pursuant to **Article IX.B** of the Plan. As set forth in **Article IX.C** of the Plan, consummation of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

Pursuant to the Confirmation Order, the Court has approved the settlement, release, injunction, and exculpation provisions in **Article VIII** of the Plan, which are now in full force and effect.

Pursuant to **Article V.C** of the Plan, unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Rejected Executory Contract and Unexpired Lease List, if any, must be filed with the Claims and Noticing Agent at the address set forth below and served on the Reorganized Debtors on or before **July 5, 2024** (*i.e.*, 30 days after the Effective Date). **Any Proofs of Claim arising from the rejection of an Executory Contract or Unexpired Lease not timely Filed with the Claims and Noticing Agent shall be automatically Disallowed without further order of the Court, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with **Article III** of the Plan.

Pursuant to **Article V** of the Plan, the Reorganized Debtors reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List (with the consent of the Required Consenting Lenders) at any time on or before **July 5, 2024** (*i.e.*, 30 days after the Effective Date) upon notice to the affected counterparty.

The Debtors or the Reorganized Debtors, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as reasonably practicable thereafter. Pursuant to **Article V.D** of the Plan, all requests for payments of Cure Claims that differ from the amounts paid or proposed to be paid by the Reorganized Debtors to a counterparty must be filed with the Court and served on the Reorganized Debtors on or before **July 5, 2024** (*i.e.*, 30 days after the Effective Date). Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Court.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than **July 19, 2024** (*i.e.*, 45 days after the Effective Date). The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows, from the Professional Fee Escrow Account, as soon as practicable after such Professional Fee Claims are Allowed.

The Plan, the Confirmation Order, the Definitive Documents, and their provisions are binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns, executors, administrators, Affiliates, officers, directors, managers, agents, representatives, attorneys, beneficiaries, or guardians, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

Copies of the Confirmation Order, the Plan, the Plan Supplement, and all documents filed in the Debtors' Chapter 11 Cases, are available, free of charge by: (a) accessing the Reorganized Debtors' restructuring website at https://dm.epiq11.com/case/c1/info; (b) contacting Epiq Corporate Restructuring, LLC (the claims, noticing, and solicitation agent retained in these Chapter 11 Cases by Court order) at (877) 295-6914 (U.S. or Canada) or +1 (971) 290-2761 (International); or (c) emailing C1-info@epiqglobal.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at https://www.txsb.uscourts.gov.

The Plan and Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and Confirmation Order in their entirety.

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at: dm.epiq11.com/case/c1/dockets. The Debtors' mailing address is 10900 Nesbitt Avenue South, Bloomington, Minnesota 55437.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan.

The New York Times

Give The Times.

Visit nytimes.com/gift or call 855-698-5273.

COMMERCIAL REAL ESTATE BUSINESS OPPORTUNITIES

COMMERCIAL & INDUSTRIAL PROPERTIES (300)

Dutchess County 342

Prime Residential with Commercial use - For Sale by owner. Located on Rt. 55, Hopewell Jct. NY Dutchess County w/ adjacent lot approx 2 acres-midway between Albany& NYC. Convenient to TSP. Call Manny @ 845-453-4420.

INVESTMENT PROPERTIES (600)

Investment Properties Other Areas 605

GREENPOINT - BROOKLYN PRIME LOCATION!! Luxury brand new construction 14 units + store fully rented with a 25 year tax abatement at a very discounted price 6.5 cap. bbglobaldev@gmail.com