## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NUMBER HOLDINGS, INC., *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: D.I. 1043** |
| | ) | |

### DECLARATION OF JOEL SCHNEIDER IN SUPPORT
### OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
### (I) IN AID OF SALE ORDER; (II) APPROVING THE ALTERNATIVE
### PURCHASE AGREEMENTS; AND (III) GRANTING RELATED RELIEF

I, Joel Schneider, hereby declare under penalty of perjury:

1.      I am the Senior Vice President of Hilco Real Estate, LLC ("Hilco Real Estate"), a diversified real estate consulting and advisory firm hired by the Debtors to assist with the sale of their owned real estate properties and lease interests.  Hilco Real Estate is located at 5 Revere Drive, Suite 206, Northbrook, Illinois.

2.      I submit this Declaration in support of the Debtors' *Motion For Entry Of An Order (I) In Aid of Sale Order; (II) Approving the Alternative Purchase Agreements; and (III) Granting Related Relief* (the "Motion").[2]

3.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances, my review of relevant documents,

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

information provided to me by Hilco Real Estate employees working with me or under my supervision, information provided to me by, or discussions with, the members of the Debtors' management team or their other advisors, or my experience as a restructuring professional. I am not being compensated for this testimony other than through payments received by Hilco Real Estate as a professional employed and retained by the Debtors in these chapter 11 cases. If called upon to testify, I could and would testify to the facts set forth herein.

**Background and Qualifications**

4.      Hilco Real Estate is a diversified real estate consulting and advisory firm that evaluates, restructures, and facilitates the acquisition and disposition of various types of real estate assets nationally.  Hilco Real Estate has substantial experience in solving complex real estate problems, assessing the potential value of commercial real estate, and devising and implementing marketing programs to monetize real estate on an individual and portfolio basis.  Hilco Real Estate has a reputation as a leader in the real estate field and has an experienced team of real estate brokers, attorneys, and analysts.

5.      I joined Hilco Real Estate in 2012 where I co-lead a team of industry leading experts in real estate valuation advisory, disposition, and asset management.  At Hilco Real Estate I have several high-level business leadership responsibilities, including leading operations of the asset sales practice, business development, and implementing and executing marketing strategies on behalf of my clients to monetize their real estate assets.  I have worked with clients across multiple industries and ranging from the strongest corporations to those in distress and/or bankruptcy and have worked on some of the largest retail/real estate restructurings, including The Great Atlantic & Pacific Tea Co. (A&P), Hostess, Southeastern Grocers, and JCPenney.  I have a bachelor's degree in public administration from Indiana University, a master's degree in City Planning from

Harvard University, a real estate broker's license for the state of Illinois and am an active member of the International Council of Shopping Centers (ICSC), the Turnaround Management Association (TMA), and the American Bankruptcy Institute (ABI).

**<u>Rosewood – the Successful Bidder – Refused to Perform</u>**

6.      Hilco Real Estate and Jefferies, LLC ("<u>Jefferies</u>"), the Debtors' investment banker, marketed the Debtors' assets, including the Rosewood Properties to potential purchasers and interested parties both before and after the Court entered the *Order Approving (I)(A) Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Remaining Assets, (B) Assumption and Assignment Procedures, (C) Form and Manner of Notice of Sale Hearing, Assumption Procedures, and Auction Results; (II) Auction and Sale Hearing Dates; (III)(A) Debtors Entry Into One or Multiple Asset Purchase Agreements, (B) Sale(s) Free and Clear of all Encumbrances, and (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 463] (the "<u>Bidding Procedures Order</u>").  As part of this process, Jefferies and Hilco Real Estate contacted hundreds of potential purchasers of the Debtors' assets, executed hundreds of NDAs with interested parties and facilitated due diligence with interested purchasers.

7.      The Bid Procedures Order established May 15, 2024 as the deadline for interested parties to submit binding Bids (the "<u>Bidding Deadline</u>").  Prior to the Bidding Deadline, on May 13, 2024, the Debtors filed the *Notice of Auction Format* [D.I. 505], which indicated that the Auction would occur on May 21, 2024, conducted through "both (i) Hilco Real Estate's Proprietary Digital Auction Platform; and (ii) by video via Zoom."

8.      Rosewood submitted its Bid on May 16, 2024, offering $4,000,000 for the Town Centre Property and $4,000,000 for the Holt Property.  At the Auction that the Debtors conducted

on May 21, 2024, Rosewood's Bids served as the Baseline Bids for each of the Rosewood Properties. As no party submitted bids at the Auction for either Rosewood Property in excess of the Baseline Bids, the Debtors, in consultation with the Consultation Parties, determined that Rosewood's Bid was the highest and otherwise best offer in respect of the Rosewood Properties. The Debtors announced this determination at the Auction and separately communicated this decision to Rosewood the following day. That same day, the Debtors filed a notice [D.I. 641] (the "Successful Bidder Notice"), designating Rosewood as the Successful Bidder in respect of the Rosewood Properties and designating Russ Group, Inc. (the "Backup Bidder") as the Backup Bidder for the Holt Property.

9.       Rosewood did not object to its Bids serving as the Baseline Bids for the Rosewood Properties, the conduct of the Auction, or to the filed Successful Bidder Notice. Further, parties had until the Sale Hearing to raise objections to the proposed sales to the Successful Bidders and no such objection was filed or raised at the Sale Hearing by Rosewood.

10.      On May 24, 2024, the Court entered the *Order (I) Authorizing the Debtors' Entry Into Asset Purchase Agreements, (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of Certain Unexpired Leases and Executory Contracts, and (IV) Granting Related Relief* [D.I. 707] (the "Sale Order"), which approved, *inter alia*, the sale of the Rosewood Properties to Rosewood pursuant to its Court-approved Asset Purchase Agreement (the "APA").

11.      Despite repeated outreach from the Debtors and their advisors, Rosewood took no steps to move forward with the Sale in the weeks following the Sale Hearing. On June 18, 2024, the Debtors delivered a notice to Rosewood "(1) reminding [Rosewood] that [it] has a binding obligation to purchase the [Rosewood] Properties and (2) advising [Rosewood] that Seller is ready,

4

willing and able to close on the sale of the [Rosewood] Properties to [you] on June 20, 2024 (the "Closing Date")".

12.     On June 21, 2024, a second notice (the "June 21 Notice") was delivered to Rosewood, notifying Rosewood that it was in default of its obligations under the APA as of the Closing Date, as more particularly set forth in the June 21 Notice. The June 21 Notice further informed Rosewood that if it did not cure such default in accordance with Section 12.2 of the APA, the Debtors would terminate the APA as provided therein and exercise all remedies available to them under the APA.

13.     Finally, on June 27, 2024, the Debtors delivered a final notice (the "Termination Notice") to Rosewood and Chicago Title and Trust Company (the "Escrow Agent") informing them that the Debtors have exercised their right to terminate the APA in accordance with Section 12.2 thereof and directing the Escrow Agent to immediately deliver the Deposit to the Debtors. However, to my knowledge, the Escrow Agent has not yet released the Deposit to the Debtors.

### The Alternative APAs

14.     Rosewood's breach of the APA forced the Debtors and their advisors to yet again canvass the market for alternative purchasers for the Rosewood Properties.  Through these efforts, the Debtors received a $4,100,000 offer from Wood for the Town Centre Property.  The Debtors and their advisors engaged in good-faith and arms' length negotiations concerning the terms of a potential sale of the Town Centre Property to Wood.  Those negotiations resulted in the Debtors and Wood agreeing to the terms of the Wood APA.

15.     The re-marketing of the Holt Property was less successful.  Despite extensive outreach by the Debtors and their advisors to obtain a bid to replace Rosewood's bid, the Debtors did not receive any new offers for the Holt Property in excess of the relevant Backup Bid.

Accordingly, the Debtors intend to proceed with the sale of the Holt Property to the Backup Bidder, who offered $900,000 for the Holt Property.

16.      The Debtors determination to pursue the Alternative APAs followed extensive negotiations and diligence, and the Debtors, in consultation with their advisors, ultimately determined that each Alternative APA was in the best interests of the Debtors.

17.      I believe that in light of the circumstances, the re-marketing process generated meaningful interest in the Rosewood Properties. With respect to the Rosewood Properties, the Alternative APAs were the highest or otherwise best actionable offers following Rosewood's breach.

18.      I believe the re-marketing of the Rosewood Properties and negotiation of the Alternative APAs were non-collusive, and conducted in good faith and at arm's-length. Based on my participation in the re-marketing process and negotiations, I believe the Debtors, Wood, and the Backup Bidder acted in good faith, at arms' length, and without collusion or fraud of any kind. To my knowledge, neither Wood nor the Backup Bidder is an insider of the Debtors. Wood and the Backup Bidder allowed the Debtors and their advisors to seek higher offers for the subject properties, but no such offers were received.

19.      I believe the Debtors worked with their counsel, their professional advisors, and other advisors, as well as, as applicable, the Consultation Parties, to implement a viable marketing process that would allow them to maximize the value of the Rosewood Properties. The Alternative APAs for the Rosewood Properties are the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Debtors' estates, for the benefit of all of the Debtors' creditors.

20.      I believe (i) the Debtors have adequately marketed the Rosewood Properties and conducted the re-marketing process in good faith and in a fair and open manner; (ii) the re-

marketing process was non-collusive and provided a full, fair, reasonable, and adequate opportunity for any interested party to conduct due diligence and make an offer to purchase either of the Rosewood Properties; (iii) the consideration provided by the Alternative APAs constitute the highest and best offers for the Rosewood Properties; and (iv) taking into consideration all relevant factors and circumstances, no viable party offered to purchase the Rosewood Properties for greater economic value to the Debtors or their estates than Wood and the Backup Bidder.

21.     I understand the Debtors are the sole and lawful owner of the Rosewood Properties. It is my understanding and belief that Wood and the Backup Bidder would not have entered into the Alternative APAs, respectively, and would not consummate the transactions contemplated thereby, if (a) the transfers of the Rosewood Properties were not free and clear of all Claims or (b) Wood or the Backup Bidder would, or in the future could, be liable for or subject to any such Claims.

22.     I understand that Wood and the Backup Bidder will not consummate the respective transactions contemplated by the Alternative APAs, unless this Court expressly orders that none of Wood or the Backup Bidder, their respective affiliates, their respective present or contemplated members or shareholders, or the Rosewood Properties will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise, directly or indirectly, any Claims.

## <u>Conclusion</u>

23.     Based on my experience and personal knowledge of the Debtors' commercial circumstances, the pre- and post-petition marketing processes, and the sale process, and the re-marketing process, and information provided to me by other parties, including the Debtors and its

advisors, I believe that the Debtors conducted these processes without collusion and that the proposed sale transactions are the highest and best sale transactions available under the circumstances for the Rosewood Properties.

[*Remainder of page left intentionally blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 19, 2024

/s/ *Joel Schneider*

**Joel Schneider**
SVP
Hilco Real Estate