## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) ) ) | Case No. 24-10719 (JKS) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) **Re: D.I. 1043, 1068, 1069** |

**DEBTORS' (I) OBJECTION TO MOTION OF ROSEWOOD
GROUP LLC FOR ENTRY OF ORDER ENFORCING BIDDING
PROCEDURES ORDER, MODIFYING SALE ORDER, AND
DIRECTING RETURN OF GOOD FAITH DEPOSIT AND
(II) REPLY TO ROSEWOOD GROUP LLC'S OBJECTION TO
DEBTORS' MOTION FOR ENTRY OF AN ORDER IN AID OF SALE ORDER**

The above-captioned debtors and debtors in possession (the "Debtors") hereby submit this (i) objection to the *Motion of Rosewood Group, LLC for Entry of an Order Enforcing Bidding Procedures Order, Modifying Sale Order, and Directing Return of Good Faith Deposit* [D.I. 1068] (the "Rosewood Motion") and (ii) reply to the *Rosewood Group LLC's Objection* to *Debtors' Motion for Entry of an Order (I) In Aid of Sale Order; (II) Approving the Alternative Purchase Agreements; and (III) Granting Related Relief* (the "Rosewood Objection" and, together with the Rosewood Motion, the "Rosewood Pleadings") [D.I. 1069] and, in support thereof, respectfully represent as follows:

### Background

1. Rosewood's actions here—including its refusal to consummate its binding APA—are the product of nothing more than a case of buyer's remorse. Rather than admit that it had a

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents HoldCo LLC (3987); (iii) 99 Cents Only Stores LLC (1605); (iv) 99 Cents Only Stores Texas, Inc. (1229); (v) 99 Cents PropCo LLC (7843); (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

change of heart, Rosewood attempts to argue that it was late to the process, confused, and never submitted a binding Bid in the first place. However, the record clearly shows that Rosewood (a) had full knowledge of the timing, the bidding procedures and the binding nature of its bid and deposit and (b) was an active and engaged participant in the entire bidding, sale and auction process. In fact, Rosewood received exactly what it bargained for—a binding contract to purchase the Rosewood Properties for the allocated consideration set forth in its binding Bid. Nonetheless, for whatever reason, after submitting its signed contract and tendering its good-faith deposit, Rosewood subsequently unilaterally decided that it was no longer interested in purchasing these properties and, despite the best efforts of the Debtors and their advisors to close the sale, Rosewood simply refused to fulfill its contractual obligations.

2.     Now, two months after the completion of the Auction, the entry of the Sale Order designating Rosewood as the Successful Bidder (which Rosewood had notice of), and the closing of all other sales of the auctioned Assets, Rosewood is attempting to persuade the Court to excuse its actions (and inactions) and instead make the Debtors' estates bear the cost of Rosewood's defaults. Rosewood should not be permitted to manipulate the bankruptcy process in this way, and the Debtors request that the Court: (a) deny the Rosewood Motion and (b) grant the relief sought in the *Debtors' Motion for Entry of an Order (I) In Aid of Sale Order; (II) Approving the Alternative Purchase Agreements; and (III) Granting Related Relief* [D.I. 1043] (the "Debtors' Motion").

**Objection and Reply**

3.     Rosewood offers four reasons as to why it should not be required to close on its binding Bid and, accordingly, is entitled to the return of its Good Faith Deposit. However, each of Rosewood's allegations mischaracterizes reality and is nothing but an effort to retroactively

give itself a free option to purchase certain properties without any negative consequences for failing to live up to its end of the bargain.

- *First*, Rosewood claims that it never submitted a binding Bid;

- *Second*, Rosewood argues that it could not have been declared a "Successful Bidder" for any property because it had not been informed that it was a "Qualified Bidder";

- *Third*, Rosewood alleges that its "Draft APA" was improperly altered by the Debtors (the "Updated APA") when the three properties with respect to which Rosewood was not the Successful Bidder were removed in alleged violation of section 2.4 of the APA; and

- *Fourth*, Rosewood offers the fact that it "did not bid at the Auction" as some sort of proof that it never participated in the Auction and thus could not have been the Successful Bidder for any property.

Notably, of the seventy-seven parties that submitted Bids, the sixty-three parties who were registered to bid in the digital Auction and the twenty-seven parties who were declared a Successful Bidder with respect to owned properties, no participant (other than Rosewood) expressed confusion or has raised a similar objection to their status as a Qualified Bidder, the binding nature of their submitted Bid, the "alteration" of the APA to remove the properties for which they were not the best or highest bid, or their designation as a Successful Bidder with respect to those properties for which they were the highest or best Bid at the conclusion of the Auction.

**I.      Rosewood's APA Was Binding.**

4.      Rosewood, after "tighten[ing] [their] numbers and dial[ing] in the buildings [they were] interested in", submitted to the Debtors on May 16, 2024 a binding bid consistent with the Bidding Procedures. *See* Declaration of Stephen Madura In Support of the Debtors' Motion and

Objection (the "Madura Declaration") filed contemporaneously herewith, Exhibit 2. Rosewood's bid included (a) a signed APA, (b) a signed escrow agreement, (c) proof of funds, and (d) a good faith deposit (which was clearly stated to them on the same email chain as their bid) to be refundable only "if you are not the Successful Bidder or Next Highest Bidder." Rosewood, nevertheless, argues that it never submitted a binding Bid because its APA was not properly executed and had some blanks. See Rosewood Motion at 10. Rosewood's allegation that its APA was not binding because it was "not physically sign[ed]" (Rosewood Motion at 36) defies logic. The APA was, indeed, digitally signed. See Rosewood Motion, Exhibit A at 41; Madura Declaration at 9. Additionally, Rosewood's representative who submitted the APA Documentation (as defined below) asked in his cover email: "[p]lease let me know if this is suitable and if there are any *further* signatures needed I will relay it back to ownership." See Madura Declaration, Exhibit 2, Ben Fletcher email May 16 11:32 PM (emphases added). No additional signatures were required.

5.  Moreover, by executing the APA Rosewood acknowledged the "Representations and Warranties," which provided that Rosewood (a) is "an experienced and sophisticated purchaser of commercial real estate projects such as the Property," (b) had "a full and complete opportunity to (i) review all information and documentation relating to the Property made available to Buyer by or on behalf of Seller and (ii) conduct such other investigations, examinations, inspections and analyses of the Property as Buyer has deemed necessary or appropriate," (c) "has not relied upon any statements, representations or warranties by any Seller," and (d) that the APA "constitutes the valid and legally binding obligation of Buyer, enforceable against Buyer in accordance with its terms." See Madura Declaration, Exhibit 3, APA Article 8. These representations and warranties should not have been surprising for a buyer like Rosewood, which

boasts over $600 million invested in real estate and real estate projects and an average deal size of $25 million. *See* rosewoodgroupca.com; "Rosewood At A Glance" (attached as **Exhibit A** hereto).

6. Rosewood's actions prior to being declared the Successful Bidder similarly show that it fully understood how the process worked and that its Bid on May 16th would be ***binding and irrevocable***. Rosewood had full access to the Bidding Procedures through the Hilco data room. *See* Madura Declaration at 7. The Bidding Procedures clearly stated that to participate in the Auction any bid must be irrevocable. *See* Bidding Procedures at VII. In fact, as provided for pursuant to the Bidding Procedures, Rosewood first submitted a non-binding indication of interest (the "**IOI**") (see Madura Declaration, Exhibit 1), which included multiple references to its non-binding nature, identified eight properties Rosewood was potentially interested in, and included the Bidding Procedures Motion as an exhibit—a clear acknowledgment of Rosewood's knowledge of and receipt of the Bidding Procedures. Rosewood then asked for an extension of the Bid Deadline, after which it submitted its bid with a signed APA, listing five properties, accompanied by a Deposit, proof of funds and an executed escrow letter (collectively, the "**APA Documentation**"). *See* Madura Declaration at 9. Any claim that their Bid on May 16th was yet another non-binding "expression of interest" rings hollow. As a sophisticated real estate market participant, [2] Rosewood surely would not have expected that the process run by the Debtors would include deadlines for the submission of ***two*** different non-binding indications of interest. *See* Bidding Procedures VII.m. Unlike its IOI, nothing in its May 16th bid indicated that its executed APA was not binding, revocable, or otherwise incomplete.

---

[2] The Rosewood Group describes itself as "a privately held commercial real estate investment and development company based in Southern California. With over 40 years of experience in the industry," with a "focus [] on opportunistic investments in Downtown Los Angeles, South Bay, San Gabriel Valley, and the Inland Empire, with a particular emphasis on low-coverage, multi-tenant warehouse buildings and retail shopping centers" and "[a] group [which] encompasses a diverse acquisition team, land entitlement team, pre-construction consultants, property management, and legal counsel. This allows us to have a hands-on approach to all aspects of our projects." See HOME | Rosewood Group LLC | Industrial Development | California (rosewoodgroupca.com).

## II. Rosewood Was a Qualified Bidder

7. Rosewood was deemed a Qualified Bidder, entitled to participate in the Auction by virtue of its submission of its executed APA Documentation in compliance with the Bidding Procedures. Bidding Procedures, VII. "Bid Requirements". On May 20, in advance of the Auction, Rosewood, like all other Qualified Bidders, received an email with instructions for participation in the Auction. *See* Madura Declaration at 11. This email contained an attachment titled the "Auction Information Sheet" which provided registration instructions to the Qualified Bidders. Among other things, the Auction Information Sheet informed Rosewood that "[e]ach Qualified Bidder will be assigned a bidder number." Subsequently, the Hilco auction platform generated a Rosewood account with their assigned bidder number. *See* Madura Declaration at 11. As Rosewood itself acknowledges, under the Bidding Procedures, only Qualified Bidders were allowed to participate in the Auction, so this information was logically provided exclusively to Qualified Bidders. The receipt of these instructions and the assignment of a bidder number could not be interpreted in any other way but to make it clear to Rosewood that it was a Qualified Bidder. Any doubts as to its status as a Qualified Bidder—to the extent any lingered—should have been dispelled once Rosewood successfully logged onto the Auction platform during the Auction. *See* Madura Declaration at 12.

8. Nevertheless, even if Rosewood had never received notice of its status or logged into the Auction, the Debtors had every right under the Bidding Procedures to declare Rosewood the Successful Bidder following submission of their binding Bid. *See* Bidding Procedures Order at ¶ 22; Bidding Procedures, VII.m.

## III. There Was No Improper Alteration of Rosewood's APA.

9. Next, Rosewood alleges that the Debtors made unauthorized changes to its APA. This again contradicts the facts. The only alterations that were made were the removal of the

properties for which other bidders had submitted the winning bid(s) and the corresponding adjustment of the purchase price. These were precisely the types of "alterations" contemplated by the Bidding Procedures–-indeed, that is the reason for the requirement that the bidders allocate the purchase price among different properties included in a single Bid and asset purchase agreement (which Rosewood did).

10. The Bidding Procedures allowed bidders to bid on individual properties, as well as a combination of properties. *See* Bidding Procedures VII.b. Neither at the IOI or the binding Bid stage of the process, did Rosewood indicate that it was submitting an all-or-nothing, package offer. In fact, the nearly wholesale change in list of properties identified between Rosewood's IOI and binding Bid submissions certainly did not indicate an attachment to a specific package of assets by Rosewood (only the Holt Property appeared in both of Rosewood's submissions). All bidders understood that they may emerge as Successful Bidders only with respect to those properties for which their Bid was the highest or otherwise best and that their APA would have to be adjusted accordingly. Again, no other bidder seemed to misunderstand this aspect of the process, the binding nature of the APA they submitted in connection with the Bidding Deadline, or the Debtors right to "alter" the purchased properties and purchase price in the APA based on the outcome of the Auction.

11. That is also the reason that no additional "acceptance" of the Updated APA was required. Rosewood's Bid was irrevocable from the time it had been submitted, and the entirely anticipated alterations in the Updated APA—reflecting the fact that it was the Successful Bidder with respect to only two out of five properties listed in its Bid—did not alter the binding and irrevocable nature of its Bid. Therefore, no new "offer" and "acceptance" were required.

12. Rosewood also appeals to Section 2.4 of the APA to argue that it had submitted an all-or-nothing bid for a combination of properties. This appeal is unavailing. Section 2.4 is in the

standard form of the Debtors' APA (and not added by Rosewood) and is obviously there for the protection *of the Debtors*. Section 2.4 of the APA provides that once a bidder has submitted a binding Bid for several properties, the offer to purchase all such properties is irrevocable, and should such offer become the Successful Bid with respect to *any* of the applicable properties, they have no right to pick and choose amongst those properties.

13. Rosewood (intentionally or otherwise) misreads the language of clause 2.4, which states that "… Buyer has no right to purchase, and Seller has no obligation to sell, less than all of the Property… ." Rosewood seems to interpret the clause to say that a Buyer cannot be obligated to purchase anything less than all of the properties identified in their APA, when in fact it states that *the Seller* is the party who is not obligated to sell less than all of such properties. Section 2.4 is clear that a Buyer—in this case Rosewood—cannot opt out of purchasing all of the properties it had listed in its Bid (if its Bid is successful), *not* that the Buyer has no obligation to close on any such properties if their Bid is not successful with respect to others.

IV. **Rosewood Participated in the Auction**

14. The fact that Rosewood chose ***not to bid*** at the Auction, does not somehow mean that it did not ***participate*** in the Auction. Hilco's records indicate that a representative of Rosewood logged on to the platform multiple times during the Auction and had the opportunity to see that Rosewood's Bids were the baseline bids for the Rosewood Properties at the Auction. *See* Madura Declaration at 12. Given that Rosewood was already the leading bidder with respect to these properties, Rosewood would have no need to continue bidding against itself at the Auction. By submitting the binding Bids that served as the baseline bids at the Auction, Rosewood clearly did participate in the Auction.

**Conclusion**

15.     Rosewood submitted a binding Bid with respect to the Rosewood Properties and was properly declared the Successful Bidder.  While it is unfortunate that Rosewood is unwilling to live up to its contractual obligations to purchase these properties for the agreed upon purchase prices, Section 12.2 of the APA provides the remedy for such situations by allowing the Debtors to retain Rosewood's Deposit as liquidated damages.

WHEREFORE, the Debtors respectfully request that the Court grant the Debtors' Motion, deny the Rosewood Motion, and direct the Escrow Agent to release of Rosewood's Deposit to the Debtors.

| | |
|---|---|
| Dated: August 7, 2024<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Jonathan M. Weyand*<br>Robert J. Dehney, Sr. (No. 3578)<br>Matthew O. Talmo (No. 6333)<br>Jonathan M. Weyand (No. 6959)<br>Erin L. Williamson (No. 7286)<br>1201 N. Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:   (302) 658-9200<br>Facsimile:    (302) 658-3989<br>Email:          rdehney@morrisnichols.com<br>                     mtalmo@morrisnichols.com<br>                     jweyand@morrisnichols.com<br>                     ewilliamson@morrisnichols.com<br><br>- and -<br><br>**MILBANK LLP**<br><br>Dennis F. Dunne, Esq. (admitted *pro hac vice*)<br>Michael W. Price, Esq. (admitted *pro hac vice*)<br>Lauren C. Doyle, Esq. (admitted *pro hac vice*)<br>Brian Kinney, Esq. (admitted *pro hac vice*)<br>55 Hudson Yards<br>New York, New York 10001<br>Telephone:   (212) 530-5000<br>Facsimile:    (212) 530-5219<br>Email:          ddunne@milbank.com<br>                     mprice@milbank.com<br>                     ldoyle@milbank.com<br>                     bkinney@milbank.com<br><br>*Co-Counsel for Debtors in Possession* |