IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| Number Holdings, Inc.[1], | ) | Case No. 24-10719 (JKS) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hearing Date: January 24, 2025 at 10:00 a.m. |
| | ) | Objection Deadline: January 17, 2025 at 4:00 p.m |
| | ) | |

### MOTION OF SHAHNAZ FOROUTANZAD LEVYIM (I) FOR RELIEF FROM THE AUTOMATIC STAY AND (II) TO PERMIT FILING OF A PROOF OF CLAIM AFTER THE BAR DATE

Shahnaz Foroutanzad Levyim ("Levyim" or "Movant"), by and through her undersigned counsel, files this motion (i) for relief from the automatic stay to allow prosecution of a personal injury claim to be pursued in California against one or more of the above-captioned debtors ("Debtors"), under 11 U.S.C. § 362(d) and pursuant to Fed. R. Bankr. P. 4001(a), 9014 and Del. Bankr. L.R. 4001-1 and (ii) to permit filing a proof of claim after the bar date pursuant to Fed. R. Bankr. P. 9006(b). In support of the Motion, Levyim states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Pursuant to 28 U.S.C. § 1409, venue of this Motion is proper in this Court.

4. Pursuant to Del. Bankr. L.R. 9013-1(f), Movant does consent to the entry of final orders or judgments by the Court with respect to the Motion if it is determined that the Court,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents HoldCo LLC (3987); (iii) 99 Cents Only Stores LLC (1605); (iv) 99 Cents Only Stores Texas, Inc. (1229); (v) 99 Cents PropCo LLC (7843); (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

Motion for Relief from the Automatic Stay and to File Claim (Levyim)

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Movant does not, however, consent to the adjudication of her claim by this Court nor does she concede that jurisdiction is proper as to such adjudication under 28 U.S.C. § 1334 or otherwise.

## FACTUAL BACKGROUND

### A. The Accident and the State Court Action

5. On or about January 9, 2020, Ms. Levyim was injured (the "Accident") at the 99 Cents Only store located at 11040 W. Picpo Blvd, Los Angeles, CA 90064 (the "Premises") when, suddenly and without notice, Levyim was injured when she tripped over a box left on the floor in the aisle of the on the Premises near a display, causing her to trip and fall to the ground, landing on her right knee face forward. As she was falling, Mrs. Levyim tried to hold onto her shopping cart with her right arm, however, her right arm got caught in the cart as she fell causing her injury to her right arm and shoulder.

6. On information and belief, at all relevant times the Premises were owned and/or operated by Debtor 99 Cents Only Stores LLC and/or affiliate(s) thereof ("99 Cents Only"); Sapphire Way Properties, LP; and Chesterfield Commons, LLC.

7. As a result of the negligence of 99 Cents Only and the above-named entities and their respective employees, Levyim became afflicted with serious injuries.

8. In particular, and without limitation, Levyim sustained a displaced comminuted fracture across the mid-pole of the patella, associated with lipohemarthrosis of the suprapatellar bursa. On January 15, 2020, she underwent open reduction and internal fixation (ORIF) surgery of the patella fracture with Devon M. Jeffcoat, M.D. at UCLA Ronald Reagan Medical Center. On March 17, 2021, Ms. Levyim underwent a subsequent surgery to have the hardware removed from her right knee as it was causing her a significant amount of pain. Following her second

"State Court Action") related to her injuries consequent to the Accident.  Ms. Levyim is represented by Daniel D. Geoulla Esq. of B&D Law Group, APLC ("Trial Counsel") in the State Court Action.

12. As discussed above, Movant believes and avers that the damages she has sustained as a result of the Accident materially exceed $300,000.

**B.  The Number Holdings, Inc. Bankruptcy**

13. On April 7, 2024 and April 8, 2024, Number Holdings, Inc. and five (5) affiliated debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  The cases are pending before the Honorable J. Kate Stickles, and are jointly administered under Case No. 24-10719.

14. On April 11, 2024, the Debtors filed their Consolidated List of Creditors (D.I. 143).  Ms. Levyim does not appear on this list.

15. On or about April 23, 2024, the Debtors' claims agent, Kroll Restructuring Administration LLC ("Kroll") caused Notice of Chapter 11 Bankruptcy Cases (the "Bankruptcy Notice) to be served on a list of parties.  See Affidavit of Service filed 5/17/2024 D.I. 587. Neither Ms. Levyim nor Trial Counsel appears on the service list.

16. Kroll subsequently filed certain supplemental affidavits of service of the Bankruptcy Notice (D.I. 867, 948).  Neither Ms. Levyim nor Trial Counsel appears on the service lists attached to these affidavits.

17. In any event, neither Ms. Levyim nor Trial Counsel has any memory or record of receiving notice of the bankruptcy.

surgery, Ms. Levyim was admitted again for 14-days to California Rehab Institute for physical rehabilitation facility, where she could receive around the clock care due to her inability to be mobile. In addition to her right knee injuries, Mrs. Levyim also sustained injuries to her right shoulder which was made worse by having her use a walker post-op.  An MRI study of her right shoulder revealed a high-grade near full-thickness anterior to medial tear. Ms. Levyim will require a complete knee replacement as a result of the injuries as she continues to have pathology and symptomology.

9. Therefore, in addition to Ms. Levyim's current special damages of at least $253,608.00, she requires a total knee replacement with a minimum $350,520.00 to a maximum of $527,600.00 for total cost of surgery, anesthesiologist, hospital fee, orthopedic implants and post operative rehabilitation.  In addition, Mrs. Levyim requires a right shoulder arthroscopy, subacromial decompression and rotator cuff repair surgery, approximately $85,000.00 for the total cost of surgery, orthopedic implants and postoperative rehabilitation.  Ms. Levyim also has to endure the dreadful appearance of a large permanent scar, measuring over 10 inches in length directly on the front of her right knee.  Furthermore, Ms. Levyim's right knee has vast effusion and enlarged due to the significant ongoing pain to her right knee. As such, her right knee is permanently disfigured.

10. Therefore, Ms. Levyim's total medical specials are at least $866,208.00 and general damages of at least $500,000 for past and future pain and suffering including but not limited to the permanent scarring and disfigurement of her right knee.

11. On January 7, 2022, Movant commenced an action against "99 Cents Only Stores"; 99 Cents Ony Stores, LLC; Sapphire Way Properties, LP; Chesterfield Commons, LLC; and Does 1 to 100 (collectively, the "Defendants") by filing a Complaint in the Superior Court of California, County of Los Angeles (the "State Court"), which is pending at 22STCV00833 (the

18. On May 22, 2024, Debtors filed schedules for 99 Cents (D.I. 655). Ms. Levyim is scheduled on Schedule E/F [3.1746]] as holding a contingent, unliquidated and disputed claim. Her address is not listed.

19. On May 15, 2024, the Debtors filed a motion to establish bar dates (the "Bar Date Motion", D.I. 565).

20. The Court granted the Bar Date Motion by Order dated June 4, 2024 (the "Bar Date Order", D.I. 784). The Bar Date Order established July 8, 2024 as the general bar date (the "Bar Date") for filing pre-petition claims.

21. Debtors filed a notice of the bar date (the "Bar Date Notice", D.I. 793) on June 5, 2024.

22. On June 24, 2024, Kroll filed an affidavit of service of the Bar Date Notice (D.I. 861). Ms. Levyim does appear on Exhibit "D" to the service lists attached to that affidavit. Her address is not listed. Trial Counsel is not listed in that affidavit nor is he (or Ms. Levyim) listed in certain supplemental affidavits of service (D.I. 870; D.I. 981; D.I. 1134).

23. If the Bar Date Notice was sent to Ms. Levyim herself, she stresses that she had been dealing with her husband's sudden onset of late-stage cancer. She was the sole caregiver for her husband who passed away last week. Her own injuries consequent to the Accident have also preoccupied her time and attention.

24. In any event, Ms. Levyim and Trial Counsel have no record or recollection of ever receiving notice of the Bar Date.

25. The Debtors filed their plan and disclosure statement (the "Disclosure Statement", D.I. 1534) on November 27, 2024. According to the estimated chart of distribution (Disclosure Statement at 3-6), general unsecured claims are estimated to be between $650,000,000 and $1,000,000,000, which explains most of the "swing" in the estimated dividend of .5% to 2%.

**RELIEF REQUESTED AND REASONS THEREFOR**

I. **LEVYIM SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY TO PURSUE THE STATE COURT ACTION**

26. By virtue of 11 U.S.C. § 362(a), the commencement of or prosecution of any action against the Debtors has been stayed pending a hearing on this Motion.

27. Section 362(d) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including lack of adequate protection of an interest in property of such part in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

28. In determining whether cause exists to lift the stay to permit a party to pursue an action outside of the Bankruptcy Court, this Court may consider whether:

a. Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

b. The hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and

c. The creditor has a probability of prevailing on the merits.

*In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *see also American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993); *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.)*,

2000 Bankr. LEXIS 1322, *15 (Bankr. D. Del. 2000); *Save Power Limited v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.),* 193 B.R. 713, 718 (Bankr. D. Del. 1996). Further, courts are directed to consider the following legislative history:

> It will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

*Rexene Products*, 141 B.R. at 576; *In re Wilson*, 85 B.R. 722, 728-29 (Bankr. E.D. Pa. 1988) (citing S. Rep. No. 989, 95th Cong., 2d. Sess. 50, reprinted in [1978] *U.S. Code Cong. & Ad. News* 5836).

29. The legislative history of section 362 indicates that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977) *U.S. Code Cong. & Admin. News*, pp. 5787, 6300. *See also In re Rexene*, 141 B.R. at 576 ("cause" for relief was found in order to allow civil plaintiffs to proceed with a class action against the debtor because discovery was nearly complete, both parties were nearly ready for trial prior to the bankruptcy filing, trial of the claim in bankruptcy court would be burdensome to plaintiffs and risk unnecessary, duplicative litigation, and plaintiffs had at least some probability of success on merits of suit); s*ee also In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 838 n. 8 (Bankr. S.D.N.Y. 1990) (citing various examples of "cause" to permit litigation in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claims).

30. This Court, in the *Continental Airlines* decision referred to above, set forth the following framework for analyzing motions for relief from the automatic stay:

> There is no rigid test for determining whether sufficient cause exists to modify an automatic stay. Rather, in resolving motions for relief for "cause" from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing

>interests of the debtor and the Movant. In balancing the competing interests of the debtor and the Movant, Courts consider three factors: (1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted. *See Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)* 938 F. 2d 731. 734-37 (7th Cir. 1991).

*In re Continental Airlines*, 152 B.R. at 424.

31. Application of the standards set forth in the case law here weighs overwhelmingly in favor of granting stay relief. The prejudice to Movant in forcing her to pursue claims in Delaware, or not pursing these claims at all until possibly after this bankruptcy case is fully administered, is manifest. Most if not all witnesses and parties are located in California. And in any event, because Movant's claim is in the nature of personal injury, this Court lacks jurisdiction to adjudicate that claim. 28 U.S.C. § 157(b)(5).

32. By contrast, adjudication of Movant's claims in a commercial bankruptcy such as this would have no discernable effect on the administration of the Debtors' cases.

33. As to probability of success on the merits, this Court need not conduct a 'mini-trial' to determine the merits of the case, even in fairly complex cases. *In re Adelphia Commun. Corp.,* 285 B.R. 580, 595 (Bankr. S.D.N.Y. 2002) vacated, 298 B.R. 49 (S.D.N.Y. 2003) ("The fact that allegations have not been proven is more than a 'technical consideration[ ],' and this Court, like most bankruptcy courts, is ill-suited to conducting mini-trials on insureds' culpability incident to determining their entitlement to relief from the stay on access to the D & O policy proceeds that were put in place, at least in part, to help them in litigation to determine that very issue."). Rather, this prong merely requires a showing that the cause of action has some merit.

34. In this case, Levyim was injured as a result of the negligence of the Debtors. This is a personal injury action like many others and no detailed showing is required to obtain stay relief in such cases. There is little doubt that Levyim's injuries were the result of Debtors' negligence.

35. Ms. Levyim understands that her claims may be covered, in part or in whole, under certain liability policies with Safety National. From the record in this case, it appears that many of such policies contain a $300,000 per claim self-insured retainage ("SIR). Preliminarily, as the State Court Action has been pending for three years, it is likely that any such has been materially reduced. Second, as noted above, Ms. Levyim sustained very serious injuries as a result of the Accident and her claim undeniably worth well in excess of $300,000.

## II.   LEVYIM SHOULD BE PERMITTED TO FILE A PROOF OF CLAIM AFTER THE BAR DATE.[2]

### A. Movant, a Known Creditor, to the Extent She Did Not Receive Actual Notice, is not Bound by the Bar Date.

36. The sufficiency of notice to a creditor depends on whether the creditor's identity is "known" or "unknown." As to "known" creditors "due process entitl[es] them to actual notice of the bankruptcy proceedings." Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir. 1995). As to "unknown" creditors, notice by publication may be "sufficient to satisfy the requirements of due process . . . " Id.

37. A known creditor --

> is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988). An "unknown" creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].''" Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 94 L. Ed. 865, 70 S. Ct. 652 (1950). A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983).

Chemetron Corp. v. Jones, 72 F.3d at 346.

---

[2] Movant understands that claimants seeking to liquidate their claims pre-confirmation to recover insurance proceeds are often asked or required to disclaim any recovery from the Debtors' estates as a condition of obtaining stay relief. In filing this request to file a proof of claim after the Bar Date, Movant is not stating that she would not consider such a resolution but at this time reserves all of her rights.

38. Movant is a "known" creditor under these standards as she appears on the Debtors' schedules.

39. To the extent that Movant was not provided with actual notice of the Bar Date, Movant's rights cannot be affected by the Bar Date. In re Dewey Beach Enters., Inc., 110 B.R. 681, 684 (Bankr. D. Del. 1990) (Balick, J.) ("In those instances where no prior notice of the bar date has been given, enlargement of the time period may be constitutionally required. In re Harbor Tank Storage Co., 385 F.2d 111, 114 (3d Cir. 1967)").

**B. In The Alternative, Movant Did not File a Proof of Claim Due to Excusable Neglect.**

40. To the extent that the Court holds that the Bar Date was binding on Movant, Movant asserts that her not filing a proof of claim by the Bar Date was due do excusable neglect.

41. Fed. R. Bankr. P. 9006(b)(1)(2) provides that, except as to certain circumstances not present here, "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

42. The Supreme Court in Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993) articulated a test for determining whether "excusable neglect" exists under Rule 9006(b):

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Pioneer Investments Services, 507 U.S. at 395.

43.     Following <u>Pioneer</u>, the Court of Appeals for the Third Circuit in <u>In re O'Brien Environmental Energy, Inc.</u>, 188 F.3d 116 (3d Cir. 1999) reversed the decisions of the Bankruptcy Court and District Court that held that an administrative claimant had not shown "excusable neglect."

44.     In reaching this decision, the Court held that the mere fact that the debtor had not accounted for the claim at issue was insufficient to show prejudice under <u>Pioneer</u>. The Court held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." <u>In re O'Brien</u>, 188 F.3d at 127.

45.     In determining whether prejudice exists, the Court looked to "the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims."

46.     The Court in <u>O'Brien</u> then went on to analyze the concept of excusable neglect. The Court reasoned that the concept included actions that involved a lack of care on the part of the claimant. <u>Id</u>. at 128. <u>See also</u> <u>In re The Grand Union Company</u>, 204 B.R. 864 (Bankr. D. Del. 1997) (Walsh, C.J.) (excusable neglect found where claimants did not effectively communicate with their counsel concerning the bar date notice).

47.     Application of the standards in <u>Pioneer</u> shows that Movant should be permitted to file a proof of claim after the Bar Date.

**1. There is Zero Danger of Prejudice to the Debtors or their Estates.**

48.     The first factor that courts should consider when determining whether to allow a late filed claim is the danger of prejudice to the debtor. <u>Id.</u> When assessing this factor, a debtor

is *not* prejudiced by a late filed claim simply because it did not account for such claim in the funding of its plan of organization or liquidation. In re O'Brien, 188 F.3d at 126 (citing In re R.H. Macy & Co., 166 B.R. 799, 802 (S.D.N.Y. 1994) (the depletion of resources otherwise available for timely filed claims does not constitute prejudice).

49. In this case, the authorized filing of a proof of claim will not prejudice the Debtors or their estates because (i) the Debtors' proposed Plan is a liquidating "pot" plan and the addition of a single additional claim against up to $1 billion of unsecured claims will make no practical difference in this case; (ii) similarly, there are thousands of pre-petition unsecured claims against the Debtors, the addition of one more would not, in light of the magnitude of the Debtors' cases, measurably dilute distributions to other creditors; (iii) Debtors would still have the ability to defend against the merits of the claim; and (iv) because the Debtors knew about the claim as it appears on the Debtors' schedules, the Debtors cannot claim surprise from the filing of a proof of claim by Movant. Indeed, the State Court Litigation has been pending for three years.

50. The Debtors may offer a "floodgates" argument. The Court should view any such argument with skepticism. Thus far, the docket does not reflect that large numbers creditors have moved for the right to file claims after the Bar Date. In any case, any other such motions may be addressed if and when they are filed on a case-by-case basis.

**2. The Length of Delay Is Not Material.**

51. The second factor that courts consider is the length of delay and the effect that the filing will have on judicial proceedings. Pioneer, 407 U.S. at 395.

52. In this case, the length of Movant's delay (less than six months) is not significant in view of the stage of the Debtors' cases. Compare to Greyhound Lines, Inc. v. Rogers (In re Eagle Bus. Mfg, Inc.), 62 F.3d 730 (5th Cir. 1995) (a six to eight month delay for filing a late

proof of claim was not egregious). These cases are far from being fully administered and there has been no distribution to creditors. Accordingly, Movant's delay in not material.

### 3. The Reason for the Delay Is Excusable.

53. The third factor that courts consider is the reason for the delay. Pioneer, 407 U.S. at 395. When assessing whether a creditor's failure to timely file a claim is based upon excusable neglect, courts have acknowledged that "the mere use of the word neglect encompasses omissions caused by carelessness." In re O'Brien, 188 F.3d at 125. When determining whether such carelessness is "excusable," courts should take into account all of the relevant circumstances surrounding the party's omission. Id. (citing Pioneer, 407 U.S. at 395 – "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

54. In In re Texas Tamale Co., 219 B.R. 732 (Bankr. S.D. Tex. 1998), the court did not allow a late proof of claim filing when the creditor acted in bad faith by deliberately waiting to assert his claim in order to destroy the debtor's chances of completing its confirmed plan and to harass the debtor.

55. Here, at the time that the Bar Date Notice was issued, Movant had been dealing with her own severe injuries consequent to the Accident as well as her husband's cancer diagnosis. In any event, Movant did not deliberately wait to file. Movant does not appear to have received notice of the bankruptcy filing. While she is listed as a recipient of the Bar Date Notice at an undisclosed address, Movant was not even aware of the bankruptcy cases until after the Bar Date. Moreover, it does not appear that Trial Counsel was served with either notice of the bankruptcy or the Bar Date Order. In any event, as Movant did not have actual knowledge of the Bar Date until after it had passed, any "neglect" here was minimal and fully excused.

### 4. Movant Has Always Acted in Good Faith

56. Finally, Movant has always acted in good faith. Movant had absolutely no reason to delay this matter.

57. No prior request for the relief sought herein has been made.

WHEREFORE, Movant requests that the Court approve the order attached hereto, granting relief from the automatic stay to permit her to prosecute the State Court Action, and granting such other and further relief as this Court deems just and proper.

DATED:  January 10, 2025

*/s/ Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:    (302) 654-0248
Facsimile:     (302) 654-0728
Email:           loizides@loizides.com

*Counsel for SHAHNAZ FOROUTANZAD LEVYIM*