**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | Case No. 24-10719 (JKS)<br>(Jointly Administered) |
| Debtors. | **RE: Docket No. 1605** |

**SAFETY NATIONAL CASUALTY CORPORATION'S OBJECTION AND
RESERVATION OF RIGHTS TO THE JOINT CHAPTER 11 PLAN OF NUMBER
HOLDINGS, INC., AND ITS DEBTOR AFFILIATES**

Safety National Casualty Corporation ("Safety National"), by and through counsel, respectfully files this objection (the "Objection") to the Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates [Dkt. No. 1605] (the "Plan"), and in support of this Objection would show the Court as follows:

## I.      INTRODUCTION

1.      The Debtors' Plan attempts to have its cake and eat it too regarding its legacy insurance policies with Safety National. While the Plan purports to be insurance neutral, certain provisions in the Plan actually seek to alter the rights and obligations of the Debtors and Safety National's rights and obligations under the Safety National Insurance Policies and the Bankruptcy Code. *See* Plan, Art. IV.E. Specifically, Debtors improperly seek to modify the Debtors' obligations under the applicable insurance policies and Safety National's coverage defenses, thereby attempting to modify the Safety National Insurance Policies (as defined *infra*). Moreover, under the Plan, Debtors would seek to take all the benefits of the insurance policies, while avoiding

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

its substantial and material defense and payment obligations.  Finally, Debtors inappropriately seek to make potential post-petition administrative claims unsecured claims.  As such, Safety National files this objection requesting that specific language be modified in the Plan and/or any Confirmation Order ratifying or affirming the rights and obligations under the Safety National Insurance Policies.

## II.    BACKGROUND

### A.    *Debtors' Insurance Policies with Safety National*

2.     In 2005, Safety National entered into an insurance program with Numbers Holdings, Inc. and various affiliated debtors (collectively, "99 Cent" or "Debtors"), including, but not limited to, the following:

> (a)    For policy period from September 30, 2016 forward, such policy period expiring on September 30, 2024, Safety National provided commercial general liability coverage with a self-insured retention endorsement ("SIR") to Debtors (the "General Liability Policy").
>
> (b)    For policy period from September 30, 2016 forward, such policy period expiring on September 30, 2024, Safety National provided workers' compensation and employers' liability coverage to Debtors.
>
> (c)    For policy period from September 30, 2016 forward, such policy period expiring on September 30, 2024, Safety National provided commercial automobile coverage to Debtors.
>
> (d)     For policy period from September 30, 2016 forward, such policy period expiring on September 30, 2024, Safety National provided excess workers' compensation and employers' liability coverage to Debtors.

3.     In conjunction with the above listed insurance annual policies, Safety National entered into various related agreements with 99 Cent (together with the policies and other related ancillary agreements, the "Safety National Insurance Policies"). The Safety National Insurance

Policies continue to operate in runoff, and both Debtors and Safety National continue to have ongoing obligations related to administering and defending claims under the Safety National Insurance Policies, including deductible and/or self-insured retention ("SIR") obligations. The General Liability Policy contains a substantial SIR of $300,000 per incident.

      **B.**     ***Debtors' Chapter 11 Case and Treatment of the Safety National Insurance Policies.***

      4.      On April 7, 2024 and April 8, 2024 (collectively, the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

      5.      On December 19, 2024, the Committee filed its proposed Plan at Docket Number 1605.

      6.      Treatment of the Safety National Insurance Policies under the Plan is intentionally vague. Debtors neither classifies their Insurance Contracts[2] as assets not capable of assumption of rejection, or as executory contracts requiring assumption or rejection. Rather, Article IV.E of Plan simply declares that Debtors get to keep all benefits of Debtors' Insurance Contracts while avoiding all obligations. Moreover, despite its statement in the Plan, Article IV.E states that "nothing in the Plan or Confirmation Order shall (i) be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist under any Insurance Contract" – Debtors' Plan attempts to do exactly that.

      7.      In full, Article IV.E states:

      **E.**     **Insurance Matters**

      On the Effective Date, provided that the Debtors have paid all applicable premiums, the Debtors' Insurance Contracts shall be deemed to continue in full force and effect without any action by an Entity or approval of the Bankruptcy Court so as to continue to

---

[2] All terms not otherwise defined herein shall be construed accordingly to the meaning in the Plan.

provide coverage in accordance with the express terms of the applicable Insurance Contracts. For the avoidance of doubt: (i) on the Effective Date, the Debtors' D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) shall be deemed to continue in full force and effect without any action by any Entity or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations under such D&O Insurance Policies; and (iii) the Post-Confirmation Debtors shall retain the ability to supplement such D&O Insurance Policies as the Plan Administrator may deem necessary.

In addition, on or after the Effective Date, none of the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors or the Plan Administrator shall terminate or otherwise reduce the coverage under any fully paid or prepaid D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto. All current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Insurance Policies, which shall not be altered.

Notwithstanding anything to the contrary in the Plan, if a Claim is subject to coverage under an Insurance Contract, in full or in part, no distributions under the Plan need be made on account of such Claim until a determination is made by a court of competent jurisdiction as to such coverage and, if coverage is available, until payment is first made from proceeds of such appliable Insurance Contract. To the extent of any amounts not covered by the proceeds of an Insurance Contract, if any, such Claim shall be treated in accordance with the provisions of the Plan governing the Class applicable to such Claim. No Plan Distributions need be made on account of an Allowed Claim that may be payable pursuant to one or more of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contracts. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any order or approval of the Bankruptcy Court; provided that a notice of claim satisfaction shall be filed and served on the

Holder of the applicable Claim. Notwithstanding the provisions of this Section IV.D of the Plan, the Liquidating Trust may, in its sole discretion, in order to facilitate distributions and the completion of its responsibilities under this Plan: (i) make a distribution under the Plan with respect to an Allowed Claim that may be covered by an Insurance Contract; or (ii) seek to estimate a Claim, solely for distribution purposes, that may be covered by an Insurance Contract.

If an applicable Insurance Contract has an SIR, the Holder of an Allowed Claim that is covered by such Insurance Contract shall only be entitled to an Allowed General Unsecured Claim against the applicable Debtor's Estate up to a maximum amount of the applicable SIR. Any such Allowed General Unsecured Claim may be further reduced, or disallowed in full, upon the liquidation of such Claim in an appropriate forum. By and through the Liquidating Trustee, the Liquidating Trust may seek entry of an order of the Bankruptcy Court fixing any such Claim in the maximum amount of the SIR to facilitate Distributions. Any such SIR under an applicable Insurance Contract shall be considered satisfied pursuant to the Plan through the allowance of the General Unsecured Claim up to the applicable SIR by stipulation, Bankruptcy Court order or as otherwise provided in the Plan. For the avoidance of doubt, nothing in this Plan obligates the Debtors, the Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee (as applicable) to otherwise satisfy any SIR under any Insurance Contract.  Any recovery on account of an Allowed Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof.

For the avoidance of doubt, nothing in the Plan or Confirmation Order shall (i) be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist under any Insurance Contract, (ii) be a determinative that any Insurance Contract is an executory contract or is capable of assumption or rejection; (iii) be deemed the assumption or rejection of any Insurance Contract; (iv) relieve any Entity from the requirement to timely file a Proof of Claim by the Claims Bar Date or Supplemental Claims Bar Date, as applicable; (v) require any payment on account of a SIR for a Claim that is covered by an Insurance Contract before such Holder pursues recovery in excess of an applicable SIR from any applicable Insurance Contract; or (vi) limit the amount that a Holder of a Claim that is covered by an Insurance Contract can pursue against any applicable Insurance Contract above any applicable SIR.

> If and to the extent applicable, the automatic stay of section
> 362(a) of the Bankruptcy Code and any injunctions set forth in the
> Plan shall be deemed lifted without further order of the Bankruptcy
> Court, solely to permit: (i) claimants with valid workers'
> compensation claims or direct action claims against insurers under
> applicable non-bankruptcy law to proceed with their claims; (ii)
> insurers to administer, handle, defend, settle, and/or pay, in the
> ordinary course of business and without further order of this
> Bankruptcy Court, (a) workers' compensation claims, (b) claims
> where a claimant asserts a direct claim against an insurer under
> applicable nonbankruptcy law, or an order has been entered by the
> Bankruptcy Court granting a claimant relief from the automatic stay
> or the injunctions set forth in the Plan to proceed with its claim, and
> (c) all costs in relation to each of the foregoing; and (iii) insurers to
> take any other actions relating to the Insurance Contracts (including
> effectuating a setoff or recoupment).

8.    As Debtors are fully aware, Safety National is an excess general liability carrier under the General Liability Policy.  Debtors were self-insured up to and including $300,000.  That is, pursuant to the Safety National Insurance Policies, Debtors are expressly obligated to manage, defend, and pay claims up to the $300,000 per incident.  Only after the SIR is actually paid, will Safety National step in.  As a threshold issue, these material and substantial continuing obligations of Debtors make the general liability insurance policies of Safety National executory contracts requiring assumption or rejection pursuant to 11 U.S.C. 365(b).

9.    Second, the Safety National General Liability Policies include an express requirement that Debtors make "actual payment" in order for the SIR to be satisfied.  *See* Safety National Insurance Policy, *Self-Insured Retention Endorsement*.  In direct contradiction to the terms of the General Liability Policies, the Plan states, in relevant part that:

> By and through the Liquidating Trustee, the Liquidating Trust may seek
> entry of an order of the Bankruptcy Court fixing any such Claim in the
> maximum amount of the SIR to facilitate Distributions. Any such SIR under
> an applicable Insurance Contract shall be considered satisfied pursuant to
> the Plan through the allowance of the General Unsecured Claim up to the

applicable SIR by stipulation, Bankruptcy Court order or as otherwise provided in the Plan.

Plan, Art. IV.E.

10.     This "satisfaction provision" would purport to deem claims against Debtors that are allowed at the Liquidating Trustee's sole discretion – and at *de minmis* effect on the Estate as distribution projects are under 2.5% pro rata – would somehow satisfy the actual payment requirements of the General Liability Policies' SIR.   Satisfaction of the SIR has a material effect on Safety National's coverage obligations under the Safety National Insurance Policy pursuant to state law.   That is, this Plan provision modifies Safety National's coverage obligations under certain states' law.

11.     Third, Safety National provided post-petition coverage to Debtors while it remained operational and certain of its stores were in the winddown process.  To the extent a claim arises during the post-petition period, and Debtors and/or Liquidating Trustee fail to meet its SIR obligations, Safety National would be entitled to an administrative expense claim.

12.     As such, even though the Plan purports to not alter the rights and obligations of the Debtors' insurers, like Safety National, under their policies, the contradictory language in Article IV.E is a thinly veiled attempt to modify the Safety National Insurance Policies and rescind rights the Bankruptcy Code might provide to insurance carriers. The Plan modifies coverage obligations and Safety National's rights to reimbursement, indemnification, etc., as well as potential defenses under the Safety National Insurance Policies. The Plan would also seek to eliminate Safety National's potential post-petition administrative claims pursuant to on-going obligations of Debtors.  Safety National objects to Debtors' unilateral attempt to modify the Safety National Insurance Policies regarding coverage obligations.

13.    The Debtors cannot unilaterally amend the Safety National Insurance Policies through the Plan or eliminate its rights pursuant to the Bankruptcy Code or applicable law. Accordingly, Safety National files this objection to the Plan, objecting to the extent that Plan seeks to alter Safety National's rights and the Debtors' rights and obligations under the Safety National Insurance Policies.

### III.    RELIEF REQUESTED

14.    Because the Plan's language attempts to modify Safety National's rights and the Debtors' obligations under the Safety National Insurance Policies, Safety National serves this objection to any language in the Plan, Plan Supplement, Confirmation Order, or any related documents that non-consensually modifies the rights and obligations under the Safety National Insurance Policies.

15.    Safety National requests:

a.    That the following line from Article IV.E. of the Plan be removed:

> Any such SIR under an applicable Insurance Contract shall be considered satisfied pursuant to the Plan through the allowance of the General Unsecured Claim up to the applicable SIR by stipulation, Bankruptcy Court order or as otherwise provided in the Plan.

b.    That the Debtors be required to assume or reject the Safety National Insurance Policies as required by 11 U.S.C. § 365.

c.    That that the following language regarding treatment of the Safety National Insurance Policies be included at Article IV.E of the Plan and/or any Confirmation Order:

> ***Provisions Governing Safety National Contracts***.
>
> Notwithstanding any provision in the Disclosure Statement, Plan, Plan Supplement, Confirmation Order, any agreements between the Debtor, and Liquidating Trustee, any other document related to any of the foregoing, or any other order of the Bankruptcy Court related to the Safety National

Insurance Policies (collectively the "<u>Bankruptcy Pleadings and Orders</u>"):

(1)   Each of the Debtors' Insurance Policies with Safety National Casualty Corporation ("<u>Safety National</u>") and related agreements (the "<u>Safety National Insurance Policies</u>") and any agreement, documents, or instructions relating thereto, are treated as Executory Contracts under the Plan and shall be rejected under the Plan.

(2)   For the avoidance of doubt, notwithstanding any provision in the Bankruptcy Pleadings and Orders or any related document, nothing shall alter, modify, amend, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defenses of Safety National, the Debtors (or, after the Effective Date the Wind-Down Debtor or Liquidating Trust), or any other individual or entity, as applicable, under any of the Debtors' Safety National Insurance Policies. Any such rights and obligations shall be determined under the Safety National Insurance Policies and applicable non-bankruptcy law.

(3)   As proscribed under the Safety National Insurance Policies, after the Effective Date, the Debtors and/or Wind-Down Debtor, through the Liquidating Trustee, shall maintain its duties and obligations.

(4)   The rights of Safety National to satisfy any of the Debtors' and/or Wind-Down Debtor's obligations under the Safety National Insurance Policies shall be determined under the Safety National Insurance Policies and applicable non-bankruptcy law.

(5)   The rights of Safety National to assert any post-petition administrative claim shall be determined under the Bankruptcy Code, the Safety National Insurance Policies, and any applicable non-bankruptcy law.

## IV.    ARGUMENTS & AUTHORITIES

16.    The Plan seeks to unilaterally alter the Safety National Insurance Policies and strip away certain rights of Safety National thereunder – while still funneling claims through the Safety National Insurance Policies and receiving the benefits thereof. Moreover, the Plan would inappropriately modify Safety Nationals' rights under the Bankruptcy Code to seek an administrative claim.

### A.    *The Plan Improperly Alters the Terms of the Safety National Insurance Policies.*

17.    Section 365 of the Bankruptcy Code does not permit the modification of executory contracts. The Safety National Insurance Policies must be assumed in total, with all obligations and rights intact – or rejected. "It is well-settled that an executory contract cannot be assumed in part and rejected in part…. Rather, a debtor "must assume the entire contract, *cum onere*"—the debtor must accept "both the obligations and the benefits of the executory contract." *In re Escarent Entities, L.P.*, 423 F. App'x 462, 466 (5th Cir. 2011) (citing *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir.1996); *In re Flemng Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor]… may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alteration in original); *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir.2000); *see Tompkins ex. rel A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burden as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has

accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party."). Where an order of the bankruptcy court alters the rights and obligations under an assumed executory contract, the court is in effect modifying the agreement. *In re Escarent Entities, L.P.*, 423 F. App'x at 467. Where this is done without the consent of the non-debtor party, this is in essence an un-agreed to modification, and the "bankruptcy court thus violate[s] its obligation to ensure that [the Debtor] assume[s] the contract in toto." *Id; see, e.g., Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Jeffrey L. Miller Investments, Inc.* 610 B.R. 692, 703 (Bankr. M.D. Fla. 2019) (stating that it is the court's "duty to enforce [a] contract as written- not rewrite it to make it more reasonable for one of the parties"); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

18.     Moreover, it is clear under well-established law that neither the Debtors nor this Court can rewrite the Safety National Insurance Policies, but, rather, the Safety National Insurance Policies must be enforced as written. *See, e.g., In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988 F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally*

*Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation") (*quoting, in part, Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

19.     Additionally, each of the Safety National Insurance Policies must be read, interpreted, and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *Dunkin' Donuts Franchising LLC v. CDDC Acquisition Co. LLC (In re FPSDA I, LLC)*, 470 B.R. 257, 269 (E.D.N.Y. 2012) (holding that "two agreements [were] so interrelated, [that] they form[ed] a single overarching executory contract"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

20.     However, contrary to this well-established law, the Plan contains multiple provisions that purport to alter or modify the Safety National Insurance Policies and the terms and conditions thereof.

      **a.**    **Impermissible release of obligations under the Safety National Insurance Policies.**

21.     Through the Plan, it appears that the Debtors and the Liquidating Trust seek to continue to receive the benefits of the Safety National Insurance Policies for Debtors. *See, e.g.,* Plan, Art. IV.E.  However, the Plan does not adequately address the continuing obligations of the Debtors or its successors under the Safety National Insurance Policies.  While Safety National will comply with state law and regulations regarding coverage issues – if Debtors reject the Safety National Insurance Policies or under current Plan treatment, Safety National will almost certainly be forced to step in and defend claims, thereby expended funds on obligations that Debtors will fail to meet.  In the event that this occurs, Safety National is entitled to seek reimbursement under the terms of the Safety National Insurance Policies (such as offset of any security held) and a claim of reimbursement from Debtors.  For pre-petition claims, this claim may be in the nature of a pre-petition claim, but for post-petition claims, this claim may be in the nature of an administrative expense claim.

22.     Debtors do not seek to assume the Safety National Insurance Policies under the Plan – and ignore that in order to receive the benefit of the excess general liability coverage provided thereto – Debtors are obligated to assume the obligation of the $300,000 per incident SIR.  It is well-established that the Debtors and their successors cannot seek to receive benefits of a contract without being liable for obligations thereunder. *See In re Flemng Cos*., 499 F.3d at 308 ("The [debtor]… may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.")

(internal citations and quotations omitted) (alteration in original); *St. Paul Fire & Marine Ins. Co.*, 457 F.3d at 773 (finding that a party who accepts the benefit of a contract must also assume its burdens); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln*, Neb., 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at \*20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at \*3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]").

23.    Therefore, to the extent that the Plan seeks to retain the benefits of any portion of the Safety National Insurance Policies, each of the Safety National Insurance Policies must continue in their entirety, and the rights and benefits, and potential defenses, under each of the Safety National Insurance Policies cannot be split from the respective obligations thereunder. While Debtors may be able to reject the Safety National Insurance Policies, the Debtors cannot also remove Safety National's rights to claims and assistance resulting therefrom, including administrative claims – and the Estate and/or Liquidating Trustee's obligations to assist in defense of claims.

24.     Moreover, while the Plan also purports to provide that insurance coverage issues shall be governed by the terms and conditions of the applicable insurance policies, the Plan also states that the Safety National Insurance Policies' SIR shall be satisfied solely by the allowance of a claim by the Liquidating Trustee (the "Satisfaction Clause"). *See*, Plan, Art. IV.E.

25.     To the extent that any of the provisions of the Plan, including, but not limited to the Satisfaction Clause, seek or purport to prejudice, modify, amend, or otherwise alter the terms and conditions of the Safety National Insurance Policies, the coverage provided thereby, and/or Safety National's rights thereunder, such prejudice, modification, amendment or alteration is impermissible.

26.     Safety National objects to the inclusion of the Satisfaction Clause as a material modification and/or false interpretation of the General Liability Policy and its terms. It is well-established that a debtor or claimant to a debtor cannot obtain any greater rights to insurance coverage or to receive the proceeds of an insurance policy simply as a result of a debtor's bankruptcy filing. *See In re Denario*, 267 B.R. 496, 499 (Bankr. N.D.N.Y. 2001) ("[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy ... by merely filing a bankruptcy petition." (*quoting Thomas v. Universal American Mortgage*, 1998 WL 57523 (E.D. Pa. 1998), *aff'd sub nom. In re Thomas*, 182 F.3d 904 (3d Cir. 1999))); *In re Amatex Corp.*, 107 B.R. 856, 865-66 (E.D. Pa. 1989), aff'd, 908 F.2d 961 (3d Cir. 1990) ("[T]he rights and obligations of the Debtor and [its insurer] under the [insurance] policy are not altered because of the Debtor's Chapter 11 filing."); *see also In re Coupon Clearing Service, Inc.,* 113 F.3d 1091, 1092 (9th Cir. 1997) ("The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater rights in property than those held by the debtor prior to bankruptcy"); *Trustmark Ins. v. Transamerica Occidental Life*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) ("a

court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (internal quotation omitted).#

27.    Moreover, to the extent Debtors somehow believe that Plan, IV.E's unilateral declaration that claim allowance at the Liquidating Trustee's sole discretion satisfies the actual payment obligation of the SIR in the General Liability Policy (which Safety National does not believe to actually be the case here give the absurdity of such an assertion), the Plan is an impermissible avenue to assert such a position.  Courts have also consistently recognized that contractual disputes must only be resolved either in actions pending outside of the bankruptcy court or in adversary proceedings – and not in the context of plan confirmation – and this longstanding legal principal applies in equal force to insurance coverage disputes. *See In re Eastman Kodak Co.,* No. 12-10202, 2012 WL 2255719, at *2 (Bankr. S.D.N.Y. June 15, 2012) (determining that state-law property ownership dispute could not be resolved by bankruptcy court in section 363 sale context); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1099 (2d Cir. 1993) (holding that breach of contract issues could not be decided in section 365 assumption/rejection context).

28.    Thus, the Plan cannot modify, limit, amend, or otherwise affect any of the defenses, rights, and obligations of the Debtors and Safety National with respect to coverage, denial of coverage, or the proper court, forum or jurisdiction for any disputes regarding coverage or regarding Safety National's rights and obligations under the Insurance Programs, and the Plan must be clarified to provide that the foregoing shall be preserved and determined under the terms of the Safety National Insurance Policies and/or applicable non-bankruptcy law, and that nothing

in the Plan, Plan Supplement, or the Confirmation Order shall constitute a determination, consent to, or waiver of jurisdiction as to any of the foregoing.

29.     Moreover, the Plan must clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any other document related to the foregoing, including, but not limited to, those provisions identified above, shall modify, alter or impair the Safety National Insurance Policies, including the rights and obligations of Safety National and the Debtors thereunder, as well as the coverage provided thereunder.

30.     Accordingly, Safety National further objects on the basis that the Plan fails to contain a provision that clearly and unequivocally maintains the terms of the Safety National Insurance Policies, including, but not limited to, coverage defenses.

## V.     RESERVATION OF RIGHTS

31.     Safety National specifically reserves all of its rights with respect to the Safety National Insurance Policies and its right to further object to the Plan or assert any additional claims as appropriate.

## VI.     CONCLUSION

Accordingly, Safety National respectfully requests that the aforementioned language be included in the Plan or any Confirmation Order, and in the alternative, that the Court deny confirmation of the First Amended Chapter 11 Plan of Liquidation Proposed by the Official Committee of Unsecured Creditors and grant such other and further relief to which Safety National is justly entitled.

Dated this 16th day of January 2025.

Respectfully Submitted,

**HOGAN♦McDANIEL**

*/s/ Garvan F. McDaniel*
Garvan F. McDaniel (DE Bar No. 4167)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: 302.656.7540
Facsimile: 302.656.7599
Email: gfmcdaniel@dkhogan.com

- and -

**HUSCH BLACKWELL LLP**

Caleb T. Holzaepfel (Admitted P*ro Hac Vice*)
736 Georgia Avenue, Suite 300
Chattanooga, TN 37402
Telephone: 423.266.5500
Facsimile:423.266.5499
Email: caleb.holzaepfel@huschblackwell.com

*Attorneys for Safety National Casualty*
*Corporation*