**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| NUMBER HOLDINGS, INC., *et al.*,[1] | ) Case No. 24-10719 (JKS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**DECLARATION OF CHRISTOPHER J. WELLS IN SUPPORT**
**OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF**
**NUMBER HOLDINGS, INC., AND ITS DEBTOR AFFILIATES**

I, Christopher J. Wells, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of Number Holdings, Inc. ("Number Holdings"), a Delaware corporation (together with the other above-captioned debtors and debtors in possession, the "Debtors"). I was appointed CRO of Number Holdings in April of 2024.

2. I submit this declaration (the "Declaration") in support of the Debtors' request for entry of the proposed order (the "Proposed Confirmation Order") confirming the *Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates*, filed on November 27, 2024 [Docket No. 1533] (as it may be amended or modified, the "Plan").[2] I previously submitted the *Declaration of Chris J. Wells in Support of Chapter 11 Petitions and First Day Motions of Number Holdings, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 18] (the "First Day Declaration"), in which I set forth information regarding, among other things, my background and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents Only Stores LLC (1605); (iii) 99 Cents Only Stores Texas, Inc. (1229); (iv) 99 Cents PropCo LLC (7843); (v) 99 Cents HoldCo LLC (3987); and (vi) Bargain Wholesale LLC (8030). The Debtors' principal offices are located at 1730 Flight Way, Suite 100, Tustin, CA 92782.

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

experience, the Debtors' business and operations, and the events leading to the filing of these chapter 11 cases (the "Chapter 11 Cases"). I verify that the information (to the extent still applicable) contained in the First Day Declaration remains true and correct to the best of my knowledge, information and belief, and hereby incorporate the First Day Declaration by reference herein.

3. Based on my work with the Debtors, I am generally familiar with the Debtors' business, financial condition, day-to-day operations, and books and records. Except as otherwise noted herein, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from my review of the Debtors' business records and from other members of the Debtors' senior management team, employees, and advisors in the ordinary course of my responsibilities as CRO. The Debtors have authorized me to submit this Declaration on their behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**The Plan Satisfies the Bankruptcy Code's Requirements for Confirmation**

4. Together with the other members of the Debtors' senior management team and advisors, I have reviewed, and I am generally familiar with, the terms of the Plan, the documents comprising the Plan Supplement, the Proposed Confirmation Order. Counsel has informed me of the requirements for confirmation of the Plan pursuant to section 1129 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

5. Based on my understanding and knowledge of the negotiation and implementation of the transactions and settlements embodied in the Plan and my discussions with the Debtors' advisors, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, and the Local Rules and that the Debtors, acting through their officers, directors, and professionals, have conducted themselves in a manner that complies with applicable law in relation to the formulation and negotiation of, and solicitation of votes on, the Plan. I believe that the Plan should therefore be confirmed.

6. I believe that each of the Claims and Interests in each Class is substantially similar to the other Claims and Interests in such Class. I understand that the separate classification of Claims and Interests is based upon the differences in the legal nature and/or priority of such Claims and Interests, and the Plan's classification scheme generally tracks the Debtors' prepetition capital structure and divides the applicable Claims and Interests into Classes based on the underlying instruments and/or liabilities giving rise to such Claims and Interests.

7. For purposes of voting on, and Distributions under, the Plan, the Estates are deemed merged and consolidated, so that a holder of a Claim that may be asserted against more than one Debtor will be entitled to a single Distribution as if such holder had a single Claim against the consolidated Estate. I believe that the consolidation of the Debtors' Estates for plan purposes only is appropriate because as evident by the overwhelming acceptance of the Plan by the creditors entitled to vote, the Debtors' creditors have accepted the deemed substantive consolidation of the Debtors' Estates for Plan purposes. None of the parties in interest that filed objections to the confirmation of the Plan objected to the deemed consolidation of the Estates.

8. Additionally, I believe that the consolidation solely for purposes of distributions under the Plan is appropriate because, in many respects, prior to the Petition Date, the Debtors behaved, and the third parties with whom they transacted business treated them, as a single legal entity. This is evident from, among other things, the Debtors' various prepetition credit facilities under which all Debtors, other than the non-operational Debtors 99 Cents PropCo LLC, 99 Cents

HoldCo LLC, and Bargain Wholesale LLC, were co-liable. 99 Cents Only Stores LLC was the principal operating company within the corporate enterprise, overseeing a majority of the company's retail stores and distribution centers. No other Debtor, except for 99 Cents Only Stores Texas, Inc., which was the principal operator of the company's Texas operations, had any active business or operations.

9. I believe that the deemed consolidation solely for purposes of distributions under the Plan will not harm any of the Debtors' creditors and will in fact result in substantial benefits to all Estates. Indeed, the proposed consolidation avoids the cost of segregating the assets and liabilities of each Estate, thereby avoiding further dilution to creditor recoveries as a result of delays and increased professional fees, especially where as here, the recovery for unsecured creditors is based on a global settlement between the Debtors, the Ad Hoc Group, and the Creditors' Committee of potential estate causes of action, providing for a pot recovery for all unsecured creditors, that may not have been possible absent the settlement. Disentangling the affairs of the Debtors would not only be overly burdensome and cost inefficient, but would not provide any attendant benefit to the Debtors' stakeholders. For these reasons, I believe that distributions on a consolidated basis, rather than attempt to allocate distributions on a Debtor-by-Debtor basis, is in the best interest of the Debtors, their Estates, and their creditors.

10. I believe the Plan sets forth the appropriate means by which it will be implemented. Specifically, the Plan sets forth the following means for its implementation: (i) the appointment of a Plan Administrator to administer the Post-Confirmation Debtors' Retained Assets, implement the Plan, and wind down the business and affairs of the Post-Confirmation Debtors, including the power to (a) sell, dispose, liquidate, receive, hold, invest, supervise, protect, and abandon the Post-Confirmation Debtors Retained Assets; (b) make Distributions under the Plan; (c) maintain bank

accounts in the name of any Post-Confirmation Debtor; (d) employ professionals; (e) pay Wind-Down Expenses; and (f) dissolve the Debtors and Post-Confirmation Debtors; (ii) the establishment of a Liquidating Trust, the vesting of the Liquidating Trust Assets in the Liquidating Trust, and appointment of a Liquidating Trustee with the authority to (a) investigate, review, reconcile, allow, object to, compromise, and settle Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, and General Unsecured Claims and (b) file tax returns for the Liquidating Trust; (iii) the preservation of certain Causes of Action other than those that have been released pursuant to the Plan; (iv) the comprehensive settlement of all Claims, Interests, disputes and controversies; (v) the release and discharge of all Avoidance Action under section 547 of the Bankruptcy Code; (vi) the cancellation, release, and surrender of documents, instruments, Liens, and securities, except as otherwise provided in the Plan; (vii) the authorization, approval, and if applicable, ratification, of all acts or actions contemplated by the Plan or reasonably necessary to consummate the transactions contemplated by the Plan; (viii) the resignation of the managers, directors, and officers of the Debtors; and (ix) the authorization of the Plan Administrator or Liquidating Trustee to close the Chapter 11 Cases *See* Plan, Section IV.

11. I believe that the Plan provisions governing the appointment of the Plan Administrator are consistent with the interests of creditors and equity security holders and with public policy.

12. I believe that the good-faith compromises and settlements of disputes and controversies related to Claims and Interests are being made in consideration for the distributions and other benefits provided to creditors pursuant to the Plan.

13. The Plan contains certain release, exculpation, and injunction provisions, each of which is an integral component of the Plan and the transactions contemplated therein, is appropriate and necessary under the circumstances, and, I believe, should be approved.

14. The Plan, including the release, exculpation, and injunction provisions, was vigorously negotiated prepetition and postpetition by sophisticated entities that were represented by able counsel and financial advisors. The result is a compromise that reflects the give-and-take of a true arm's-length negotiation process. I understand that these provisions are essential to the orderly wind-down of the Estates because they were necessary to ensure the active participation of the Released Parties in these Chapter 11 Cases, without which none of the value-maximizing transactions that have been consummated over the past nearly ten months would have been possible.

15. I believe that the release, exculpation, and injunction provisions are appropriate and justified under the circumstances of the Chapter 11 Cases, and are in the best interests of the Estates and their stakeholders.

16. Specifically, I believe that the Debtor Releases are justified because there is an identity of interests between the Debtors and the Released Parties. Each of the Released Parties, as stakeholders and key participants in the Chapter 11 Cases, share a common goal with the Debtors in seeing the Plan succeed. I further believe that the Debtor Releases are justified because the Released Parties have made a substantial contribution to the Chapter 11 Cases, which include, among other things, negotiating, formulating, and executing the Plan, as well as providing other material support to the Debtors. Moreover, I understand that the holders of Claims in the Voting Classes have overwhelmingly voted in favor of the Plan.

6

17.     I believe that the Debtors have provided clear and prominent explanations of the procedures relating to the Third-Party Releases.  Specifically, the text describing the Third-Party Releases was printed in bold type in the Ballots, Plan, and Disclosure Statement.  I believe that the Ballots distributed to the holders of Claims entitled to vote included a detailed explanation that such creditors would grant the Third-Party Releases if they did not opt out by checking the opt-out box on their submitted Ballots.  I understand that creditors had the opportunity to opt out of the Third-Party Releases whether they voted to accept or reject the Plan.  Accordingly, I believe that the Third-Party Releases are consensual and should be approved.

18.     I believe the Exculpation Provision is the product of good faith and arm's-length negotiations.  The Exculpated Parties have participated in the Chapter 11 Cases in good faith, made substantial contributions to the Debtors' efforts to maximize value of their Estates, and will participate in the implementation of the Plan.  I further understand that the Exculpation Provision is narrowly tailored to protect the Exculpated Parties only from inappropriate litigation related to acts or omissions in connection with the administration of these Chapter 11 Cases and related transactions and does not protect them from actions determined by a Final Order to have constituted gross negligence, fraud, or willful misconduct.  As such, I believe the Exculpation Provision should be approved.

19.     I believe that the Injunction Provision is necessary to, among other things, enforce the Plan Releases and the Exculpation Provision by permanently enjoining all persons and entities from commencing or continuing to pursue any claim that was released or exculpated pursuant to such provisions.  I believe that the Injunction Provision is narrowly tailored to achieve that purpose and therefore should be approved.

20. The Debtors, with the assistance of their professionals, expended a significant amount of time and effort preparing the Disclosure Statement, which provides a significant level of information regarding the Debtors and the Plan. In addition, it is my understanding, based on discussions with the Debtors' advisors, that the Debtors' solicitation and tabulation of votes with respect to the Plan were proper and conformed with the Debtors' solicitation procedures approved by the Bankruptcy Court and with the requirements of the Bankruptcy Code.

21. The Debtors have proposed the Plan in consultation with the Debtors' board of directors, management, legal, and financial advisors. The Plan is the culmination and the direct result of the Debtors' extensive, arms'-length negotiations with their key creditor constituencies, such as the Creditors' Committee and the Ad Hoc Group, regarding the plan structure and confirmation timeline that would maximize the value of the Estates. I believe that the Plan represents the best and, indeed, the only available option for creditors and thus was proposed with the legitimate purpose of maximizing distributions to holders of Claims entitled to distributions under the Plan. Accordingly, I believe that the Plan has been proposed in good faith and not by any means forbidden by law.

22. It is my understanding that the Plan provides that the Debtors' managers, directors, and officers will be deemed to have resigned on the Effective Date. Because the Plan contemplates an orderly wind-down of the Debtors' remaining operations, the Plan does not propose to appoint any new officers or directors, and the Plan Administrator is expected to perform the functions of officers and directors of the Post-Confirmation Debtors during the wind-down process. I believe that the appointment of the Plan Administrator is consistent with the interests of the holders of Claims and Interests and with public policy. The Debtors have disclosed, and the Court has previously approved, the identity and affiliation of the Plan Administrator.

23. I believe that the Plan is feasible because (a) the conditions precedent to the Effective Date are reasonably likely to be satisfied and (b) the various reserves proposed to be established under the Plan, including the Professional Fee Reserve, the Disputed Claims Reserve, the Wind-Down Reserve, and proceeds of the Liquidating Trust Assets will provide sufficient funds to administer and consummate the Plan and to close the Chapter 11 Cases.

24. The Debtors do not maintain any plans for retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).

25. Although the Holders of Claims and Interests in Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Equity Interests) are deemed to have rejected the Plan, as discussed below, I believe the Plan can still be confirmed pursuant to section 1129(b) of the Bankruptcy Code.

26. I do not believe that the Plan "discriminates unfairly" with respect to the Claims in Class 6 (Intercompany Claims) or the Interests in Class 7 (Intercompany Interests) or Class 8 (Equity Interests) as the Claims and Interests in each such rejecting Class are legally distinct in nature from the Claims and Interests, as applicable, in any other Class. Therefore, given that the Claims and Interests in Classes 6, 7, and 8 are "dissimilar" from the Claims and Interests in all other Classes, and the Plan thus does not provide any distributions on account of any similarly situated Claims or Interests, the Plan does not discriminate unfairly with respect to Class 6, Class 7, and Class 8.

27. Furthermore, it is my understanding that the "fair and equitable standard" is also satisfied as to the Holders of Claims and Interests in the rejecting Classes because no Claims or Interests junior to the Claims or Interests in such Classes will receive or retain any property under

the Plan on account of such junior Claims or Interests. In addition, no Holders of Claims are receiving more than 100% of the allowed amounts of their respective Claims under the Plan.

28.     The Debtors, with the assistance of their advisors, have prepared the Liquidation Analysis annexed as Exhibit C to the Disclosure Statement (which I incorporate into this Declaration by reference as if fully set forth herein), to determine whether the Plan is in the best interests of the holders of Claims against and Interests. Based on my experience, the methodology used to prepare the Liquidation Analysis is appropriate, and the assumptions and conclusions set forth in the Liquidation Analysis, including the estimate of the proceeds that would be realized in a Chapter 7 liquidation of the Debtors, are reasonable. The Liquidation Analysis provides a fair and reasonable assessment of the effects that a conversion of the Debtors' chapter 11 cases to cases under Chapter 7 would have on the proceeds available for distribution to holders of Claims and Interests.

29.     I understand that in a Chapter 7 liquidation, all of the Debtors' cash, net of any liquidation-related costs and other administrative expenses and priority claims, would be distributed in order to satisfy: (i) all secured claims to the extent the relevant collateral values are sufficient to do so, (ii) administrative claims arising from the Chapter 7 process for the benefit of the Trustee and other professionals involved in the liquidation process, (iii) other administrative claims, such as postpetition payables and other accrued liabilities, (iv) priority unsecured claims, (v) general unsecured claims, and (v) equity interests. As demonstrated by the Liquidation Analysis, the recoveries that will be realized under the Plan by holders of Impaired Claims and Interests deemed to reject the Plan are no less than what such holders would have received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

30. Specifically, I believe, based on the Liquidation Analysis, that the Holders of Claims in Class 5 (General Unsecured Claims) would receive substantially decreased recoveries in a Chapter 7 liquidation as compared to their recoveries under the Plan, and the Holders of Claims and Interests in Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Equity Interests) would receive a 0% recovery in a hypothetical Chapter 7 liquidation, which is equal to the recoveries that such holders will receive under the Plan.

31. Finally, I believe that good cause exists to waive the stay of the Confirmation Order pursuant to the Bankruptcy Rules so that the Confirmation Order will be effective immediately upon its entry. I believe that if the Plan does not go effective by the end of the Company's fiscal year on January 31, 2025, the Debtors will suffer irreparable harm from unnecessary negative financial and tax consequences that will only harm the Debtors' stakeholders. Additionally, prolonging the time the Debtors remain in chapter 11 will increase administrative and professional costs. For these reasons, I believe a waiver of the stay of the Confirmation Order is appropriate in these Chapter 11 Cases.

## Conclusion

32. In light of the foregoing, I believe that (a) the Plan has been structured to accomplish the Debtors' goal of maximizing returns to stakeholders and efficiently winding down the Debtors; (b) the Plan has been proposed by the Debtors in good faith, and (c) confirmation of the Plan is in the best interests of the Debtors, their creditors, and other parties in interest in these Chapter 11 Cases.

33. Accordingly, I believe that the Plan satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and other applicable non-bankruptcy laws, as they have been explained to me, and should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 21, 2025

/s/ Christopher J. Wells
Christopher J. Wells
Chief Restructuring Officer
Number Holdings, Inc.

12