## **Exhibit B**

**Redline of Further Revised Plan against Revised Plan [D.I. 1720] and
Further Revised Confirmation Order against
Revised Confirmation Order [D.I. 1721]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) | Case No. 24-10719 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 1612, 1613, 1685,** |
| | ) | **1686, 1687, ~~&~~ 1688, 1720 & 1721** |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER,**
**APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS,**
**CONFIRMING THE JOINT CHAPTER 11 PLAN OF NUMBER HOLDINGS,**
**INC., AND ITS DEBTOR AFFILIATES, AND GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") having, among other things:

a. commenced, on April 8 and 9, 2024 (as applicable, the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (this "Court") for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code");

b. continued to remain in possession of their property and continue to operate and manage their remaining business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on November 27, 2024, (i) the *Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* (as amended, supplemented, and/or modified from time to time, the "Plan") [D.I. 1533], (ii) the *Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* (as amended, supplemented, and/or modified from time to time, the "Disclosure Statement") [D.I. 1534], and (iii) the *Motion to Approve Debtors' Motion for Entry of An Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents HoldCo LLC (3987); (iii) 99 Cents Only Stores LLC (1605); (iv) 99 Cents Only Stores Texas, Inc. (1229); (v) 99 Cents PropCo LLC (7843); (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

*Votes to Accept or Reject the Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing For Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 1535];

d.  filed, on December 11, 2024, the *Notice of Exhibit to Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates* [D.I. 1571], which included the Liquidation Analysis;

e.  filed, on December 19, 2024, the *Revised Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1605] (the "<u>Amended Plan</u>") and (ii) the *Revised Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1606] (the "<u>Amended Disclosure Statement</u>");

f.  obtained, following the hearing on December 20, 2024 (the "<u>Interim Hearing</u>"), entry of the *Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 1612] (the "<u>Interim Approval and Procedures Order</u>") (i) approving the Disclosure Statement on an interim basis, (ii) approving (A) the Tabulation Procedures,[2] (B) the Ballots, the Combined Hearing Notice, and other related documents to be transmitted to holders of Claims in the Voting Classes (collectively, the "<u>Solicitation Package</u>"), and (C) the Notice of Non-Voting Status, (iii) setting certain deadlines, and (iv) scheduling the combined hearing on the final approval of the Disclosure Statement and confirmation of the Plan (the "<u>Combined Hearing</u>");

g.  filed, on December 20, 2024, the solicitation version of the Disclosure Statement [D.I. 1613];

h.  caused the Solicitation Package and the Notice of Non-Voting Status to be distributed beginning on or about December 24, 2024, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the local rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Local Rules</u>"), and the Interim Approval and Procedures Order, as evidenced by, among other things, the *Certificate of Service* [D.I. 1678] (the "<u>Solicitation Affidavit</u>");

i.  caused notice of the Combined Hearing (the "<u>Publication Notice</u>") to be published in the *Los Angeles Times* on December 26, 2024, as evidenced by the *Certificate of Publication* [D.I. 1646], filed on January 6, 2025;

j.  filed (i) on January 10, 2025, the *Plan Supplement with Respect to the Joint Chapter 11 Plan of Number Holdings, Inc.* [D.I. 1663] and (ii) on January 21, 2025, the *Amended Plan Supplement with Respect to the Joint Chapter 11 Plan of*

---

[2] Capitalized terms not defined shall have the respective meanings ascribed to them in the Interim Approval and Procedures Order or the Plan, as applicable.

*Number Holdings, Inc.* [D.I. 1686] (collectively, and as may be amended, supplemented, or modified, the "Plan Supplement");

k. filed, on January 21, 2025, the *Declaration of Craig Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1684] (the "Voting Declaration");

l. filed, on January 21, 2025, the revised *Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1685];

m. filed, on January 21, 2025, the *Declaration of Christopher J. Wells in Support of Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc. and Its Debtor Affiliates* [D.I. 1687] (the "Wells Declaration"); and

n. filed, on January 21, 2025, the *Debtors' Memorandum of Law in Support of Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc. and Its Debtor Affiliates* [D.I. 1688] (the "Confirmation Brief").

WHEREAS this Court having:

a. the Court granted interim approval to the Disclosure Statement at the Interim Hearing;

b. held the Interim Hearing on December 20, 2024 and held the Combined Hearing on January 24, 2025;

c. set January 17, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing and serving objections to final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Objection Deadline");

d. set January 17, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

e. set January 24, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing;

f. considered the Plan, the Plan Supplement, the Solicitation Affidavit, the Voting Declaration, the Wells Declaration, the Confirmation Brief, and all pleadings, exhibits, affidavits, statements, responses, and comments regarding the Plan and Disclosure Statement, including all objections and reservations of rights filed on the docket of these Chapter 11 Cases;[3]

g. heard the statements and arguments made by counsel on the record of the Interim Hearing and the Combined Hearing;

h. considered all oral representations, live testimony, proffered testimony, exhibits, documents, filings and other evidence presented at the Combined Hearing; and

---

[3] Including the (i) *Objection to Confirmation of Plan Objection and Reservation of Rights to the Joint Chapter 11 Plan of Number Holdings, Inc. and its Debtor Affiliates Filed by Safety National Casualty Corporation* [D.I. 1673]; (ii) United States Trustee's Objection to Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates [D.I. 1679]; and (iii) Limited Objection and Reservation of Rights of Certain Personal Injury Claimants with Respect to Confirmation of the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates and the Objection Thereto of Safety National Casualty Corporation [D.I. 1680].

i. [made rulings on the record at the Combined Hearing, which are incorporated in this Confirmation Order (as defined below)].

NOW, THEREFORE, based upon and after full consideration of the entire record of the Combined Hearing, which record is incorporated herein; and the Court being fully familiar with, and having taken judicial notice of, the entire record of these Chapter 11 Cases; and having found that notice of the Combined Hearing and the opportunity for any party in interest to object or otherwise be heard has been adequate and appropriate as to all parties affected by the Plan and the transactions contemplated therein; and the Court having found and determined pursuant to the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, the Interim Approval and Procedures Order, and all other applicable orders, laws, rules and regulations, that the Plan should be confirmed; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law, and orders (collectively, the "<u>Confirmation Order</u>"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.** **<u>Findings and Conclusions</u>**. The findings and conclusions set forth herein and on the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** **<u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>**. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. §

157(b), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Chapter 11 Petitions**.  On the Petition Date, the Debtors commenced the Chapter 11 Cases and on April 9, 2024, the Court entered an order authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) [D.I. 98].  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

D.     **Committee Appointment**.  On April 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 203].

E.     **Eligibility for Relief**.  The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

F.     **Judicial Notice**.  This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Court, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

G.     **Objections**. All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to the final approval of the Disclosure Statement and confirmation of the Plan, and such objections, if any, have been fully and fairly litigated or resolved. Any resolution of objections to the final approval of the Disclosure Statement or

confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights related to the final approval of the Disclosure Statement or confirmation of the Plan are overruled on the merits.

H.    **Adequacy of the Disclosure Statement**. The Disclosure Statement contains extensive material information regarding the Debtors sufficient to allow the parties entitled to vote on the Plan to make informed voting decisions. The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and such information (i) is persuasive and credible; and (ii) has not been controverted by other evidence.

I.    **Conditions Precedent to Confirmation**. The conditions precedent to confirmation of the Plan set forth in Section VIII.A of the Plan have been satisfied or waived in accordance with the terms thereof.

J.    **Notice and Transmittal of Solicitation Materials**. The Plan, the Disclosure Statement, the Interim Approval and Procedures Order, the Ballots, the Combined Hearing Notice, and the other materials distributed by the Debtors in connection with the Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in good faith, in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Local Rules, the procedures set forth in the Interim Approval and Procedures Order, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**K.** **Solicitation of Votes**. The solicitation of acceptances and rejections of the Plan via transmittal of the Interim Approval and Procedures Order and the other materials in the Solicitation Packages was authorized by and complied with the Interim Approval and Procedures Order and was appropriate under the circumstances. The period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for each holder of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

**L.** **Voting**. On January 21, 2025, the Debtors filed the Voting Declaration with this Court [D.I. 1684] certifying the method and results of the voting on the Plan. As set forth in the Voting Declaration:

    i. 100% in amount and 100% in number of the holders of Senior Notes Claims (Class 4) that voted on the Plan by the Voting Deadline voted to accept the Plan; and

    ii. 83.88% in amount and 91.16% in number of the holders of General Unsecured Claims (Class 5) that voted on the Plan by the Voting Deadline voted to accept the Plan.

Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, this Court finds that each of Classes 4 and 5 accepted the Plan. As evidenced by the Voting Declaration, no Class entitled to vote on the Plan voted to reject the Plan. As further evidenced by the Voting Declaration, the procedures used to tabulate Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Approval and Procedures Order, and any other applicable laws, rules, or regulations.

**M.** **Plan Supplement**. The notice of the filing of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Approval and Procedures Order, and all other applicable rules,

laws, and requirements, and no further notice is or shall be required. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan. All instruments and documents included in the Plan Supplement and all other documents necessary or appropriate to implement the Plan are integral to, part of, and incorporated by reference into the Plan.

**N.** **Modification to the Plan**. Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan made prior to the Combined Hearing do not materially or adversely affect or change the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims in the voting Classes be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan attached to this Confirmation Order as **Exhibit 1** is the Plan submitted for Confirmation.

**O.** **Bankruptcy Rule 3016**. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as Plan proponents. The Disclosure Statement and the Plan describe, in specific and conspicuous language, in bold font, all acts to be enjoined and identify the entities that will be subject to the injunction contained in the Plan, thereby satisfying Bankruptcy Rule 3016(c).

**P.** **Burden of Proof**. The Debtors, as the proponents of the Plan, have met their burden of proving all applicable provisions of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation. In addition, to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified (by declaration, proffer, or otherwise) on behalf of the Debtors at the

Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

Q. **The Plan Complies with Section 1129 of the Bankruptcy Code**.

i. **Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

a. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). The Plan designates eight Classes of Claims and Interests, other than Claims of the type described in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code. All Claims and Interests, as applicable, in each Class are substantially similar to the other Claims or Interests, as applicable, in such Class. Valid business, legal, and factual reasons exist for separately classifying the various Claims and Interests under the Plan. The classification was not made for any improper purpose. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 3 (Prepetition ABL Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies that Class 4 (Senior Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Equity Interests) are Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. No Disparate Treatment (11 U.S.C. § 1123(a)(4)). The Plan provides the same treatment for each Claim or Interest in each Class except to the extent that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. Means of Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including, without limitation: (i) general settlement of Claims and Interests; (ii) establishment of the Liquidating Trust and appointment of the Liquidating Trustee to administer the Liquidating Trust; (iii) appointment of the Plan Administrator to administer the Plan; (iv)

identification of retained Causes of Action; (v) vesting of the Liquidating Trust Assets in the Liquidating Trust; and (vi) vesting of the Post-Confirmation Debtors Retained Assets in the Post-Confirmation Debtors. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

f. <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Section IV.A of the Plan provides that the organizational documents of the Post-Confirmation Debtors will prohibit the issuance of any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6). Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

g. <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Post-Confirmation Debtors will not have any officers or directors. The identity of META Advisors LLC as the Plan Administrator and the Liquidating Trustee is disclosed in the Plan Supplement. The Liquidating Trustee has been selected by the Creditors Committee. The selection of the Liquidating Trustee and the Plan Administrator is consistent with the interests of holders of Claims and public policy. Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

h. <u>Inapplicable Provision</u>. None of the Debtors is an individual. Accordingly, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

i. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. Other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, consistent with section 1123(b) of the Bankruptcy Code.

1. <u>Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1))</u>. Pursuant to the Plan, Classes 4, 5, 6, 7, and 8 are Impaired, while Classes 1, 2, and 3 are Unimpaired under the Plan as contemplated by section 1123(b)(1) of the Bankruptcy Code.

2. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>. The Plan provides that each of the Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except (i) to the extent otherwise provided in the Plan or in connection with any Asset Sale, (ii) is the subject of a separate motion to assume or assume and assign pending as of the Effective Date, or (iii) previously expired or terminated pursuant to its own terms.

3. <u>Reservation of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3))</u>. The Plan provides that, in consideration for the distributions, releases, and other benefits provided under the Plan, and with the support of the various stakeholders, including the Committee and the Ad Hoc Group of Senior Noteholders, upon the Effective Date, it will constitute a good faith compromise and settlement of all Claims, Interests, and controversies. The Plan also provides for the retention of certain Causes of Action and their transfer to the Liquidating Trust.

4. <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>. The Plan modifies the rights of holders of Claims and Interests, as applicable, in Classes 4, 5, 6, 7, and 8, and leaves unaffected the rights of holders of Claims in Classes 1, 2, and 3.

5. <u>Other Appropriate Provisions (11 U.S.C. § 1123(b)(6))</u>. The Plan's other provisions are appropriate and consistent with the provisions of the Bankruptcy Code, including, but not limited to, provisions for (A) distributions to Holders of Allowed Claims, (B) resolution of Disputed Claims, (C) releases of certain parties by the Debtors, (D) consensual releases by certain parties of certain claims against other parties, (E) exculpations of certain parties, (F) injunctions with respect to certain actions, and (G) retention of jurisdiction by the Court, thereby satisfying the requirements of section 1123(b)(6) of the Bankruptcy Code.

ii. **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019. The Debtors and their agents transmitted the Confirmation Materials and solicited and tabulated votes on the Plan fairly, in good faith, and in compliance with the Interim Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

iii. **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of all stakeholders and negotiated in good faith and at arm's length among the Debtors and certain of their key stakeholders.

iv. **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are

subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

v. **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**. The Debtors have disclosed the identity, affiliation, and compensation of the Liquidating Trustee and the Plan Administrator in the Plan Supplement. The appointment of META Advisors LLC as the Liquidating Trustee and the Plan Administrator is consistent with the interests of creditors, equity security holders and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

vi. **No Rate Changes (11 U.S.C. § 1129(a)(6))**. Section 1129(a)(6) of the Bankruptcy Code is inapplicable because the Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

vii. **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. As evidenced by the liquidation analysis filed at [D.I. 1571] (the "Liquidation Analysis"), each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The Liquidation Analysis (i) utilizes reasonable and appropriate methodologies and assumptions; (ii) has not been controverted by other evidence; and (iii) is reasonable, persuasive, credible, and accurate as of the date such analysis and any supporting evidence were prepared, presented, or proffered. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

viii. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**. Holders of Claims in Classes 1, 2, and 3 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Classes 4 and 5 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, as established by the Voting Declaration. The holders of Claims and Interests in Classes 6, 7, and 8 are Impaired and deemed to have rejected the Plan. However, as set forth below, the Plan may be confirmed notwithstanding that deemed rejection pursuant to section 1129(b)(1) of the Bankruptcy Code.

ix. **Treatment of Administrative Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims under the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

x.  **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**.  As evidenced by the Voting Declaration, Classes 4 and 5 voted to accept the Plan at each Debtor (without including acceptances of the Plan by any insider). As such, there is at least one Impaired Class of Claims that has accepted the Plan and, therefore, section 1129(a)(10) of the Bankruptcy Code has been satisfied.

xi.  **Feasibility (11 U.S.C. § 1129(a)(11))**.  The Plan provides for an orderly wind down and liquidation of the Debtors' Estates, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

xii.  **Payment of Fees (11 U.S.C. § 1129(a)(12))**.  The Plan provides that all statutory fees have been or will be paid on the Effective Date and thereafter as may be required, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

xiii.  **Non-Applicability of Certain Sections (11 U.S.C. § 1129(a)(13), (14), (15), and (16))**.  Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors do not maintain any retirement benefits as defined in section 1114 of the Bankruptcy Code, owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

R.  **Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b))**.  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 6, 7, and 8 (the "Rejecting Classes").  The Plan does not discriminate unfairly with respect to the Rejecting Classes because there are no similarly situated holders of Claims or Interests under the Plan.  The Plan is "fair and equitable" with respect to the Rejecting Classes because (i) there are no Claims or Interests that are junior to the Claims and Interests in the Rejecting Classes that will receive or retain any property under the Plan on account of such Claims or Interests; and (ii) no Claims or Interests senior to the Claims or Interests, as applicable, in the Rejecting Classes will recover more than of 100% of the Allowed amount of their respective Claims or Interests.  Thus, the Plan may be confirmed notwithstanding the Rejecting Classes.

**S.**     **Only One Plan (11 U.S.C. § 1129(c))**.   The Plan is the only plan that will be confirmed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**T.**     **Principal Purpose of Plan (11 U.S.C. § 1129(d))**.   No governmental entity has objected to confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended.   Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

**U.**     **Not Small Business Cases (11 U.S.C. § 1129(e))**.   The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**V.**     **Satisfaction of Confirmation Requirements**.   Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**W.**     **Likelihood of Satisfaction of Conditions Precedent to the Effective Date**. Each condition precedent to the Effective Date set forth in <u>Section VIII.B</u> of the Plan has been or is reasonably likely to be satisfied or waived in accordance with <u>Section VIII.C</u> of the Plan.

**X.**     **Good Faith of Exculpated Parties**.   The Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, therefore, on account of such activities shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance of rejections of the Plan.

**Y.** **Implementation**. All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and, upon completion, execution, and delivery (where applicable) shall be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. Such documents and agreements are essential elements of the Plan, and entry into, and performance of the transactions contemplated by, each such document or agreement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into such documents and agreements. The Debtors, the Post-Confirmation Debtors, and the Liquidating Trust, as applicable, are authorized to take any action reasonably necessary or appropriate to implement, effectuate and consummate the Plan, the documents and agreements necessary to implement the Plan, this Order and the transactions contemplated thereby or hereby, including performance under the Liquidating Trust Agreement.

**Z.** **Executory Contracts**. The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and the Plan satisfies the requirements of all applicable provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code. The assumption, assumption and assignment, or rejection of Executory Contract and Unexpired Lease pursuant to <u>Section V</u> of the Plan shall be legal, valid, and binding upon the Debtors, the Post-Confirmation Debtors, the Plan Administrator, all non-Debtor parties to such Executory Contracts and Unexpired Leases, and the respective successors and assigns of all the foregoing.

**AA.** **Exculpation, Releases, and Injunction Provisions**.  This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in <u>Section X</u> of the Plan.  Sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and the approval of the exculpations and releases set forth in <u>Section X</u> of the Plan.  Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Combined Hearing, this Court finds that the exculpation, releases, and injunction set forth in <u>Section X</u> of the Plan are consistent with the Bankruptcy Code and applicable law.  Further, the exculpation, releases, and injunction set forth in <u>Section X</u> of the Plan are integral components of the Plan.

**BB.** **Exculpation**.  The exculpation provision set forth in <u>Section X.A</u> of the Plan is appropriate and complies with applicable law because it (i) was proposed in good faith, (ii) is appropriately tailored and reasonable in scope, and (iii) is essential to the Plan.  The exculpation granted under the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is the result of fraud, gross negligence, or willful misconduct. The record in the Chapter 11 Cases fully supports the exculpation provision.

**CC.** **Debtor Release**.  The release by the Debtors set forth in <u>Section X.B.1</u> of the Plan (the "<u>Debtor Release</u>") represents a sound exercise of the Debtors' business judgment, is fair, reasonable, and in the best interests of the estates, based on significant contribution, concessions, and compromises made by the Released Parties in the process of formulating and supporting the Plan, and is appropriate under the circumstances.

**DD.** **Release by Holders of Claims or Interests**.  The release by Holders of Claims and Interests (the "<u>Third-Party Release</u>") set forth in <u>Section X.B.2</u> of the Plan is an essential provision of the Plan.  The Third-Party Release was conspicuously disclosed in boldface type in

the Disclosure Statement, the Plan, and on the Ballots, providing the affected parties with sufficient notice of both the opportunity to opt out of granting such release and of the consequences of granting such release. The Third-Party Release ~~is: (i) consensual; (ii) a good-faith settlement and compromise of the claims and Causes of Action released thereby; (iii) being granted in exchange for the good and valuable consideration provided by the Released Parties; (iv) essential to the implementation of the Plan and the transactions incorporated into the Plan; (v) beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders; (vi) fair, equitable, and reasonable; (vi) given after due notice and opportunity for hearing; (vii) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (viii) consistent with the applicable provisions of the Bankruptcy Code.~~**provided in the Plan is consensual.**

      **EE.** <u>**Injunction**</u>. The injunction provision set forth in <u>Section X.C</u> of the Plan: (i) implements the exculpation, the Debtor Release, and the Third-Party Release, (ii) is within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (iii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the Plan and the transactions incorporated into the Plan; (iv) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and their creditors; and (v) is consistent with the provisions of the Bankruptcy Code and other applicable law. The injunction provision is necessary to preserve the authority of the Post-Confirmation Debtors and the Plan Administrator, as applicable, to pursue retained Causes of Action and to enforce the terms of the Plan.

**FF. Retention of Jurisdiction**. It is appropriate for this Court to retain jurisdiction over all matters arising in, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in <u>Section XI</u> of the Plan and section 1142 of the Bankruptcy Code.

## <u>ORDER</u>

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.      **Approval of Disclosure Statement**. The Disclosure Statement is approved on a final basis pursuant to section 1125 of the Bankruptcy Code as containing adequate information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations. Any and all objections to the approval of the Disclosure Statement that have not been withdrawn or resolved prior to the Combined Hearing are hereby overruled on the merits, for the reasons set forth on the record at the Combined Hearing, which record is hereby fully incorporated herein by reference.

2.      **Confirmation of the Plan**. The Plan, including (i) all modifications to the Plan filed with the Court prior to or during the Combined Hearing and (ii) all documents incorporated into the Plan through the Plan Supplement, is confirmed pursuant to section 1129 of the Bankruptcy Code. The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all documents referred to therein, whether or not included in the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are hereby approved and authorized. The Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts,

instruments, releases, and other agreements or documents created in connection with the Plan, including without limitation any agreements contained in the Plan Supplement, as each may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of the Plan shall be effective and binding as of the Effective Date. All terms of the Plan and the documents contained in the Plan Supplement are incorporated herein by reference and constitute an integral part of this Confirmation Order. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

3. **Objections Overruled**. Any and all objections to the Plan that have not been withdrawn or resolved prior to the Combined Hearing are hereby overruled on the merits, for the reasons set forth on the record at the Combined Hearing, which record is hereby fully incorporated herein by reference. All withdrawn objections, if any, have been withdrawn with prejudice. All objections to Confirmation not filed and served prior to the applicable deadline, if any, are deemed waived and shall not be considered by the Court.

4. **Binding Effect**. Subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim and Interest and their respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

5. **Deemed Acceptance of the Plan as Modified**. All changes, amendments, alterations and modifications to the Plan made prior to the Combined Hearing are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. In

accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, as altered, amended or modified prior to the Combined Hearing.

6.    **Deemed Consolidation**.  The Plan will not cause the substantive consolidation of any of the Debtors or their Estates, <u>provided</u>, <u>however</u>, that for the purposes of voting on the Plan and Distributions under the Plan, the Estates shall be deemed merged and consolidated, so that a Holder of a Claim that may be asserted against more than one Debtor shall be entitled to a single Distribution as if such Holder had a single Claim against the consolidated Estates. On the Effective Date: (1) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that (i) any General Unsecured Claim against a Debtor and any guarantee of such General Unsecured Claim executed by any other Debtor and (ii) any General Unsecured Claim on which more than one Debtor is jointly or severally liable, as the case may be, shall be deemed to be one obligation; and (2) each and every General Unsecured Claim filed or Allowed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against, and obligation of, Number Holdings, Inc.

7.    **Organizational Transactions**.  All of the transactions contemplated by the Plan and the Plan Supplement are hereby approved.  The entry of this Confirmation Order shall constitute authorization for the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to

have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation. On the Effective Date, the Plan Administrator, the Liquidating Trustee, and the Post-Confirmation Debtors, as applicable, are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors, Post-Confirmation Debtors, or the Liquidating Trust, as applicable.

8. Except as otherwise provided in the Plan, on the Effective Date, each Debtor other than the Post-Confirmation Debtors shall be dissolved, consolidated, or merged out of existence without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, except to the extent that the Plan Administrator determines, in its discretion, that the filing of a certificate of dissolution with the appropriate governmental authorities is required or warranted under the circumstances.

9. Each Post-Confirmation Debtor shall continue to exist after the Effective Date, as a separate legal Entity. Each Post-Confirmation Debtor shall have the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable laws of the jurisdiction in which such Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect on the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or this Confirmation Order.

10. **Plan Administrator**. The Plan Administrator shall have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan, and as otherwise provided in

this Confirmation Order. On and after the Effective Date, the Plan Administrator shall act for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Court approval. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Confirmation Debtors. In accordance with <u>Section IV.B</u> of the Plan, the powers of the Plan Administrator shall include any and all powers and authority to administer the Post-Confirmation Debtors' Retained Assets and to implement the Plan and wind down the businesses and affairs of the Post-Confirmation Debtors in accordance with the Plan, without the need for further Court approval.

11. **Plan Administrator Indemnity**. To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, none of the Plan Administrator, its affiliates and agents, or any of its respective officers, directors, agents, and employees shall be personally liable to any Entity for actions taken under or pursuant to the Plan or this Confirmation Order, except to the extent that its, his or her own act constitutes gross negligence, actual fraud or willful misconduct. To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, the Post-Confirmation Debtors shall indemnify and hold harmless (i) the Plan Administrator (in its capacity as such and as sole officer, director and/or manager of the Post-Confirmation Debtors), and (ii) the professionals retained by the Post-Confirmation Debtors (collectively, the "<u>Indemnified Parties</u>"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including the costs and expenses of investigating, analyzing and responding to claims, other than

acts or omissions resulting from such Indemnified Party's own gross negligence, actual fraud or willful misconduct.

12. **Plan Implementation**. Pursuant to, and in accordance with sections 1123(a)(5)(D) and 1142 of the Bankruptcy Code, without any further order of this Court or other authority, immediately upon entry of this Confirmation Order, the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are authorized to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, this Confirmation Order, and any transactions contemplated thereby or hereby. All such actions taken or caused to be taken consistent with the terms of this Confirmation Order and the Plan shall be deemed to have been authorized and approved by this Court without further approval, act or action under any applicable law, order, rule, or regulation.

13. **Supplemental Claims Bar Date**. Unless previously filed or as otherwise governed by any order of the Court, requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) that accrued between June 1, 2024, and the Effective Date must be filed and served on the Notice Parties no later than the Supplemental Claims Bar Date. Holders of Administrative Claims that are required to file and serve a request for payment and that do not timely file and serve such a request shall be forever barred from asserting such Administrative Claims, and such Administrative Claims shall be automatically disallowed as of the Effective Date; *provided* that a notice of such disallowance shall be filed and served on the Holder of the applicable Claim who has filed such request on an untimely basis. Objections to requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) must be filed and served on

the Notice Parties and the requesting party no later than the Claims Objection Bar Date. Holders of 503(b)(9) Claims shall continue to be subject to the Claims Bar Date.

14. **Professional Fees**. Professionals shall deliver estimates of their unpaid Fee Claims to the Debtors and the Committee no later than five days before the Effective Date. Any such estimate shall not be deemed, however, to limit the amount of the fees and expenses that will be the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. On or before the Effective Date, the Debtors shall establish the Professional Fee Reserve and shall fund the Professional Fee Reserve with Cash equal to the aggregate of the estimated Fee Claims and other Professional fees and expenses. The Professional Fee Reserve and the funds therein shall be used for the sole purpose of paying the accrued and unpaid Allowed Fee Claims and other Professional fees and expenses. For the avoidance of doubt, such funds shall not constitute property of the Debtors, their Estates, the Post-Confirmation Debtors, or the Liquidating Trust; *provided* that the Liquidating Trust shall hold a residual interest in the Professional Fee Reserve and upon satisfaction of all Allowed Fee Claims and other Professional fees and expenses, any funds remaining in the Professional Fee Reserve shall be transferred to the Liquidating Trust.

15. Subject to <u>Section II.A.1.e</u> of the Plan, Allowed Fee Claims shall be satisfied first from any remaining retainer held by any Professionals and, once such retainer is exhausted, from the Professional Fee Reserve. If the amount in the Professional Fee Reserve is insufficient to fund payment in full of all Allowed Fee Claims, the deficiency shall be promptly funded by the Liquidating Trust without any further action or order of the Court.

16. Following the Effective Date, the Professionals retained by the Debtors shall not be required to render any services or incur any expenses on behalf of the Post-Confirmation Debtors, except to the extent that such fees and/or expenses are satisfied from the Wind-Down Reserve or otherwise funded or provided for by the Liquidating Trust; *provided* that the Professionals retained by the Debtors may incur fees and/or expenses after the Effective Date to prepare, file and, if necessary, litigate final applications for compensation and any such fees and/or expenses shall be satisfied from the Professional Fee Reserve and/or the Wind-Down Reserve to the extent necessary.

17. Professionals asserting Fee Claims for services rendered before the Effective Date must file and serve on the Notice Parties an application for final allowance of such Fee Claims no later than twenty-five (25) days after the Effective Date. Professionals shall also serve any such application on such other Entities as are designated by the Bankruptcy Rules or any order establishing procedures for compensation and reimbursement of expenses of Professionals entered by the Bankruptcy Court (including, but not limited to, the Creditors' Committee). Any Professional whose compensation or reimbursement of expenses is authorized pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval. Objections to any Fee Claim must be filed and served on the Notice Parties, and the requesting party not later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days after the filing of the applicable fee application or such other period of limitation as may be established by a Final Order for objecting to such Fee Claim. Any provision in the Interim Compensation Order requiring Professionals to file an interim fee application shall be waived.

18. **Notes Settlement Costs**. To the extent that any Notes Settlement Expenses or Senior Notes Agent Fees remain unpaid as of the Business Day prior to the Effective Date, the Plan Administrator shall pay such outstanding and invoiced Notes Settlement Expenses and Senior Notes Agent Fees, in full in Cash, on the Effective Date. Any Notes Settlement Expenses or Senior Notes Agent Fees invoiced after the Effective Date shall be paid promptly, but no later than two (2) Business Days after any applicable objection deadline pursuant to the Notes Settlement has passed.

19. **Statutory Fees**. All quarterly fees payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date. On and after the Effective Date, the Liquidating Trust and the Plan Administrator shall be responsible for filing post-Confirmation quarterly reports. Each Debtor, Post-Confirmation Debtor, the Liquidating Trust, and the Plan Administrator shall be jointly liable for the payment of all applicable U.S. Trustee fees in each Debtor's chapter 11 case until (i) the entry of a final decree in such case or (ii) such case is closed or dismissed. Notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, to the extent the chapter 11 case of any Debtor is closed and the Liquidating Trust continues to operate, the Liquidating Trustee shall continue to file post-Confirmation quarterly reports in each open case until such time as the Liquidating Trust ceases to exist; *provided* that, for the avoidance of doubt, and consistent with the U.S. Trustee's Operating Guidelines for Chapter 11 Cases, to the extent a Debtor's chapter 11 case is closed, no further quarterly U.S. Trustee fees shall be due and payable by the Liquidating Trust of the Debtors for such case.

20. **Liquidating Trust**. In accordance with Section IV.C.1 of the Plan, on the Effective Date, the Liquidating Trust shall be established, and the Debtors shall irrevocably

transfer, and shall be deemed to have irrevocably transferred, all of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan (except for any Post-Confirmation Debtors' Retained Assets, which shall vest in, and remain the assets of, the applicable Post-Confirmation Debtor) which Liquidating Trust Assets shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims, Interests, charges, rights, or other encumbrances subject to and in accordance with the Plan.

21.     The Liquidating Trust, acting by and through the Liquidating Trustee, shall be the exclusive administrator of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4), as well as a party in interest under section 1109(b) of the Bankruptcy Code and representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of administering the Liquidating Trust Assets (including, but not limited to, Causes of Action) and carrying out the Liquidating Trust's duties under the Liquidating Trust Agreement to the extent set forth in the Plan.   After the Effective Date, neither the Debtors nor the Post-Confirmation Debtors shall have any interest in the Liquidating Trust Assets except as set forth in the Plan, this Confirmation Order, or the Liquidating Trust Agreement.

22.     **Liquidating Trust Expenses**.   The Liquidating Trust Expenses shall be paid from the Liquidating Trust Assets in accordance with the Plan and Liquidating Trust Agreement. The Liquidating Trustee may employ, on behalf of the Liquidating Trust, without further order of the Court, professionals to assist in carrying out its duties under the Plan and the Liquidating Trust Agreement and may compensate and reimburse the reasonable expenses of these professionals without further order of the Court from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement.   For the avoidance of doubt, the Liquidating

Trust must satisfy or reserve for all Liquidating Trust Expenses before Distributions on account of Allowed Claims may be made.

23. **Dissolution of the Liquidating Trust**. The Liquidating Trust shall be dissolved and the Liquidating Trustee shall be discharged at such time as the Liquidating Trustee determines all distributions required to be made by the Liquidating Trust under the Plan have been made. In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless such term is extended by an order of the Court. Subject to Section IV.C.6 of the Plan, upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with the Plan and Liquidating Trust Agreement.

24. **Preservation of Causes of Action**. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that the Debtors or the Estates may hold against any Entity to the extent not released under Section IX.B of the Plan or otherwise, including the Avoidance Actions, and all Privilege Rights with respect to any of the foregoing, are Liquidating Trust Assets that shall automatically vest in the Liquidating Trust on the Effective Date. Acting by and through the Liquidating Trustee in its sole discretion, the Liquidating Trust, shall be the representative appointed by the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to such Causes of Action and may pursue, settle or decline to pursue any such Causes of Action in accordance with the best interests of the Liquidating Trust Beneficiaries. The inclusion or failure to include any Cause of Action in the schedule of retained Causes of Action in the Plan Supplement shall not be

deemed an admission, denial or waiver of any claims, rights or Causes of Action that any Debtor or Estate may have against any Entity.

25. **Insurance Matters**. On the Effective Date, provided that the Debtors have paid all applicable premiums, the Insurance Contracts shall continue in full force and effect without any action by an Entity or further order of the Court so as to continue to provide coverage in accordance with their respective terms. None of the Liquidating Trustee, the Post-Confirmation Debtors or the Plan Administrator shall terminate or otherwise reduce the coverage under any fully paid or prepaid D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto. All current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Insurance Policies, which shall not be altered. For the avoidance of doubt: (i) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations under the D&O Insurance Policies and (ii) the Post-Confirmation Debtors shall retain the ability to supplement the debtors' D&O Insurance Policies as the Plan Administrator may deem necessary.

26. The automatic stay of section 362(a) of the Bankruptcy Code and any injunctions set forth in the Plan shall be deemed lifted, solely against the applicable insurer, without further order of the Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against insurers under applicable non-bankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of

business and without further order of this Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against an insurer under applicable non-bankruptcy law, or an order has been entered by the Court granting a claimant relief from the automatic stay or the injunctions set forth in the Plan to proceed with its claim, and (c) all costs in relation to each of the foregoing; and (iii) insurers to take any other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment).

27. **Personal Injury Claimants**. Nothing herein or in the Plan (including the Plan Injunction), shall modify any order granting stay relief to a personal injury claimant.

28. **Release of Preference Claims**. The Debtors release and discharge all Avoidance Actions of the Debtors under section 547 of the Bankruptcy Code.

29. **Vesting of Assets**. On the Effective Date, (i) the Liquidating Trust Assets shall vest in the Liquidating Trust and (ii) the Post-Confirmation Debtors Retained Assets shall vest or re-vest in the Post-Confirmation Debtors, in each case, free and clear of all Liens, Claims, Interests, charges, or other encumbrances except as otherwise provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidating Trust, acting by and through the Liquidating Trustee, and the Post-Confirmation Debtors, by and through the Plan Administrator, may liquidate or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

30. **Cancellation and Surrender of Documents, Instruments and Securities**. Except as provided in the Plan, the Plan Supplement, or this Confirmation Order, or any contract, instrument or other agreement or document entered into or delivered in connection with the Plan or the Asset Sales, and, subject to receipt of the applicable Distributions pursuant to <u>Section II</u> of

the Plan, on the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan, all notes, bonds, indentures (including, without limitation, the Senior Notes Documents), agreements, instruments, certificates, securities and other documents evidencing (directly or indirectly) Claims or Interests shall be deemed satisfied in full, canceled, discharged, and surrendered and of no further force and effect against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator without any further action on the part of the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator; *provided*, *however*, that notwithstanding the occurrence of the Effective Date, the Senior Notes Documents shall continue in effect solely for the purposes of (a) to the extent not previously paid, allowing holders of Senior Notes Claims to receive and accept their respective distributions under the Plan on account of such Senior Notes Claims, subject to the Senior Notes Agent Charging Lien; and (b) allowing and preserving the rights of the Senior Notes Agent to (1) assert or maintain any rights the Senior Notes Agent may have against any money or property distributable or allocable to holders of Senior Notes Claims, including, without limitation, the Senior Notes Agent Charging Lien; (2) receive compensation or reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of this Plan, the Plan Supplement, or Confirmation Order; (3) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Senior Notes Agent may have under the Plan, the Plan Supplement, this Confirmation Order, the Senior Notes Documents, or any other related agreement; (4) preserve the rights of the Senior Notes Agent to appear and be heard in the

Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce any right or obligation owed to the Senior Notes Agent or Holders of Senior Notes Claims under the Plan, the Plan Supplement, this Confirmation Order, or other documents incorporated therein; and (5) execute documents pursuant to <u>Section IV.K</u> of the Plan. Holders of or parties to such cancelled instruments, notes, and other documentation will have no rights arising from or relating to such instruments, notes, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan, the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of the Plan. On the Effective Date, the Senior Notes Agent and its agents, successors, and assigns shall be automatically and fully discharged and released of all of their duties, responsibilities, and obligations associated with the Senior Notes Documents. On and after the Effective Date, (i) the Senior Notes shall be deemed to be null, void, and worthless, and (ii) at the request of the Senior Notes Agent, DTC shall take down the relevant positions relating to the Senior Notes without any requirement of indemnification or security on the part of the Debtors, the Post-Confirmation Debtors, or the Senior Notes Agent.

31.     **<u>Release of Liens</u>**.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan and subject to receipt of the applicable Distributions, on the Effective Date, all Liens on the property of any Estate shall be fully released and discharged.

32.     Following the Effective Date and the indefeasible payment in full in Cash of all Senior Notes Agent Fees, the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable, may, in their sole discretion and at their sole expense, take any action necessary to terminate, cancel,

extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Senior Notes Claims, including, without limitation, the preparation and filing, in form, substance, and content reasonably acceptable to the Senior Notes Agent, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Senior Notes Agent (including, without limitation, UCC-3 termination statements), and the Senior Notes Agent shall execute and deliver all such documents reasonably requested by the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable.

33.    **Dissolution of the Boards of the Debtors or Managers**.   On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have terminated, and the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned.  Following such terminations and resignations, the Plan Administrator shall be the sole manager and sole officer of the Post-Confirmation Debtors, and shall succeed to the powers of the respective Debtors' managers, directors, and officers.

34.    **Closing of the Chapter 11 Cases**.   On or after the Effective Date, the Plan Administrator or Liquidating Trustee shall be authorized to file a motion requesting entry of one or more orders closing any of the Chapter 11 Cases.  Such motion may be heard by the Court on fourteen (14) days' notice to the U.S. Trustee and all other parties entitled to notice under Local Bankruptcy Rule 2002-1(b).  Upon administering the Plan in full, either the Plan Administrator or the Liquidating Trustee may seek authority from the Court to close the case of Number

Holdings, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the requirements set forth in Local Rule 3022-1.

35.     **Executory Contracts and Unexpired Leases**.  Each of the Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Court shall be deemed rejected as of the Effective Date, except (i) to the extent otherwise provided in the Plan or in connection with any Asset Sale, (ii) to the extent such Executory Contracts and Unexpired Lease is the subject of a separate motion to assume or assume and assign pending as of the Effective Date, or (iii) to the extent such Executory Contract or Unexpired Lease previously expired or terminated pursuant to its own terms.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Claims and Noticing Agent by the Supplemental Claims Bar Date.  Any Claims arising from the rejection of any Executory Contracts and Unexpired Leases that are not timely filed or is otherwise permitted to be late-filed by a Final Order shall be automatically disallowed, without the need for any objection or further notice to or action or approval of the Court.  Rejection of Executory Contracts and Unexpired Leases, as set forth in Section V of the Plan, is hereby authorized and entry of this Confirmation Order shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

36.     **Exculpation, Releases, Injunction and Related Provisions**.  The exculpation, releases, injunction and related provisions set forth in <u>Section X</u> are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.  The exculpation, releases, and injunction provisions are set for in full below:

### a.  Exculpation

**37.    From the Petition Date through the Effective Date, the Exculpated Parties[4] shall neither have nor incur any liability to any Entity. No Holder of a Claim or Interest, no other party in interest and none of their respective Representatives shall have any right of action against any Exculpated Party for any act taken or omitted to be taken from the Petition Date through the Effective Date in connection with, related to or arising out of the Debtors' chapter 11 cases, the Debtors, the Estates, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, or any other transactions proposed or consummated in connection with these cases or the Plan, any Distributions made under or in connection with the Plan or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of <u>Section X.A</u> of the Plan shall have no effect, however, on: (i) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; and (ii) the liability of any Exculpated Party that is the result of any act or omission of such Exculpated Party or its Representative that is determined by a Final Order to have constituted gross negligence, fraud or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.**

### b.  Release by the Debtors

**38.    Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permitted by law, the Debtors, on behalf of themselves, their Estates, their respective Representatives and any and all persons and Entities who may purport to claim by, through, for, or because of them, shall forever and irrevocably release, waive and discharge all claims and Causes of Action that they have, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transactions proposed or consummated in connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement, and any other transaction implemented pursuant to or**

---

[4]    "<u>Exculpated Parties</u>" means, collectively and individually, (a) the Debtors, (b) the Creditors' Committee and its members, and (c) the Debtors' directors, managers, and officers (who served in such capacity during the period between the Petition Date and the Effective Date), (d) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for those retained pursuant to the Ordinary Course Professionals Order, and (e) the professionals retained by the Committee, solely in their respective capacities as such.

consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any any act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of <u>Section X.B.1</u> of the Plan shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, fraud or willful misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.

### c. Release by Holders of Claims.

39. Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the services of the Released Parties[5] to facilitate the resolution of these cases, to the fullest extent permitted by law, each (i) Holder of a Claim that returns a Ballot in accordance with the instructions set forth thereon or enters into a settlement with the Debtors with respect to their Claim and its treatment under the Plan, and does not opt-out of the release contained in <u>Section X.B.2</u> of the Plan by checking the opt-out box on the Ballot indicating that such Holder opts not to grant the releases provided in the Plan and (ii) Releasing Party,[6] shall be deemed to forever and irrevocably release, waive and discharge all claims or causes of action that such Holder has, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transaction proposed or consummated connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement and any other transaction implemented pursuant to or consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed thereunder. The foregoing provisions of <u>Section X.B.2</u> of the Plan shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross

---

[5] "<u>Released Parties</u>" means, collectively and individually, and, in each case, solely in their capacity as such, means: (a) the Debtors; (b) the Estates, (c) the Creditors' Committee and its members, (d) the DIP Agent and the DIP Lenders, (e) the Prepetition ABL Agent and the Prepetition Lenders, (f) the Prepetition FILO Agent, (g) the Senior Notes Agent, (h) Holders of the Senior Notes, (i) all Holders of Claims who grant the releases provided by the Plan, and (j) the Representatives of each of the parties enumerated in the preceding clauses (a)-(i); <u>provided</u> that any Entity that objects to the releases provided by the Plan and any of such Entity's Representatives shall not be a Released Party.

[6] "<u>Releasing Parties</u>" means, collectively and individually, and, in each case, solely in their capacity as such: (a) the Estates, (b) the Creditors' Committee and its members, (c) the DIP Agent and the DIP Lenders, (d) the Prepetition ABL Agent and the Prepetition Lenders, (e) the Prepetition FILO Agent, (f) the Senior Notes Agent, (g) the members of the Ad Hoc Group of Senior Noteholders, and (h) the Representatives of each of the parties enumerated in the preceding clauses (a)-(g).

negligence, fraud or willful misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.

Nothing in the Plan discharges, releases, precludes, or enjoins: (a) any liability to any governmental unit that is not a Claim; (b) any Claim of a governmental unit arising after the Effective Date; (iii) any police or regulatory liability to a governmental unit on the part of any Entity as the owner or operator of property after the Effective Date; or (iv) any liability to a governmental unit on the part of any Entity other than the Debtors. Nothing in the Plan shall enjoin or otherwise bar a governmental unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in the Plan divests any tribunal of any jurisdiction it may have to adjudicate any defense based on this Plan provision.

d.     Injunction.

40.     Upon entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective Representatives, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

Except as expressly provided in the Plan, this Confirmation Order, or another Final Order of the Bankruptcy Court or as agreed to by the Debtors, the Post-Confirmation Debtors, and/or the Liquidating Trust, and a holder of a Claim or Interest, all Persons and Entities who have held, hold, or may hold Claims, Interests, or causes of action that have been released, discharged, or are subject to exculpation pursuant Section X of the Plan (the "Released and Exculpated Claims") are permanently enjoined, on and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Exculpated Parties, the Released Parties, and/or the Plan Administrator: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or respect to any such Claims, Interests, or causes of action; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iv) asserting any right of setoff (except to the extent exercised prepetition), directly or indirectly, against any obligation due from the Debtors, the Liquidating Trust or the Post-Confirmation Debtors, or against property or interests in property of any of the Debtors, Liquidating Trust, or the Post-Confirmation Debtors except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The benefit of the injunctions in <u>Section X.C</u> of the Plan shall extend to any successors of the Released Parties, and their respective property and interests in property.

41.     **<u>Effect of Confirmation Order on Prior Orders</u>**.  Unless expressly provided for herein or in the Plan, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases.

42.     **<u>Dissolution of the Committee</u>**.  Except to the extent provided in the Plan, upon the Effective Date: (i) the Committee shall be dissolved; (ii) the current and former members of the Committee and their respective Representatives shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases; and (iii) the Professionals retained by the Committee will not be entitled to assert Fee Claims for any services rendered or expenses incurred after the Effective Date in their capacity as Professionals for the Committee, except to the extent necessary to: (a) prepare, File and, if necessary, litigate final applications for compensation; (b) object to final fee applications filed by other Professionals; and (c) appear and be heard in connection with any appeal of this Confirmation Order.

43.     **<u>Inconsistency</u>**.  In the event of any inconsistency among the Plan, the Disclosure Statement or any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern.  In the event of any inconsistency between the Plan and any document or agreement filed as part of the Plan Supplement (including, but not limited to, the Liquidating Trust Agreement), such document or agreement shall control.  In the event of any inconsistency between the Plan or any document or agreement filed in the Plan Supplement and this Confirmation Order, this Confirmation Order shall control.

44.     **Document Retention**.  On and after the Effective Date, the Post-Confirmation

Debtors or Liquidating Trust, as applicable, is permitted to either: (i) maintain documents in

accordance with the Debtors' existing document retention policy, as it may be altered, amended,

modified, or supplemented by the Post-Confirmation Debtors or the Liquidating Trustee, as

applicable; or (ii) abandon such documents, as determined by the Plan Administrator or the

Liquidating Trustee, as applicable, in its reasonable discretion, and the Post-Confirmation

Debtors and the Liquidating Trust shall have no liability for abandoning such documents. The

Voting Agent is authorized to destroy all paper/hardcopy records related to the Chapter 11 Cases

one (1) year after the Effective Date.

45.     **Documents, Mortgages, and Instruments**.  This Confirmation Order is and shall

be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, county and

local officials and all other Persons who may be required by operation of law, the duties of their

office, or contract, to accept, file, register or otherwise record or release any documents or

instruments to effectuate, implement, and consummate the transaction contemplated by the Plan

and this Confirmation Order (all such entities being referred to as "Recording Officers").  All

Recording Officers are hereby ~~directed~~**authorized** to accept for filing any and all documents and

instruments necessary, advisable or appropriate to consummate the transactions contemplated by

the Plan and this Confirmation Order subject to the payment of any filing or other fee imposed

under non-bankruptcy law.

46.     **Plan Settlements**.  The settlements reflected in the Plan and each of the terms

thereof are approved pursuant to Bankruptcy Rule 9019 as fair, prudent and reasonable

compromises of the controversies, Causes of Action or Claims, as applicable, resolved by such settlements and are binding upon all Entities affected thereby and all creditors of these Estates and parties in interest in the Chapter 11 Cases.

47. **Applicable Non-Bankruptcy Law**. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

48. **Designated Landlords**. Notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any of Bearwood Partners, LLC; Buckingham Plaza Limited Partnership; Dart Warehouse Corporation; Lake Forest Marketplace, LLC; NMC Santa Ana, LLC, Ginsborg Boys, LLC and Bristol Chino II, LLC, as tenants in common; and Upside Crenshaw Holding, LLC (each, a "Designated Landlord") in their capacities as a counterparty to an Unexpired Lease of real property to assert any right of setoff or recoupment that such Designated Landlord may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) assertion of setoff or recoupment with respect to any security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, or any successors to the Debtors, under the Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Post-Effective Date Debtors, or any successors of the Debtors.

49. **Dollar Tree**. In complete, full and final satisfaction of any and all claims or causes of action (including, but not limited to, the payment of Carrying Costs (as such term is defined in the applicable asset purchase agreements) as provided for in Section 10.4(a) of the

applicable asset purchase agreements) previously, now or hereafter arising under (i) that certain Asset Purchase Agreement, dated as of May 9, 2024, by and among, on one hand, Dollar Tree Stores, Inc., and, on the other hand, 99 Cents Only Stores LLC and 99 Cents Only Stores Texas, Inc. and (ii) that certain Asset Purchase Agreement, dated as of May 24, 2024, by and among, on one hand, Dollar Tree Stores, Inc., and, on the other hand, 99 Cents Only Stores LLC and 99 Cents Only Stores Texas, Inc., Dollar Tree Stores, Inc. shall make a one-time payment of $2,500,000.00 to the Debtors by wire transfer or ACH payment within two (2) business days of entry of this Confirmation Order.

50. **Texas Taxing Authorities**. Any Allowed Secured Tax Claims for the 2023 tax year or prior, and any 2024 Secured Tax Claims of the Texas Taxing Authorities[7] that were not assumed pursuant to an applicable Sale Order and are due and owing (the "Texas Tax Claims") shall be paid in full within ten days after the Effective Date, including all accrued interest properly charged under applicable non-bankruptcy law through the date of payment. The Texas Taxing Authorities shall retain their liens on property or any proceeds from the sale of such

---

[7] The "Texas Taxing Authorities" include all entities represented by Perdue Brandon Fielder Collins & Mott LLP, McCreary Veselka Bragg & Allen, P.C., and Linebarger Goggan Blair & Sampson LLP, including but not limited to Carrollton-Farmers Branch Independent School District, City of Garland, Garland Independent School District, Richardson Independent School District, City of Colleyville, Grapevine-Colleyville Independent School District, Alief Independent School District, City of Houston (where represented by Perdue), Harris County MUD #170, Harris County Utility District #6, West Memorial MUD, Hobby Area District, Pasadena Independent School District, Galena Park Independent School District, Klein Independent School District, Fountainhead MUD, Klein Independent School District, Harris County WCID #133, Humble Independent School District, Harris County MUD #132, City of Rosenberg, Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, City of El Paso, Fort Bend County, Harris County Emergency Service District #01, Harris County Emergency Service District #09, Harris County Emergency Service District #11, Harris County Emergency Service District #12, Harris County Emergency Service District #20, Harris County Emergency Service District #25, Harris County Emergency Service District #29, Harris County Emergency Service District #46, Harris County Emergency Service District #48, Hidalgo County, City of Houston (where represented by Linebarger), Houston Community College System, Houston Independent School District, City of Humble, Katy Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, City of Pasadena, Tarrant County, City of Waco, Waco Independent School District, and Denton County.

property of the Debtors, including the Texas Tax Reserve established pursuant to the Final DIP Order, until the Texas Tax Claims are paid in full. To the extent any Texas Tax Claims remain outstanding, the Liquidating Trustee shall continue to segregate the funds currently held in the Texas Tax Reserve, which (i) shall be maintained for the payment of the Texas Tax Claims to the extent the Texas Tax Claims are Allowed Claims and (ii) shall not be paid to any other creditor without further order of the Bankruptcy Court or until all Texas Tax Claims are deemed satisfied. Texas Tax Claims for 2024 taxes assumed pursuant to a Sale Order are the responsibility of the purchaser under the applicable purchase agreement, to be paid in full, in the ordinary course of business, when due, and such 2024 ad valorem tax liens are retained against the subject properties until said taxes are paid in full, including any applicable penalties or interest.

51. **IRS.** If the Post-Confirmation Debtors or the Liquidating Trust (as applicable) default under their obligations to the IRS and the Bankruptcy Court determines that such party is in breach of the Plan or this Confirmation Order, the IRS's right to seek Bankruptcy Court authority to pursue any available remedies pursuant to the Bankruptcy Code or applicable non-bankruptcy law is expressly preserved.

52. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any related documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

53. **Notice of Confirmation Order and Occurrence of Effective Date**. As soon as reasonably practicable after the entry of this Confirmation Order, the Debtors shall post **a notice**

**of confirmation (**the **"Notice of Confirmation") substantially in the form attached as Exhibit 2 hereto,** on the website maintained by their claims and noticing agent at ~~https://cases.ra.kroll.com/99only~~**https://cases.ra.kroll.com/99only/ and filed on the docket of these Chapter 11 Cases**. The Notice of Confirmation is adequate under the circumstances, and no other further notice is necessary. Pursuant to Bankruptcy Rules 2002 and 3020(c), the Plan Administrator is directed to serve notice of the occurrence of the Effective Date on all known creditors and Interest holders, the U.S. Trustee, and any identified entity subject to the Plan injunction, no later than 14 days after the occurrence of the Effective Date, to be delivered to such parties by first-class mail.

54. **Post-Confirmation Modification of Plan**. The Debtors are hereby authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 1127 of the Bankruptcy Code, without further order of this Court. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

55. **Non-Severability**. Each term and provision of the Plan and this Confirmation Order is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' prior consent, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

56. **Conditions to Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Section VIII.B of the Plan have been satisfied or waived in accordance with Section VIII.C of the Plan.

57. **Final Order**.  This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon the entry hereof.

58. **Stay of Confirmation Order Waived**.  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), or 7062.

59. **No Waiver**.  The failure to specifically include any particular section or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such section or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

60. **Retention of Jurisdiction**.  Notwithstanding the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases.

**Exhibit 1**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | ) ) ) | Case No. 24-10719 (JKS) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF
## <u>NUMBER HOLDINGS, INC., AND ITS DEBTOR AFFILIATES</u>

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Robert J. Dehney, Sr. (No. 3578)
Matthew O. Talmo (No. 6333)
Jonathan M. Weyand (No. 6959)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:    rdehney@morrisnichols.com
           mtalmo@morrisnichols.com
           jweyand@morrisnichols.com
           csawyer@morrisnichols.com

**MILBANK LLP**

Dennis F. Dunne, Esq. (admitted *pro hac vice*)
Michael W. Price, Esq. (admitted *pro hac vice*)
Lauren C. Doyle, Esq. (admitted *pro hac vice*)
Brian Kinney, Esq. (admitted *pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:    ddunne@milbank.com
           mprice@milbank.com
           ldoyle@milbank.com
           bkinney@milbank.com

*Co-Counsel for Debtors in Possession*

Dated: January 2324, 2025
Wilmington, Delaware

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents HoldCo LLC (3987); (iii) 99 Cents Only Stores LLC (1605); (iv) 99 Cents Only Stores Texas, Inc. (1229); (v) 99 Cents PropCo LLC (7843); and (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

# TABLE OF CONTENTS

I.    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ........................................................................................................ 1

    A.    Defined Terms ........................................................................................... 1

    B.    Rules of Interpretation and Computation of Time ................................... 13

        1.    Rules of Interpretation ................................................................ 13

        2.    Computation of Time ................................................................... 13

        3.    Reference to Monetary Figures ................................................... 13

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............ 13

    A.    Unclassified Claims ................................................................................. 14

        1.    Administrative Claims ................................................................ 14

        2.    DIP Claims .................................................................................. 17

    B.    Classification of Claims and Interests ..................................................... 17

        1.    Classes of Claims and Interests .................................................. 17

    C.    Treatment of Claims and Interests ........................................................... 18

        1.    Class 1 – Other Priority Claims ................................................. 18

        2.    Class 2 – Other Secured Claims ................................................. 18

        3.    Class 3 – Prepetition ABL Claims .............................................. 18

        4.    Class 4 – Senior Notes Claims ................................................... 19

        5.    Class 5 – General Unsecured Claims .......................................... 19

        6.    Class 6 – Intercompany Claims .................................................. 20

        7.    Class 7 – Intercompany Interests ............................................... 20

        8.    Class 8 – Equity Interests ........................................................... 20

    D.    Reservation of Rights Regarding Claims ................................................. 21

E.    Postpetition Interest on Claims ........................................................ 21

III.   ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION
      BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS .......................... 21

A.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............ 21

B.    Elimination of Vacant Classes ........................................................ 21

C.    Voting Classes ........................................................................... 21

D.    Subordinated Claims and Interests ................................................... 21

IV.   MEANS OF IMPLEMENTATION ......................................................... 22

A.    Post-Effective Date Organizational Transactions ................................. 22

B.    Plan Administrator ...................................................................... 22

      1.    Rights of the Plan Administrator .......................................... 22

      2.    Plan Administrator Exculpation, Indemnification, Insurance, and
            Liability Limitation ......................................................... 23

C.    Liquidating Trust ........................................................................ 24

      1.    Establishment of the Liquidating Trust. .................................. 24

      2.    The Liquidating Trustee and the Liquidating Trust Agreement ........ 24

      3.    Liquidating Trust Expenses. ................................................ 25

      4.    Liquidating Trust Interests. ................................................ 25

      5.    Certain Tax Matters. ........................................................ 25

      6.    Dissolution. .................................................................. 26

D.    Preservation of Causes of Action ..................................................... 26

E.    Insurance Matters ....................................................................... 27

F.    Comprehensive Settlement ............................................................. 29

G.    Release of Preference Claims .......................................................... 29

H.    Vesting of Assets in the Post-Confirmation Debtors and Liquidating Trust ... 29

| | | | |
|---|---|---|---|
| I. | Reserved. | | 30 |
| J. | Cancellation and Surrender of Documents, Instruments and Securities | | 30 |
| K. | Release of Liens | | 31 |
| L. | Corporate and Other Entity Action; Effectuating Documents; Further Transactions | | 31 |
| M. | Dissolution of the Boards of the Debtors or Managers. | | 32 |
| N. | Closing the Chapter 11 Cases | | 32 |
| V. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 32 |
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | | 32 |
| B. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | | 33 |
| C. | Reservation of Rights | | 33 |
| VI. | PROVISIONS GOVERNING DISTRIBUTIONS | | 34 |
| A. | Method of Distributions | | 34 |
| B. | Appointment of a Disbursing Agent | | 34 |
| C. | Undeliverable Distributions and Time Bar to Cash Payments. | | 35 |
| D. | Distribution Record Date | | 35 |
| E. | Minimum Distributions | | 35 |
| F. | Compliance with Tax Requirements | | 36 |
| G. | Setoffs | | 36 |
| H. | Allocation Between Principal and Accrued Interest | | 36 |
| I. | Distributions to Holders of Disputed Claims | | 37 |
| J. | Disputed Claims Reserve | | 37 |
| K. | Claims Paid or Payable by Third Parties | | 37 |
| L. | Obligations to the IRS | | 38 |

VII.    DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS .................................... 38

    A.    Allowance of Claims ........................................................................................ 38

    B.    Prosecution of Objections to Claims ............................................................... 38

        1.    Authority to Prosecute and Settle Claims .......................................... 38

        2.    Omnibus Objections ........................................................................... 39

        3.    Authority to Amend Schedules .......................................................... 39

    C.    Estimation of Claims ....................................................................................... 39

    D.    Claims Subject to Pending Actions .................................................................. 39

VIII.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ....................................................................................................... 40

    A.    Conditions to Confirmation ............................................................................. 40

    B.    Conditions to the Effective Date ..................................................................... 40

    C.    Waiver of Conditions to the Effective Date ..................................................... 41

IX.    WITHDRAWAL AND MODIFICATION OF THE PLAN ........................................ 41

    A.    Withdrawal of the Plan .................................................................................... 41

    B.    Modification of the Plan .................................................................................. 41

X.    RELEASES, EXCULPATIONS AND INJUNCTIONS .............................................. 41

    A.    Exculpation ...................................................................................................... 41

    B.    Releases ............................................................................................................ 42

        1.    Release by the Debtors ....................................................................... 42

        2.    Release by Holders of Claims ............................................................ 42

    C.    Injunction ......................................................................................................... 43

    D.    Term of Injunctions or Stays ........................................................................... 44

XI.    RETENTION OF JURISDICTION ........................................................................... 44

XII.    MISCELLANEOUS PROVISIONS .......................................................... 46

    A.    Dissolution of Creditors' Committee ....................................... 46

    B.    Inconsistency ............................................................................ 46

    C.    Entire Agreement ..................................................................... 47

    D.    Document Retention ................................................................. 47

    E.    Exhibits / Schedules ................................................................ 47

    F.    Severability ............................................................................. 47

    G.    Governing Law ........................................................................ 47

    H.    Successors and Assigns ........................................................... 48

    I.    Service of Documents .............................................................. 48

        1.    The Debtors ................................................................. 48

        2.    The Creditors' Committee ........................................... 48

        3.    The Ad Hoc Group of Senior Noteholders .................. 49

        4.    The U.S. Trustee ......................................................... 49

XIII.    CONFIRMATION REQUEST ........................................................... 50

# INTRODUCTION

Each Debtor, as a debtor in possession, proposes this joint chapter 11 plan for the Debtors pursuant to section 1129 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. The Debtors are the proponents of the Plan. The Plan constitutes one Plan for all of the Debtors and effectuates a deemed consolidation of the Debtors and their Estates for the purposes of voting on the Plan and Distributions under this Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE DISCLOSURE STATEMENT ACCOMPANYING THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## I. DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A. Defined Terms

Capitalized terms used in the Plan and not otherwise defined in this Plan have the meanings set forth below. Any term that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1. **"503(b)(9) Claim"** means an Administrative Claim arising under section 503(b)(9) of the Bankruptcy Code.

2. **"Ad Hoc Group of Senior Noteholders"** means the ad hoc group of certain holders of Senior Notes represented by Weil, Gotshal & Manges, LLP.

3. **"Administrative Claim"** means a Claim that is entitled to priority in payment under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the Debtors' businesses incurred after the Petition Date and through the Effective Date; (b) Fee Claims; (c) Notes Settlement Expenses; (d) Senior Notes Agent Fees; and (e) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

4. **"Affiliate"** with respect to any Entity means an "affiliate," as such term is defined in section 101(2) of the Bankruptcy Code (if such Entity were substituted for the word "debtor" in such definition).

5. **"Allowed"** with respect to a Claim means any Claim (a) for which a Proof of Claim has been timely filed on or before the applicable bar date or is otherwise permitted to be late filed by a Final Order, (b) that is identified in the Schedules as of the Effective Date as not

disputed, not contingent and not unliquidated, and for which no Proof of Claim has been timely filed (in each case described in (a) or (b), only if and to the extent that no objection to the allowance thereof has been interposed by the Claims Objection Bar Date or such an objection has been interposed and the Claim thereafter has been Allowed by a Final Order), (c) any Claim Allowed pursuant to the Plan, a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court); or (d) any Claim Allowed by written agreement of the Liquidating Trust. The following Claims shall not be considered "Allowed Claims" hereunder: (i) Claims on account of a right, option, warrant, right to convert or other right to purchase an Interest and (ii) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court.

6. **"Amended Schedules Bar Date"** means the deadline by which a Proof of Claim must be or must have been filed by a holder of Claim(s) affected by any amendment to the Schedules, as established by an order of the Bankruptcy Court.

7. **"Asset Sale"** means a sale, conveyance, transfer, or other disposition, in one transaction or a series of transactions, of any part of the Debtors' or any of their respective Subsidiaries' businesses, assets or properties of any kind, whether real, personal, or mixed, whether tangible or intangible, whether now owned or hereafter acquired.

8. **"Avoidance Actions"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or the Estates under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or applicable non-bankruptcy law.

9. **"Ballot"** means the applicable form of ballot distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

10. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

11. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Debtor's Chapter 11 Cases.

12. **"Bankruptcy Rules"** collectively means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

13. **"Borrower"** means 99 Cents Only Stores LLC.

14. **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15. **"Cash"** means the lawful currency of the United States of America and equivalents thereof.

16.     **"Causes of Action"** means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of any of the Debtors and/or the Estates, based in law or equity, including, without limitation, under the Bankruptcy Code, whether asserted or unasserted as of the Effective Date.

17.     **"Chapter 11 Cases"** means the chapter 11 cases filed in the Bankruptcy Court by each of the Debtors under the Bankruptcy Code.

18.     **"Claim"** means a "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

19.     **"Claims and Noticing Agent"** means Kroll Restructuring Administration, in its capacity as the claims and noticing agent appointed in these cases.

20.     **"Claims Bar Date"** unless otherwise provided in another order of the Bankruptcy Court, means the applicable bar dates set forth in the *Order Establishing (I) Bar Dates for Filing Proofs of Claim, Including Section 503(B)(9) Claims, (II) An Amended Schedules Bar Date and Rejection Damages Bar Date, (III) An initial Administrative Claims Bar Date, (IV) Approving the Form and Manner of Filing of Claims, (V) Approving Notices of Bar Dates, and (VI) Granting Related Relief* [Docket No. 784].

21.     **"Claims Objection Bar Date"** for all Claims, including 503(b)(9) Claims and other Administrative Claims, means, the later of: (a) 180 days after the Effective Date and (b) such other deadline for objecting to particular Claim(s) as may be established by the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

22.     **"Class"** means a class of Claims or Interests, as described in Section II of the Plan.

23.     **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

24.     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

25.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan.

26.     **"Creditors' Committee"** means the official committee of unsecured creditors appointed in these cases pursuant to section 1102 of the Bankruptcy Code.

27.     **"D&O Insurance Policies"** collectively means all insurance liability policies (including any "tail policies") and all agreements, documents, or instruments related thereto

issued at any time to provide coverage to any of the Debtors' current or former directors, managers, and officers.

28. **"Debtors"** collectively means (i) Number Holdings, Inc; (ii) 99 Cents HoldCo LLC; (iii) 99 Cents Only Stores LLC; (iv) 99 Cents Only Stores Texas, Inc.; (v) 99 Cents PropCo LLC; and (vi) Bargain Wholesale LLC.

29. **"DIP Agent"** means TC Lending, LLC in its capacity as the administrative agent and collateral agent under the DIP Agreement.

30. **"DIP Agreement"** means that certain *Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time), by and among 99 Cents Only Stores LLC as the borrower, the guarantors party thereto, the DIP Lenders and the DIP Agent approved pursuant to the Final DIP Order.

31. **"DIP Claim"** means any Claim of the DIP Agent under the Final DIP Order and the DIP Agreement, including all Claims on account of the DIP Obligations (as defined in the Final DIP Order).

32. **"DIP Lenders"** means the lenders from time to time under the DIP Agreement.

33. **"Disbursing Agent"** means an Entity, and any sub-agent of that Entity (including, for the avoidance of doubt, the Claims and Noticing Agent), appointed to make the distributions required by the Plan after the Effective Date at the direction of the Liquidating Trust.

34. **"Disclosure Statement"** means the *Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* (including all exhibits and schedules thereto or referenced therein) approved by the Disclosure Statement Order, as the same may be amended, modified or supplemented from time to time.

35. **"Disclosure Statement Order"** means the order entered by the Bankruptcy Court, dated December 20, 2024 [Docket No. 1612], approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

36. **"Disputed Claims Reserve"** means the reserve created pursuant to <u>Section VI.J.</u> of this Plan.

37. **"Disputed Claim"** means any Claim or a portion of a Claim that is neither an Allowed Claim nor a disallowed Claim.

38. **"Distribution"** means any distribution of property to a Holder of an Allowed Claim on account of such Claim in accordance with <u>Sections II</u> and <u>VI</u> of the Plan.

39. **"Distribution Date"** means the Initial Distribution Date, Periodic Distribution Dates, or the Final Distribution Date. Whenever the Plan provides that Distributions must be

made on a particular Distribution Date it shall be deemed made on such Distribution Date if made as promptly thereafter as practicable. For the avoidance of doubt, before any Distributions of Liquidating Trust Assets may be made on any Distribution Date, the Plan Administrator and the Liquidating Trust must satisfy or reserve for any and all Wind-Down Expenses and Liquidating Trust Expenses.

40. **"Distribution Record Date"** means the date for determining which Holders of Allowed Claims are eligible to receive a Distribution under this Plan, which, unless otherwise specified, shall be the Confirmation Date. For the avoidance of doubt, the Distribution Record Date shall not apply to any securities of the Debtors deposited with the Depository Trust Company ("DTC"), the Holders of which shall receive a distribution in accordance with the customary procedures of DTC.

41. **"Effective Date"** means a day, as determined by the Debtors in consultation with the Creditors' Committee, on which all conditions to the occurrence of the Effective Date set forth in Section VIII.B have been satisfied or waived in accordance with the provisions of that section.

42. **"Effective Date Cash"** means the Debtors' Cash as of the Effective Date, less (i) the Professional Fee Reserve, (ii) the Wind-Down Reserve; and (iii) the amounts necessary to fund Distributions on account of the Allowed DIP Claims, Allowed Prepetition ABL Claims, and Allowed Senior Notes Claims, in each case, in accordance with the terms and conditions of this Plan and, in the case of preceding clause (iii), only to the extent not otherwise satisfied by the Debtors on or prior to the Effective Date.

43. **"Entity"** means an individual, firm, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, and any political subdivision thereof.

44. **"Equity Interest"** means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any (i) warrants, options or equity-based awards, (ii) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends), (iii) contractual right to purchase or demand the issuance of any of the foregoing, or (iv) any liquidation preferences, that existed on the Petition Date.

45. **"Estate"** as to each Debtor means the estate created for such Debtor on the Petition Date pursuant to section 541 of the Bankruptcy Code.

46. **"Exculpated Parties"** means, collectively and individually, (a) the Debtors, (b) the Creditors' Committee and its members, and (c) the Debtors' directors, managers, and officers (who served in such capacity during the period between the Petition Date and the Effective Date), (d) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for those retained pursuant to the Ordinary Course Professionals

Order, and (e) the professionals retained by the Committee, solely in their respective capacities as such.

47. **"Executory Contract and/or Unexpired Lease"** means a contract or a lease to which a Debtor is a party or with respect to which a Debtor may be liable that is subject to assumption, assignment or rejection under section 365 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto or restatements thereof.

48. **"Fee Claim"** means a Claim under sections 328, 330(a) or 331 of the Bankruptcy Code for compensation of a Professional for services rendered and expenses incurred in connection with these cases.

49. **"File"** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases. "Filed" and "Filing" shall have correlative meanings.

50. **"Final DIP Order"** means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (VI) Granting Related Relief* entered by the Bankruptcy Court on May 9, 2024 [Docket No. 467], as it has been or may be amended, modified or supplemented from time to time.

51. **"Final Distribution Date"** means, for a particular Class of Claims, the Distribution Date upon which final Distributions to the members thereof are to be made as determined by the Liquidating Trust in its discretion.

52. **"Final Order"** means an order or judgment of the Bankruptcy Court, or another court of competent jurisdiction, entered on the docket of the applicable court, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a vacatur, new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or a proceeding for a vacatur, new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the vacatur, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order; <u>provided</u> that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule may be filed relating to such order, shall not cause an order not to be a Final Order.

53. **"General Unsecured Claim"** means any Claim that is not (a) a Secured Claim, including any Other Secured Claim, (b) an Administrative Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, (e) a DIP Claim, (f) a Prepetition ABL Claim, (g) a Senior Notes Claim, (h) an Intercompany Claim, (i) a Claim subordinated pursuant to section 510(b) of the Bankruptcy Code, or (j) an Interest.

54. **"Holder"** means an Entity holding a Claim or an Interest, as the context requires.

55.     **"Impaired"** means "impaired," as such term is defined in section 1124 of the Bankruptcy Code.

56.     **"Initial Distribution Date"** as to each Class of Claims, means the Effective Date or, in the Liquidating Trust's discretion, the date occurring as soon as reasonably practicable after the Effective Date when Distributions under the Plan commence.

57.     **"Insurance Contract"** means all insurance policies that have been issued at any time to, or provide coverage to, any of the Debtors, and all agreements, documents or instruments relating thereto.

58.     **"Insurer"** means any company or other Entity that issued an Insurance Contract, any third-party administrator, and any respective predecessors and/or affiliates thereof, including, for the avoidance of doubt, the Chubb Companies.

59.     **"Intercompany Claim"** means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor or Affiliate of a Debtor, including, but not limited to, any Claim for (i) reimbursement or contribution, (ii) payment as guarantor or surety, or (iii) expenses allocable among multiple Debtors or their Affiliates, whether or not such Claim is reflected in intercompany book entries, including such claims that accrue after the Petition Date.

60.     **"Intercompany Interest"** means any Equity Interest in a Debtor held by another Debtor immediately before the Effective Date.

61.     **"Interest"** collectively means any Equity Interest and Intercompany Interest.

62.     "**Interim Compensation Order**" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 355].

63.     "**IRS**" means the United States Internal Revenue Service.

64.     **"Lien"** means "lien" as defined in section 101(37) of the Bankruptcy Code.

65.     **"Liquidating Trust"** means the liquidating trust established under Section <u>IV.C</u> of this Plan.

66.     **"Liquidating Trust Agreement"** means the agreement between the Debtors and the Liquidating Trustee, which shall be in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, governing the Liquidating Trust, dated as of the Effective Date, substantially in the form set forth in the Plan Supplement.

67.     **"Liquidating Trust Assets"** means: (i) the Effective Date Cash; (ii) the right to receive the proceeds of any Post-Confirmation Debtors Retained Assets; (iii) the right to receive any Cash remaining in the Professional Fee Reserve and the Wind-Down Reserve after payment of amounts required to be paid with respect thereto under this Plan; and (iv) all other assets of the Debtors remaining as of the Effective Date including, but not limited to, Causes of Action;

*provided that* Post-Confirmation Debtors Retained Assets and the Equity Interests in the Post-Confirmation Debtors are not Liquidating Trust Assets.

68. **"Liquidating Trust Beneficiaries"** means the Holders of General Unsecured Claims against the Debtors, as and when Allowed.

69. **"Liquidating Trust Expenses"** means the reasonable and documented fees, expenses, and costs incurred by the Liquidating Trust in connection with carrying out the obligations under the Plan, including relating to the administration of Claims and maintenance or disposition of the Liquidating Trust Assets (including, but not limited to, Liquidating Trustee fees, attorney's fees, the fees of professionals, and other Persons or Entities retained by the Liquidating Trust relating to Claims or the Liquidating Trust Assets, personnel-related expenses and any Taxes imposed on the Liquidating Trust Assets and any other costs of maintaining or distributing the Liquidating Trust Assets) and all amounts which are owed in satisfaction and payable on account of Administrative Claims, Priority Tax Claims, Other Priority Claims, and Other Secured Claims.

70. **"Liquidating Trust Interests"** means the uncertificated beneficial interests in the Liquidating Trust representing the rights of the Liquidating Trust Beneficiaries to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

71. **"Liquidating Trustee"** means the trustee, selected by the Creditors' Committee, of the Liquidating Trust.

72. "**Notes Settlement**" means the settlement reached among the Debtors, the Creditors' Committee, and the Ad Hoc Group of Senior Noteholders, as approved by the Bankruptcy Court pursuant to the *Order Approving the Settlement By and Among the Debtors, The Official Committee of Unsecured Creditors, and the Ad Hoc Group* [Docket No. 1529].

73. **"Notes Settlement Expenses"** means the reasonable and documented fees, costs, and expenses for services rendered to the Ad Hoc Group of Senior Noteholders of (a) Weil, Gotshal & Manges LLP, (b) Potter Anderson & Corroon LLP, and (c) Portage Point Partners.

74. **"Notice Parties"** means the Debtors, Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust, the Liquidating Trustee, and the U.S. Trustee.

75. **"Ordinary Course Professionals Order"** means the *Order Authorizing Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business Effective as of the Petition Date* [Docket No. 354] entered by the Bankruptcy Court on May 3, 2024.

76. **"Other Secured Claim"** means a Secured Claim, including a Secured Tax Claim, but excluding the Prepetition ABL Claims, the DIP Claims, and the Senior Notes Claims.

77. **"Periodic Distribution Date"** means such other date after the occurrence of the Initial Distribution Date as determined by the Liquidating Trust in its discretion.

78.     "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

79.     "**Petition Date**" means April 8, 2024, for all Debtors, except 99 Cents HoldCo LLC and Number Holdings, Inc. as their respective cases were commenced on April 7, 2024.

80.     "**Plan**" means this *Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* together with all exhibits, supplements, appendices, and schedules thereto, as the same may be amended, modified or supplemented in accordance with its terms from time to time.

81.     "**Plan Administrator**" means the Liquidating Trustee, or its designee who shall (i) administer the Post-Confirmation Debtors Retained Assets; (ii) be the sole officer and/or responsible Person for the Debtors and Post-Confirmation Debtors from and after the Effective Date; and (iii) take such other actions and any other reasonably necessary steps to complete the other duties set forth in this Plan with respect to the Post-Confirmation Debtors, and any successor thereto.

82.     "**Plan Supplement**" means the compilation of documents and forms of documents that constitute exhibits, supplements, appendices, and schedules to the Plan that shall be filed no later than seven (7) calendar days before the deadline to object to Confirmation. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement through the Effective Date with the consent of the Creditors' Committee and consistent with the Plan. The documents in the Plan Supplement shall be reasonably acceptable to the Ad Hoc Group of Senior Noteholders in connection with the treatment of and/or releases relating to or in connection with the Senior Notes.

83.     "**Post-Confirmation Debtors**" means: 99 Cents Only Stores LLC, or any successors thereto, on and after the Effective Date.

84.     "**Post-Confirmation Debtors Retained Assets**" means (i) the Wind-Down Reserve and (ii) any liquor licenses owned by the Debtors.

85.     "**Prepetition ABL Agent**" means ROYAL BANK OF CANADA, in its capacity as administrative agent and collateral agent for the Prepetition ABL Lenders under the Prepetition Credit Agreement.

86.     "**Prepetition ABL Claims**" means all Claims of the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition Credit Documents that have not been satisfied as of the Effective Date.

87.     "**Prepetition Credit Agreement**" means the Amended and Restated Credit Agreement, dated as of April 24, 2020 (as amended by (i) Amendments No. 1, dated as of October 14, 2020, (ii) Amendment No. 2, dated as of December 22, 2020, (iii) Amendment No. 3, dated as of December 9, 2021, (iv) Amendment No. 3, dated as of December 9, 2021, (v) Amendment No. 4, dated as of May 15, 2023, (vi) Amendment No. 5, dated as of August 1,

20230, by and among the Company, the Prepetition Loan Guarantors the Prepetition Lenders (each as defined therein), the Prepetition ABL Agent, and the Prepetition FILO Agent.

88. **"Prepetition Credit Documents"** means the Prepetition Credit Agreement and the other "Loan Documents" as defined in the Prepetition Credit Agreement, as they were amended, restated, amended and restated, supplemented or otherwise modified prior to the Petition Date.

89. **"Prepetition Lenders"** means financial institutions that were lenders under the Prepetition Credit Agreement as of the Petition Date.

90. **"Prepetition FILO Agent"** means SIXTH STREET SPECIALTY LENDING, INC. (f/k/a TPG Specialty Lending, Inc.), as agent for the benefit of itself and the FILO Secured Parties (as defined in the Prepetition Credit Agreement) under the Prepetition Credit Agreement.

91. **"Priority Tax Claim"** means a Claim entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code; provided, however, that any Claim on account of a penalty with respect to or in connection with an Allowed Priority Tax Claim that does not compensate its Holder for actual pecuniary loss shall be treated as a General Unsecured Claim.

92. **"Privilege Rights"** collectively, means any attorney-client privilege, attorney work-product protection or any other similar privilege or protection from disclosure belonging to or operating in favor of the Debtors and/or their Estates.

93. **"Professional"** means any professional person employed in the Chapter 11 Cases pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, including any Entity employed pursuant to the Ordinary Course Professional Order.

94. **"Professional Fee Reserve"** means an escrow account to be established and funded on or prior to the Effective Date in accordance with Section II.A.1.d hereof.

95. **"Proof of Claim"** means a proof of Claim filed with the Bankruptcy Court or the Claims and Noticing Agent in accordance with the applicable order of the Bankruptcy Court.

96. **"Purchasers"** means the purchasers with respect to the Asset Sales.

97. **"Rejection Damages Bar Date"** means the deadline by which a Proof of Claim for payment arising from the rejection of an Executory Contract or Unexpired Lease must be, or must have been, filed (a) for Executory Contracts and Unexpired Leases rejected by an order of the Bankruptcy Court other than the Confirmation Order, as established by such order and (b) for Executory Contracts and Unexpired Leases rejected under the Confirmation Order, the Supplemental Claims Bar Date.

98. **"Released Parties"** collectively and individually, and, in each case, solely in their capacity as such, means: (a) the Debtors; (b) the Estates, (c) the Creditors' Committee and its members, (d) the DIP Agent and the DIP Lenders, (e) the Prepetition ABL Agent and the Prepetition Lenders, (f) the Prepetition FILO Agent, (g) the Senior Notes Agent, (h) Holders of

the Senior Notes, (i) all Holders of Claims who grant the releases provided by the Plan, and (j) the Representatives of each of the parties enumerated in the preceding clauses (a)-(i); <u>provided</u> that any Entity that objects to the releases provided by the Plan and any of such Entity's Representatives shall not be a Released Party.

99. **"Releasing Parties"** means, collectively and individually, and, in each case, solely in their capacity as such: (a) the Estates, (b) the Creditors' Committee and its members, (c) the DIP Agent and the DIP Lenders, (d) the Prepetition ABL Agent and the Prepetition Lenders, (e) the Prepetition FILO Agent, (f) the Senior Notes Agent, (g) the members of the Ad Hoc Group of Senior Noteholders, and (h) the Representatives of each of the parties enumerated in the preceding clauses (a)-(g).

100. **"Representatives"** means, with respect to any Entity, such Entity's successor, predecessor, officer, director, partner, limited partner, general partner, shareholder, manager, management company, investment manager, Affiliate, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other professional of such Entity on or after the Petition Date, in each case, solely in their respective capacities as such.

101. **"Sale Proceeds"** collectively means the net proceeds of the Asset Sales received by the Estates.

102. **"Sale Order"** means one or more orders of the Bankruptcy Court approving any Asset Sale.

103. **"Schedules"** collectively means the (a) schedules of assets and liabilities and (b) statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as each may be amended and supplemented from time to time. "Scheduled" shall have a correlative meaning.

104. **"Secured Claim"** means a Claim secured by a valid and perfected Lien on property in which an Estate has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, to the extent of the value of its Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

105. **"Secured Tax Claim"** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

106. **"Senior Notes"** means the 7.500% senior secured notes due January 15, 2026 issued by the Borrower under the Senior Notes Indenture.

107. **"Senior Notes Agent"** means Wilmington Trust, National Association, in its capacities as Trustee, Notes Collateral Agent, Notes Custodian, Registrar, and Paying Agent (the foregoing terms as defined in the Senior Notes Indenture) and in any other capacities under or related to the Senior Notes Documents.

108. **"Senior Notes Agent Fees"** means the reasonable compensation, fees, costs, expenses, disbursements and claims for indemnity, subrogation, and contribution including, without limitation, attorneys' fees, financial advisors' fees, and agents' fees, expenses and disbursements, incurred by or owed to (or estimated to be incurred by or owed to) the Senior Notes Agent, whether prior to or after the Petition Date, and whether prior to or after the consummation of the Plan, under the Senior Notes Indenture with respect to the Senior Notes.

109. **"Senior Notes Agent Charging Lien"** means the Lien and priority of payment rights in favor of the Senior Notes Agent under the Senior Notes Documents, on or with respect to distributions made on account of Senior Notes Claims.

110. **"Senior Notes Claim"** means all Claims derived from, based upon, related to, on account of, or arising under the Senior Notes and the Senior Notes Documents.

111. **"Senior Notes Documents"** means the Senior Notes Indenture and all related agreements and documents, including, without limitation, all security agreements, authentication orders, letters, pledge agreements, bank account control agreements, and any other agreements, executed by any of the Debtors or their Affiliates in connection with the Senior Notes, as the foregoing may be amended, restated, supplemented, or otherwise modified from time to time.

112. **"Senior Notes Indenture"** means the Indenture, dated December 22, 2020, by and among 99 Escrow Issuer, Inc., as escrow issuer, the Borrower, as issuer, the Guarantors (as defined therein), and the Senior Notes Agent for the issuance of the Senior Notes, as the same may be amended, restated, modified, supplemented, replaced or refinanced from time to time.

113. **"Senior Notes Recovery"** means, in accordance with the Notes Settlement, a distribution of Cash from the Notes Reserve (as defined in the Final DIP Order) to Holders of the Senior Notes in the amount of $53 million less the Notes Settlement Expenses and the Senior Notes Agent Fees that are incurred and outstanding as of the date of distribution of the Senior Notes Recovery.

114. **"SIR"** means any self-insured retention, retained limit, deductible, or similar provision in any Insurance Contract.

115. **"SIR Insurance Contract"** means an Insurance Contract which has an SIR.

116. **"Subsidiary Debtors"** means all Debtors other than Number Holdings, Inc.

117. **"Supplemental Claims Bar Date"** means the date that is 30 days after the Effective Date, which shall be the deadline for filing (i) requests for payment of Administrative Claims that accrued between June 1, 2024, and the Effective Date and (ii) Proofs of Claim for payment arising from the rejection of an Executory Contract or Unexpired Lease by operation of this Plan; <u>provided</u>, that for the avoidance of doubt, the deadline for filing requests for payment of 503(b)(9) Claims was July 8, 2024.

118. **"Tax Code"** means the United States Internal Revenue Code of 1986, as amended.

119. **"Treasury Regulations"** means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

120. **"Unimpaired"** means, when used in reference to a Claim, a Claim that is not Impaired.

121. **"U.S. Trustee"** means the Office of the United States Trustee for Region 3.

122. **"Wind-Down Expenses"** means the reasonable and documented fees, expenses, and costs incurred by or owed to the Plan Administrator and its agents, employees, attorneys, advisors, independent contractors or professionals, including, but not limited to, (i) reasonable compensation for services rendered and reimbursement for actual and necessary expenses incurred by the Plan Administrator and its agents, employees, independent contractors, and professionals after the Effective Date; and (ii) any other costs incurred in connection with carrying out the obligations of the Plan Administrator under the Plan.

123. **"Wind-Down Reserve"** shall mean (i) cash sufficient to fund the Professional Fee Reserve, and the amounts necessary to fund Distributions on account of the Allowed DIP Claims, Allowed Prepetition ABL Claims, and Allowed Senior Notes Claims only to the extent not otherwise satisfied by the Debtors on or prior to the Effective Date; (ii) an amount as agreed to by the Debtors and the Creditors' Committee to be funded on the Effective Date for payment of Wind-Down Expenses; plus (iii) additional amounts agreed to by the Liquidating Trust after the Effective Date for payment of any remaining Wind-Down Expenses.

### B. Rules of Interpretation and Computation of Time

#### 1. Rules of Interpretation

For purposes of the Plan, unless otherwise provided in this Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) unless otherwise provided in the Plan, any reference to a contract, agreement, release or another instrument or document being in a particular form or on particular terms means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference to a document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, Confirmation Order or otherwise; (d) any reference to a Holder of a Claim or Interest includes that Holder's successors, assigns and affiliates; (e) all references to Sections, Articles and exhibits are references to Sections, Articles and exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code

(other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this <u>Section I.B.1</u>.

2. **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3. **Reference to Monetary Figures**

All references in the Plan to monetary figures refer to the lawful currency of the United States of America, unless otherwise expressly provided.

## II.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Except for those Claims addressed in <u>sub-section A</u> below, all Claims and Interests are classified for voting and Distribution purposes as set forth below (in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified).  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest fits within the description of that Class and any portion of such Claim or Interest that fits within the description of another Class is classified in such other Class.

The Plan is not premised upon, and will not cause, the substantive consolidation of any of the Debtors or their Estates, provided, however, that for the purposes of voting on the Plan and Distributions under this Plan, the Estates shall be deemed merged and consolidated, so that a Holder of a Claim that may be asserted against more than one Debtor shall be entitled to a single Distribution as if such Holder had a single Claim against the consolidated Estates.  On the Effective Date:  (1) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that (i) any General Unsecured Claim against a Debtor and any guarantee of such General Unsecured Claim executed by any other Debtor and (ii) any General Unsecured Claim on which more than one Debtor is jointly or severally liable, as the case may be, shall be deemed to be one obligation; and (2) each and every General Unsecured Claim filed or Allowed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against and obligation of Number Holdings, Inc.

A. **Unclassified Claims**

1. **Administrative Claims**

a. **Treatment of Administrative Claims**

Except as otherwise provided in this <u>Section II.A</u>, or to the extent that a Holder of an Allowed Administrative Claim and the Debtors or Liquidating Trust (as applicable) agree to less favorable treatment with respect to such Allowed Administrative Claim, each Holder of an

Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash: (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court. For the avoidance of doubt, pursuant to Local Rule 3002-1, notwithstanding anything to the contrary contained in this Plan, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

### b. Supplemental Claims Bar Date

Unless previously filed or as otherwise governed by any order of the Bankruptcy Court, requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) that accrued between June 1, 2024, and the Effective Date must be filed and served on the Notice Parties no later than the Supplemental Claims Bar Date. Holders of 503(b)(9) Claims shall continue to be subject to the Claims Bar Date. **Holders of Administrative Claims that are required to file and serve a request for payment and that do not timely file and serve such a request shall be forever barred from asserting such Administrative Claims, and such Administrative Claims shall be automatically disallowed as of the Effective Date,** provided that a notice of such disallowance shall be filed and served on the Holder of the applicable Claim who has filed such request on an untimely basis. Objections to requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) must be filed and served on the Notice Parties and the requesting party no later than the Claims Objection Bar Date.

### c. Statutory Fees

All quarterly fees payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date. On and after the Effective Date, the Liquidating Trust and the Plan Administrator shall be responsible for filing post-Confirmation quarterly reports. Each Debtor, Post-Confirmation Debtor, the Liquidating Trust, and the Plan Administrator shall be jointly liable for the payment of all applicable U.S. Trustee fees in each Debtor's chapter 11 case until (i) the entry of a final decree in such case or (ii) such case is closed or dismissed. Notwithstanding anything to the contrary in this Plan or the Liquidating Trust Agreement, to the extent the chapter 11 case of any Debtor is closed and the Liquidating Trust continues to operate, the Liquidating Trustee shall continue to file post-Confirmation quarterly reports in each open case until such time as the Liquidating Trust ceases to exist; provided that, for the avoidance of doubt, and consistent with the U.S. Trustee's Operating Guidelines for Chapter 11 Cases, to the extent a Debtor's chapter 11 case is closed, no further quarterly U.S. Trustee fees shall be due and payable by the Liquidating Trust or the Debtors for such case.

### d. Professional Fee Reserve

Professionals shall reasonably estimate their unpaid Fee Claims and other unpaid fees and expenses as of the Effective Date. Any such Professionals shall deliver their estimates to the Debtors and the Creditors Committee no later than five days before the Effective Date. Any such estimate shall not be deemed, however, to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Debtors' Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Post-Confirmation Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

On or before the Effective Date, the Debtors shall establish the Professional Fee Reserve and shall fund the Professional Fee Reserve with Cash equal to the aggregate of the estimated Fee Claims and other Professional fees and expenses. The Professional Fee Reserve and the amounts therein shall be used for the sole purpose of paying the accrued and unpaid Allowed Fee Claims and other Professional fees and expenses. For the avoidance of doubt, such funds shall not constitute property of the Debtors, their Estates, the Post-Confirmation Debtors, or the Liquidating Trust provided, that the Liquidating Trust shall hold a residual interest in the Professional Fee Reserve and upon the satisfaction of all Allowed Fee Claims and other Professional fees and expenses, any funds remaining in the Professional Fee Reserve shall be transferred to the Liquidating Trust.

### e. Fee Claims

Professionals asserting Fee Claims for services rendered before the Effective Date must file and serve on the Notice Parties an application for final allowance of such Fee Claims no later than twenty-five (25) days after the Effective Date. Professionals shall also serve any such application on such other Entities as are designated by the Bankruptcy Rules or any order establishing procedures for compensation and reimbursement of expenses of Professionals entered by the Bankruptcy Court (including, but not limited to, the Creditors' Committee). Any Professional whose compensation or reimbursement of expenses is authorized pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval. Objections to any Fee Claim must be filed and served on the Notice Parties, and the requesting party not later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days after the filing of the applicable fee application or such other period of limitation as may be established by a Final Order for objecting to such Fee Claim. Any provision in the Interim Compensation Order requiring Professionals to file an interim fee application shall be waived.

Allowed Fee Claims shall be satisfied from any remaining retainer held by such Professionals and, once exhausted, from the Professional Fee Reserve. If the amount in the Professional Fee Reserve is insufficient to fund payment in full of all Allowed Fee Claims owing to Professionals, the deficiency shall be promptly funded by the Liquidating Trust to the Post-Confirmation Debtors to fund the Professional Fee Reserve without any further action or order of the Bankruptcy Court.

### f.  Notes Settlement Expenses

The Debtors shall reimburse the Notes Settlement Expenses in accordance with the Notes Settlement and the procedures set forth therein.  Without limiting the foregoing, to the extent that any Notes Settlement Expenses remain unpaid as of the Business Day prior to the Effective Date, on the Effective Date, the Plan Administrator shall pay in full in Cash any outstanding Notes Settlement Expenses that are invoiced.  For the avoidance of doubt, the Notes Settlement Expenses shall be paid by the Debtors directly to the respective advisors to the Ad Hoc Group of Senior Noteholders without any requirement for the filing of retention applications, fee applications, proofs of claim, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court approval.  Any Notes Settlement Expenses invoiced after the Effective Date shall be paid promptly, but no later than two (2) Business Days after any applicable objection deadlines have passed pursuant to the Notes Settlement.

### g.  Senior Notes Agent Fees

The Debtors shall reimburse the Senior Notes Agent Fees in accordance with the Notes Settlement and the procedures set forth therein.  Without limiting the foregoing, to the extent that any Senior Notes Agent Fees remain unpaid and due as of the Business Day prior to the Effective Date, on the Effective Date, the Plan Administrator shall pay in full in Cash any outstanding Senior Notes Agent Fees (including attorneys' fees and expenses) incurred, or estimated to be incurred, up to and including the Effective Date; provided that the Debtors shall reserve in the Professional Fee Reserve for any Senior Notes Agent Fees estimated prior to and as of the Effective Date, and such estimates shall be delivered (in the form of a summary invoice and without the need for itemized time detail) to the Debtors at least one Business Day before the anticipated Effective Date and all such amounts shall be paid when due; provided further that the Debtors shall provide the Senior Notes Agent with at least five (5) Business Days' prior notice of the anticipated Effective Date.  For the avoidance of doubt, the Senior Notes Agent Fees shall be paid by the Debtors without any requirement for the filing of retention applications, fee applications, proofs of claim, or any other applications in the Chapter 11 Cases, and without any requirement for further notice or Bankruptcy Court approval.  Any Senior Notes Agent Fees invoiced after the Effective Date shall be paid promptly, but no later than two (2) Business Days after any applicable objection deadlines have passed pursuant to the Notes Settlement.

### h.  Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed Priority Tax Claims, each Allowed Priority Tax Claim shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, provided that the calculation of the value of such Claim shall utilize the statutory interest rate applicable for such Allowed Priority Tax Claim.

### 2.  DIP Claims

Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the Allowed DIP Claims, on or prior to the Effective Date each Holder of an Allowed DIP Claim shall receive payment in full in cash of such Allowed DIP Claim that has not yet been paid.

**B.      Classification of Claims and Interests**

**1.      Classes of Claims and Interests**

The following table: (a) designates the Classes of Claims and Interests for the purposes of voting on the Plan and receiving Distributions; and (b) specifies which Classes are: (i) Impaired and Unimpaired by the Plan; and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Designation | Treatment | Voting Status |
|-------|-------------|-----------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 3 | Prepetition ABL Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 4 | Senior Notes Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject; Not Entitled to Vote |
| 7 | Intercompany Interests | Impaired | Deemed to Reject; Not Entitled to Vote |
| 8 | Equity Interests | Impaired | Deemed to Reject; Not Entitled to Vote |

**C.      Treatment of Claims and Interests**

**1.      Class 1 – Other Priority Claims**

**a.**      *Classification.*  Class 1 consists of all Other Priority Claims.

**b.**      *Treatment.*  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder thereof shall receive, on the later of (i) the Effective Date and (ii) the next Distribution Date following the date on which such Other Priority Claim becomes an Allowed Claim, payment in full in Cash or other treatment rendering such Claim Unimpaired.

c.      *Voting.*  Claims in Class 1 are Unimpaired.  Class 1 is conclusively presumed to have accepted the Plan and its members are, therefore, not entitled to vote on the Plan.

2.      **Class 2 – Other Secured Claims**

a.      *Classification.*  Class 2 consists of all Other Secured Claims.

b.      *Treatment.*  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder thereof shall receive, on the later of (i) the Effective Date and (ii) the next Distribution Date following the date on which such Other Secured Claim becomes an Allowed Claim, at the option of the Debtors or Liquidating Trust (as applicable):  (a) payment in full in Cash; (b) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest thereon required to be paid under section 506(b) of the Bankruptcy Code; or (c) such other recovery as is necessary to render such Claim Unimpaired.

c.      *Voting.*  Claims in Class 2 are Unimpaired. Class 2 is conclusively presumed to have accepted the Plan and its members are, therefore, not entitled to vote on the Plan.

3.      **Class 3 – Prepetition ABL Claims**

a.      *Classification.*  Class 3 consists of all Prepetition ABL Claims.

b.      *Treatment.*  Except to the extent that a Holder of an Allowed Prepetition ABL Claim agrees to less favorable treatment, each Holder thereof shall receive from the Debtors on the Effective Date payment in full in Cash of such Allowed Prepetition ABL Claim that has not yet been paid.

c.      *Voting.*  Claims in Class 3 are Unimpaired. Class 3 is conclusively presumed to have accepted the Plan and its members are, therefore, not entitled to vote on the Plan.

4.      **Class 4 – Senior Notes Claims**

a.      *Classification*.  Class 4 consists of the Senior Notes Claims.

b.      *Treatment.*  On the Effective Date, to the extent not previously paid pursuant to the Notes Settlement, (i) the Debtors shall deliver the Senior Notes Recovery to the Senior Notes Agent; (ii) each Holder of an Allowed Senior Notes Claim shall receive, except to the extent such Holder agrees to a less favorable treatment, in full and final satisfaction, settlement, release and discharge and in

exchange for such Allowed Senior Notes Claim its *pro rata* share of the Senior Notes Recovery; and (iii) any deficiency claim on account of Senior Notes Claims shall be waived in its entirety. Pursuant to the Notes Settlement and the procedures set forth therein, all Notes Settlement Expenses and Senior Notes Agent Fees shall be paid from the Notes Reserve concurrently with the distribution of the Senior Notes Recovery, solely to the extent such Notes Settlement Expenses and Senior Notes Agent Fees are incurred and outstanding prior to the date of distribution of the Senior Notes Recovery. Unless and until the Debtors satisfy their obligations to (1) deliver the Senior Notes Recovery, and (2) pay the Notes Settlement Expenses and Senior Notes Agent Fees incurred and outstanding prior to the date of distribution of the Senior Notes Recovery, the Notes Reserve shall not be utilized by the Debtors for any purpose other than satisfying such obligations. Any Notes Settlement Expenses and Senior Notes Agent Fees incurred after distribution of the Senior Notes Recovery shall be payable by the Debtors pursuant to the terms of the Notes Settlement and this Plan.

    **c.**     *Voting*. Claims in Class 4 are Impaired. Members of Class 4 are entitled to vote on the Plan.

5. **Class 5 – General Unsecured Claims**

    **a.**     *Classification*. Class 5 consists of all General Unsecured Claims.

    **b.**     *Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, as soon as practicable after the earlier of (i) the Effective Date and (ii) the date such claim becomes an Allowed Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction and settlement of, and in exchange for its Allowed General Unsecured Claim, its pro rata share (calculated based on the proportion that such Holder's Allowed General Unsecured Claim bears to the aggregate amount of Allowed General Unsecured Claims) of the Liquidating Trust Interests, which shall entitle such Holder to its pro rata share of the Liquidating Trust Assets available for Distribution net of Liquidating Trust Expenses.

    **c.**     *Voting*. Claims in Class 5 are Impaired. Members of Class 5 are entitled to vote on the Plan.

6. **Class 6 – Intercompany Claims**

a. *Classification.* Class 6 consists of all Intercompany Claims.

b. *Treatment.* On the Effective Date, all Intercompany Claims shall be, at the option of the Plan Administrator, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors. No Distribution shall be made on account of any Intercompany Claims.

c. *Voting.* Class 6 is Impaired. Class 6 is conclusively presumed to have rejected the Plan and its members are, therefore, not entitled to vote on the Plan.

7. **Class 7 – Intercompany Interests**

a. *Classification.* Class 7 consists of all Intercompany Interests.

b. *Treatment.* On the Effective Date, all Intercompany Interests shall be cancelled, except as may be necessary, as determined by the Plan Administrator, to maintain the corporate structure of the Debtors and Post-Confirmation Debtors pending dissolution thereof under applicable non-bankruptcy law. No Distribution shall be made on account of any Intercompany Interests.

c. *Voting.* Class 7 is Impaired. Each Holder of an Intercompany Interest in Class 7 is conclusively presumed to have rejected the Plan and is, therefore, not entitled to vote on the Plan.

8. **Class 8 – Equity Interests**

a. *Classification.* Class 8 consists of all Equity Interests.

b. *Treatment.* On the Effective Date, all Equity Interests shall be cancelled and discharged. No Distribution shall be made on account of any Equity Interests.

c. *Voting.* Class 8 is Impaired. Class 8 is conclusively presumed to have rejected the Plan and its members are, therefore, not entitled to vote on the Plan.

**D. Reservation of Rights Regarding Claims**

Except as otherwise provided in the Plan or in any Final Order of the Bankruptcy Court, nothing in this Plan shall affect the Debtors', the Post-Confirmation Debtors', or the Liquidating Trust's rights and defenses, whether legal or equitable, with respect to any Claim.

### E. Postpetition Interest on Claims

Except as required by bankruptcy law, postpetition interest shall not accrue or be payable on any Claim.

### III. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

#### A. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtors are seeking Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to the Classes of Claims and Interests that vote to reject or are deemed to reject the Plan.

#### B. Elimination of Vacant Classes

Any Class that does not have a Claim or an Interest as of the date of the Confirmation hearing shall be deemed eliminated from the Plan for all purposes.

#### C. Voting Classes

If a Class is eligible to vote and no holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

#### D. Subordinated Claims and Interests

Except as expressly provided in this Plan, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Distributions and treatments under the Plan take into account and conform to the relative priority and contractual, legal, and equitable subordination rights of the Claims and Interests in each Class, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidating Trust (as applicable) reserves the right to reclassify any Claim in accordance with any contractual, legal, or equitable subordination relating to such Claim.

### IV. MEANS OF IMPLEMENTATION

#### A. Post-Effective Date Organizational Transactions

Except as otherwise provided in the Plan, on the Effective Date, each Debtor other than the Post-Confirmation Debtors shall be dissolved, consolidated, or merged out of existence without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, except to the extent that the Plan Administrator determines, in its discretion, that the filing of a certificate of dissolution with the appropriate governmental authorities is required or warranted under the circumstances.

Each Post-Confirmation Debtor shall continue to exist after the Effective Date, as a separate legal Entity, provided that the existing Equity Interests in the Post-Confirmation Debtors shall be cancelled as of the Effective Date. Each Post-Confirmation Debtor shall have the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable laws of the jurisdiction in which such Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise. To the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval, with such powers exercisable only by and through the Plan Administrator.

At any time on or after the Effective Date the Debtors, Post-Confirmation Debtors, by and through the Plan Administrator, may effectuate such organizational transactions as may be necessary or appropriate. Without limiting the generality of the foregoing, such transactions may include: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan; (ii) execution and delivery of the new or amended organizational documents of the Post-Confirmation Debtor (iii) the merger, dissolution, winding-up, consolidation, or conversion of one or more of the Debtors or the Post-Confirmation Debtor; (iv) the filing of appropriate certificates of dissolution or similar instruments with the applicable governmental authorities; and (v) the taking of all other actions that the Plan Administrator determines to be necessary or appropriate, including making other filings or recordings that may be required by applicable law.

Pursuant to section 1123(a)(6) of the Bankruptcy Code, organizational documents for the Post-Confirmation Debtors will prohibit the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Post-Confirmation Debtors may amend and restate their respective organizational documents and other constituent documents as permitted by the laws of their respective states of incorporation or formation, and their respective organizational documents, without further order of the Bankruptcy Court.

B.     **Plan Administrator**

1.     **Rights of the Plan Administrator**

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

On and after the Plan Effective Date, the Plan Administrator shall act for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to any of its members, a board of managers or directors, or to officers, subject to the provisions of this Plan. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without

Bankruptcy Court approval. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Confirmation Debtors. The powers of the Plan Administrator shall include any and all powers and authority to administer the Post-Confirmation Debtors Retained Assets and to implement the Plan and wind down the businesses and affairs of the Post-Confirmation Debtors in accordance with this Plan, without the need for further Bankruptcy Court approval. Without limiting the generality of the foregoing, such powers include: (a) selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Post-Confirmation Debtors' Retained Assets; (b) taking all steps to execute all instruments and documents necessary to effectuate, and to make, the Distributions to be made by the Post-Confirmation Debtors under this Plan; (c) establishing, maintaining or closing bank accounts in the name of any of the Post-Confirmation Debtors; (d) employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (e) paying Wind-Down Expenses; and (f) filing certificates of dissolution for the Debtors or Post-Confirmation Debtors (as applicable), together with all other necessary corporate and company documents, to effectuate the dissolution of the Debtors or Post-Confirmation Debtors (as applicable) under the applicable laws of the applicable state(s) of formation.

The filing by the Plan Administrator of any of the Debtors' or Post-Confirmation Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors, the Post-Confirmation Debtors or any of their Affiliates.

2. **Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation**

To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, none of the Plan Administrator, its affiliates and agents, or any of its respective officers, directors and employees shall be personally liable to any Entity for actions taken under or pursuant to this Plan, except to the extent that its, his or her own acts constitutes gross negligence, actual fraud or willful misconduct. To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, the Post-Confirmation Debtors shall indemnify and hold harmless (i) the Plan Administrator (in its capacity as such and as sole officer, director and/or manager of the Post-Confirmation Debtors), and (ii) Professionals retained by the Post-Confirmation Debtors (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses. Without limiting the generality of the foregoing, such indemnity shall include the costs and expenses of investigating, analyzing and responding to claims, and attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's gross negligence, actual fraud or willful misconduct, with respect to the Post-Confirmation Debtors or the implementation or administration of the Plan.

### C. Liquidating Trust

#### 1. Establishment of the Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established, and the Debtors shall irrevocably transfer, and shall be deemed to have irrevocably transferred, all of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan (except for any Post-Confirmation Debtors' Retained Assets, which shall vest in, and remain the asset of, the applicable Post-Confirmation Debtor) which Liquidating Trust Assets shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims, charges, rights, or other encumbrances subject to and in accordance with the Plan.

The Liquidating Trust shall be established to liquidate the Liquidating Trust Assets and make distributions in accordance with the Plan, Confirmation Order, and Liquidating Trust Agreement, and in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code. Accordingly, Holders of General Unsecured Claims shall be treated for U.S. federal income tax purposes (1) as direct recipients of undivided interests in the Liquidating Trust Assets (other than to the extent the Liquidating Trust Assets are allocable to Disputed Claims); (2) as having immediately contributed such assets to the Liquidating Trust; and (3) thereafter, as grantors and deemed owners of the Liquidating Trust and thus, the direct owners of an undivided interest in the Liquidating Trust Assets (other than such Liquidating Trust Assets that are allocable to Disputed Claims).

#### 2. The Liquidating Trustee and the Liquidating Trust Agreement

The Liquidating Trust will be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee. The Liquidating Trustee shall be selected by the Creditors' Committee and identified in a notice to be filed along with the final form of Liquidating Trust Agreement in the Plan Supplement. The Liquidating Trust, acting by and through the Liquidating Trustee, shall be the exclusive administrator of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4), as well as a party in interest under section 1109(b) of the Bankruptcy Code and representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of administering the Liquidating Trust Assets (including, but not limited to, Causes of Action) and carrying out the Liquidating Trust's duties under the Liquidating Trust Agreement with respect to Claims to the extent set forth in the Plan.

The powers, rights, and responsibilities of the Liquidating Trust and Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include (but shall not be limited to) the authority and responsibility to investigate, review, reconcile, allow, object to, compromise and settle Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured

Claims, and General Unsecured Claims, and to take the actions set forth in this section. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets in accordance with the provisions of the Plan and the Liquidating Trust Agreement. After the Effective Date, neither the Debtors nor the Post-Confirmation Debtors shall have any interest in the Liquidating Trust Assets except as set forth in the Plan, the Confirmation Order, or the Liquidating Trust Agreement.

The Liquidating Trust Agreement will be filed with the Plan Supplement. Among other things, the Liquidating Trust Agreement will provide for: (1) the transfer of the Liquidating Trust Assets to the Liquidating Trust; (2) the payment of certain Liquidating Trust Expenses from the Liquidating Trust Assets; (3) distributions to holders of Allowed Claims, as provided in this Plan and in the Liquidating Trust Agreement; (4) certain cooperation obligations of the Debtors or Post-Confirmation Debtors, as applicable; (5) the identity of the Liquidating Trustee; (6) whether the Liquidating Trustee shall be bonded; and (7) reasonable and customary provisions that allow for limitation of liability and indemnification of the Liquidating Trustee and its professionals by the Liquidating Trust to the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility. Any such indemnification shall be the sole responsibility of the Liquidating Trust and payable solely from the Liquidating Trust Assets. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, except as otherwise provided in the Plan, the Confirmation Order, or the Liquidating Trust Agreement.

### 3. Liquidating Trust Expenses.

The Liquidating Trust Expenses shall be paid from the Liquidating Trust Assets in accordance with the Plan and Liquidating Trust Agreement. On behalf of the Liquidating Trust, the Liquidating Trustee, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties under this Plan and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement. For the avoidance of doubt, the Liquidating Trust must satisfy or reserve for all Liquidating Trust Expenses before Distributions of Liquidating Trust Assets on account of Allowed Claims in any Class may be made.

### 4. Liquidating Trust Interests.

Any and all Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession, or otherwise by operation of law. In addition, the Liquidating Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities law pursuant to section 1145 of the Bankruptcy Code. The Liquidating Trust Interests will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

### 5. Certain Tax Matters.

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a) and in accordance with the Plan. Other than such items in respect of any assets allocable to, or retained on account of, Disputed Claims, the Liquidating Trust's items of taxable income, gain, loss, deduction, and/or credit will be allocated to each Holder in accordance with their relative ownership of Liquidating Trust Interests.

As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be used consistently by all parties for all U.S. federal income tax purposes.

The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust. Nothing in this Plan shall be deemed to determine, expand, or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code. The Liquidating Trustee (1) may in its sole discretion timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the holders of Liquidating Trust Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund." The Liquidating Trustee shall also pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

6. **Dissolution.**

The Liquidating Trustee and the Liquidating Trust shall be discharged and dissolved at such time as the Liquidating Trustee determines all distributions required to be made by the Liquidating Trustee under the Plan have been made. In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless extended by an Order of the Bankruptcy Court.

Upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets shall be distributed to holders of Allowed General Unsecured Claims in accordance with the Plan and the Liquidating Trust Agreement, as appropriate. The Liquidating Trust may abandon any non-Cash assets that the Liquidating Trustee, in its discretion determines to be of inconsequential value or impractical to distribute to Liquidating Trust Beneficiaries. To the extent the Liquidating Trust retains any residual Cash or Liquidating Trust Assets, but such assets, net of Liquidating Trust Expenses, are in the discretion of the Liquidating Trustee insufficient or impractical to effectuate any further distribution pursuant to the Plan or the Liquidating Trust Agreement, the Liquidating Trust is authorized and empowered to donate such residual Liquidating Trust Assets to a Tax Code section 501(c)(3) non-profit organization selected by the Liquidating Trustee in its discretion.

### D.    Preservation of Causes of Action

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that the Debtors or the Estates may hold against any Entity to the extent not released under <u>Section IX.B</u> of the Plan or otherwise, including the Avoidance Actions (and all Privilege Rights with respect to any of the foregoing) are Liquidating Trust Assets that shall be deemed to automatically vest in the Liquidating Trust on the Effective Date.  Acting by and through the Liquidating Trustee in its sole discretion, the Liquidating Trust, shall be the representative appointed by the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to such Causes of Action and may pursue, settle or decline to pursue any such Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries.  A non-exclusive schedule of retained Causes of Action shall be filed with the Plan Supplement.  The inclusion or failure to include any Cause of Action in the Plan Supplement shall not be deemed an admission, denial or waiver of any claims, rights or causes of action that any Debtor or Estate may have against any Entity.

### E.    Insurance Matters

On the Effective Date, provided that the Debtors have paid all applicable premiums, except as otherwise provided in this Plan, the Debtors' Insurance Contracts shall be deemed to continue in full force and effect without any action by an Entity or approval of the Bankruptcy Court so as to continue to provide coverage in accordance with the express terms of the applicable Insurance Contracts.   For the avoidance of doubt: (i) on the Effective Date, the Debtors' D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) shall be deemed to continue in full force and effect without any action by any Entity or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations under such D&O Insurance Policies; and (iii) the Post-Confirmation Debtors shall retain the ability to supplement such D&O Insurance Policies as the Plan Administrator may deem necessary.

In addition, on or after the Effective Date, none of the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors or the Plan Administrator shall terminate or otherwise reduce the coverage under any fully paid or prepaid D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto.  All current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Insurance Policies, which shall not be altered.

Notwithstanding anything to the contrary in the Plan, if a Claim is subject to coverage under an Insurance Contract, in full or in part, no distributions under the Plan need be made on account of such Claim until a determination is made by a court of competent jurisdiction as to such coverage and, if coverage is available, until payment is first made from proceeds of such

appliable Insurance Contract. To the extent of any amounts not covered by the proceeds of an Insurance Contract, if any, such Claim shall be treated in accordance with the provisions of the Plan governing the Class applicable to such Claim. No Plan Distributions need be made on account of an Allowed Claim that may be payable pursuant to one or more of the Debtors' Insurance Contracts until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Contracts. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any order or approval of the Bankruptcy Court; provided that a notice of claim satisfaction shall be filed and served on the Holder of the applicable Claim. Notwithstanding the provisions of this Section IV.D of the Plan, the Liquidating Trust may, in its sole discretion, in order to facilitate distributions and the completion of its responsibilities under this Plan: (i) make a distribution under the Plan with respect to an Allowed Claim that may be covered by an Insurance Contract; or (ii) seek to estimate a Claim, solely for distribution purposes, that may be covered by an Insurance Contract.

If an applicable Insurance Contract has an SIR, the Holder of an Allowed Claim that is covered by such SIR Insurance Contract shall only be entitled to an Allowed General Unsecured Claim against the applicable Debtor's Estate up to a maximum amount of the applicable SIR. Any such Allowed General Unsecured Claim may be further reduced, or disallowed in full, upon the liquidation of such Claim in an appropriate forum. By and through the Liquidating Trustee, the Liquidating Trust may seek entry of an order of the Bankruptcy Court fixing any such Claim in the maximum amount of the SIR to facilitate Distributions. For the avoidance of doubt, nothing in this Plan obligates the Debtors, the Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee (as applicable) to otherwise satisfy any SIR under any SIR Insurance Contract. Any recovery on account of an Allowed Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof under the SIR Insurance Contract and applicable law.

Moreover, this Plan and/or the Confirmation Order specifically reserves all rights with respect to, and does not determine the issue of, whether the Debtors' obligations under an applicable SIR Insurance Contract constitute obligations that would require the Debtors to assume or reject the SIR Insurance Contract under section 365 of the Bankruptcy Code. This Court retains jurisdiction to determine whether any such SIR Insurance Contract is executory to the extent the same becomes relevant for purpose of claim or case administration. For the avoidance of doubt, nothing in this Plan or Confirmation Order shall be construed as an assumption of an SIR Insurance Contract. Moreover, and for the avoidance of doubt, an insurer who issued an SIR Insurance Contract shall not assert an administrative claim under section 503(b) of the Bankruptcy Code against the Estates for any costs or any other amounts incurred following the Effective Date of this Plan.

For the avoidance of doubt, nothing in the Plan or Confirmation Order shall (i) be construed to limit, extinguish, expand, or diminish the insurance coverage that may exist under any Insurance Contract, (ii) relieve any Entity from the requirement to timely file a Proof of Claim by the Claims Bar Date or Supplemental Claims Bar Date, as applicable; (iii) require any

payment on account of a SIR for a Claim that is covered by an Insurance Contract before such Holder pursues recovery in excess of an applicable SIR from any applicable Insurance Contract; or (iv) limit the amount that a Holder of a Claim that is covered by an Insurance Contract can pursue against any applicable Insurance Contract above any applicable SIR. Each insurer's applicable rights and defenses to claims asserted under an SIR Insurance Contract or applicable law, including, without limitation, coverage defenses, are expressly reserved and not affected by this Plan or the Confirmation Order. For the avoidance of doubt, neither the Plan or the Confirmation Order shall be construed to modify the terms of an SIR Insurance Contract. Moreover, nothing contained in this Plan or the Confirmation Order shall modify any obligations that might exist under an SIR Insurance Contract related to the provision of information and/or documentation to an insurer.

If and to the extent applicable, the automatic stay of section 362(a) of the Bankruptcy Code and any injunctions set forth in the Plan shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against insurers under applicable non-bankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against an insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in the Plan to proceed with its claim, and (c) all costs in relation to each of the foregoing; and (iii) insurers to take any other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment).

## F. Comprehensive Settlement

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration of the Distributions and other benefits provided under the Plan, the ~~provisions of the~~**Debtors releases in Section X.B.1 and IV.G of this** Plan, ~~including~~ the ~~releases~~**settlements** set forth in ~~Section X.B, shall~~**paragraphs 25, 48, 49, and 50 of the Confirmation Order, and the Notes Settlement, shall each** constitute a good-faith compromise and settlement of all Claims, Interests, disputes and controversies relating to the rights of Holders of Claims and Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of such compromise and settlement. The entry of the Confirmation Order shall also constitute the Bankruptcy Court's determination that such compromise and settlement is in the best interests of the Debtors, their Estates, creditors and all other parties in interest, and is fair, equitable and within the range of reasonableness. If the Effective Date does not occur, the settlements set forth in this Plan shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

## G. Release of Preference Claims

The Debtors release and discharge all Avoidance Actions of the Debtors under section 547 of the Bankruptcy Code.

### H. Vesting of Assets in the Post-Confirmation Debtors and Liquidating Trust

Pursuant to sections 1141(b) and (c) of the Bankruptcy Code, on the Effective Date the Liquidating Trust Assets and the Post-Confirmation Debtors Retained Assets, shall vest or re-vest in the Liquidating Trust or the Post-Confirmation Debtors free and clear of all Liens, Claims, Interests, charges, or other encumbrances except as otherwise provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidating Trust, acting by and through the Liquidating Trustee, and the Post-Confirmation Debtors, by and through the Plan Administrator, may use, acquire, liquidate, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Plan shall be conclusively deemed to be adequate notice that Liens, Claims, interests, charges or other encumbrances are being extinguished. Except as otherwise provided in the Plan, by failing to object to confirmation of the Plan, any person having a Lien, Claim, interest, charge or other encumbrance against or with respect to any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment and vesting of such property to or in the Post-Confirmation Debtors or the Liquidating Trust.

### I. Reserved.

### J. Cancellation and Surrender of Documents, Instruments and Securities

Except as provided in this Plan, the Plan Supplement, the Confirmation Order, or any contract, instrument or other agreement or document entered into or delivered in connection with the Plan or the Asset Sales, and, subject to receipt of the applicable Distributions made pursuant to Section II, on the Effective Date, except for the purpose of evidencing a right to a distribution under this Plan, all notes, bonds, indentures (including, without limitation, the Senior Notes Documents), agreements, instruments, certificates, securities and other documents evidencing (directly or indirectly) Claims or Interests shall be deemed satisfied in full, canceled., discharged, surrendered and of no further force and effect against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator without any further action on the part of the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator; *provided, however*, that notwithstanding the occurrence of the Effective Date, the Senior Notes Documents shall continue in effect solely for the purposes of (a) to the extent not previously paid, allowing holders of Senior Notes Claims to receive and accept their respective distributions under the Plan on account of such Senior Notes Claims, subject to the Senior Notes Agent Charging Lien; and (b) allowing and preserving the rights of the Senior Notes Agent to (1) assert or maintain any rights the Senior Notes Agent may have against any money or property distributable or allocable to holders of Senior Notes Claims, including, without limitation, the Senior Notes Agent Charging Lien; (2) receive compensation or reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of this Plan, the Plan Supplement, or

Confirmation Order; (3) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Senior Notes Agent may have under this Plan, the Plan Supplement, the Confirmation Order, the Senior Notes Documents, or any other related agreement; (4) preserve the rights of the Senior Notes Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce any right or obligation owed to the Senior Notes Agent or Holders of Senior Notes Claims under the Plan, the Plan Supplement, the Confirmation Order, or other documents incorporated therein; and (5) execute documents pursuant to Section IV.K of this Plan. Holders of or parties to such cancelled instruments, notes, and other documentation will have no rights arising from or relating to such instruments, notes, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan, the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of the Plan. On the Effective Date, the Senior Notes Agent and its agents, successors, and assigns shall be automatically and fully discharged and released of all of their duties, responsibilities, and obligations associated with the Senior Notes Documents. On and after the Effective Date, (i) the Senior Notes shall be deemed to be null, void, and worthless, and (ii) at the request of the Senior Notes Agent, DTC shall take down the relevant positions relating to the Senior Notes without any requirement of indemnification or security on the part of the Debtors, the Post-Confirmation Debtors, or the Senior Notes Agent.

## K. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan and subject to receipt of the applicable Distributions, on the Effective Date all Liens on the property of any Estate shall be fully released and discharged.

Following the Effective Date and the indefeasible payment in full in Cash of all Senior Notes Agent Fees, the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable, may, in their sole discretion and at their sole expense, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Senior Notes Claims, including, without limitation, the preparation and filing, in form, substance, and content reasonably acceptable to the Senior Notes Agent, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Senior Notes Agent (including, without limitation, UCC-3 termination statements), and the Senior Notes Agent shall execute and deliver all such documents reasonably requested by the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable.

## L. Corporate and Other Entity Action; Effectuating Documents; Further Transactions

Upon the Effective Date, all acts or actions contemplated by the Plan or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan

shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Plan Administrator, or any other Entity. Without limiting the generality of the foregoing, such actions shall include: (1) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; and (2) the appointment of the Plan Administrator. For the avoidance of doubt, the authorizations, approvals and ratifications contemplated by the foregoing shall apply to any actions contemplated by any document in the Plan Supplement, whether such actions are to occur before, on, or after the Effective Date.

All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors or the Plan Administrator in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the Holders of Claims or Interests, directors, managers, officers, or authorized persons of the Debtors. On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the applicable Debtors. The authorizations and approvals contemplated by this <u>Section IV.L</u> shall be effective notwithstanding any requirements under non-bankruptcy law.

Prior to, on, and after the Effective Date, the Debtors and the Post-Confirmation Debtors, as applicable, and their directors, managers, officers, and authorized persons, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, notes, instruments, certificates, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

**M.     Dissolution of the Boards of the Debtors or Managers.**

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have terminated, the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned. Following such terminations and reorganizations, the Plan Administrator shall be the sole manager and sole officer of the Post-Confirmation Debtors, and shall succeed to the powers of the respective Debtors' managers, directors, and officers.

**N.     Closing the Chapter 11 Cases**

On or after the Effective Date, the Plan Administrator or Liquidating Trustee shall be authorized to file a motion requesting entry of one or more orders of this Court closing any of the

Chapter 11 Cases. Such motion may be heard by the Court on fourteen (14) days' notice to the U.S. Trustee and all other parties entitled to notice under Local Rule 2002-1(b). Upon administering the Plan in full, either the Plan Administrator or the Liquidating Trust may seek authority from the Bankruptcy Court to close the case of Number Holdings, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the requirements set forth in Local Rule 3022-1. Furthermore, the Voting Agent is authorized to destroy all paper/hardcopy records related to this matter one (1) year after the Effective Date has occurred.

## V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption and Rejection of Executory Contracts and Unexpired Leases

Each of the Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date, except (i) to the extent otherwise provided in this Plan or in connection with any Asset Sale, (ii) is the subject of a separate motion to assume or assume and assign pending as of the Effective Date, or (iii) with respect to an Executory Contract or Unexpired Lease that previously expired or terminated pursuant to its own terms. Further, as of the Confirmation Date, all unexpired leases of real property have been assumed or rejected.

Entry of the Confirmation Order shall constitute an order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, approving the rejection of the Executory Contracts and Unexpired Leases as set forth in the preceding paragraph.

### B. Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Claims arising from the rejection of any Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Claims and Noticing Agent by the Supplemental Claims Bar Date. Any Claims arising from the rejection of any Executory Contracts and Unexpired Leases that are not timely filed or is otherwise permitted to be late filed by a Final Order shall be disallowed automatically, without the need for any objection or further notice to or action or approval of the Bankruptcy Court provided that a notice of such disallowance shall be filed and served on a party who has filed such a claim.

**Holders of Claims arising from the rejection of Executory Contracts and Unexpired Leases with respect to which no Proof of Claim is timely asserted shall be forever barred from asserting a Claim based on such rejection unless otherwise expressly allowed by the Bankruptcy Court.**

Claims arising from the rejection of Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated pursuant to Section II of this Plan. The Liquidating Trust shall have the right to object to, settle, compromise or otherwise resolve any Claim asserted on account of a rejected Executory Contract or Unexpired Lease.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of the obligations owed by the counterparty to the

applicable Debtor(s) under such Executory Contracts or Unexpired Leases. Notwithstanding any applicable non-bankruptcy law to the contrary, the Post-Confirmation Debtors and/or the Liquidating Trust (as applicable) shall have the right to receive, and any non-Debtor counterparty to a rejected Executory Contract or Unexpired Lease shall retain a continuing obligation to provide, warranties, indemnifications or continued maintenance obligations with respect to such contracts and leases.

## C. Reservation of Rights

Neither the identification of any contract or lease as assumed, assumed and assigned or rejected in connection with the Plan or any of the Asset Sales shall constitute an admission by the Debtors, the Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor, Post-Confirmation Debtor, the Plan Administrator, Liquidating Trust or the Liquidating trustee has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired on the Effective Date, the Liquidating Trust shall have 30 days following entry of a Final Order resolving such dispute to determine whether to alter the treatment of such contract or lease under this Plan.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Method of Distributions

Except as otherwise provided for in the Plan, all Distributions shall be made by the Liquidating Trust in accordance with the terms of this Plan. All Distributions on account of the Allowed DIP Claims, Allowed Prepetition ABL Claims, and Allowed Senior Notes Claims shall be made to the applicable agent or trustee, or at such agent's or trustee's direction and shall be effected by the Debtors on the Effective Date to the extent not previously satisfied. As soon as practicable, each such agent or trustee, as applicable, shall arrange to deliver such Distributions to or to the order of the applicable beneficial Holders. The Debtors may coordinate with the agents or trustee for the DIP Agreement, Prepetition Credit Agreement, and Senior Notes with respect to the applicable Distributions.

Unless the Liquidating Trust otherwise agrees in its sole and absolute discretion, any Distribution to be made in Cash shall be made by check drawn on a domestic bank. Unless the Liquidating Trust otherwise agrees in its sole and absolute discretion, Cash Distributions shall be made in U.S. Dollars.

Except as otherwise provided in the Plan, Distributions shall be made to the Holders of record of Allowed Claims as of the Distribution Record Date at the latest known address, as identified in: (i) the most recently filed Proof of Claim; (ii) at the address set forth in any written notice of address change delivered to the Debtors and the Claims and Noticing Agent after the date of the most recently filed Proof of Claim; (iii) at the address reflected in the Schedules if no Proof of Claim has been filed and the Debtors and the Claims and Noticing Agent have not received a written notice of a change of address; or (iv) if clauses (i) through (iii) are not

applicable, at the last address directed in writing by such Holder, filed with the Bankruptcy Court and delivered to the Liquidating Trust.

### B. Appointment of a Disbursing Agent

The Liquidating Trust shall have the authority, but not the obligation, to enter into agreements with one or more Disbursing Agents to facilitate the distributions required in this Plan as set forth in this Section VI. To the extent the Liquidating Trust determines to utilize a Disbursing Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Disbursing Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Disbursing Agent; and (d) at the Liquidating Trust's election, post a bond, obtain a surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Liquidating Trust. The Liquidating Trust's reasonable costs and expenses in connection with the use of such Disbursing Agent shall be treated as a Liquidating Trust Expense.

### C. Undeliverable Distributions and Time Bar to Cash Payments.

In the event a Distribution is returned as undeliverable, or no address for a particular Holder is found in the Debtors' records, no further Distributions to such Holder shall be made unless and until the Liquidating Trust is notified in writing of such Holder's then-current address, at which time a Distribution shall be made to such Holder on the next Periodic Distribution Date. In its sole discretion, the Liquidating Trust may attempt to locate the Holders entitled to receive undeliverable Distributions. Any Distributions returned to the Liquidating Trust as undeliverable shall remain in the possession of the Liquidating Trust until such time as a Distribution becomes deliverable.

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance. Requests for reissuance of any voided check shall be made directly to the Liquidating Trust by the Entity to whom such check was originally issued. Any claim in respect of a voided check shall be made within 30 days after the date upon which such check was deemed void. If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred.

Notwithstanding any federal or state escheat laws to the contrary, any Distribution that remains undeliverable for ninety (90) days or is represented by a voided check shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code, shall revert to and shall revest in the Liquidating Trust for all purposes, including, but not limited to, for the purpose of redistribution to other Holders of Allowed Claims, and the corresponding Claim shall be deemed disallowed, expunged and forever barred without order of the Bankruptcy Court.

None of the Plan Administrator, the Liquidating Trustee, the Liquidating Trust or the Post-Confirmation Debtors shall incur any liability whatsoever on account of any Distributions made or undeliverable under the Plan.

### D.    Distribution Record Date

As of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, the transfer registers for Claims shall be closed. The Liquidating Trust shall have no obligation to recognize the transfer or sale of any Claim that occurs after such date and time and shall be entitled for all purposes in this Plan to recognize and make Distributions only to those Holders who are Holders of Claims as of 5:00 p.m. on the Distribution Record Date. For the avoidance of doubt, the Distribution Record Date shall not apply to any securities of the Debtors deposited with the Depository Trust Company ("DTC"), the Holders of which shall receive a distribution in accordance with the customary procedures of DTC.

### E.    Minimum Distributions

No Distribution of less than fifty dollars ($50.00) shall be made by the Plan Administrator or Liquidating Trust. All Cash that would have funded each such Distribution shall revert to and shall revest in the Liquidating Trust for all purposes, including, but not limited to, for the purpose of redistribution to other Holders of Allowed Claims.

### F.    Compliance with Tax Requirements

To the extent applicable, in connection with making Distributions, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed on the Liquidating Trust by any governmental unit. All Distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements. The Liquidating Trust shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8 or other appropriate tax form or documentation as a condition precedent to being sent a Distribution. The Liquidating Trust shall provide advance written notice of such requirement to each Holder of a Claim. The notice shall provide each Holder with a period of no less than ninety (90) days after first request to provide an executed Form W-9, Form W-8 or other tax form or documentation to the Liquidating Trust. If a Holder of any Claim does not provide the Liquidating Trust with an executed Form W-9, Form W-8 or other tax form or documentation within the 90-day time period specified in such notice, or such later time period agreed to by the Liquidating Trust in writing in its sole discretion, then the Liquidating Trust, in its sole discretion, may (i) make a Distribution net of any applicable withholding or (ii) determine that such Holder shall be deemed to have forfeited the right to receive any Distribution. In such event: (i) any Distribution shall revert to the Liquidating Trust for all purposes, including but not limited to, for the purpose of Distribution on account of other Allowed Claims; and (ii) the Claim of the Holder originally entitled to such Distribution shall be waived, discharged and forever barred without further order of the Bankruptcy Court, notwithstanding any federal, state or provincial escheat, unclaimed or abandoned property law to the contrary. The Liquidating Trust shall have the right to allocate all

Distributions in compliance with applicable withholding requirements, wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.

### G. Setoffs

Except with respect to Claims released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Liquidating Trust, may set off against any Allowed Claim (and the Distributions to be made on account of such Claim), all counterclaims, rights and causes of action of any nature that the applicable Debtor may have had against such Holder. The failure to effectuate such a setoff shall not constitute a waiver or release, however, by the applicable Debtor, Liquidating Trust, Post-Confirmation Debtor or the Plan Administrator of any Causes of Action against any Holder of a Claim.

### H. Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims pursuant to the Plan shall be treated as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Petition Date. Unless otherwise provided in this Plan, no post-petition interest shall be payable on account of any Claim.

### I. Distributions to Holders of Disputed Claims

Notwithstanding any other provision of the Plan: (i) no Distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever; and (ii) except as otherwise agreed to by the relevant parties, no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. On the Distribution Date that is at least 30 days after a Disputed Claim becomes an Allowed Claim (or such lesser period as the Liquidating Trust may determine), the Holder of such Claim shall receive any Distribution to which such Holder would have been entitled under the Plan as of the Effective Date (including any Distribution such Holder would have been entitled to on the Distribution Date on which such Holder is receiving its initial Distribution) if such claim had been Allowed as of the Effective Date, without any interest to be paid on account of such Claim.

### J. Disputed Claims Reserve

As soon as practicable following the Effective Date, the Liquidating Trust shall establish a Disputed Claims Reserve. The Liquidating Trust shall fund the Disputed Claims Reserve with Cash in an amount equal to the estimated aggregate distributable value, measured in reference to the asserted amount, of all Claims that are Disputed as of the Effective Date. To the extent

necessary, additional funds shall be deposited in the Disputed Claims Reserve in the estimated distributable value, measured in reference to the asserted amount, of any additional Disputed Claims asserted before the Supplemental Claims Bar Date. The funds in the Disputed Claims Reserve shall be held in trust for the benefit of Holders of Disputed Claims ultimately determined to be Allowed. Once all Disputed Claims have been resolved and all ultimately Allowed Claims have been paid in accordance with Section II hereof, and provided that all Allowed DIP Claims, Allowed Prepetition ABL Claims, Allowed Priority Tax Claims, and Allowed Other Secured Claims have been paid or otherwise satisfied in accordance with the provisions of the Plan, any remaining amount in the Disputed Claims Reserve shall re-vest in the Liquidating Trust for all purposes.

### K. Claims Paid or Payable by Third Parties

To the extent that a Holder of an Allowed Claim receives a payment from a third party, including any of the Purchasers, the Liquidating Trust shall be authorized to reduce, for the purposes of Distribution, the Allowed amount of such Claim by the amount of such payment. In addition, any such Claim shall be disallowed or deemed satisfied to the extent of the third-party payment received without an objection having to be filed and without any order or approval of the Bankruptcy Court; provided that a notice of claim satisfaction shall be filed and served on the Holder of the applicable Allowed Claim.

Except as otherwise provided by the Releases set forth in this Plan, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any other Entity may have against any other Entity, including insurers. Nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### L. Obligations to the IRS

If the Post-Confirmation Debtors or the Liquidating Trust (as applicable) default under their obligations to the IRS and the Bankruptcy Court determines that such party is in breach of the Plan or the Confirmation Order, the IRS's right to seek Bankruptcy Court authority to pursue any available remedies pursuant to the Bankruptcy Code or applicable non-bankruptcy law is expressly preserved.

## VII. DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

### A. Allowance of Claims

After the Effective Date, the Liquidating Trust shall have any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed or released under the Plan. All settled Claims approved prior to the Effective Date by a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

Any Claim that has been listed in the Schedules as disputed, contingent or unliquidated, and for which no Proof of Claim has been timely filed (unless otherwise expressly allowed by the Bankruptcy Court), shall be expunged without further action and without any further notice to or action, order or approval of the Bankruptcy Court.

## B.     Prosecution of Objections to Claims

### 1.     Authority to Prosecute and Settle Claims

Except as otherwise specifically provided in this Plan, any party in interest may file objections to Claims until the Effective Date (the "General Objection Bar Date").  Any party that files an objection by the General Objection Bar Date may continue to litigate or withdraw such objection thereafter.

Except as otherwise specifically provided in this Plan (including in the preceding sentence), after the Effective Date, the Liquidating Trust shall have the sole authority to:  (a) file, withdraw or litigate to judgment, objections to Claims; (b) settle or compromise any Disputed Claim (other than a Fee Claim) without any further notice to or action, order or approval by the Bankruptcy Court; and (c) direct the Claims and Noticing Agent to adjust the claims register to reflect any resolutions of Disputed Claims without any further notice to or action, order or approval by the Bankruptcy Court, provided that all objections to proofs of claim must be filed by the date that is six (6) months from the Effective Date (the "Trust Objection Bar Date") or such later date as is noticed on the docket by the Liquidating Trustee.  To the extent that the Debtors have filed an objection to a Claim that remains pending on the Effective Date, the Liquidating Trust shall be substituted as the objecting party without further action of the parties or order of the Court.  Notwithstanding the foregoing, nothing contained herein shall affect the rights of any party in interest to object to any fee application.

Except as otherwise provided in this Plan, all Proofs of Claim filed after the Effective Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, provided that a notice of such shall be filed and served on a party who files such a claim.  All such Proofs of Claims shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, or the Post-Confirmation Debtors, as applicable, without the need for any objection by the Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Code.

### 2.     Omnibus Objections

To facilitate the efficient resolution of Disputed Claims, the Liquidating Trust shall, notwithstanding Bankruptcy Rule 3007(c), be permitted to file omnibus objections to Claims.

### 3.     Authority to Amend Schedules

The Debtors, prior to the Effective Date, and the Liquidating Trust, (acting by and through the Liquidating Trustee), after the Effective Date, shall have the authority to amend the Schedules with respect to any Claim and to make Distributions under this Plan based on such amended Schedules (if no Proof of Claim is timely filed in response thereto) without approval of

the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim that was previously Scheduled as undisputed, liquidated and not contingent, the Debtors or the Liquidating Trust, as applicable, shall provide the Holder of such Claim with notice of such amendment and the opportunity to file a Proof of Claim in accordance with applicable Bankruptcy Rules.

### C.  Estimation of Claims

The Debtors, prior to the Effective Date, and the Liquidating Trust (acting by and through the Liquidating Trustee), after the Effective Date, as applicable, may at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and the relevant Debtor or Liquidating Trust may, but shall not be required to, elect to pursue any supplemental proceeding to object to any ultimate Allowance of or Distribution on such Claim.

### D.  Claims Subject to Pending Actions

Except as otherwise provided in this Plan, any Claim held by an Entity against which a Debtor, the Post-Confirmation Debtors, the Liquidating Trust, or another party in interest files a complaint seeking to avoid a transfer under sections 522(f), 522(h), 544, 545, 547, 548, or 549 of the Bankruptcy Code or to recover property under sections 542, 543, 550 or 553 of the Bankruptcy Code, shall be deemed a Disputed Claim pursuant to section 502(d) of the Bankruptcy Code. The Holder of such Claim shall not receive any Distribution on account of such Claim until such time as such Cause of Action has been resolved and, to the extent applicable, all sums due from such Holder have been turned over to the Liquidating Trust.

## VIII.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.  Conditions to Confirmation

The Bankruptcy Court shall not be requested to enter the Confirmation Order unless and until the following conditions have been satisfied:

1.  The Bankruptcy Court shall have entered the Disclosure Statement Order and such order remains in full force and effect; and

2.  The Plan and the Confirmation Order shall be in form and substance acceptable to the Debtors and the Creditors' Committee.

### B.    Conditions to the Effective Date

The Effective Date shall not occur, and the Plan shall not be consummated unless and until the following conditions have been satisfied or duly waived pursuant to Section VIII.C:

1.    The Confirmation Order shall be in full force and effect, and no stay thereof shall be in effect;

2.    All other documents and agreements necessary to implement the Plan on the Effective Date shall have been executed and delivered to the required parties and, to the extent required, filed with the applicable government unit in accordance with applicable laws, and all other actions required to be taken in connection with the Effective Date shall have occurred;

3.    The Debtors shall have paid or caused to be paid in full, in Cash all Notes Settlement Expenses and Senior Notes Agent Fees invoiced and due no later than one (1) Business Day prior to the Effective Date.

4.    All Statutory Fees and obligations then due and payable to the U.S. Trustee shall have been paid in full;

5.    The Professional Fee Reserve and the Disputed Claims Reserve shall have been established and fully funded; and

6.    The Liquidating Trust Agreement, in form and substance acceptable to the Creditors' Committee, has been fully executed.

### C.    Waiver of Conditions to the Effective Date

The conditions to consummation of the Plan set forth in this Section VIII may be waived by the Debtors, with the consent of Creditors' Committee and the Ad Hoc Group of Senior Noteholders (but only to the extent such condition affects the treatment or release in this Plan of the Holders of Senior Notes), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## IX.    WITHDRAWAL AND MODIFICATION OF THE PLAN

### A.    Withdrawal of the Plan

The Debtors reserve the right to seek to withdraw the Plan at any time prior to the Effective Date.  If the Plan is withdrawn:  (i) each of the Plan and the Confirmation Order shall be null and void in all respects, including with respect to (a) the rejection of Executory Contracts and Unexpired Leases and (b) the releases described in Section X.B; and (ii) nothing contained in the Plan or the Confirmation Order shall (a) constitute a waiver or release of any claims by the Debtors, Claims or Interests or (b) prejudice in any manner the rights of the Debtors or any other Entity.

### B. Modification of the Plan

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right, with the consent of the Creditors' Committee, to alter, amend or modify the Plan before the Effective Date.  Prior to the Effective Date, the Debtors may make appropriate technical modifications to the Plan with the consent of the Creditors' Committee without further order or approval of the Bankruptcy Court.  Any such amendment, alteration, modification or technical modification that affects the treatment of the Holders of Senior Notes (including any release granted to or by such Holder) shall be reasonably acceptable to the Ad Hoc Group of Senior Noteholders.  Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of their Claims.  Holders of Claims who were deemed to accept the Plan because their Claims were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification or supplement, such Claims continue to be Unimpaired.

## X. RELEASES, EXCULPATIONS AND INJUNCTIONS

### A. Exculpation

**From the Petition Date through the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity.  No Holder of a Claim or Interest, no other party in interest and none of their respective Representatives shall have any right of action against any Exculpated Party for any act taken or omitted to be taken from the Petition Date through the Effective Date in connection with, related to or arising out of the Debtors' chapter 11 cases, the Debtors, the Estates, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, or any other transactions proposed or consummated in connection with these cases or the Plan, any Distributions made under or in connection with the Plan or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder.  The foregoing provisions of this <u>Section X.A</u> shall have no effect, however, on:  (i) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; and (ii) the liability of any Exculpated Party that is the result of any act or omission of such Exculpated Party or its Representative that is determined by a Final Order to have constituted gross negligence, fraud or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.**

### B. Releases

#### 1. Release by the Debtors

Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permitted by law, the Debtors, on behalf of themselves, their Estates, their respective Representatives and any and all persons and Entities who may purport to claim by, through, for, or because of them, shall forever and irrevocably release, waive and discharge all claims and Causes of Action that they have, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transactions proposed or consummated in connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement, and any other transaction implemented pursuant to or consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of this <u>Section X.B.1</u> shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, fraud or willful misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.

2.     **Release by Holders of Claims**

Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the services of the Released Parties to facilitate the resolution of these cases, to the fullest extent permitted by law, each (i) Holder of a Claim that returns a Ballot in accordance with the instructions set forth thereon or enters into a settlement with the Debtors with respect to their Claim and its treatment under the Plan, and does not opt-out of the release contained in this <u>Section X.B.2</u> by checking the opt-out box on the Ballot indicating that such Holder opts not to grant the releases provided in the Plan and (ii) Releasing Party, shall be deemed to forever and irrevocably release, waive and discharge all claims or causes of action that such Holder has, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transaction proposed or consummated connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement and any other transaction implemented pursuant to or consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of this <u>Section X.B.2</u> shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, fraud or willful

misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.

Nothing in this Plan discharges, releases, precludes, or enjoins: (a) any liability to any governmental unit that is not a Claim; (b) any Claim of a governmental unit arising after the Effective Date; (iii) any police or regulatory liability to a governmental unit on the part of any Entity as the owner or operator of property after the Effective Date; or (iv) any liability to a governmental unit on the part of any Entity other than the Debtors. Nothing in this Plan shall enjoin or otherwise bar a governmental unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Plan divests any tribunal of any jurisdiction it may have to adjudicate any defense based on this Plan provision.

## C.     Injunction

Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective Representatives, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or another Final Order of the Bankruptcy Court or as agreed to by the Debtors, the Post-Confirmation Debtors, and/or the Liquidating Trust, and a holder of a Claim or Interest, all Persons and Entities who have held, hold, or may hold Claims, Interests, or causes of action that have been released, discharged, or are subject to exculpation pursuant this Section X of the Plan (the "Released and Exculpated Claims") are permanently enjoined, on and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Exculpated Parties, the Released Parties, and/or the Plan Administrator: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or respect to any such Claims, Interests, or causes of action; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iv) asserting any right of setoff (except to the extent exercised prepetition), directly or indirectly, against any obligation due from the Debtors, the Liquidating Trust or the Post-Confirmation Debtors, or against property or interests in property of any of the Debtors, Liquidating Trust, or the Post-Confirmation Debtors except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

**The benefit of the injunctions in this <u>Section X.C</u> shall extend to any successors of the Released Parties, and their respective property and interests in property.**

       **D.**      **Term of Injunctions or Stays**

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays arising under or entered during the pendency of these cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

## XI.     RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over these cases after the Effective Date to the fullest legally permissible extent, including jurisdiction to:

       1.     Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, and establish the priority or secured or unsecured status of any Claim, including any Administrative Claim;

       2.     Adjudicate any Causes of Action to the extent not released under Section X.B hereof or otherwise, including the Avoidance Actions;

       3.     Resolve any disputes relating to the Asset Sales;

       4.     Grant or deny any applications for allowance of any Fee Claims for periods ending on or before the Effective Date;

       5.     Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

       6.     Ensure that Distributions are accomplished pursuant to the provisions of the Plan, Confirmation Order and Liquidating Trust Agreement;

       7.     Decide or resolve any motions, adversary proceedings, contested matters and any other matters that may be pending in these cases on the Effective Date or brought against the Post-Confirmation Debtors, the Plan Administrator, the Liquidating Trust or the Liquidating Trustee thereafter;

       8.     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Confirmation Order, or the Asset Sales;

9.     Resolve any controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document that is entered into or delivered in connection with the Plan and any Entity's rights arising from or obligations incurred in connection with the Plan;

10.     Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

11.     Modify the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court's order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, in such manner as may be necessary or appropriate to consummate the Plan and the transactions contemplated hereby;

12.     Hear and determine any matter, case, controversy, suit, dispute, or Cause of Action regarding the existence, nature and scope of the releases, injunctions, and exculpation provided under the Plan, issue injunctions, and enforce the injunctions contained in the Plan and the Confirmation Order;

13.     Enter and implement orders or take such other actions as may be necessary or appropriate to implement, enforce or restrain interference by any Entity with the consummation, implementation or enforcement of the Plan or the Confirmation Order;

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions are enjoined or stayed;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including the Liquidating Trust Agreement;

16.     Grant, under section 505(b) of the Bankruptcy Code, an expedited determination with respect to tax returns filed, or to be filed, on behalf of the Debtors or Post-Confirmation Debtors for any and all taxable periods ending after the Petition Date;

17.     Enforce, clarify or modify any orders previously entered in these cases;

18.     Determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes;

19.     Assist in recovery of all assets of the Debtors and their Estates, wherever located;

20.     Enter final decrees closing the Debtors' Chapter 11 Cases; and

21.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, the provisions of this <u>Section XI</u> shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## XII.     MISCELLANEOUS PROVISIONS

### A.     Dissolution of Creditors' Committee

Except to the extent provided in this Plan, upon the Effective Date:  (i) the Creditors' Committee shall be dissolved; (ii) the current and former members of the Creditors' Committee and their respective Representatives shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with these cases; and (iii) the Professionals retained by the Creditors' Committee will not be entitled to assert any Fee Claims for any services rendered or expenses incurred after the Effective Date in their capacity as Professionals for the Creditors' Committee, except to the extent necessary to:   (a) prepare, File and, if necessary, litigate final applications for compensation; (b) object to final fee applications filed by other Professionals; and (c) appear and be heard in connection with any appeal of the Confirmation Order.

### B.     Inconsistency

In the event of any inconsistency among the Plan, the Disclosure Statement or any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern.  In the event of any inconsistency between the Plan and any document or agreement filed as part of the Plan Supplement (including, but not limited to, the Liquidating Trust Agreement), such document or agreement shall control.  In the event of any inconsistency between the Plan or any document or agreement filed in the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

### C.     Entire Agreement

Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### D.     Document Retention

On and after the Effective Date, the Post-Confirmation Debtors or Liquidating Trust, as applicable, is permitted to either: (i) maintain documents in accordance with the Debtors' existing document retention policy, as it may be altered, amended, modified, or supplemented by the Post-Confirmation Debtors or the Liquidating Trust, as applicable; or (ii) abandon such documents, as determined by the Plan Administrator or the Liquidating Trustee, as applicable, in its reasonable discretion, and the Post-Confirmation Debtors and the Liquidating Trust shall have no liability for abandoning such documents.

### E.     Exhibits / Schedules

All exhibits and schedules to the Plan, including the documents and instruments in the Plan Supplement, are incorporated into and constitute a part of the Plan.

### F.     Severability

If prior to the entry of the Confirmation Order, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, at the request of the Debtors, alter and interpret such term or provision to the extent necessary to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G.     Governing Law

Except to the extent that (i) the Bankruptcy Code or other federal law is applicable or (ii) a document or agreement filed in the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such document or agreement), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws that would require or permit application of the laws of another jurisdiction.

### H.     Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## I. Service of Documents

To be effective, any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to counsel to the Debtors, the Creditors' Committee, the Ad Hoc Group of Senior Noteholders, or the U.S. Trustee must be sent by overnight delivery service, facsimile transmission, courier service, first class mail or messenger to:

1. **The Debtors**

   MILBANK LLP
   55 Hudson Yards
   New York, New York 10001
   Telephone: (212) 530-5000
   Facsimile: (212) 530-5219
   Dennis F. Dunne, Esq.
   Michael W. Price, Esq.
   Lauren C. Doyle, Esq.
   Brian Kinney, Esq.

   – and –

   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
   1201 N. Market Street, 16th Floor
   P.O. Box 1347
   Wilmington, Delaware 19899-1347
   Telephone: (302) 658-9200
   Facsimile: (302) 658-3989
   Robert J. Dehney, Sr.
   Matthew O. Talmo
   Jonathan M. Weyand
   Casey B. Sawyer

2. **The Creditors' Committee**

   PACHULSKI STANG ZIEHL & JONES LLP
   919 N. Market Street, 17th Floor
   P.O. Box 8705
   Wilmington, DE 19899-8705 (Courier 19801)
   Telephone: (302) 652-4100
   Facsimile: (302) 652-4400
   Bradford J. Sandler
   Robert J. Feinstein
   Steven W. Golden
   Colin R. Robinson

3.    **The Ad Hoc Group of Senior Noteholders**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jeffrey D. Saferstein
Chase A. Bentley

4.    **The U.S. Trustee**

OFFICE OF THE UNITED STATES TRUSTEE
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Telephone: (302) 573-6491
Facsimile: (302) 573-6497
Rosa Sierra-Fox, Esq.

## XIII.   CONFIRMATION REQUEST

The Debtors request Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: January ~~23~~**24**, 2024                Respectfully submitted,

On behalf of each of the Debtors

By:   */s/ Christopher J. Wells*
           Name:   Christopher J. Wells
           Title:    Chief Restructuring Officer
                 Number Holdings, Inc.

**Exhibit 2**

**Form of Notice of Confirmation**