**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NUMBER HOLDINGS, INC. *et al.*,[1] | Case No. 24-10719 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1612, 1613, 1685, 1686, 1687, 1688, 1720 & 1721** |

# FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER, APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS, CONFIRMING THE JOINT CHAPTER 11 PLAN OF NUMBER HOLDINGS, INC., AND ITS DEBTOR AFFILIATES, AND GRANTING RELATED RELIEF

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") having, among other things:

a. commenced, on April 8 and 9, 2024 (as applicable, the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (this "Court") for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code");

b. continued to remain in possession of their property and continue to operate and manage their remaining business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on November 27, 2024, (i) the *Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* (as amended, supplemented, and/or modified from time to time, the "Plan") [D.I. 1533], (ii) the *Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* (as amended, supplemented, and/or modified from time to time, the "Disclosure Statement") [D.I. 1534], and (iii) the *Motion to Approve Debtors' Motion for Entry of An Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes*

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: (i) Number Holdings, Inc. (1463); (ii) 99 Cents HoldCo LLC (3987); (iii) 99 Cents Only Stores LLC (1605); (iv) 99 Cents Only Stores Texas, Inc. (1229); (v) 99 Cents PropCo LLC (7843); (vi) Bargain Wholesale LLC (8030). The Debtors' mailing address is 10105 E Via Linda, Ste 103 PMB 1207, Scottsdale, AZ 85258.

*Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing For Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 1535];

d. filed, on December 11, 2024, the *Notice of Exhibit to Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and its Debtor Affiliates* [D.I. 1571], which included the Liquidation Analysis;

e. filed, on December 19, 2024, the *Revised Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1605] (the "Amended Plan") and (ii) the *Revised Disclosure Statement for Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1606] (the "Amended Disclosure Statement");

f. obtained, following the hearing on December 20, 2024 (the "Interim Hearing"), entry of the *Order (I) Approving the Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan; (III) Approving the Form of Ballots and Solicitation Packages; (IV) Establishing the Voting Record Date; (V) Scheduling a Combined Hearing for Final Approval of the Adequacy of Information in the Disclosure Statement and Confirmation of the Plan; and (VI) Granting Related Relief* [D.I. 1612] (the "Interim Approval and Procedures Order") (i) approving the Disclosure Statement on an interim basis, (ii) approving (A) the Tabulation Procedures,[2] (B) the Ballots, the Combined Hearing Notice, and other related documents to be transmitted to holders of Claims in the Voting Classes (collectively, the "Solicitation Package"), and (C) the Notice of Non-Voting Status, (iii) setting certain deadlines, and (iv) scheduling the combined hearing on the final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing");

g. filed, on December 20, 2024, the solicitation version of the Disclosure Statement [D.I. 1613];

h. caused the Solicitation Package and the Notice of Non-Voting Status to be distributed beginning on or about December 24, 2024, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), and the Interim Approval and Procedures Order, as evidenced by, among other things, the *Certificate of Service* [D.I. 1678] (the "Solicitation Affidavit");

[2] Capitalized terms not defined shall have the respective meanings ascribed to them in the Interim Approval and Procedures Order or the Plan, as applicable.

i. caused notice of the Combined Hearing (the "Publication Notice") to be published in the *Los Angeles Times* on December 26, 2024, as evidenced by the *Certificate of Publication* [D.I. 1646], filed on January 6, 2025;

j. filed (i) on January 10, 2025, the *Plan Supplement with Respect to the Joint Chapter 11 Plan of Number Holdings, Inc.* [D.I. 1663] and (ii) on January 21, 2025, the *Amended Plan Supplement with Respect to the Joint Chapter 11 Plan of Number Holdings, Inc.* [D.I. 1686] (collectively, and as may be amended, supplemented, or modified, the "Plan Supplement");

k. filed, on January 21, 2025, the *Declaration of Craig Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1684] (the "Voting Declaration");

l. filed, on January 21, 2025, the revised *Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates* [D.I. 1685];

m. filed, on January 21, 2025, the *Declaration of Christopher J. Wells in Support of Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc. and Its Debtor Affiliates* [D.I. 1687] (the "Wells Declaration"); and

n. filed, on January 21, 2025, the *Debtors' Memorandum of Law in Support of Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc. and Its Debtor Affiliates* [D.I. 1688] (the "Confirmation Brief").

WHEREAS this Court having:

a. the Court granted interim approval to the Disclosure Statement at the Interim Hearing;

b. held the Interim Hearing on December 20, 2024 and held the Combined Hearing on January 24, 2025;

c. set January 17, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing and serving objections to final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Objection Deadline");

d. set January 17, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

e. set January 24, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing;

f. considered the Plan, the Plan Supplement, the Solicitation Affidavit, the Voting Declaration, the Wells Declaration, the Confirmation Brief, and all pleadings, exhibits, affidavits, statements, responses, and comments regarding the Plan and

Disclosure Statement, including all objections and reservations of rights filed on the docket of these Chapter 11 Cases;[3]

g. heard the statements and arguments made by counsel on the record of the Interim Hearing and the Combined Hearing;

h. considered all oral representations, live testimony, proffered testimony, exhibits, documents, filings and other evidence presented at the Combined Hearing; and

i. made rulings on the record at the Combined Hearing, which are incorporated in this Confirmation Order (as defined below).

NOW, THEREFORE, based upon and after full consideration of the entire record of the Combined Hearing, which record is incorporated herein; and the Court being fully familiar with, and having taken judicial notice of, the entire record of these Chapter 11 Cases; and having found that notice of the Combined Hearing and the opportunity for any party in interest to object or otherwise be heard has been adequate and appropriate as to all parties affected by the Plan and the transactions contemplated therein; and the Court having found and determined pursuant to the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, the Interim Approval and Procedures Order, and all other applicable orders, laws, rules and regulations, that the Plan should be confirmed; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law, and orders (collectively, the "Confirmation Order"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A. Findings and Conclusions**. The findings and conclusions set forth herein and on the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law

[3] Including the (i) *Objection to Confirmation of Plan Objection and Reservation of Rights to the Joint Chapter 11 Plan of Number Holdings, Inc. and its Debtor Affiliates Filed by Safety National Casualty Corporation* [D.I. 1673]; (ii) United States Trustee's Objection to Confirmation of Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates [D.I. 1679]; and (iii) Limited Objection and Reservation of Rights of Certain Personal Injury Claimants with Respect to Confirmation of the Joint Chapter 11 Plan of Number Holdings, Inc., and Its Debtor Affiliates and the Objection Thereto of Safety National Casualty Corporation [D.I. 1680].

pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))**. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.** **Chapter 11 Petitions**. On the Petition Date, the Debtors commenced the Chapter 11 Cases and on April 9, 2024, the Court entered an order authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) [D.I. 98]. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**D.** **Committee Appointment**. On April 19, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 203].

**E.** **Eligibility for Relief**. The Debtors are entities eligible for relief under section 109 of the Bankruptcy Code.

**F.** **Judicial Notice**. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Court, including, but not limited to, all pleadings and other

documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

**G. Objections**. All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objection to the final approval of the Disclosure Statement and confirmation of the Plan, and such objections, if any, have been fully and fairly litigated or resolved. Any resolution of objections to the final approval of the Disclosure Statement or confirmation of the Plan explained on the record at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights related to the final approval of the Disclosure Statement or confirmation of the Plan are overruled on the merits.

**H. Adequacy of the Disclosure Statement**. The Disclosure Statement contains extensive material information regarding the Debtors sufficient to allow the parties entitled to vote on the Plan to make informed voting decisions. The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and such information (i) is persuasive and credible; and (ii) has not been controverted by other evidence.

**I. Conditions Precedent to Confirmation**. The conditions precedent to confirmation of the Plan set forth in Section VIII.A of the Plan have been satisfied or waived in accordance with the terms thereof.

**J. Notice and Transmittal of Solicitation Materials**. The Plan, the Disclosure Statement, the Interim Approval and Procedures Order, the Ballots, the Combined Hearing Notice,

and the other materials distributed by the Debtors in connection with the Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in good faith, in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002 and 3017, the Local Rules, the procedures set forth in the Interim Approval and Procedures Order, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**K. Solicitation of Votes**. The solicitation of acceptances and rejections of the Plan via transmittal of the Interim Approval and Procedures Order and the other materials in the Solicitation Packages was authorized by and complied with the Interim Approval and Procedures Order and was appropriate under the circumstances. The period during which the Debtors solicited acceptances or rejections of the Plan was a reasonable and sufficient period of time for each holder of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

**L. Voting**. On January 21, 2025, the Debtors filed the Voting Declaration with this Court [D.I. 1684] certifying the method and results of the voting on the Plan. As set forth in the Voting Declaration:

i. 100% in amount and 100% in number of the holders of Senior Notes Claims (Class 4) that voted on the Plan by the Voting Deadline voted to accept the Plan; and

ii. 83.88% in amount and 91.16% in number of the holders of General Unsecured Claims (Class 5) that voted on the Plan by the Voting Deadline voted to accept the Plan.

Accordingly, pursuant to the requirements of section 1126 of the Bankruptcy Code, this Court finds that each of Classes 4 and 5 accepted the Plan. As evidenced by the Voting Declaration, no Class entitled to vote on the Plan voted to reject the Plan. As further evidenced by the Voting Declaration, the procedures used to tabulate Ballots were fair and conducted in accordance with

the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Approval and Procedures Order, and any other applicable laws, rules, or regulations.

**M.** **Plan Supplement**. The notice of the filing of the Plan Supplement was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Interim Approval and Procedures Order, and all other applicable rules, laws, and requirements, and no further notice is or shall be required. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan. All instruments and documents included in the Plan Supplement and all other documents necessary or appropriate to implement the Plan are integral to, part of, and incorporated by reference into the Plan.

**N.** **Modification to the Plan**. Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan made prior to the Combined Hearing do not materially or adversely affect or change the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims in the voting Classes be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan attached to this Confirmation Order as **Exhibit 1** is the Plan submitted for Confirmation.

**O.** **Bankruptcy Rule 3016**. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as Plan proponents. The Disclosure Statement and the Plan describe, in specific and conspicuous language, in bold font, all acts to be enjoined and identify the entities that will be subject to the injunction contained in the Plan, thereby satisfying Bankruptcy Rule 3016(c).

**P.** **Burden of Proof**. The Debtors, as the proponents of the Plan, have met their burden of proving all applicable provisions of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation. In addition, to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified (by declaration, proffer, or otherwise) on behalf of the Debtors at the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Q.** **The Plan Complies with Section 1129 of the Bankruptcy Code**.

i. **Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. §§ 1129(a)(1)**. The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

a. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). The Plan designates eight Classes of Claims and Interests, other than Claims of the type described in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code. All Claims and Interests, as applicable, in each Class are substantially similar to the other Claims or Interests, as applicable, in such Class. Valid business, legal, and factual reasons exist for separately classifying the various Claims and Interests under the Plan. The classification was not made for any improper purpose. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b. Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 3 (Prepetition ABL Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies that Class 4 (Senior Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), and Class 8 (Equity Interests) are Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d. No Disparate Treatment (11 U.S.C. § 1123(a)(4)). The Plan provides the same treatment for each Claim or Interest in each Class except to the extent

that a Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

e. Means of Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including, without limitation: (i) general settlement of Claims and Interests; (ii) establishment of the Liquidating Trust and appointment of the Liquidating Trustee to administer the Liquidating Trust; (iii) appointment of the Plan Administrator to administer the Plan; (iv) identification of retained Causes of Action; (v) vesting of the Liquidating Trust Assets in the Liquidating Trust; and (vi) vesting of the Post-Confirmation Debtors Retained Assets in the Post-Confirmation Debtors. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

f. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). Section IV.A of the Plan provides that the organizational documents of the Post-Confirmation Debtors will prohibit the issuance of any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6). Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

g. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Post-Confirmation Debtors will not have any officers or directors. The identity of META Advisors LLC as the Plan Administrator and the Liquidating Trustee is disclosed in the Plan Supplement. The Liquidating Trustee has been selected by the Creditors Committee. The selection of the Liquidating Trustee and the Plan Administrator is consistent with the interests of holders of Claims and public policy. Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

h. Inapplicable Provision. None of the Debtors is an individual. Accordingly, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

i. Additional Plan Provisions (11 U.S.C. § 1123(b)). Other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code and, therefore, consistent with section 1123(b) of the Bankruptcy Code.

1. Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)). Pursuant to the Plan, Classes 4, 5, 6, 7, and 8 are Impaired, while Classes 1, 2, and 3 are Unimpaired under the Plan as contemplated by section 1123(b)(1) of the Bankruptcy Code.

2. Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). The Plan provides that each of the

Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except (i) to the extent otherwise provided in the Plan or in connection with any Asset Sale, (ii) is the subject of a separate motion to assume or assume and assign pending as of the Effective Date, or (iii) previously expired or terminated pursuant to its own terms.

3. Reservation of Causes of Action/Reservation of Rights (11 U.S.C. § 1123(b)(3)). The Plan provides that, in consideration for the distributions, releases, and other benefits provided under the Plan, and with the support of the various stakeholders, including the Committee and the Ad Hoc Group of Senior Noteholders, upon the Effective Date, it will constitute a good faith compromise and settlement of all Claims, Interests, and controversies. The Plan also provides for the retention of certain Causes of Action and their transfer to the Liquidating Trust.

4. Modification of Rights (11 U.S.C. § 1123(b)(5)). The Plan modifies the rights of holders of Claims and Interests, as applicable, in Classes 4, 5, 6, 7, and 8, and leaves unaffected the rights of holders of Claims in Classes 1, 2, and 3.

5. Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)). The Plan's other provisions are appropriate and consistent with the provisions of the Bankruptcy Code, including, but not limited to, provisions for (A) distributions to Holders of Allowed Claims, (B) resolution of Disputed Claims, (C) releases of certain parties by the Debtors, (D) consensual releases by certain parties of certain claims against other parties, (E) exculpations of certain parties, (F) injunctions with respect to certain actions, and (G) retention of jurisdiction by the Court, thereby satisfying the requirements of section 1123(b)(6) of the Bankruptcy Code.

ii. **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019. The Debtors and their agents transmitted the Confirmation Materials and solicited and tabulated votes on the Plan fairly, in good faith, and in compliance with the Interim Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

iii. **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates

for the benefit of all stakeholders and negotiated in good faith and at arm's length among the Debtors and certain of their key stakeholders.

iv. **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

v. **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**. The Debtors have disclosed the identity, affiliation, and compensation of the Liquidating Trustee and the Plan Administrator in the Plan Supplement. The appointment of META Advisors LLC as the Liquidating Trustee and the Plan Administrator is consistent with the interests of creditors, equity security holders and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

vi. **No Rate Changes (11 U.S.C. § 1129(a)(6))**. Section 1129(a)(6) of the Bankruptcy Code is inapplicable because the Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

vii. **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. As evidenced by the liquidation analysis filed at [D.I. 1571] (the "Liquidation Analysis"), each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The Liquidation Analysis (i) utilizes reasonable and appropriate methodologies and assumptions; (ii) has not been controverted by other evidence; and (iii) is reasonable, persuasive, credible, and accurate as of the date such analysis and any supporting evidence were prepared, presented, or proffered. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

viii. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**. Holders of Claims in Classes 1, 2, and 3 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Classes 4 and 5 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, as established by the Voting Declaration. The holders of Claims and Interests in Classes 6, 7, and 8 are Impaired and deemed to have rejected the Plan. However, as set forth below, the Plan may be confirmed notwithstanding that deemed rejection pursuant to section 1129(b)(1) of the Bankruptcy Code.

ix. **Treatment of Administrative Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))**. The treatment of Administrative Claims, Fee Claims, Priority Tax Claims, and Other Priority Claims under the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

x. **Acceptance By at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))**. As evidenced by the Voting Declaration, Classes 4 and 5 voted to accept the Plan at each Debtor (without including acceptances of the Plan by any insider). As such, there is at least one Impaired Class of Claims that has accepted the Plan and, therefore, section 1129(a)(10) of the Bankruptcy Code has been satisfied.

xi. **Feasibility (11 U.S.C. § 1129(a)(11))**. The Plan provides for an orderly wind down and liquidation of the Debtors' Estates, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

xii. **Payment of Fees (11 U.S.C. § 1129(a)(12))**. The Plan provides that all statutory fees have been or will be paid on the Effective Date and thereafter as may be required, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

xiii. **Non-Applicability of Certain Sections (11 U.S.C. § 1129(a)(13), (14), (15), and (16))**. Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors do not maintain any retirement benefits as defined in section 1114 of the Bankruptcy Code, owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**R.** **Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b))**. The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Classes 6, 7, and 8 (the "Rejecting Classes"). The Plan does not discriminate unfairly with respect to the Rejecting Classes because there are no similarly situated holders of Claims or Interests under the Plan. The Plan is "fair and equitable" with respect to the Rejecting Classes because (i) there are no Claims or Interests that are junior to the Claims and Interests in the Rejecting Classes that will receive or retain any property under the Plan on account of such Claims or Interests; and (ii) no Claims or Interests senior to the Claims or Interests, as applicable, in the Rejecting Classes will

recover more than of 100% of the Allowed amount of their respective Claims or Interests. Thus, the Plan may be confirmed notwithstanding the Rejecting Classes.

**S.** **Only One Plan (11 U.S.C. § 1129(c))**. The Plan is the only plan that will be confirmed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

**T.** **Principal Purpose of Plan (11 U.S.C. § 1129(d))**. No governmental entity has objected to confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended. Therefore, the Plan complies with section 1129(d) of the Bankruptcy Code.

**U.** **Not Small Business Cases (11 U.S.C. § 1129(e))**. The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply.

**V.** **Satisfaction of Confirmation Requirements**. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**W.** **Likelihood of Satisfaction of Conditions Precedent to the Effective Date**. Each condition precedent to the Effective Date set forth in Section VIII.B of the Plan has been or is reasonably likely to be satisfied or waived in accordance with Section VIII.C of the Plan.

**X.** **Good Faith of Exculpated Parties**. The Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, therefore, on account of such activities shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance of rejections of the Plan.

**Y.** **Implementation**. All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and, upon completion, execution, and delivery (where applicable) shall be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. Such documents and agreements are essential elements of the Plan, and entry into, and performance of the transactions contemplated by, each such document or agreement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into such documents and agreements. The Debtors, the Post-Confirmation Debtors, and the Liquidating Trust, as applicable, are authorized to take any action reasonably necessary or appropriate to implement, effectuate and consummate the Plan, the documents and agreements necessary to implement the Plan, this Order and the transactions contemplated thereby or hereby, including performance under the Liquidating Trust Agreement.

**Z.** **Executory Contracts**. The Debtors have exercised sound business judgment in determining whether to reject, assume, or assume and assign each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code and the Plan satisfies the requirements of all applicable provisions of sections 365 and 1123(b)(2) of the Bankruptcy Code. The assumption, assumption and assignment, or rejection of Executory Contract and Unexpired Lease pursuant to Section V of the Plan shall be legal, valid, and binding upon the Debtors, the Post-Confirmation Debtors, the Plan Administrator, all non-Debtor parties to such Executory Contracts and Unexpired Leases, and the respective successors and assigns of all the foregoing.

**AA. <u>Exculpation, Releases, and Injunction Provisions</u>**. This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in <u>Section X</u> of the Plan. Sections 105(a) and 1123(b) of the Bankruptcy Code permit the issuance of the injunctions and the approval of the exculpations and releases set forth in <u>Section X</u> of the Plan. Based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Combined Hearing, this Court finds that the exculpation, releases, and injunction set forth in <u>Section X</u> of the Plan are consistent with the Bankruptcy Code and applicable law. Further, the exculpation, releases, and injunction set forth in <u>Section X</u> of the Plan are integral components of the Plan.

**BB. <u>Exculpation</u>**. The exculpation provision set forth in <u>Section X.A</u> of the Plan is appropriate and complies with applicable law because it (i) was proposed in good faith, (ii) is appropriately tailored and reasonable in scope, and (iii) is essential to the Plan. The exculpation granted under the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is the result of fraud, gross negligence, or willful misconduct. The record in the Chapter 11 Cases fully supports the exculpation provision.

**CC. <u>Debtor Release</u>**. The release by the Debtors set forth in <u>Section X.B.1</u> of the Plan (the "<u>Debtor Release</u>") represents a sound exercise of the Debtors' business judgment, is fair, reasonable, and in the best interests of the estates, based on significant contribution, concessions, and compromises made by the Released Parties in the process of formulating and supporting the Plan, and is appropriate under the circumstances.

**DD. <u>Release by Holders of Claims or Interests</u>**. The release by Holders of Claims and Interests (the "<u>Third-Party Release</u>") set forth in <u>Section X.B.2</u> of the Plan is an essential provision of the Plan. The Third-Party Release was conspicuously disclosed in boldface type in the

Disclosure Statement, the Plan, and on the Ballots, providing the affected parties with sufficient notice of both the opportunity to opt out of granting such release and of the consequences of granting such release. The Third-Party Release provided in the Plan is consensual.

**EE.** **Injunction**. The injunction provision set forth in Section X.C of the Plan: (i) implements the exculpation, the Debtor Release, and the Third-Party Release, (ii) is within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (iii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the Plan and the transactions incorporated into the Plan; (iv) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and their creditors; and (v) is consistent with the provisions of the Bankruptcy Code and other applicable law. The injunction provision is necessary to preserve the authority of the Post-Confirmation Debtors and the Plan Administrator, as applicable, to pursue retained Causes of Action and to enforce the terms of the Plan.

**FF.** **Retention of Jurisdiction**. It is appropriate for this Court to retain jurisdiction over all matters arising in, or related to, the Chapter 11 Cases and the Plan, including the matters set forth in Section XI of the Plan and section 1142 of the Bankruptcy Code.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1. **Approval of Disclosure Statement**. The Disclosure Statement is approved on a final basis pursuant to section 1125 of the Bankruptcy Code as containing adequate information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations. Any and all objections to the approval of the Disclosure Statement that have

not been withdrawn or resolved prior to the Combined Hearing are hereby overruled on the merits, for the reasons set forth on the record at the Combined Hearing, which record is hereby fully incorporated herein by reference.

2. **Confirmation of the Plan**. The Plan, including (i) all modifications to the Plan filed with the Court prior to or during the Combined Hearing and (ii) all documents incorporated into the Plan through the Plan Supplement, is confirmed pursuant to section 1129 of the Bankruptcy Code. The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all documents referred to therein, whether or not included in the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are hereby approved and authorized. The Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including without limitation any agreements contained in the Plan Supplement, as each may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of the Plan shall be effective and binding as of the Effective Date. All terms of the Plan and the documents contained in the Plan Supplement are incorporated herein by reference and constitute an integral part of this Confirmation Order. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

3. **Objections Overruled**. Any and all objections to the Plan that have not been withdrawn or resolved prior to the Combined Hearing are hereby overruled on the merits, for the reasons set forth on the record at the Combined Hearing, which record is hereby fully incorporated herein by reference. All withdrawn objections, if any, have been withdrawn with prejudice. All objections to Confirmation not filed and served prior to the applicable deadline, if any, are deemed waived and shall not be considered by the Court.

4. **Binding Effect**. Subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim and Interest and their respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

5. **Deemed Acceptance of the Plan as Modified**. All changes, amendments, alterations and modifications to the Plan made prior to the Combined Hearing are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to accept the Plan, as altered, amended or modified prior to the Combined Hearing.

6. **Deemed Consolidation**. The Plan will not cause the substantive consolidation of any of the Debtors or their Estates, provided, however, that for the purposes of voting on the Plan and Distributions under the Plan, the Estates shall be deemed merged and consolidated, so that a Holder of a Claim that may be asserted against more than one Debtor shall be entitled to a single Distribution as if such Holder had a single Claim against the consolidated Estates. On the Effective Date: (1) all General Unsecured Claim guaranties by a Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished so that (i) any General Unsecured Claim

against a Debtor and any guarantee of such General Unsecured Claim executed by any other Debtor and (ii) any General Unsecured Claim on which more than one Debtor is jointly or severally liable, as the case may be, shall be deemed to be one obligation; and (2) each and every General Unsecured Claim filed or Allowed in any of the Chapter 11 Cases shall be treated as filed against the consolidated Debtors and shall be treated as one General Unsecured Claim against, and obligation of, Number Holdings, Inc.

7. **Organizational Transactions**. All of the transactions contemplated by the Plan and the Plan Supplement are hereby approved. The entry of this Confirmation Order shall constitute authorization for the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation. On the Effective Date, the Plan Administrator, the Liquidating Trustee, and the Post-Confirmation Debtors, as applicable, are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors, Post-Confirmation Debtors, or the Liquidating Trust, as applicable.

8. Except as otherwise provided in the Plan, on the Effective Date, each Debtor other than the Post-Confirmation Debtors shall be dissolved, consolidated, or merged out of existence without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, except to the

extent that the Plan Administrator determines, in its discretion, that the filing of a certificate of dissolution with the appropriate governmental authorities is required or warranted under the circumstances.

9. Each Post-Confirmation Debtor shall continue to exist after the Effective Date, as a separate legal Entity. Each Post-Confirmation Debtor shall have the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable laws of the jurisdiction in which such Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect on the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or this Confirmation Order.

10. **Plan Administrator**. The Plan Administrator shall have all the rights, powers, and duties necessary to carry out its responsibilities under the Plan, and as otherwise provided in this Confirmation Order. On and after the Effective Date, the Plan Administrator shall act for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Court approval. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Confirmation Debtors. In accordance with Section IV.B of the Plan, the powers of the Plan Administrator shall include any and all powers and authority to administer the Post-Confirmation Debtors' Retained Assets and to implement the Plan and wind down the businesses and affairs of the Post-Confirmation Debtors in accordance with the Plan, without the need for further Court approval.

11. **Plan Administrator Indemnity**. To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, none of the Plan Administrator, its affiliates and agents, or any of its respective officers, directors, agents, and employees shall be personally liable to any Entity for actions taken under or pursuant to the Plan or this Confirmation Order, except to the extent that its, his or her own act constitutes gross negligence, actual fraud or willful misconduct. To the fullest extent permitted by applicable law, rule, regulation, or tenets of professional responsibility, the Post-Confirmation Debtors shall indemnify and hold harmless (i) the Plan Administrator (in its capacity as such and as sole officer, director and/or manager of the Post-Confirmation Debtors), and (ii) the professionals retained by the Post-Confirmation Debtors (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including the costs and expenses of investigating, analyzing and responding to claims, other than acts or omissions resulting from such Indemnified Party's own gross negligence, actual fraud or willful misconduct.

12. **Plan Implementation**. Pursuant to, and in accordance with sections 1123(a)(5)(D) and 1142 of the Bankruptcy Code, without any further order of this Court or other authority, immediately upon entry of this Confirmation Order, the Debtors, the Post-Confirmation Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, are authorized to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, this Confirmation Order, and any transactions contemplated thereby or hereby. All such actions taken or caused to be taken consistent with the terms of this Confirmation Order and the Plan shall be deemed to have been authorized and approved by this Court without further approval, act or action under any applicable law, order, rule, or regulation.

13. **Supplemental Claims Bar Date**. Unless previously filed or as otherwise governed by any order of the Court, requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) that accrued between June 1, 2024, and the Effective Date must be filed and served on the Notice Parties no later than the Supplemental Claims Bar Date. Holders of Administrative Claims that are required to file and serve a request for payment and that do not timely file and serve such a request shall be forever barred from asserting such Administrative Claims, and such Administrative Claims shall be automatically disallowed as of the Effective Date; *provided* that a notice of such disallowance shall be filed and served on the Holder of the applicable Claim who has filed such request on an untimely basis. Objections to requests for payment of Administrative Claims (other than Fee Claims, Notes Settlement Expenses, and Senior Notes Agent Fees) must be filed and served on the Notice Parties and the requesting party no later than the Claims Objection Bar Date. Holders of 503(b)(9) Claims shall continue to be subject to the Claims Bar Date.

14. **Professional Fees**. Professionals shall deliver estimates of their unpaid Fee Claims to the Debtors and the Committee no later than five days before the Effective Date. Any such estimate shall not be deemed, however, to limit the amount of the fees and expenses that will be the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. On or before the Effective Date, the Debtors shall establish the Professional Fee Reserve and shall fund the Professional Fee Reserve with Cash equal to the aggregate of the estimated Fee Claims and other Professional fees and expenses. The Professional Fee Reserve and the funds therein shall be used for the sole purpose of paying the accrued and unpaid Allowed Fee Claims and other Professional fees and expenses. For the avoidance of doubt,

such funds shall not constitute property of the Debtors, their Estates, the Post-Confirmation Debtors, or the Liquidating Trust; *provided* that the Liquidating Trust shall hold a residual interest in the Professional Fee Reserve and upon satisfaction of all Allowed Fee Claims and other Professional fees and expenses, any funds remaining in the Professional Fee Reserve shall be transferred to the Liquidating Trust.

15. Subject to Section II.A.1.e of the Plan, Allowed Fee Claims shall be satisfied first from any remaining retainer held by any Professionals and, once such retainer is exhausted, from the Professional Fee Reserve. If the amount in the Professional Fee Reserve is insufficient to fund payment in full of all Allowed Fee Claims, the deficiency shall be promptly funded by the Liquidating Trust without any further action or order of the Court.

16. Following the Effective Date, the Professionals retained by the Debtors shall not be required to render any services or incur any expenses on behalf of the Post-Confirmation Debtors, except to the extent that such fees and/or expenses are satisfied from the Wind-Down Reserve or otherwise funded or provided for by the Liquidating Trust; *provided* that the Professionals retained by the Debtors may incur fees and/or expenses after the Effective Date to prepare, file and, if necessary, litigate final applications for compensation and any such fees and/or expenses shall be satisfied from the Professional Fee Reserve and/or the Wind-Down Reserve to the extent necessary.

17. Professionals asserting Fee Claims for services rendered before the Effective Date must file and serve on the Notice Parties an application for final allowance of such Fee Claims no later than twenty-five (25) days after the Effective Date. Professionals shall also serve any such application on such other Entities as are designated by the Bankruptcy Rules or any order establishing procedures for compensation and reimbursement of expenses of Professionals entered

by the Bankruptcy Court (including, but not limited to, the Creditors' Committee). Any Professional whose compensation or reimbursement of expenses is authorized pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval. Objections to any Fee Claim must be filed and served on the Notice Parties, and the requesting party not later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days after the filing of the applicable fee application or such other period of limitation as may be established by a Final Order for objecting to such Fee Claim. Any provision in the Interim Compensation Order requiring Professionals to file an interim fee application shall be waived.

18. **Notes Settlement Costs**. To the extent that any Notes Settlement Expenses or Senior Notes Agent Fees remain unpaid as of the Business Day prior to the Effective Date, the Plan Administrator shall pay such outstanding and invoiced Notes Settlement Expenses and Senior Notes Agent Fees, in full in Cash, on the Effective Date. Any Notes Settlement Expenses or Senior Notes Agent Fees invoiced after the Effective Date shall be paid promptly, but no later than two (2) Business Days after any applicable objection deadline pursuant to the Notes Settlement has passed.

19. **Statutory Fees**. All quarterly fees payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date. On and after the Effective Date, the Liquidating Trust and the Plan Administrator shall be responsible for filing post-Confirmation quarterly reports. Each Debtor, Post-Confirmation Debtor, the Liquidating Trust, and the Plan Administrator shall be jointly liable for the payment of all applicable U.S. Trustee fees in each Debtor's chapter 11 case until (i) the entry

of a final decree in such case or (ii) such case is closed or dismissed. Notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, to the extent the chapter 11 case of any Debtor is closed and the Liquidating Trust continues to operate, the Liquidating Trustee shall continue to file post-Confirmation quarterly reports in each open case until such time as the Liquidating Trust ceases to exist; *provided* that, for the avoidance of doubt, and consistent with the U.S. Trustee's Operating Guidelines for Chapter 11 Cases, to the extent a Debtor's chapter 11 case is closed, no further quarterly U.S. Trustee fees shall be due and payable by the Liquidating Trust of the Debtors for such case.

20. **Liquidating Trust**. In accordance with Section IV.C.1 of the Plan, on the Effective Date, the Liquidating Trust shall be established, and the Debtors shall irrevocably transfer, and shall be deemed to have irrevocably transferred, all of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan (except for any Post-Confirmation Debtors' Retained Assets, which shall vest in, and remain the assets of, the applicable Post-Confirmation Debtor) which Liquidating Trust Assets shall automatically vest in the Liquidating Trust, free and clear of all Liens, Claims, Interests, charges, rights, or other encumbrances subject to and in accordance with the Plan.

21. The Liquidating Trust, acting by and through the Liquidating Trustee, shall be the exclusive administrator of the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4), as well as a party in interest under section 1109(b) of the Bankruptcy Code and representative of the Estates under section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of administering the Liquidating Trust Assets (including, but not limited to, Causes of Action) and carrying out the Liquidating Trust's duties under the Liquidating Trust Agreement to the extent set forth in the Plan. After the Effective Date, neither the Debtors nor the Post-

Confirmation Debtors shall have any interest in the Liquidating Trust Assets except as set forth in the Plan, this Confirmation Order, or the Liquidating Trust Agreement.

22. **Liquidating Trust Expenses**. The Liquidating Trust Expenses shall be paid from the Liquidating Trust Assets in accordance with the Plan and Liquidating Trust Agreement. The Liquidating Trustee may employ, on behalf of the Liquidating Trust, without further order of the Court, professionals to assist in carrying out its duties under the Plan and the Liquidating Trust Agreement and may compensate and reimburse the reasonable expenses of these professionals without further order of the Court from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement. For the avoidance of doubt, the Liquidating Trust must satisfy or reserve for all Liquidating Trust Expenses before Distributions on account of Allowed Claims may be made.

23. **Dissolution of the Liquidating Trust**. The Liquidating Trust shall be dissolved and the Liquidating Trustee shall be discharged at such time as the Liquidating Trustee determines all distributions required to be made by the Liquidating Trust under the Plan have been made. In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless such term is extended by an order of the Court. Subject to Section IV.C.6 of the Plan, upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with the Plan and Liquidating Trust Agreement.

24. **Preservation of Causes of Action**. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that the Debtors or the Estates may hold against any Entity to the extent not released under Section IX.B

of the Plan or otherwise, including the Avoidance Actions, and all Privilege Rights with respect to any of the foregoing, are Liquidating Trust Assets that shall automatically vest in the Liquidating Trust on the Effective Date. Acting by and through the Liquidating Trustee in its sole discretion, the Liquidating Trust, shall be the representative appointed by the Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to such Causes of Action and may pursue, settle or decline to pursue any such Causes of Action in accordance with the best interests of the Liquidating Trust Beneficiaries. The inclusion or failure to include any Cause of Action in the schedule of retained Causes of Action in the Plan Supplement shall not be deemed an admission, denial or waiver of any claims, rights or Causes of Action that any Debtor or Estate may have against any Entity.

25. **Insurance Matters**. On the Effective Date, provided that the Debtors have paid all applicable premiums, the Insurance Contracts shall continue in full force and effect without any action by an Entity or further order of the Court so as to continue to provide coverage in accordance with their respective terms. None of the Liquidating Trustee, the Post-Confirmation Debtors or the Plan Administrator shall terminate or otherwise reduce the coverage under any fully paid or prepaid D&O Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto. All current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Insurance Policies, which shall not be altered. For the avoidance of doubt: (i) confirmation of the Plan shall not discharge, impair, or

otherwise modify any indemnity obligations under the D&O Insurance Policies and (ii) the Post-Confirmation Debtors shall retain the ability to supplement the debtors' D&O Insurance Policies as the Plan Administrator may deem necessary.

26. The automatic stay of section 362(a) of the Bankruptcy Code and any injunctions set forth in the Plan shall be deemed lifted, solely against the applicable insurer, without further order of the Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against insurers under applicable non-bankruptcy law to proceed with their claims; (ii) insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against an insurer under applicable non-bankruptcy law, or an order has been entered by the Court granting a claimant relief from the automatic stay or the injunctions set forth in the Plan to proceed with its claim, and (c) all costs in relation to each of the foregoing; and (iii) insurers to take any other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment).

27. **Personal Injury Claimants**. Nothing herein or in the Plan (including the Plan Injunction), shall modify any order granting stay relief to a personal injury claimant.

28. **Release of Preference Claims**. The Debtors release and discharge all Avoidance Actions of the Debtors under section 547 of the Bankruptcy Code.

29. **Vesting of Assets**. On the Effective Date, (i) the Liquidating Trust Assets shall vest in the Liquidating Trust and (ii) the Post-Confirmation Debtors Retained Assets shall vest or re-vest in the Post-Confirmation Debtors, in each case, free and clear of all Liens, Claims, Interests, charges, or other encumbrances except as otherwise provided in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Liquidating Trust, acting by and

through the Liquidating Trustee, and the Post-Confirmation Debtors, by and through the Plan Administrator, may liquidate or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

30. **Cancellation and Surrender of Documents, Instruments and Securities**. Except as provided in the Plan, the Plan Supplement, or this Confirmation Order, or any contract, instrument or other agreement or document entered into or delivered in connection with the Plan or the Asset Sales, and, subject to receipt of the applicable Distributions pursuant to Section II of the Plan, on the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan, all notes, bonds, indentures (including, without limitation, the Senior Notes Documents), agreements, instruments, certificates, securities and other documents evidencing (directly or indirectly) Claims or Interests shall be deemed satisfied in full, canceled, discharged, and surrendered and of no further force and effect against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator without any further action on the part of the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Senior Notes Agent, or the Plan Administrator; *provided, however*, that notwithstanding the occurrence of the Effective Date, the Senior Notes Documents shall continue in effect solely for the purposes of (a) to the extent not previously paid, allowing holders of Senior Notes Claims to receive and accept their respective distributions under the Plan on account of such Senior Notes Claims, subject to the Senior Notes Agent Charging Lien; and (b) allowing and preserving the rights of the Senior Notes Agent to (1) assert or maintain any rights the Senior Notes Agent may have against any money or property distributable or allocable to holders of Senior Notes Claims, including, without limitation, the

Senior Notes Agent Charging Lien; (2) receive compensation or reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation, consummation, and defense of this Plan, the Plan Supplement, or Confirmation Order; (3) preserve, maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or subrogation, or any other claim or entitlement that the Senior Notes Agent may have under the Plan, the Plan Supplement, this Confirmation Order, the Senior Notes Documents, or any other related agreement; (4) preserve the rights of the Senior Notes Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including, without limitation, to enforce any right or obligation owed to the Senior Notes Agent or Holders of Senior Notes Claims under the Plan, the Plan Supplement, this Confirmation Order, or other documents incorporated therein; and (5) execute documents pursuant to Section IV.K of the Plan. Holders of or parties to such cancelled instruments, notes, and other documentation will have no rights arising from or relating to such instruments, notes, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan, the Plan Supplement, or the Confirmation Order, or as may be necessary to effectuate the terms of the Plan. On the Effective Date, the Senior Notes Agent and its agents, successors, and assigns shall be automatically and fully discharged and released of all of their duties, responsibilities, and obligations associated with the Senior Notes Documents. On and after the Effective Date, (i) the Senior Notes shall be deemed to be null, void, and worthless, and (ii) at the request of the Senior Notes Agent, DTC shall take down the relevant positions relating to the Senior Notes without any requirement of indemnification or security on the part of the Debtors, the Post-Confirmation Debtors, or the Senior Notes Agent.

31. **Release of Liens**. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan and subject to receipt of the applicable Distributions, on the Effective Date, all Liens on the property of any Estate shall be fully released and discharged.

32. Following the Effective Date and the indefeasible payment in full in Cash of all Senior Notes Agent Fees, the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable, may, in their sole discretion and at their sole expense, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the Senior Notes Claims, including, without limitation, the preparation and filing, in form, substance, and content reasonably acceptable to the Senior Notes Agent, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Senior Notes Agent (including, without limitation, UCC-3 termination statements), and the Senior Notes Agent shall execute and deliver all such documents reasonably requested by the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, or the Plan Administrator, as applicable.

33. **Dissolution of the Boards of the Debtors or Managers**. On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have terminated, and the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned. Following such terminations and resignations, the Plan Administrator shall be the sole manager and sole officer of the Post-Confirmation Debtors, and shall succeed to the powers of the respective Debtors' managers, directors, and officers.

34. **Closing of the Chapter 11 Cases**. On or after the Effective Date, the Plan Administrator or Liquidating Trustee shall be authorized to file a motion requesting entry of one or more orders closing any of the Chapter 11 Cases. Such motion may be heard by the Court on fourteen (14) days' notice to the U.S. Trustee and all other parties entitled to notice under Local Bankruptcy Rule 2002-1(b). Upon administering the Plan in full, either the Plan Administrator or the Liquidating Trustee may seek authority from the Court to close the case of Number Holdings, Inc. in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the requirements set forth in Local Rule 3022-1.

35. **Executory Contracts and Unexpired Leases**. Each of the Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Court shall be deemed rejected as of the Effective Date, except (i) to the extent otherwise provided in the Plan or in connection with any Asset Sale, (ii) to the extent such Executory Contracts and Unexpired Lease is the subject of a separate motion to assume or assume and assign pending as of the Effective Date, or (iii) to the extent such Executory Contract or Unexpired Lease previously expired or terminated pursuant to its own terms. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Claims and Noticing Agent by the Supplemental Claims Bar Date. Any Claims arising from the rejection of any Executory Contracts and Unexpired Leases that are not timely filed or is otherwise permitted to be late-filed by a Final Order shall be automatically disallowed, without the need for any objection or further notice to or action or approval of the Court. Rejection of Executory Contracts and Unexpired Leases, as set forth in Section V of the Plan, is hereby authorized and entry of this Confirmation Order shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

36. **Exculpation, Releases, Injunction and Related Provisions**. The exculpation, releases, injunction and related provisions set forth in Section X are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party. The exculpation, releases, and injunction provisions are set for in full below:

**a. Exculpation**

37. **From the Petition Date through the Effective Date, the Exculpated Parties[4] shall neither have nor incur any liability to any Entity. No Holder of a Claim or Interest, no other party in interest and none of their respective Representatives shall have any right of action against any Exculpated Party for any act taken or omitted to be taken from the Petition Date through the Effective Date in connection with, related to or arising out of the Debtors' chapter 11 cases, the Debtors, the Estates, the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, or any other transactions proposed or consummated in connection with these cases or the Plan, any Distributions made under or in connection with the Plan or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of Section X.A of the Plan shall have no effect, however, on: (i) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; and (ii) the liability of any Exculpated Party that is the result of any act or omission of such Exculpated Party or its Representative that is determined by a Final Order to have constituted gross negligence, fraud or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.**

**b. Release by the Debtors**

38. **Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permitted by law, the Debtors, on behalf of themselves, their Estates, their respective Representatives and any and all persons and Entities who may purport to claim by, through, for, or because of them, shall forever and irrevocably release, waive and**

---

[4] "Exculpated Parties" means, collectively and individually, (a) the Debtors, (b) the Creditors' Committee and its members, and (c) the Debtors' directors, managers, and officers (who served in such capacity during the period between the Petition Date and the Effective Date), (d) the Professionals retained by the Debtors in the Chapter 11 Cases solely in their capacities as such, except for those retained pursuant to the Ordinary Course Professionals Order, and (e) the professionals retained by the Committee, solely in their respective capacities as such.

**discharge all claims and Causes of Action that they have, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transactions proposed or consummated in connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement, and any other transaction implemented pursuant to or consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed hereunder. The foregoing provisions of <u>Section X.B.1</u> of the Plan shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, fraud or willful misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.**

**c. Release by Holders of Claims.**

39. **Without limiting any other applicable provisions of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the services of the Released Parties[5] to facilitate the resolution of these cases, to the fullest extent permitted by law, each (i) Holder of a Claim that returns a Ballot in accordance with the instructions set forth thereon or enters into a settlement with the Debtors with respect to their Claim and its treatment under the Plan, and does not opt-out of the release contained in <u>Section X.B.2</u> of the Plan by checking the opt-out box on the Ballot indicating that such Holder opts not to grant the releases provided in the Plan and (ii) Releasing Party,[6] shall be deemed to forever and irrevocably release, waive and discharge all claims or causes of action that such Holder has, had or may have against any Released Party based on or relating to, or in any manner arising from, in whole or in part, any of the Debtors, the Estates, the Debtors' chapter 11 cases, or the negotiation, consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Plan, the Disclosure Statement, or any other transaction proposed or consummated connection with these cases, including the Plan, the Disclosure Statement, the DIP Agreement, the Final DIP Order, the Asset Sales, the Sale Order, the Notes Settlement and any other transaction implemented**

---

[5] "<u>Released Parties</u>" means, collectively and individually, and, in each case, solely in their capacity as such, means: (a) the Debtors; (b) the Estates, (c) the Creditors' Committee and its members, (d) the DIP Agent and the DIP Lenders, (e) the Prepetition ABL Agent and the Prepetition Lenders, (f) the Prepetition FILO Agent, (g) the Senior Notes Agent, (h) Holders of the Senior Notes, (i) all Holders of Claims who grant the releases provided by the Plan, and (j) the Representatives of each of the parties enumerated in the preceding clauses (a)-(i); <u>provided</u> that any Entity that objects to the releases provided by the Plan and any of such Entity's Representatives shall not be a Released Party.

[6] "<u>Releasing Parties</u>" means, collectively and individually, and, in each case, solely in their capacity as such: (a) the Estates, (b) the Creditors' Committee and its members, (c) the DIP Agent and the DIP Lenders, (d) the Prepetition ABL Agent and the Prepetition Lenders, (e) the Prepetition FILO Agent, (f) the Senior Notes Agent, (g) the members of the Ad Hoc Group of Senior Noteholders, and (h) the Representatives of each of the parties enumerated in the preceding clauses (a)-(g).

**pursuant to or consistent with the foregoing, any Distributions, any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken in connection with the Plan or the obligations assumed thereunder. The foregoing provisions of Section X.B.2 of the Plan shall not affect: (a) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, fraud or willful misconduct; or (b) any rights to enforce the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan.**

**Nothing in the Plan discharges, releases, precludes, or enjoins: (a) any liability to any governmental unit that is not a Claim; (b) any Claim of a governmental unit arising after the Effective Date; (iii) any police or regulatory liability to a governmental unit on the part of any Entity as the owner or operator of property after the Effective Date; or (iv) any liability to a governmental unit on the part of any Entity other than the Debtors. Nothing in the Plan shall enjoin or otherwise bar a governmental unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in the Plan divests any tribunal of any jurisdiction it may have to adjudicate any defense based on this Plan provision.**

**d. Injunction.**

40. **Upon entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective Representatives, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.**

**Except as expressly provided in the Plan, this Confirmation Order, or another Final Order of the Bankruptcy Court or as agreed to by the Debtors, the Post-Confirmation Debtors, and/or the Liquidating Trust, and a holder of a Claim or Interest, all Persons and Entities who have held, hold, or may hold Claims, Interests, or causes of action that have been released, discharged, or are subject to exculpation pursuant Section X of the Plan (the "Released and Exculpated Claims") are permanently enjoined, on and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Debtors, the Exculpated Parties, the Released Parties, and/or the Plan Administrator: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of or in connection with or respect to any such Claims, Interests, or causes of action; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of or in connection with or respect to any such Claims, Interests, or causes of action; (iv) asserting any right of setoff (except to the extent exercised prepetition), directly or indirectly, against any obligation due from the Debtors, the Liquidating Trust or the Post-Confirmation Debtors, or against property or interests in property of any of the Debtors, Liquidating Trust, or the Post-Confirmation Debtors except as contemplated or**

**allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**The benefit of the injunctions in Section X.C of the Plan shall extend to any successors of the Released Parties, and their respective property and interests in property.**

41. **Effect of Confirmation Order on Prior Orders**. Unless expressly provided for herein or in the Plan, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases.

42. **Dissolution of the Committee**. Except to the extent provided in the Plan, upon the Effective Date: (i) the Committee shall be dissolved; (ii) the current and former members of the Committee and their respective Representatives shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases; and (iii) the Professionals retained by the Committee will not be entitled to assert Fee Claims for any services rendered or expenses incurred after the Effective Date in their capacity as Professionals for the Committee, except to the extent necessary to: (a) prepare, File and, if necessary, litigate final applications for compensation; (b) object to final fee applications filed by other Professionals; and (c) appear and be heard in connection with any appeal of this Confirmation Order.

43. **Inconsistency**. In the event of any inconsistency among the Plan, the Disclosure Statement or any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and any document or agreement filed as part of the Plan Supplement (including, but not limited to, the Liquidating Trust Agreement), such document or agreement shall control. In the event of any inconsistency between the Plan or any document or agreement filed in the Plan Supplement and this Confirmation Order, this Confirmation Order shall control.

44. **Document Retention**. On and after the Effective Date, the Post-Confirmation Debtors or Liquidating Trust, as applicable, is permitted to either: (i) maintain documents in accordance with the Debtors' existing document retention policy, as it may be altered, amended, modified, or supplemented by the Post-Confirmation Debtors or the Liquidating Trustee, as applicable; or (ii) abandon such documents, as determined by the Plan Administrator or the Liquidating Trustee, as applicable, in its reasonable discretion, and the Post-Confirmation Debtors and the Liquidating Trust shall have no liability for abandoning such documents. The Voting Agent is authorized to destroy all paper/hardcopy records related to the Chapter 11 Cases one (1) year after the Effective Date.

45. **Documents, Mortgages, and Instruments**. This Confirmation Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments to effectuate, implement, and consummate the transaction contemplated by the Plan and this Confirmation Order (all such entities being referred to as "Recording Officers"). All Recording Officers are hereby authorized to accept for filing any and all documents and instruments necessary, advisable or appropriate to consummate the transactions contemplated by the Plan and this Confirmation Order subject to the payment of any filing or other fee imposed under non-bankruptcy law.

46. **Plan Settlements**. The settlements reflected in the Plan and each of the terms thereof are approved pursuant to Bankruptcy Rule 9019 as fair, prudent and reasonable

compromises of the controversies, Causes of Action or Claims, as applicable, resolved by such settlements and are binding upon all Entities affected thereby and all creditors of these Estates and parties in interest in the Chapter 11 Cases.

47. **Applicable Non-Bankruptcy Law**. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

48. **Designated Landlords**. Notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any of Bearwood Partners, LLC; Buckingham Plaza Limited Partnership; Dart Warehouse Corporation; Lake Forest Marketplace, LLC; NMC Santa Ana, LLC, Ginsborg Boys, LLC and Bristol Chino II, LLC, as tenants in common; and Upside Crenshaw Holding, LLC (each, a "Designated Landlord") in their capacities as a counterparty to an Unexpired Lease of real property to assert any right of setoff or recoupment that such Designated Landlord may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) assertion of setoff or recoupment with respect to any security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors, or any successors to the Debtors, under the Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Post-Effective Date Debtors, or any successors of the Debtors.

49. **Dollar Tree**. In complete, full and final satisfaction of any and all claims or causes of action (including, but not limited to, the payment of Carrying Costs (as such term is defined in the applicable asset purchase agreements) as provided for in Section 10.4(a) of the applicable asset

purchase agreements) previously, now or hereafter arising under (i) that certain Asset Purchase Agreement, dated as of May 9, 2024, by and among, on one hand, Dollar Tree Stores, Inc., and, on the other hand, 99 Cents Only Stores LLC and 99 Cents Only Stores Texas, Inc. and (ii) that certain Asset Purchase Agreement, dated as of May 24, 2024, by and among, on one hand, Dollar Tree Stores, Inc., and, on the other hand, 99 Cents Only Stores LLC and 99 Cents Only Stores Texas, Inc., Dollar Tree Stores, Inc. shall make a one-time payment of $2,500,000.00 to the Debtors by wire transfer or ACH payment within two (2) business days of entry of this Confirmation Order.

50. **Texas Taxing Authorities**. Any Allowed Secured Tax Claims for the 2023 tax year or prior, and any 2024 Secured Tax Claims of the Texas Taxing Authorities[7] that were not assumed pursuant to an applicable Sale Order and are due and owing (the "Texas Tax Claims") shall be paid in full within ten days after the Effective Date, including all accrued interest properly charged under applicable non-bankruptcy law through the date of payment. The Texas Taxing Authorities shall retain their liens on property or any proceeds from the sale of such property of the Debtors, including the Texas Tax Reserve established pursuant to the Final DIP Order, until

[7] The "Texas Taxing Authorities" include all entities represented by Perdue Brandon Fielder Collins & Mott LLP, McCreary Veselka Bragg & Allen, P.C., and Linebarger Goggan Blair & Sampson LLP, including but not limited to Carrollton-Farmers Branch Independent School District, City of Garland, Garland Independent School District, Richardson Independent School District, City of Colleyville, Grapevine-Colleyville Independent School District, Alief Independent School District, City of Houston (where represented by Perdue), Harris County MUD #170, Harris County Utility District #6, West Memorial MUD, Hobby Area District, Pasadena Independent School District, Galena Park Independent School District, Klein Independent School District, Fountainhead MUD, Klein Independent School District, Harris County WCID #133, Humble Independent School District, Harris County MUD #132, City of Rosenberg, Bexar County, Cameron County, Cypress-Fairbanks Independent School District, Dallas County, City of El Paso, Fort Bend County, Harris County Emergency Service District #01, Harris County Emergency Service District #09, Harris County Emergency Service District #11, Harris County Emergency Service District #12, Harris County Emergency Service District #20, Harris County Emergency Service District #25, Harris County Emergency Service District #29, Harris County Emergency Service District #46, Harris County Emergency Service District #48, Hidalgo County, City of Houston (where represented by Linebarger), Houston Community College System, Houston Independent School District, City of Humble, Katy Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, City of Pasadena, Tarrant County, City of Waco, Waco Independent School District, and Denton County.

the Texas Tax Claims are paid in full. To the extent any Texas Tax Claims remain outstanding, the Liquidating Trustee shall continue to segregate the funds currently held in the Texas Tax Reserve, which (i) shall be maintained for the payment of the Texas Tax Claims to the extent the Texas Tax Claims are Allowed Claims and (ii) shall not be paid to any other creditor without further order of the Bankruptcy Court or until all Texas Tax Claims are deemed satisfied. Texas Tax Claims for 2024 taxes assumed pursuant to a Sale Order are the responsibility of the purchaser under the applicable purchase agreement, to be paid in full, in the ordinary course of business, when due, and such 2024 ad valorem tax liens are retained against the subject properties until said taxes are paid in full, including any applicable penalties or interest.

51. **IRS.** If the Post-Confirmation Debtors or the Liquidating Trust (as applicable) default under their obligations to the IRS and the Bankruptcy Court determines that such party is in breach of the Plan or this Confirmation Order, the IRS's right to seek Bankruptcy Court authority to pursue any available remedies pursuant to the Bankruptcy Code or applicable non-bankruptcy law is expressly preserved.

52. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any related documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

53. **Notice of Confirmation Order and Occurrence of Effective Date**. As soon as reasonably practicable after the entry of this Confirmation Order, the Debtors shall post a notice of confirmation (the "Notice of Confirmation") substantially in the form attached as **Exhibit 2** hereto, on the website maintained by their claims and noticing agent at

https://cases.ra.kroll.com/99only/ and filed on the docket of these Chapter 11 Cases. The Notice of Confirmation is adequate under the circumstances, and no other further notice is necessary. Pursuant to Bankruptcy Rules 2002 and 3020(c), the Plan Administrator is directed to serve notice of the occurrence of the Effective Date on all known creditors and Interest holders, the U.S. Trustee, and any identified entity subject to the Plan injunction, no later than 14 days after the occurrence of the Effective Date, to be delivered to such parties by first-class mail.

54. **Post-Confirmation Modification of Plan**. The Debtors are hereby authorized to amend or modify the Plan at any time prior to the Effective Date, but only in accordance with section 1127 of the Bankruptcy Code, without further order of this Court. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

55. **Non-Severability**. Each term and provision of the Plan and this Confirmation Order is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' prior consent, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

56. **Conditions to Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Section VIII.B of the Plan have been satisfied or waived in accordance with Section VIII.C of the Plan.

57. **Final Order**. This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon the entry hereof.

58. **Stay of Confirmation Order Waived**. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the

order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), or 7062.

59. **No Waiver**. The failure to specifically include any particular section or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such section or provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

60. **Retention of Jurisdiction**. Notwithstanding the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases.

**Dated: January 24th, 2025**
**Wilmington, Delaware**

**J. KATE STICKLES**
**UNITED STATES BANKRUPTCY JUDGE**